**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt@loker.law
1303 East Grand Avenue, Suite 101
Arroyo Grande, CA 93420
Telephone: (805) 994-0177

*Attorney for Plaintiff*,
Oleksandr Panchenko

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEKSANDR PANCHENKO,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; CAVALRY PORTFOLIO SERVICES, LLC; COMENITY CAPITAL BANK; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; U.S. BANK, NATIONAL ASSOCIATION; EQUIFAX INFORMATION SERVICES LLC; AND TRANS UNION LLC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>I.   **FAIR DEBT COLLECTION PRACTICES ACT;**<br><br>II.  **CALIFORNIA IDENTITY THEFT ACT**<br><br>III. **FAIR CREDIT REPORTING ACT; AND**<br><br>IV.  **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. The United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

3. In enacting the California's Identity Theft Act, Cal. Civ. Code §§1798.92 et seq. ("CITA"), the California Legislature found that the right to privacy was being threatened by the indiscriminate collection, maintenance, and dissemination of personal information. Accordingly, CITA was enacted to combat the lack of effective laws and legal remedies in place. To protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits. Cal. Civ. Code §1798.1(a),(c).

4. OLEKSANDR PANCHENKO ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of BANK OF AMERICA, N.A. ("BofA"); CAVALRY PORTFOLIO SERVICES, LLC ("Cavalry"); COMENITY CAPITAL BANK; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION ("Chase"); U.S. BANK, NATIONAL ASSOCIATION ("U.S. Bank"); EQUIFAX INFORMATION SERVICES LLC ("Equifax"); and TRANS UNION LLC ("Trans Union"), with regard the reporting and collection of multiple fraudulent accounts and this conduct caused Plaintiff damages.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

8. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1692; 15 U.S.C. §§ 1681 et seq.; and, 28 U.S.C. § 1367 for supplemental state claims.

11. This action arises out of Defendants' violations of (i) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"); (ii) the California Identity Theft Act, Cal. Civ. Code § 1798.82, et seq. ("CITA"); (iii) the Fair Credit Reporting Act, 15 U.S.C §§ 1681 et seq. ("FCRA"); (iv) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, et seq. ("CCCRAA").

12. Because Defendants conducted business within the State of California, personal jurisdiction is established.

13. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

14. Plaintiff is a natural person who resides in the County of Santa Clara, State of California, from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

15. Plaintiff is informed and believes, and thereon alleges, that Cavalry, in the ordinary course of business, regularly, on behalf of themselves or others, engage in "debt collection" and is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

16. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by 15 U.S.C. § 1692a(5).

17. Plaintiff is a "Victim of Identity Theft" as that term is defined by Cal. Civ. Code § 1798.82(d).

18. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c); and, Cal. Civ. Code § 1785.3(c).

19. BofA, Cavalry, Comenity, Chase, and U.S. Bank are furnishers of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

20. BofA, Cavalry, Comenity, Chase, and U.S. Bank are each also "claimants" as that term is defined by California Civil Code § 1798.92(a).

21. Equifax and Trans Union are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f); and, each a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

22. Equifax and Trans Union are also each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

23. BofA is banking company located in the State of North Carolina.

24. Cavalry is a corporation located in the State of Connecticut.

25. Comenity is banking company located in the State of Utah.
26. Chase is banking company located in the State of New York.
27. U.S. Bank is banking company located in the State of Minnesota.
28. Equifax is a corporation located in the State of Georgia.
29. Trans Union is a corporation located in the State of Pennsylvania.
30. The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

31. Plaintiff is an individual residing within the State of California.
32. Beginning in May 2009, Plaintiff travelled to the United States from his home country of Ukraine for tasks associated with his employment.
33. During his first visit to the United States in May 2009, Plaintiff was issued a J1 Visa and was also issued a Social Security Number.
34. In September 2009, Plaintiff left the United States back to Ukraine.
35. Between May 2010 and September 2019, Plaintiff would return to the United States intermittently for employment purposes.
36. In April 2023, Plaintiff relocated from Ukraine to the United States for employment.
37. On May 9, 2023, while in the process of integrating himself more fully within the United States by requesting his credit report, Plaintiff was shocked to discover many irregularities present on his credit report.

