**LOKER LAW, APC**
Matthew M. Loker (279939)
matt.loker@loker.law
Telephone: (805) 994-0177
Charles B. Cummins (354861)
charles.cummins@loker.law
Telephone: (805) 468-8141
132 Bridge Street
Arroyo Grande, CA 93420

*Attorneys for Plaintiff,*
Oleksandr Panchenko

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OLEKSANDR PANCHENKO,** | **Case No.:** 23-cv-04965-EKL |
| Plaintiff, | **PLAINTIFF OLEKSANDR PANCHENKO'S OPPOSITION TO DEFENDANT COMENITY BANK'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **BANK OF AMERICA, N.A.; CAVALRY PORTFOLIO SERVICES, LLC; COMENITY CAPITAL BANK; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; U.S. BANK, NATIONAL ASSOCIATION; EQUIFAX INFORMATION SERVICES LLC; AND TRANS UNION LLC,** | **DATE:**          August 13, 2025<br>**TIME:**          10:00 a.m.<br>**COURTROOM:**  7<br><br>**HON.  EUMI K. LEE** |
| Defendants. | |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ...............................................................................................1

II. FACTUAL BACKGROUND ............................................................................1

III. ARGUMENT ....................................................................................................5

    A. A TRIABLE ISSUE OF FACT EXISTS WITH REGARD TO PANCHENKO'S FCRA CLAIMS ..........................................................................................5

        1. The Ninth Circuit has already held that reporting a fraudulent debt to the credit bureaus is inaccurate ....................................7

            i. *Comenity's reporting of a fraudulent debt to Panchenko's credit report is inaccurate* ..........................................7

            ii. Holden *does not support Comenity's "accuracy" argument* ..........................................................................9

        2. A jury could find a triable issue of fact regarding Comenity's failure to reasonably investigate Panchenko's disputes ........11

            i. *A jury could find Comenity's policy to not review documents submitted with disputes to be unreasonable as a matter of law* ..........................................................13

            ii. *A jury could find Comenity's rewarding of "top performers" with company wide recognition and bonuses to be unreasonable* ..........................................14

            iii. *A jury could find Comenity's disregard of exculpatory information in its files to be unreasonable* ..................17

        3. The quantification of Panchenko's actual damages is a question for the jury ......................................................................17

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.: 23-cv-4965-EKL         i OF vi       *Panchenko v. Bank of America, N.A., et al.*

**TABLE OF CONTENTS & AUTHORITIES**

4. A triable issue of fact exists with regard to the willfulness of Comenity's FCRA violation ................................................20

B. A TRIABLE ISSUE OF FACT EXISTS WITH REGARD TO PANCHENKO'S CCCRAA CLAIMS.................................................................23

C. A TRIABLE ISSUE OF FACT EXISTS WITH REGARD TO PANCHENKO'S CITA CLAIMS...................................................................24

IV. CONCLUSION..............................................................................26

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

# TABLE OF AUTHORITIES

CASES                                                                PAGE(S)

*Ahn v. Bank of Am., N.A.*,
  2023 U.S. Dist. LEXIS 129297 (C.D. Cal. July 25, 2023) ..........................16

*Asad v. Experian Info. Sols., Inc.*,
  2024 U.S. Dist. LEXIS 51724 (C.D. Cal. Mar. 21, 2024) ..........................10

*Bannek v, HSBC Bank USA, N.A.*,
  2016 U.S. Dist. LEXIS 79980 (N.D. Cal. 2016)..........................................18

*Boggio v. USAA Fed. Sav. Bank*,
  696 F.3d 611 (6th Cir. 2012)..................................................................11

*Boullosa v. Equifax Info. Servs. LLC*,
  2025 U.S. Dist. LEXIS 47569 (M.D. Fla. Mar. 17, 2025)..........................10

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010)....................................................................7

*Fed. Trade Comm'n v. Gill*,
  265 F.3d 944 (9th Cir. 2001).....................................................................6

*Felts v. Wells Fargo Bank, N.A.*,
  893 F.3d 1305 (11th Cir. 2018)................................................................21

*Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr.*,
  2018 U.S. Dist. LEXIS 99366 (E.D. Cal. June 12, 2018).............................5

*Drew v. Equifax Info. Servs. LLC*,
  690 F.3d 1100 (9th Cir. 2012).........................................................7, 8, 18

*Gorman v. Wolpoff & Abramson, LLP*
  584 F.3d 1147 (9th Cir. 2009)...........................................................passim

*Gross v. CitiMortgage, Inc.*,
  33 F.4th 1246 (9th Cir. 2022).............................................................10, 11

*Guimond v. Trans Union Credit Info. Co.*,
  45 F.3d 1329 (9th Cir. 1995)..............................................................passim

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*Holden v. Holiday Inn Club Vacations Inc.*,
  98 F.4th 1359 (11th Cir. 2024)...................................................................9, 10

*In re Software Toolworks Inc.*,
  50 F.3d 615 (9th Cir. 1994)..............................................................................16

*Johnson v. MBNA Am. Bank, NA*,
  356 F.3d 426 (4th Cir. 2004)......................................................................11, 12

*Kim v. BMW Fin. Servs. NA, LLC*,
  702 F. App'x 561 (9th Cir. 2017) ...............................................................11, 18

*Lenox v. Equifax Info. Servs. LLC*,
  2007 U.S. Dist. LEXIS 34453 (D. Or. May 7, 2007)......................................21

*Lies v. Farrell Lines, Inc.*,
  641 F.2d 765 (9th Cir. 1981)............................................................................19

*Ma v. Target Corp.*,
  2018 U.S. Dist. LEXIS 128902 (C.D. Cal. July 30, 2018) ............................24

*Martinez v. Am. Express Nat'l Bank*,
  2022 U.S. Dist. LEXIS 199019 (C.D. Cal. Nov. 1, 2022)......................11, 22

*Miller v. Westlake Servs. LLC*,
  637 F. Supp. 3d 836 (C.D. Cal. 2022)........................................................8, 18

*Nelson v. Chase Manhattan Mortgage Corp.*,
  282 F.3d 1057 (9th Cir. 2002)..........................................................................12

*Petras v. Navy Fed. Credit Union*,
  2022 U.S. Dist. LEXIS 30984 (D. Nev. Feb. 22, 2022) ..........................17, 21

*Pongsai v. Am. Express Co.*,
  2020 U.S. Dist. LEXIS 198104 (C.D. Cal. Oct. 23, 2020) ............................12

*Ramirez v. Trans Union LLC*,
  951 F.3d 1008 (9th Cir. 2020)..........................................................................20

*Robbins v. CitiMortgage, Inc.*,
  2017 U.S. Dist. LEXIS 209367 (N.D. Cal. Dec. 20, 2017) ..................passim

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*Roche v. SLM Corp.*,
  2022 U.S. Dist. LEXIS 20927 (C.D. Cal. Nov. 4, 2022) ............................ 16

*Romero v. Monterey Fin. Servs. LLC*,
  2021 U.S. Dist. LEXIS 15934 (S.D. Cal. Jan. 27, 2021) ............................... 8

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ....................................................................................... 6

*Sanchez v. U.S. Bank Nat'l Ass'n*,
  2019 U.S. Dist. LEXIS 108692 (C.D. Cal. June 27, 2019)....................... 5, 23

*Satey v. JPMorgan Chase & Co.*,
  521 F.3d 1087 (9th Cir. 2008)................................................................... 11

*Shipley v. Hunter Warfield, Inc.*,
  2021 U.S. Dist. LEXIS 208718 (M.D. Fla. Oct. 29, 2021).......................... 15

*Shoraka v. Bank of Am., N.A.*,
  2023 U.S. Dist. LEXIS 224493 (C.D. Cal. Dec. 13, 2023) .................... 16, 23

*Stafford v. PNC Bank*,
  2022 U.S. Dist. LEXIS 144456 (C.D. Cal. Aug. 12, 2022) .................... 17, 20

*Soria v. U.S. Bank N.A.*,
  2019 U.S. Dist. LEXIS 70068 (C.D. Cal. Apr. 25, 2019)....................... 12, 24

*Teshera v. United Wholesale Mortg., LLC*,
  2024 U.S. Dist. LEXIS 166908 (C.D. Cal. Sep. 13, 2024)............................ 7

*Tillman v. Los Angeles Cnty. Dist. Attorney's Off.*,
  2023 U.S. Dist. LEXIS 52535 (C.D. Cal. Jan. 18, 2023)............................... 7

*Westbrook v. Equifax Info. Servs., LLC*,
  2025 U.S. Dist. LEXIS 20214 (M.D. Fla. Feb. 5, 2025) ............................. 11

*Wood v. Credit One Bank*,
  277 F. Supp. 3d 821 (E.D. Va. 2017)............................................................ 8

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

## I.   INTRODUCTION

Defendant COMENITY BANK's Motion for Summary Judgment fails for a simple reason: the facts demand a trial. At every critical juncture, Comenity chose to ignore overwhelming evidence that the account at issue was the product of identity theft, not a legitimate obligation owed by Panchenko. Rather than conduct meaningful investigations, Comenity rejected Panchenko's disputes without even reviewing them in accordance with a corporate policy that governed until December 2023. Comenity also disregarded voice recordings showing two different individuals both claiming to be Panchenko, and prioritized speed and performance incentives over accuracy and fairness. These facts—fully supported by the record—raise triable issues that only a jury can resolve.

Whether Comenity's reporting was accurate, whether its investigations were reasonable, whether Panchenko's damages were caused by Comenity's actions, and whether Comenity acted willfully in violation of the FCRA and CCCRAA are all questions of fact that go to the heart of this dispute. Summary judgment is not the vehicle to resolve these core issues. The record here—spanning years of misconduct, systemic investigatory failures, and devastating consumer harm—compels the Court to deny Comenity's Motion and allow a jury to decide the merits.

## II.   FACTUAL BACKGROUND

Comenity's cursory factual recitation omits a substantial number of material facts while also focusing on supposed facts that contradict its prior testimony herein. This evidence demonstrates that this matter should be decided by the jury as opposed to on the papers for the reasons discussed herein.

**December 21, 2015:** An unknown individual utilized Panchenko's personal identifying information to open an account with Comenity.  [Fact 16].   The application utilized Panchenko's correct name, date of birth, and social security

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.: 23-cv-4965 EKL                    **1 OF 26**         *Panchenko v. Bank of America, N.A., et al.*
**PLAINTIFF OLEKSANDR PANCHENKO'S OPPOSITION TO DEFENDANT COMENITY BANK'S
MOTION FOR SUMMARY JUDGMENT**

number. [Additional Fact 21]. However, the application utilized an incorrect address and telephone number. [*Id*.].

**January 2017 – December 2017:** The fraudster utilized the Comenity credit card to make numerous in person purchases. [Additional Fact 3]. Panchenko did not live in the United States in 2017 and did not make or authorize any of these purchases.

**November 24, 2017 – October 27, 2018:** The fraudster made multiple telephone calls to Comenity and is recorded on numerous occasions either making payments toward the account or discussing it with Comenity's representatives. [Additional Fact 5]. None of these recordings are Panchenko. [*Id*.]. Arshiya Banu, one of Comenity's investigators, agreed two different voices both claiming to be Panchenko is a red flag. [Additional Fact 5]

**April 2023:** Panchenko and his wife, Alla Odeianenko, moved to the United States in April 2023 after they were forced to flee Ukraine mere months before the war started. [Additional Fact 7].

**May 12, 2023:** Panchenko learned of the fraud upon downloading the Experian app and immediately lodged a telephonic dispute noting he is the victim of identity theft. [Fact 3].

**May 18, 2023:** Comenity employee, Poojitha Kadaresh, processed Panchenko's identity theft dispute to Experian. [Additional Fact 12]. Kadaresh rejected Panchenko's dispute and reported back to Experian the fraudulent account was reporting correctly to Panchenko's credit report. [*Id*.]. Kadaresh's EASE notes, Dkt. 134-6, document the scope of her investigation. [Additional Fact 13].

**May 20, 2023:** Comenity employee, J Elizabeth, processed Panchenko's dispute to Equifax. [Additional Fact 12]. Elizabeth utilized internal information to do so and reported back to Equifax the Comenity account was accurately reporting.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

[*Id*.].  Elizabeth's processing of the dispute are documented in her EASE Notes, Dkt. 134-8.  [Additional Fact 13].

**June 30, 2023**: Panchenko called Comenity to dispute the fraudulent account. [Additional Fact 26].

**July 5, 2023:** Comenity employee, Ramya Shashidhar, rejected Panchenko's dispute to Trans Union.  [Additional Fact 12].  Shashidhar's internal investigation is documented in her EASE Notes.  [Additional Fact 13].  Said notes incorrectly state no calls were recorded despite calls from the fraudster being contained in NICE from 2017 and 2018 as well as calls from Panchenko in 2023.

**July 6, 2023:** Comenity received a direct dispute from Panchenko regarding the fraud.  [Additional Fact 27].  This dispute contained an explanation regarding the basis for Panchenko's belief he is the victim of identity theft; included an Identity Theft Report from the Federal Trade Commission; Panchenko's passport; and, utility bill. [*Id*.].

**July 18, 2023:**  Comenity employee, Pavithra S, processed Panchenko's dispute to Equifax and responded claiming the fraudulent credit card was accurately reporting to Panchenko's credit report.  [Additional Fact 12].

Panchenko also placed an additional telephonic dispute to Comenity on July 18, 2023.  [Additional Fact 26].

**July 19, 2023:** Equifax notified Panchenko that Comenity, as well as other financial institutions, rejected his disputes.  [Additional Fact 28].

**July 21, 2023:** Trans Union notified Panchenko that Comenity, as well as other financial institutions, rejected his disputes.  [Additional Fact 29].

**July 27, 2023:** Comenity notified Panchenko it rejected his identity theft dispute.  [Additional Fact 30].

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

**August 7, 2023:** Panchenko placed two additional telephonic disputes to Comenity. [Additional Fact 26].

**August 10, 2023:** Comenity employee, Praghathi Gopinath, processed Panchenko's dispute to Experian. [Additional Fact 12]. Gopinath's rejection is documented in her EASE Notes at Dkt. 134-13. [Additional Fact 13].

**August 16, 2023:** Panchenko's indirect dispute to Trans Union is received. [Dkt. 134-18]. This dispute included a narrative explaining the basis for Panchenko's belief that he is the victim of identity theft; his current address; and, explained that he only moved to the United States from Ukraine in April 2023. [*Id*.]. Panchenko's dispute also provided a copy of his I-9 travel history; passport; multiple Identity Theft Reports from the Federal Trade Commission; proof of his residency in Ukraine; and proof of his residency in Mountain View, CA. [*Id*.]. Additionally, Panchenko also provided a Mountain View Police Report completed by Officer Jason Poirier and approved by Officer Evan Crowl. [*Id*.]. This police report concluded that Panchenko was the victim of identity theft. [*Id*.]. Comenity's procedures do not include contacting law enforcement officials or anyone else for that matter. [Banu Transcript, 59:22-60:18].

Panchenko's Apple Card application was also denied on August 16, 2023. [Dkt. 135-15].

**August 19, 2023:** Comenity employee, Shanmugam Arul, processed Panchenko's dispute to Equifax. [Additional Fact 12]. Arul's rejection is documented in her EASE Notes at Dkt. 134-15; and, 134-17. [Additional Fact 13].

**August 21, 2023:** Comenity employee, Praghathi Gopinath, processed Panchenko's dispute to Trans Union. [Additional Fact 12]. Gopinath's rejection is documented in her EASE Notes at Dkt. 134-21. [Additional Fact 13]. Despite Panchenko's efforts to gather information to establish he is the victim of identity

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

theft, Gopinath did not even read his dispute due to Comenity's policy at the time to not review such documents submitted with disputes. [Additional Fact 14].

Comenity's investigators utilize Accurint in connection with its investigations. Comenity's investigators, however, do not have familiarity with how Accurint gathers information nor are the investigators able to understand discrepancies within the system such as yellow flags being associated with an address. [Additional Fact 19].

**August 31, 2023:** Trans Union notified Panchenko that Comenity again rejected his disputes. [Additional Fact 31].

**December 21, 2023:** Comenity employee, Elizabeth Walter, submitted an AUD finally deleting the fraudulent account from each of Panchenko's credit reports. [Dkt. 134-25].

## III.  ARGUMENT

There is a "genuine need for trial" in this matter since the "factual dispute [is] shown to require a jury…to resolve the parties' differing versions of the truth…" *Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr.*, No. 1:15-cv-01136-DAD-EPG, 2018 U.S. Dist. LEXIS 99366, at *7-8 (E.D. Cal. June 12, 2018). Here, Comenity's Motion should be denied because triable issues of fact exist regarding Panchenko's claims asserted pursuant to (A) the FCRA; (B) CCCRAA; and, (C) CITA.

### A.  A TRIABLE ISSUE OF FACT EXISTS WITH REGARD TO PANCHENKO'S FCRA CLAIMS.

"The purpose of the FCRA is 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Sanchez v. U.S. Bank Nat'l Ass'n*, No. CV18-500 JLS (KSx), 2019 U.S. Dist. LEXIS 108692, at *9 (C.D. Cal. June 27, 2019) citing to *Gorman v. Wolpoff & Abramson,*

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*LLP*, 584 F. 3d 1147, 1153 (9th Cir. 2009); and, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "'To ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies ('CRAs')], called 'furnishers' in the statute.'" *Id*. citing to *Robbins v. CitiMortgage, Inc.*, No. 16-cv-4732 LHK, 2017 U.S. Dist. LEXIS 209367, at *5 (N.D. Cal. Dec. 20, 2017). Said duties are extensive since "[a] poor credit history is the 'Scarlet Letter' of the 20th Century America." 136 Cong. Rec. H5325-02 (daily ed. July 23, 1999) (statement of Rep. Annunzio) cited in *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 947 (9th Cir. 2001).

To assert a prima facie FCRA case for violation of 15 U.S.C. § 1681s-2(b), the plaintiff must "prove (1) Defendant is a 'furnisher'; (2) Plaintiff notified the [Credit Reporting Agency] that Plaintiff disputed the reporting as inaccurate; (3) the [Credit Reporting Agency] notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and, (5) Defendant failed to conduct the investigation required by [15 U.S.C.] § 1681s-2(b)(1)." *Robbins*, 2017 U.S. Dist. LEXIS 209367, at *13 (N.D. Cal. Dec. 20, 2017).

Here, Comenity's Motion as to the FCRA should be denied because (1) Comenity reported inaccurate information regarding Panchenko to the credit bureaus; (2) a jury could find Comenity failed to reasonably investigate Panchenko's disputes of its reporting; (3) the amount of Panchenko's actual damages is a question for the jury; and, (4) punitive damages are a question for the jury.

1. **The Ninth Circuit has already held that reporting a fraudulent debt to the credit bureaus is inaccurate.**

"To state a claim against a furnisher of information for violation of 15 U.S.C. § 1681s-2(b)(1) of the FCRA, a plaintiff must plead 'a credit reporting inaccuracy on plaintiff's credit report.'" *Teshera v. United Wholesale Mortg., LLC*, No. CV 24-4362-CBM-PDx, 2024 U.S. Dist. LEXIS 166908, at *2 (C.D. Cal. Sep. 13, 2024) citing *Tillman v. Los Angeles Cnty. Dist. Attorney's Off.*, 2023 U.S. Dist. LEXIS 52535, 2023 WL 2628684, at *3 (C.D. Cal. Jan. 18, 2023). "An item on a credit report can be incomplete or inaccurate…because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).

Here, Comenity seeks summary judgment regarding the accuracy of its reporting of the fraudulent credit card to the credit bureaus. [Motion, 7:7-8:11]. This argument should be rejected becase (i) the Ninth Circuit and District Courts throughout the country have repeatedly held reporting fraudulent debts to the credit bureaus is inaccurate; and, (ii) Comenity's reliance upon the Eleventh Circuit's decision in *Holden* is misplaced. Thus, Comenity's Motion as to the accuracy of its reporting should be denied.

i. *Comenity's reporting of a fraudulent debt to Panchenko's credit report is inaccurate.*

Despite controlling Ninth Circuit authority to the contrary, Comenity asks this Court to conclude that its reporting of a fraudulent debt on Panchenko's credit report was accurate as a matter of law under the FCRA. That position is flatly foreclosed by *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100 (9th Cir. 2012).

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

In *Drew*, an unknown fraudster opened a credit card in Drew's name, without Drew's knowledge or consent, while Drew was undergoing leukemia treatment across Washington and Minnesota. *Id.* at 1104. Soon after, Drew began receiving alarming communications from various banks regarding credit applications and collection efforts submitted in his name. *Id.* He obtained a police report from the Santa Clara Police Department, and the identity thief was ultimately convicted. *Id.* Drew then initiated direct and indirect disputes with both the furnishers and credit reporting agencies (CRAs). *Id.* at 1104–05.

When addressing the "accuracy" prong under the FCRA, the Ninth Circuit concluded that "a jury may well find that reporting the fraudulently opened account as a lost or stolen account *belonging to* Drew was untrue or facially inaccurate" (emphasis in original). *Id.* at 1108. The Ninth Circuit's reasoning is unambiguous: reporting a fraudulent account as though it belonged to the consumer is actionable under the FCRA. Comenity's invitation to depart from that precedent should be rejected. *See, e.g.*, *Coronavirus Rep. v. Apple Inc.*, No. 21-cv-05567-EMC, 2024 U.S. Dist. LEXIS 239334, at *4 (N.D. Cal. Oct. 28, 2024) citing *Optional Cap., Inc. v. DAS Corp.*, 66 F.4th 1188, 1192 (9th Cir. 2023) ("holding that relevant Ninth Circuit 'rulings are the law of the case, and the district court [is] … bound to follow them.'").

District courts across the country have reached similar conclusions. *See Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 854 (C.D. Cal. 2022) (granting summary judgment to the consumer on the issue of accuracy regarding Westlake's reporting of a fraudulent debt); *Romero v. Monterey Fin. Servs., LLC*, No. 19cv1781 JM (KSC), 2021 U.S. Dist. LEXIS 15934, at *27–28 (S.D. Cal. Jan. 27, 2021) (same); *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 850–51 (E.D. Va. 2017) (same).

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

Here, Panchenko never opened the Comenity account and never authorized anyone else to do so on his behalf. In fact, Panchenko was not even residing in the United States when the fraudulent account was opened nor when any of the fraudulent transactions occurred. This coupled with the multiple recordings of two different individuals identifying themselves as Panchenko support Officer Jason Poirier's findings: "Based on the information I obtained during my investigation, I determined that the suspect committed a violation of California Penal Code 530.5 – Identity Theft." [Dkt. 134-23, p. 18].

In short, Comenity's continued assertion that its reporting was somehow "accurate" defies Ninth Circuit law and the evidentiary record. Its argument should be squarely rejected.

ii.     Holden *does not support Comenity's "accuracy" argument.*

Comenity asks this Court to ignore binding Ninth Circuit precedent and instead urges reliance on the Eleventh Circuit's decision in *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359 (11th Cir. 2024). But Comenity's selective invocation of *Holden* is both unavailing and misleading. Not only does *Holden* address an entirely distinguishable contractual dispute, but its reasoning actually affirms Panchenko's position: when a legal question is sufficiently settled—such as whether reporting a known fraudulent debt is inaccurate—the FCRA compels accurate reporting.

In *Holden*, plaintiffs Tanethia Holden and Mark Mayer entered into purchase agreements for timeshares with Holiday Inn Club Vacations. After ceasing payments, each considered their respective agreement canceled. *Id.* at 1363. Holiday Inn disagreed, reported the debts to Experian, and rejected the consumers' indirect disputes, leading to an FCRA lawsuit. *Id.* The district courts granted summary judgment, finding the alleged inaccuracies amounted to contractual

disputes not subject to FCRA liability under § 1681s-2. *Id.*

The Eleventh Circuit affirmed, but emphasized that what matters under the FCRA is whether the alleged inaccuracy is "objectively and readily verifiable"— and found that it was not, given the unsettled contractual questions. *Id.* at 1368. The court further acknowledged that if a legal question is "sufficiently settled so that the import on a particular debt is readily and objectively verifiable," then the FCRA may well require that implication to be reflected in credit reporting. *Id.*, citing *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 271 (2d Cir. 2023); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022).

Here, unlike in *Holden*, Panchenko's dispute does not hinge on contractual ambiguity. The issue is not whether the debt was canceled or whether a default provision applies, it is whether Comenity continued to report a debt it knew (or should have known) was the result of identity theft. That is not a murky legal issue, but a settled question under controlling Ninth Circuit authority. See *Drew*, 690 F.3d 1100; *Miller*, 637 F. Supp. 3d at 854; *Romero*, 2021 U.S. Dist. LEXIS 15934, at *27–28; *Wood*, 277 F. Supp. 3d at 850–51.

Numerous courts continue to affirm that reporting a fraudulent debt— particularly in the face of evidence—is not accurate reporting under the FCRA or CCCRAA. See, e.g., *Asad v. Experian Info. Sols., Inc.*, No. 2:22-cv-06412-JLS-RAO, 2024 U.S. Dist. LEXIS 51724, at *7 (C.D. Cal. Mar. 21, 2024) (denying summary judgment where identity theft was alleged); *Shoraka v. Bank of Am., N.A.*, No. 8:23-CV-00309-DOC-JDE, 2023 U.S. Dist. LEXIS 224493, at *17-18 (C.D. Cal. Dec. 13, 2023); *Boullosa v. Equifax Info. Servs. LLC*, No. 8:22-cv-2642-CEH-CPT, 2025 U.S. Dist. LEXIS 47569, at *24 (M.D. Fla. Mar. 17, 2025); *Westbrook v. Equifax Info. Servs., LLC*, No. 8:23-cv-477-MSS-LSG, 2025 U.S. Dist. LEXIS

20214, at \*21 (M.D. Fla. Feb. 5, 2025).

The question here is straightforward: whether it is accurate to report a debt that resulted from identity theft. In the Ninth Circuit, it is well-settled that such reporting is not "accurate" as a matter of law. Comenity's attempt to analogize *Holden* only underscores its lack of meaningful authority. Thus, Comenity's Motion should be denied.

## 2. **A jury could find a triable issue of fact regarding Comenity's failure to reasonably investigate Panchenko's disputes.**

Quite simply, Comenity's Motion as to the purported reasonableness of its investigation should be denied. "The Ninth Circuit has held that 'summary judgment is generally an inappropriate way to decide questions of reasonableness [in FCRA cases] because the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment.'" *Martinez v. Am. Express Nat'l Bank*, No. CV 21-8130-DMG (MAAx), 2022 U.S. Dist. LEXIS 199019, at \*10-11 (C.D. Cal. Nov. 1, 2022) citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). *See also Gross*, 33 F.4th at 1252 ("Unless 'only one conclusion about the conduct's reasonableness is possible, 'the question is normally inappropriate for resolution at the summary judgment stage.").

In addition, 15 U.S.C. "§ 1681s-2 is designed to prevent 'furnishers of information' from spreading inaccurate consumer-credit information." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012). Following receipt of a credit reporting dispute, the responding investigation conducted by a furnisher must be "reasonable." *Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561, 563-64 (9th Cir. 2017) citing to *Gorman*, 584 F.3d at 1152. In *Gorman*, the Ninth Circuit followed the Fourth Circuit's decision in *Johnson v. MBNA Am. Bank, NA*, 356 F.3d 426, 429-31 (4th Cir 2004) explaining that the "plain meaning of the term

'investigation' is a 'detailed inquiry or systematic examination,' 'which necessarily 'requires some degree of careful inquiry.'" "…[T]he purpose of this provision is 'to give consumers a means to dispute – and ultimately, correct – inaccurate information on their credit reports,' a 'superficial, unreasonable inquir[y]' would hardly satisfy Congress' objective." *Gorman*, 584 F.3d at 1155 citing to *Johnson*, 356 F.3d at 431.

The Ninth Circuit went on to explain that "[b]y its ordinary meaning, an 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Id*. at 1147. After all, "a primary purpose for the FCRA [is] to protect consumers against inaccurate and incomplete credit reporting.'" *Id*. citing to *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002). "A provision that required only a cursory investigation would not provide such protection; instead, it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry." *Id*. at 1156. *See also Gross*, 33 F.4th at 1251 citing *Gorman*, 584 F.3d at 1157 ("That 'investigation' must be at least 'reasonable' and 'non-cursory.'")

"Summary judgment is generally an inappropriate way to decide questions of reasonableness because 'the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment.'" *Pongsai v. Am. Express Co.*, No. SACV19-1628 DOC (JDEx), 2020 U.S. Dist. LEXIS 198104, at *8 (C.D. Cal. Oct. 23, 2020) citing *Gorman*, 584 F.3d at 1157; and, *In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994). Moreover, in *Pongsai*, the Honorable David O. Carter also cited to the Honorable Cormac J. Carney's decision in *Soria* to note that "[t]his Court recently held that 'a reasonable investigation requires more than just a review of the internal records.'" *Id.*, at *6 citing *Soria v. U.S. Bank N.A.*, No. SACV17-603 CJC (KESx), 2019 U.S. Dist. LEXIS 70068, at

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*28 (C.D. Cal. Apr. 25, 2019).

Here, in addition to seeking this Court to resolve a question of reasonableness, Comenity's Motion should be denied because (i) Comenity's policy to not review documents submitted with disputes is unreasonable as a matter of law; (ii) Comenity emphasized speed by rewarding "top performers" with company wide recognition and bonuses; and, (iii) Comenity ignored exculpatory information in its own records.

### i.    *A jury could find Comenity's policy to not review documents submitted with disputes to be unreasonable as a matter of law.*

Comenity's Motion omits a critical and damning truth: its investigators categorically failed to review any of the documents submitted with Panchenko's disputes, and this failure was not a fluke—it was the direct result of Comenity's official policy, which remained in effect until at least December 2023.

Comenity investigator Arshiya Banu testified unequivocally: "To be honest when I process this case, we were not checking images which are provided by the customer… we were just downloading that and uploading it. So we were not going through, like, what is provided by the customer in that image. I didn't check that." [Banu Tr., 24:15–21, 25:4–9, 31:1–11]. Banu further acknowledged she took no substantive action regarding Panchenko's police report and confirmed that even a sworn law enforcement conclusion of identity theft—like the one Officer Poirier reached here—would not have impacted her analysis. [*Id.*, 33:11–15].

This failure was not limited to Banu. Investigators Poojitha Kadaresh, Shanmugam, and Ramya Shashidhar all confirmed the same policy of disregarding supporting documents provided by consumers. [Kadaresh Tr., 27:24–28:25; Shanmugam Tr., 37:16–25, 43:4–44:12; Shashidhar Tr., 17:22–25].

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

Panchenko, for his part, provided a wealth of exonerating documentation with his disputes—travel records showing he was not in the country when the account was opened or charges incurred, and a police report confirming he was the victim of identity theft. Yet under Comenity's policy, this evidence was effectively ignored.

Such a policy is indefensible. No reasonable jury could condone a furnisher's deliberate refusal to review dispute documentation. Comenity's refusal to engage with the very materials designed to confirm or rebut the veracity of a dispute renders its "investigations" legally and factually bankrupt. While Panchenko defers to the jury for the ultimate determination, there can be no serious argument that Comenity's blind processing of disputes meets the reasonableness standard under the FCRA.

At bottom, Comenity's policy of willful ignorance is not merely negligent, it is systemic misconduct that renders its investigation process a hollow shell. No amount of litigation posturing can sanitize the fact that Comenity chose speed over substance, and policy over people's rights.

ii.    ***A jury could find Comenity's rewarding of "top performers" with company wide recognition and bonuses to be unreasonable.***

In addition to not even reading the disputes, Comenity emphasizes speed and incentivizes its employees to review as many disputes as possible as quickly as possible by providing "top performers" with company wide recognition and financial bonuses.  [Kandaresh Transcript, 54:15-55:13; Rani Transcript, 13:6-14:25; Pavithra Transcript, 30:4-33:19].  These top performers can use the points to purchase items from Zomato, Amazon, and Myntra.  [Rani Transcript, 13:6-14:25]. On the other hand, periods of subpar performance, meaning not processing enough disputes, can lead to termination.  [Pavithra Transcript, 33:20-34:16].

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*Shipley* recently denied defendant Hunter Warfield, Inc.'s Motion for Summary Judgment in a similar situation. *See Shipley v. Hunter Warfield, Inc.*, No. 8:20-cv-2285-JSM-SPF, 2021 U.S. Dist. LEXIS 208718, at \*25 (M.D. Fla. Oct. 29, 2021). In *Shipley*, plaintiff Sian Shipley was the victim of identity theft after a fraudster utilized her information to enter a lease agreement with an apartment in Atlanta, Georgia. *Id*., at \*1. The fraudster was eventually evicted after failing to pay rent resulting in the debt being transferred to Hunter Warfield for collection. *Id*. Shipley's disputes of Hunter Warfield's reporting of the fraudulent debt were rejected prompting Shipley to file an FCRA claim against Hunter Warfield. *Id*., at \*2.

In denying Hunter Warfield's Motion for Summary Judgment, the Honorable James S. Moody, Jr. first noted that "the reasonableness of the furnisher's investigation is normally an issue for trial." *Id*., at \*20. Thereafter, Judge Moody examined the actual processing of disputes by Hunter Warfield's employees noting the corporate policy to process ACDVs "as quickly as possible." *Id*., at \*22. To accomplish this, Hunter Warfield "incentivized its employees to complete as many investigations as possible" through "a hurried, conveyor-belt like atmosphere." *Id*. "This conveyor-belt styled atmosphere is conducive to a dispute operator overlooking, missing or just 'whiffing' on important information due to volume, speed or attention issues." *Id*. "Moreover, 50 percent of dispute operators' wages come from a 'bonus' for exceeding the quota…[and] a 'top performer' processes 180 ACDV-disputes per day." *Id*.

Here, Comenity incentivizes its employees to process consumer disputes at breakneck speed, prioritizing volume over accuracy. Its dispute processors operate around the clock, 24 hours a day, 7 days a week, without even reading the substance of a single consumer complaint given its corporate policy not to do so. Rather than

evaluating whether a reported account was truly opened by the consumer or by an identity thief, Comenity's agents engage in nothing more than data conformity, merely checking whether the information reported by the credit bureaus matches its own internal records.    [*See, e.g.*, Poojitha Transcript, 23:3-23; Shanmugam Transcript, 37:10-15].

This practice falls egregiously short of the FCRA's mandate to conduct a reasonable investigation. Indeed, if the reported data did not match, there would be no identity theft to begin with. The entire harm arises because the data does match despite the fact that it was input by the fraudster instead of the victim. Comenity's approach eviscerates the very purpose of a reinvestigation and renders the consumer's dispute meaningless.    Comenity wholly failed to acknowledge the contradictions between its system and Panchenko's dispute because, of course, Comenity did not even read the dispute.

Accordingly, Comenity's Motion should be denied. Its data-matching policies unreasonably incentivize employees to engage in cursory, perfunctory procedures that ignore the substance of identity theft disputes and fail to address the core issue—whether the consumer actually opened the account in question.  *See, e.g.*, *Shoraka v. Bank of Am., N.A.*, No. 8:23-CV-00309-DOC-JDE, 2023 U.S. Dist. LEXIS 224493, at *15 (C.D. Cal. Dec. 13, 2023) citing *Ahn v. Bank of Am., N.A.*, No. 21-cv-1092 MEMF (ADSx), 2023 U.S. Dist. LEXIS 129297, at *12 (C.D. Cal. July 25, 2023); and, *Roche v. SLM Corp.*, No. SACV21-985 CJC (JDEx), 2022 U.S. Dist. LEXIS 20927, at *2 (C.D. Cal. Nov. 4, 2022) ("Courts in the Ninth Circuit routinely deny summary judgment as to reasonableness of an FCRA investigation.").

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

### iii.   *A jury could find Comenity's disregard of exculpatory information in its files to be unreasonable.*

Not only did Comenity disregard Panchenko's disoputes, it also failed to take into account the telephone recordings in its system, NICE, which showed two different people with distinct voices claiming to be Panchenko.  A jury could find such disregard to be unreasonable since the reasonableness of an investigation will take into account what a furnisher learned from the consumer's dispute.  *See Petras v. Navy Fed. Credit Union*, No. 2:20-cv-00874-RFB-BNW, 2022 U.S. Dist. LEXIS 30984, at *12-13 (D. Nev. Feb. 22, 2022) citing *Gorman*, 584 F.3d at 1157 (Denying furnisher Summary Judgment for not taking into account information provided with the dispute).  Comenity failed to take into account any of the information Panchenko conveyed with his disputes.  Instead, Comenity simply "rubber stamped" its prior reporting which a jury may find to be unreasonable.  *See Stafford v. PNC Bank*, No. EDCV 21-256 JGB (SHKx), 2022 U.S. Dist. LEXIS 144456, at *16 (C.D. Cal. Aug. 12, 2022).

### 3. <u>The quantification of Panchenko's actual damages is a question for the jury.</u>

The FCRA allows consumers to recover for out-of-pocket expenses, damages to reputation; and, damages to creditworthiness amongst other pecuniary losses. *Panahiasl v. Gurney*, 2007 U.S. Dist. LEXIS 17269, at *4-5 (N.D. Cal. 2007) citing to *Guimond*, 45 F.3d at 1333.  *See also Cristobal v. Equifax, Inc.*, 2017 U.S. Dist. LEXIS 63571, at *18-19 (N.D. Cal. 2017) citing to *Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 945 (C.D. Cal. 2015); and, *Roybal v. Equifax*, 2008 U.S. Dist. LEXIS 79789 (E.D. Cal. 2008).

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

In this context, "[a]ctual damages may include damages for humiliation, mental distress, and injury to reputation and creditworthiness, even if the plaintiff has suffered no out-of-pocket losses."' *Robbins*, 2017 U.S. Dist. LEXIS 209367, at *45-46 citing to *Kim v. BMW Fin. Servs. NA LLC*, 702 Fed. Appx. 561 (9th Cir. 2017). *See also Drew v. Equifax Information Servs., LLC*, 690 F.3d 1100, 1109 (9th Cir. 2012) citing to *Guimond*, 45 F.3d at 1333 ("A plaintiff's actual damages can include recovery for emotional distress."); and, *Banneck v. HSBC Bank USA, N.A.*, 2016 U.S. Dist. LEXIS 79980, *8 (N.D. Cal. 2016) ("[A]n FCRA plaintiff may prove a claim for actual damages by showing that a credit reporting agency's maintenance of inaccurate credit records or unreasonable investigation of a credit dispute has resulted in emotional harm or humiliation, even where credit was not denied.").

"The Ninth Circuit has recognized in a different context…that 'compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms." *Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 853 (C.D. Cal. 2022). "[N]o objective evidence of mental anguish is necessary." *Shoraka*, 2023 U.S. Dist. LEXIS 224493, at *18 citing *Passantino v. Johnson & Johnson Cons. Prods., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000); and, *Diaz v. Tesla, Inc.*, 598 F.Supp. 3d 809, 834 (N.D. Cal. 2022) ("'[Emotional distress] damages can be established, among other ways, by a plaintiff's testimony about his harm and the testimony of others about that harm."').

Moreover, "'no case has held that a denial of credit is a prerequisite to recovery under the FCRA.'" *Robbins*, 2017 U.S. Dist. LEXIS 209367, at *47 citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); and, *Kim*, 142 F. Supp. 3d at 944. In addition, a plaintiff "does not need to show that

Defendant's reporting was the only cause of Plaintiff's harm, but merely that Defendant's reporting was 'a 'substantial factor'…to create an issue of fact regarding causation." *Id*. citing *Fregoso v. Wells Fargo Dealer Servs., Inc.*, 2012 U.S. Dist. LEXIS 151785, at *7 (C.D. Cal. Oct. 16, 2012).

Here, Comenity contests causation for Panchenko's damages—namely, lost wages, heightened security deposits, emotional distress, and credit denials. [Motion, 10:25–26]. While Comenity is entitled to challenge causation at trial, raising such arguments at the summary judgment stage is premature.

With respect to pecuniary harm, Comenity specifically disputes liability for the August 16, 2023 denial of Panchenko's Apple Card application, contending the denial cannot be attributed to Comenity because other delinquent, fraudulent accounts appeared on Panchenko's credit file. [Motion, 13:27–14:7]. In essence, Comenity argues that other furnishers of fraudulent data bear responsibility for the financial harm. The Ninth Circuit has already rejected this type of causation evasion in *Gross*, where CitiMortgage similarly asserted that its reporting could not have caused the plaintiff's damages because others also furnished inaccurate information. The Court squarely rejected that defense, noting CitiMortgage's "reasoning is based on CitiMortgage's claim that Gross's financial issues were caused by entries made by others on his credit report, and not by CitiMortgage." *Gross*, 33 F.4th at 1253. The Ninth Circuit reiterated that "[t]his causation issue is quintessentially one for the jury," citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981) ("Causation is generally a question of fact for the jury…").

Regarding emotional distress, Panchenko described the fear of learning he is the victim of identity theft when he moved to the United States in May 2023 and the horrible dispute process he had to go through. [Fact 11]. Panchenko further testified this issue caused panic attacks, intrusive thoughts, hindered his ability to make

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

decisions, impacted his ability to seek employment. [Fact 8]. Panchenko then had to utilize his savings to make ends meet since the dispute process precluded him from seeking employment. [*Id*.]. This stress also manifested itself through teeth grinding and headaches. [Fact 11].

Panchenko's emotional distress testimony will be corroborated at trial by Alla, his wife, as well as Pavlo, his friend who will discussing therapy visits; Comenity's impact on Panchenko's sleep, an issue Panchenko did not previously experience, as well as Panchenko's stress, anxiety, fear, lack of appetite. [Fact 11].

Thus, Comenity's Motion should be denied because Comenity is free to disagree with Panchenko's contentions as to causation of his damages, however, only the jury can resolve this issue.

**4.** **A triable issue of fact exists with regard to the willfulness of Comenity's FCRA violation.**

"The FCRA also permits an award of punitive damages" against any person who willfully fails to comply with the FCRA. *Ramirez v. Trans Union LLC*, 951 F.3d 1008, 1035 (9th Cir. 2020) citing 15 U.S.C. § 1681n(a)(2). "A defendant willfully violates the FCRA when it acts in a manner 'known to violate' the FCRA or acts in 'reckless disregard of statutory duty.'" *Stafford*, 2022 U.S. Dist. LEXIS 144456, at *17. "A defendant acts in reckless disregard if its action 'is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Id*. citing *Bateman v. American Multi-Cinema*, 623 F.3d 708, 711 n.1 (9th Cir. 2010).

"Generally, Courts have held that willfulness under the FCRA is a fact issue for the jury." *Adan*, 2018 U.S. Dist. LEXIS 8365, at *20 citing to *Taylor*, 207 F. Supp. 3d at 1112 (citing cases); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197,

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

1210 (C.D. Cal. 2007) (willfulness under FCRA is a fact question for the jury) (citing *Guimond*, 45 F.3d at 1333 ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.'); *Lenox v. Equifax Info. Servs. LLC*, No. 05-cv-01501-AA, 2007 U.S. Dist. LEXIS 34453, at *6 (D. Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact.'"); *Cairns v. GMAC Mortgage Corp.*, No. CV04-01840 PHX SMM, 2007 U.S. Dist. LEXIS 16689, at *8 (D. Ariz. Mar. 5, 2007) ("in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine.'"); and, *Petras*, 2022 U.S. Dist. LEXIS 30984, at *20-22 (same).

Here, Panchenko has presented compelling evidence and argument establishing that Comenity willfully violated the FCRA and CCCRAA as a matter of law. Most notably, Comenity's brazen corporate policy of refusing to review documents submitted by consumers in support of their disputes is not only indefensible—it is punitive in nature and demands accountability.

As detailed above, Comenity dismissed Panchenko's disputes based solely on internal notes compared to third-party vendors, like Accurint, without understanding how Accurint gathered its information. Comenity's EASE Notes, which document its findings, rejected his disputes because the fraudulent address utilized to open the account was also on Accurint; payments were made on the account. [Dkt. 134-6; 134-8; 134-11; 134-13; 134-15; 134-17; 139-19; 134-21].

Yet had Comenity conducted even a cursory review of Panchenko's written submissions, it would have immediately recognized that every purported reason for rejecting his disputes was demonstrably false. Critically, Panchenko was not even

present in the United States when the account was opened or when the in-person charges were incurred. [Compare Dkt. 134-18, Comenity 57; Dkt. 134-2, Comenity 190–191.] Panchenko provided travel records confirming this fact. [*Id.*, Comenity 59–75.]

He also submitted a police report—Case Number 23-03129—and contact details for the relevant law enforcement agency. Officer Poirier, with approval from Officer Evan Crowl, unequivocally confirmed Panchenko was a victim of identity theft. [Comenity 93.] Furthermore, Panchenko submitted his disputes under penalty of perjury to both the Mountain View Police Department and the Federal Trade Commission. [Dkt. 134-18, Comenity 98.]

In addition to these materials, Comenity's own internal records independently should have raised alarm. The voice recordings of the individual purporting to be Oleksandr Panchenko in 2017 and 2018 are audibly distinct from Panchenko's 2023 telephonic disputes. [Compare Additional Fact 5 to Additional Fact 26] These recordings fully support Panchenko's position: a different individual opened and used the account for years prior to Panchenko's return to the United States in 2023.

Yet Comenity recklessly disregarded both the information within Panchenko's disputes and red flags in its own records. This utter failure to investigate constitutes, at minimum, a factual question for the jury on willfulness, and more appropriately, a clear willful violation of the FCRA warranting punitive damages.

Accordingly, Comenity's Motion as to willfulness should be denied. *See Martinez v. Am. Express Nat'l Bank*, No. CV 21-8130-DMG (MAAx), 2022 U.S. Dist. LEXIS 199019, at *15–16 (C.D. Cal. Nov. 1, 2022), citing *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020) (denying summary judgment where factual disputes existed as to willfulness of FCRA violation). *See also*

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*Shoraka*, 2023 U.S. Dist. LEXIS 224493, at \*21 (Denying furnisher's Summary Judgment on willfulness claim).

### B. A Triable Issue Of Fact Exists With Regard To Panchenko's CCCRAA Claims.

To prevail on a CCCRAA claim, the plaintiff "must prove that (1) Defendant is a 'person' under the CCCRAA, (2) Defendant reported information to a [Credit Reporting Agency]; (3) the information reported was inaccurate; (4) Plaintiff was harmed; and, (5) Defendant knew or should have known that the information was inaccurate." *Sanchez*, 2019 U.S. Dist. LEXIS 106892, at \*13 citing *Robbins*, 2017 U.S. Dist. LEXIS 209367, at \*38; and, Cal. Civ. Code § 1785.25(a). "'Unlike the [FCRA], the [CCCRAA] does not require that an agency notify the furnisher about disputed reports before a consumer gains a private right of action.'" *Robbins*, 2017 U.S. Dist. LEXIS 209367, at \*38 citing *Reagan v. Am. Home Mortg. Servicing Inc.*, 2011 U.S. Dist. LEXIS 58293, at \*3 (N.D. Cal. May 31, 2011).

Here, Comenity seeks dismissal of Panchenko's CCCRAA claims asserting it stopped furnishing information about Panchenko prior to receiving his disputes and could not have known it previously submitted inaccurate information in 2019. [Motion, 17:10-22]. It bypasses however that Comenity repeatedly submitted information it knew or should have known was inaccurate in 2023 when Comenity rejected Panchenko's disputes. Said submissions occurred on May 18, 2023 (Dkt. 134-5); May 20, 2023 (Dkt. 134-7); July 5, 2023 (Dkt. 134-10); July 18, 2023 (Dkt. 134-9); August 21, 2023 (Dkt. 134-20). Thus, Comenity's Motion as to the CCCRAA should be denied since it submitted inaccurate information to the credit bureaus on five separate occasions following receipt of Panchenko's disputes.

## C. A TRIABLE ISSUE OF FACT EXISTS WITH REGARD TO PANCHENKO'S CITA CLAIMS.

"California's Identity Theft Act allows a 'victim of identity theft' to bring an action for damages, civil penalty, and injunctive relief against a 'claimant.'" *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1092 (9th Cir. 2008); *see also* Cal. Civ. Code § 1798.93(a)-(c); and, *Ma v. Target Corp.*, 2018 U.S. Dist. LEXIS 128902, *12 (C.D. Cal. July 30, 2018) ("CITA provides victims of identity theft recourse against companies who demand that the victim pay for debts incurred by identity thieves.").

In addition, the term "claimant" is defined as "a person who has or purports to have a claim for money or an interest in connection with a transaction procured through identity theft." *Soria*, 2019 U.S. Dist. LEXIS 70068, at *30-31 citing to *Satey*, 521 F.3d 1087, 1092 (9th Cir. 2008); and, Cal. Civ. Code Cal. Civ. Code § 1798.93(a). "[M]erely suspending collection activities does not defeat 'claimant' status" where there is "no evidence that [the claimant] sold its interest or other divested itself of the right to collect on the claim… [f]ailing to pursue a debt is not equivalent to selling a debt to a third party…*Satey* is inapposite." *Martirosian v. JPMorgan Chase Bank, N.A.*, No. CV13-2987 RGK (RZx), 2014 U.S. Dist. LEXIS 200629, at *7-8 (C.D. Cal. Apr. 11, 2014). *See also Peters v. Bank of Am. Corp.*, No. CV13-1104 PSG (OPx), 2013 U.S. Dist. LEXIS 198772, at *6 (C.D. Cal. Aug. 1, 2013) (finding of "claimant" where no collection activity occurred yet bank still maintained an interest in the debt).

Comenity's reliance on *Satey* is fundamentally misplaced. The Ninth Circuit in *Satey* did not address whether Chase reported the fraudulent account to any credit reporting agencies. Rather, the Court simply held that Chase ceased being a "claimant" once it sold off its interest in the fraudulent debt and no longer possessed

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

"a claim for money or an interest in property in connection with a transaction procured through identity theft." *Satey*, 521 F.3d at 1093. That narrow holding has no bearing here.

Instead, Panchenko's claims align squarely with the Ninth Circuit's decision in *Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561 (9th Cir. 2017). In *Kim*, BMW sought judgment as a matter of law after a jury awarded the plaintiff $250,000 under the FCRA, $150,000 under CITA, and a $30,000 civil penalty. BMW argued that it was not liable under CITA because it had not engaged in any active collection efforts after litigation began, and therefore had not "continued to pursue its claim" under the statute. *Id.* at 563. The Ninth Circuit rejected that argument, holding that BMW's act of maintaining a derogatory tradeline at the time the lawsuit was filed constituted pursuit of a claim. The Court emphasized: "BMW [] listed the derogatory trade line at issue at the time the action was commenced. BMW [] presents no authority that maintaining such a derogatory credit line was not pursuit of a claim under [CITA]." *Id.*

Here, Comenity likewise reported and maintained a derogatory tradeline on Panchenko's credit reports at the time this lawsuit was initiated. [Dkt. 135-16]. As in *Kim*, Comenity continued to pursue its claim through negative credit reporting—conduct the Ninth Circuit has expressly recognized as falling within the scope of CITA. Accordingly, Comenity's argument that it was not a "claimant" must be rejected. *Kim* controls, and the facts here are directly analogous.

**LOKER LAW, APC**
**132 BRIDGE STREET**
**ARROYO GRANDE, CA 93420**

## IV.    CONCLUSION

For the reasons discussed herein, Panchenko requests this Court deny Comenity's Motion in its entirety.

Date: July 9, 2025

**LOKER LAW, APC**

By:    ___/s/ Matthew M. Loker___
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

A copy of the foregoing *Plaintiff Oleksandr Panchenko's Opposition to Defendant Comenity Bank's Motion for Summary Judgment* has been filed via CM/ECF on July 9, 2025.

___/s/ Matthew M. Loker___
MATTHEW M LOKER, ESQ

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420