38. Plaintiff's credit report indicated a number of credit cards, bank accounts, employment history, and home addresses that Plaintiff did not recognize nor authorize the creation of.
39. These accounts spanned over multiple years, even though Plaintiff never opened any credit accounts while in the United States nor did he authorize anyone to do so on his behalf.
40. Plaintiff is able to clearly demonstrate that he was not present within the United States at the time that the accounts were created, through the United States Customs and Border Protection I-9 Travel History report.
41. The debts owed on these many accounts exceed $120,000.
42. Plaintiff concluded that he was the victim of identity theft and promptly contacted the Mountain View Police Department on June 13, 2023.
43. The Mountain View Police Department generated a report (23-03129) which summarized many of the factual allegations pertaining to these unfortunate events.
44. Thereafter, on June 26, 2023, Plaintiff created and signed an affidavit with the Federal Trade Commission detailing the many fraudulent accounts opened in his name.
45. On June 27, 2023, Plaintiff submitted written disputes to BofA, Cavalry, Chase, Comenity, and U.S. Bank.
46. These written disputes included supporting documentation demonstrating Plaintiff's identity and the factual basis for Plaintiff's dispute.
47. Plaintiff submitted additional written disputes in August 2023 to to each of the Defendants, including Equifax and Trans Union.
48. These written disputes included Plaintiff's social security number and other supporting documentation demonstrating that Plaintiff's identify and the factual basis for Plaintiff's dispute.

49. Equifax and Trans Union were then required to conduct their own reasonable reinvestigation into these accounts on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.
50. BofA, Cavalry, Comenity, Chase, and U.S. Bank were also required to conduct a reasonable reinvestigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).
51. BofA, Cavalry, Comenity, Chase, and U.S. Bank failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureaus, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).
52. Due to BofA, Cavalry, Comenity, Chase, and U.S. Bank's failure to reasonably investigate, BofA, Cavalry, Comenity, Chase, and U.S. Bank further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).
53. By inaccurately reporting account information after notice and confirmation of its errors, BofA, Cavalry, Comenity, Chase, and U.S. Bank failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).
54. Plaintiff received notification from Equifax and Trans Union dated August 9, 2023 that Experian had verified these debts as a valid obligation owed by Plaintiff.
55. To date, BofA, Cavalry, Comenity, Chase, and U.S. Bank's inaccurate credit reporting remains on Plaintiff's Experian Credit Report.
56. BofA, Cavalry, Comenity, Chase, and U.S. Bank submit inaccurate credit information regarding Plaintiff to the Credit Bureaus every thirty days.
57. Equifax and Trans Union did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).
58. Defendants' investigations were unreasonable.

59. More specifically, Defendants should have discovered from their own records, including Plaintiff's formal dispute, that the information being reported was inaccurate and materially misleading since Plaintiff had never obtained or utilized the credit card at issue herein.

60. By inaccurately reporting account information after notice and confirmation of its errors, BofA, Cavalry, Comenity, Chase, and U.S. Bank failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

61. Through this conduct, BofA, Cavalry, Comenity, Chase, and U.S. Bank violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that BofA, Cavalry, Comenity, Chase, and U.S. Bank knew or should know was inaccurate.

62. Through this conduct, Comenity violated 15 U.S.C. § 1692e(8) by submitting false information regarding Plaintiff's credit history.

63. Equifax and Trans Union also failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

64. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating Plaintiff's dispute with Experian were fruitless.

65. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

66. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was reckless.

67. Defendants' failure to correct the previously admitted inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

68. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.
69. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.
70. Throughout this ordeal, Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this large debt mischaracterizes Plaintiff as someone that financially overextends himself and harms Plaintiff's credit score.
71. Plaintiff has been unable to obtain the credit benefits he should have earned by his stellar payment history.
72. Such denials include a rejection by Goldman Sachs Bank on August 16, 2023.
73. This denial was based upon review of Plaintiff's Trans Union credit report.
74. While Plaintiff was thorough in Plaintiff's disputes at all times, each Defendant merely responded with form letters that failed to take into account any of the specifics identified in Plaintiff's disputes.
75. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this large delinquency mischaracterizes Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score.
76. Despite Plaintiff's repeated attempts, Defendants continue to report an invalid debt to Plaintiff's credit report.

77. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, preparing and mailing dispute letters, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of credit denials. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendants' inaccurate and derogatory information, without success.

78. Specifically, Plaintiff's efforts to rent a home have been frustrated by increased security deposits. Additionally, Plaintiff has been denied credit.

79. Plaintiff has spent countless hours disputing this inaccurate information with Defendants in an attempt to provide any and all information needed for the investigations.

80. Plaintiff is not able to calculate the total pecuniary loss at this time but will utilize the services of an economist.

81. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

82. Similarly, Equifax and Trans Union also received documents in connection with Plaintiff's dispute that directly contradicted the inaccurate credit reporting.

83. These documents should have caused Equifax and Trans Union to remove the inaccurate information from Plaintiff's credit report.

84. By intentionally reporting continuing obligations, Equifax and Trans Union acted in conscious disregard for Plaintiff's rights.

85. To report an ongoing obligation despite the invalid nature of this account shows that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

86. Since Plaintiff's efforts to be absolved of the invalid debt were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692-1692(P) (FDCPA)

### [AGAINST COMENITY]

87. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

88. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA.

89. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each Defendant individually.

### COUNT II

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §§ 1681-1681X (FCRA)

### [AGAINST ALL DEFENDANTS]

90. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

91. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

92. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

93. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## COUNT III
## VIOLATION OF CALIFORNIA'S IDENTITY THEFT ACT
## CAL. CIV. CODE §§ 1798.92-1798.97 (CITA)
## [AGAINST CLAIMANTS]

94. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

95. The foregoing acts and omissions constitute numerous and multiple violations of CITA.

96. As a result of each and every violation of CITA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5); a civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6); costs pursuant to Cal. Civ. Code § 1798.93(c)(5), attorney's fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5) and any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5).

# COUNT IV

## VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

## CAL. CIV. CODE § 1785.1, ET SEQ.

## [AGAINST FURNISHERS]

97. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

98. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

99. In the regular course of its business operations, BofA routinely furnishes information to credit reporting agencies pertaining to transactions between BofA and BofA's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

100. In the regular course of its business operations, Cavalry routinely furnishes information to credit reporting agencies pertaining to transactions between Cavalry and Cavalry's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

101. In the regular course of its business operations, Comenity routinely furnishes information to credit reporting agencies pertaining to transactions between Comenity and Comenity's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

102. In the regular course of its business operations, Chase routinely furnishes information to credit reporting agencies pertaining to transactions between Chase and Chase's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

103. In the regular course of its business operations, U.S. Bank routinely furnishes information to credit reporting agencies pertaining to transactions between U.S. Bank and U.S. Bank's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

104. Because BofA, Cavalry, Comenity, Chase, and U.S. Bank are a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), BofA, Cavalry, Comenity, Chase, and U.S. Bank is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

105. Since BofA, Cavalry, Comenity, Chase, and U.S. Bank received all documents required to determine the inaccuracy of BofA, Cavalry, Comenity, Chase, and U.S. Bank's reporting, BofA, Cavalry, Comenity, Chase, and U.S. Bank should have known to update said reporting.

106. BofA, Cavalry, Comenity, Chase, and U.S. Bank also should have determined that BofA, Cavalry, Comenity, Chase, and U.S. Bank's reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

- An award of actual damages, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1692k(a)(1), for each plaintiff;
- An award of statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A), for each plaintiff;
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);

- Any and all other relief that this Court deems just and proper.
- An award of actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5);
- A civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6);
- Attorneys' fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5);
- Any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5);
- An injunction preliminarily and permanently enjoining Defendant from engaging in the unlawful debt collection practices stated herein;
- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance of the FCRA;

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against each named Defendant individually;
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against each named Defendant individually;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);
- Punitive damages according to proof as to the FCRA; and CCCRAA; and,
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

107. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: September 27, 2023            Respectfully submitted,

**LOKER LAW, APC**

By: ___/s/ Matthew M. Loker___
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF