UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEKSANDR PANCHENKO,<br><br>    Plaintiff,<br><br>  v.<br><br>COMENITY CAPITAL BANK,<br><br>    Defendant. | Case No. 23-cv-04965-EKL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 133 |

Plaintiff Oleksandr Panchenko claims that an identity thief used his personal information to open fraudulent credit card accounts – including one underwritten by Comenity Capital Bank ("Comenity"). The thief ran up a debt under Panchenko's name, and Comenity reported the debt to the three major credit reporting agencies. When Panchenko moved to the United States in April 2023 after leaving his home in Ukraine, he discovered that the debt (among others) severely damaged his credit score. He vigorously disputed the debt, and when those efforts failed, he brought this action under the Fair Credit Reporting Act and other consumer protection laws.

Before the Court is Comenity's motion for summary judgment. The Court reviewed the parties' briefs and relevant authority and heard argument on August 13, 2025. For the following reasons, Comenity's motion is GRANTED in part and DENIED in part.

I.   **BACKGROUND**

Panchenko is a citizen of Ukraine. Panchenko Dep. Tr. 25:25-26:1, ECF No. 139-9. He originally traveled to the United States and worked here during the summers of 2009 and 2010. *Id.* 37:5-13. In connection with his prior work, Panchenko obtained a Social Security number. *Id.* 39:15-19. However, since 2010, Panchenko only visited the United States occasionally, and did not live here until recently.

On December 21, 2015, a Virgin America branded credit card account was opened under Panchenko's name. Ford Decl. ¶ 5, ECF No. 134. The online application used Panchenko's name and Social Security number and a Los Angeles address. *See* Ford Decl. Ex. A, ECF No. 134-1. Comenity's system flagged that one "potential duplicate" credit application had been submitted under the same address, but that application was associated with a different name. *Id*. at COMENITY-00160.

"From December 21, 2015, to January 4, 2018, the Account was open, purchase transactions occurred, and payments [were] made to Comenity." Ford Decl. ¶¶ 6-7 ("[A]t least 21 payments were made on the Account."). On January 4, 2018, Comenity closed the account "because the Virgin America branded credit card program with Comenity was terminated." *Id*. ¶ 8. At the time the account was closed, its balance "was approximately $4,500.63, the credit limit was $15,000.00 and the available credit for spending . . . was approximately $10,499.37." *Id*. The account statements from 2018 reflect several large purchases, and $249 in late fees had accrued. Ford Decl. Ex. B at 1, 28-29, ECF No. 134-2 (reflecting charges for purchases of $600, $411.92, and $401.94). On February 25, 2019, Comenity sold the account. Ford Decl. ¶ 10. "Comenity stopped furnishing information relating to the credit card account to the credit reporting agencies on March 2, 2019." *Id*.

Panchenko moved to the United States with his wife in April 2023. Panchenko Dep. Tr. 37:3-4. In May 2023, Panchenko checked his credit report for the first time and was shocked to learn about the Comenity account and other derogatory entries on his report. *Id*. 54:15-56:8. Panchenko promptly disputed the Comenity account with the credit reporting agencies Equifax, Experian, and TransUnion. From May 12, 2023 through August 19, 2023, Comenity received nine Automated Credit Dispute Verification requests ("ACDVs") from the agencies. Ford Decl. ¶¶ 13-21. Eight of the ACDVs included a dispute code "103," which informs data furnishers like Comenity that the consumer claims identity theft or that the account was opened fraudulently. Ford Dep. (3/10/25) Tr. 37:12-23, 134:4-11, ECF No. 139-25; *see also* Ford Decl. ¶¶ 13-21 (ACDVs noting: "Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID.").

1       One ACDV dated August 18, 2023 "had images attached including a police report from the Mountain View Police Department" – which was partially redacted – and a Federal Trade Commission identity theft report. Ford Decl. ¶ 20. This ACDV also included a timeline of Panchenko's visits to the United States, images of his passport and visas, statements from his bank in Ukraine, and a then-recent utility statement reflecting his address in Mountain View, California – which differed from the address associated with the Comenity account. *See* Ford Decl. Ex. R, ECF No. 134-18. In addition to the ACDVs, Comenity also received a letter directly from Panchenko on July 6, 2023, disputing the account. Ford Decl. ¶ 22. This letter attached the FTC identity theft report that was also included with the August 18, 2023 ACDV. *See* Ford Decl. Ex. V, ECF No. 134-22. Panchenko explained that he believes the identity theft resulted from an Equifax data breach. Ford Decl. Ex. R at COMENITY-00057, -00095.

  In response to the ACDVs, Comenity reviewed certain details associated with the account, including the "consumer's name, address, date of birth and Social Security number on [the] account application and VCARS [Comenity's data system]." Ford Decl. ¶ 11. Comenity also reviewed "the account number, credit information, credit limit and payment history, bank information, account purchase history, length of account, . . . email addresses and third-party data sources including Accurint and Ekata." *Id.*; *see also* Ulzheimer Report at 17, ECF No. 137-1 (summarizing Comenity's investigation). The adequacy of Comenity's investigation is discussed further below. *See infra* Section III.B.2.

  In response to each ACDV, Comenity concluded that Panchenko was responsible for the account and confirmed this finding to the credit reporting agencies. *See* Ford Decl. Exs. E, G, I, J, L, N, P, R, T. In reaching this conclusion, Comenity focused on the "2 years of account tenure, years of successful payments to Comenity, account statements mailed successfully to accountholder, small dollar transactions, available credit limit at time of account closure, many years between account usage to claims of fraud, and customer's concern for penalties, late fees and credit reporting implications." Ford Decl. ¶ 12. During this litigation, Comenity submitted a request to the credit reporting agencies to delete the data for the Comenity account. *Id.* ¶ 24.

Panchenko asserts four causes of action for violations of: (1) the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"); (2) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"); (3) the California Identity Theft Act, Cal. Civ. Code §§ 1798.92-1798.97 ("CITA"); and (4) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1 *et seq* ("CCCRAA"). Compl. ¶¶ 87-106, ECF No. 1.

## II.  LEGAL STANDARD

A court may grant summary judgment on any issue, claim, or defense if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in different ways depending on whether it has the burden of proof at trial. If the moving party bears the burden of proof at trial, it must cite to "particular parts of materials in the record" to demonstrate that no reasonable trier of fact could find for the non-moving party. Fed. R. Civ. P. 56(c)(1)(A). By contrast, if the non-moving party bears the burden of proof at trial, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has met its burden, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine dispute. *Celotex*, 477 U.S. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to survive summary judgment. *Anderson*, 477 U.S. at 252. Instead, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id*.

In determining whether there is a genuine dispute of material fact, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The court does not "engage in credibility determinations or weigh evidence." *Munden v. Stewart Tit. Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also* Fed. R. Civ. P. 56(c)(3).

At summary judgment, the focus is not "on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). An affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. DISCUSSION

Comenity moves for summary judgment on all of Panchenko's claims. Mot. for Summ. J., ECF No. 133. The Court addresses each claim in turn.

#### A. FDCPA

The FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). A threshold requirement for Panchenko's FDCPA claim is that Comenity must be a "debt collector." *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013). Under the FDCPA, a "debt collector" is: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* (quoting 15 U.S.C. § 1692a(6)); *see also*

5

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 87-88 (2017) (explaining that the second definition requires the defendant "to attempt to collect debts owed another").

Comenity is entitled to summary judgment on the FDCPA claim. The undisputed evidence reflects that it is not a "debt collector" for purposes of this case. The first definition does not apply because "Comenity is a bank" and its "principal business is to issue credit cards and offer other financial products like personal loans and savings accounts." Ford Decl. ¶ 3. The second definition does not apply because, although "Comenity does make efforts to recover its own unpaid accounts," it "does not regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id*. The undisputed evidence reflects that Comenity did not attempt to collect on Panchenko's debt after it was sold to a third-party in February 2019. *Id.* ¶ 10; *see also Gryglak v. HSBC Bank USA, N.A.*, 2023 WL 3243998, at *3-4 (9th Cir. May 4, 2023) (holding that a defendant's attempts to collect debts owed to itself do not meet the second definition).

In his opposition, Panchenko did not oppose Comenity's motion as to this claim. Rather, he clarified that the "reference to the FDCPA in the Complaint was intended to apply to third-party debt collector, Cavalry Portfolio Services, LLC, not Comenity."[1] ECF No. 139-35 at 1 n.1. Comenity asks the Court to issue an order to show cause why Panchenko should not be sanctioned for failing to withdraw this claim earlier. *See* Reply at 2-4, ECF No. 144. If Comenity is seeking Rule 11 sanctions, it should have served a Rule 11 motion on Panchenko, providing him 21 days to address the issue, before presenting the request to the Court. *See* Fed. R. Civ. P. 11(c)(2). The Court declines to issue an order to show cause, but admonishes Panchenko's counsel to comply with their Rule 11 obligations and to avoid wasteful litigation on irrelevant claims.

**B. FCRA**

"FCRA regulates how furnishers [of credit information] must respond to a notice of dispute from a credit reporting agency." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022). If a furnisher fails to reasonably "investigate and, if necessary, correct the information

---

[1] Cavalry Portfolio Services has already been dismissed from this action pursuant to stipulation. *See* ECF No. 69.

it reports," it may be "liable to the consumer for damages." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1106 (9th Cir. 2012). To survive summary judgment, Panchenko must produce sufficient evidence to demonstrate a triable issue that: (1) Comenity is a "furnisher" of information; (2) Panchenko notified a credit reporting agency that Comenity's reporting is inaccurate; (3) the agency notified Comenity of the alleged inaccurate information; (4) the reporting was in fact inaccurate; and (5) Comenity failed to conduct a reasonable investigation. *See Gross*, 33 F.4th at 1251-53. Additionally, Panchenko must show that there is a triable issue of damages – whether through actual harm or in the form of statutory damages, which are available for willful violations. *Id*. at 1253. Comenity does not presently contest the first three elements.

Comenity contends that it is entitled to summary judgment on Panchenko's FCRA claim because: (1) it did not report inaccurate information; (2) it conducted a reasonable investigation; (3) it did not willfully violate FCRA, and (4) Panchenko has not otherwise produced evidence of damages. For the following reasons, the Court finds that each of these issues turns on genuine disputes of material fact.

### 1. Whether Comenity furnished inaccurate information

"[T]o prevail on a FCRA claim against a furnisher, a consumer must make a prima facie showing that the furnisher's report was inaccurate." *Gross*, 33 F.4th at 1251. "[A]n item on a credit report can be 'incomplete or inaccurate' . . . 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir.2010) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). Relevant here, a "jury may well find that reporting [a] fraudulently opened account" as belonging to the plaintiff is "untrue or facially inaccurate." *Drew*, 690 F.3d at 1108.

Panchenko has produced evidence to support that he did not open the Comenity account, and that he is a victim of identity theft. *See* Panchenko Decl. ¶¶ 4-6, ECF No. 141; *see also* Panchenko Dep. Tr. 234:13 -236:2. In his declaration, Panchenko states that he has never opened any account with Comenity, nor has he authorized anyone to do so on his behalf. Panchenko Decl. ¶¶ 5-6. He also states that the application used to open the account contains an address and

7

1  telephone number that do not belong to him. *Id*. ¶¶ 56-57.  He does not recognize any of the

2  transactions on the account.  Panchenko Dep. Tr. 237:01-239:03.  If the Comenity account was

3  opened without Panchenko's authorization, it would be inaccurate for Comenity to report the

4  account and associated debt as belonging to Panchenko.  *Drew*, 690 F.3d at 1108.[2]

5        Comenity argues that it did not report inaccurate information because "there were no

6  'objectively and readily verifiable' facts to demonstrate Plaintiff was not responsible for the

7  account."  Mot. at 7 (quoting *Holden v. Holiday Inn Club Vacations Inc*., 98 F.4th 1359, 1368

8  (11th Cir. 2024)).  This argument fails for two reasons.

9        First, Comenity misconstrues the reasoning of *Holden*, its only legal support for this

10 argument.  *Holden* involved a legal dispute regarding whether the plaintiffs were responsible for a

11 debt, and the answer turned on unsettled law.  The plaintiffs "entered into purchase agreements for

12 timeshares," then "stopped making monthly payments and considered their agreements to be

13 canceled" based on a default provision in the contract.  *Id.* at 1363.  The defendant "disagreed and

14 reported their debts to Experian."  *Id*.  Courts that reviewed similar timeshare agreements reached

15 "conflicting conclusions about whether the default provisions excused a consumer's obligation to

16 keep paying."  *Id*. at 1368.  Thus, the Eleventh Circuit held that it was not inaccurate to report the

17 debts because the plaintiff's legal obligation to pay was not "objectively and readily verifiable

18 because it stems from a contractual dispute without a straightforward answer."  *Id*.  But here, the

19 relevant question is whether Panchenko or some other person opened the account with Comenity.

20 This is not a legal dispute, but rather a factual question that Comenity is well-situated to answer.

21 *See Carvalho*, 629 F.3d at 888 ("[A] consumer disputing the legal validity of a debt that appears

22 on her credit report should first attempt to resolve the matter directly with the creditor or

---

[2] Comenity relies on *Milgram v. Chase Bank USA, N.A*., but that case involved materially different facts.  72 F.4th 1212 (11th Cir. 2023) (per curiam).  The plaintiff's employee opened a Chase credit card under the plaintiff's name, "ran up tens of thousands of dollars in debt," then "illegally accessed [plaintiff's] bank accounts and used them to partially pay off the monthly statements." *Id*. at 1214.  Chase concluded that, because the plaintiff's bank accounts consistently paid for the charges, the employee had "apparent authority" to incur those charges on plaintiff's behalf.  *Id*. Here, there is no evidence that the payments on the Comenity account were made using Panchenko's bank accounts.

furnisher[.]").[3]

Second, there is a genuine dispute of fact as to whether there was "objectively and readily verifiable" information that could help resolve whether Panchenko opened and used the account. As discussed below, Comenity possessed recordings of calls from 2017 and 2018 in which the account user paid (or declined to pay) monthly statements. *See* Loker Decl. Exs. 13-21, ECF Nos. 139-14 to -23.[4] Comenity could have compared these recordings to recordings of calls with Panchenko in 2023. *See* Panchenko Decl. Exs. 1-5, ECF Nos. 139-1 to -5. The voice in the 2017 and 2018 calls is deeper and has a different accent from Panchenko's voice – and, curiously, pronounces the name "Oleksandr Panchenko" different than Panchenko pronounces it himself. But Comenity did not review this information when it investigated Panchenko's disputes.

In sum, Panchenko has produced sufficient evidence to create a genuine dispute of material fact as to whether Comenity furnished inaccurate information to the credit reporting agencies.

### 2.     Whether Comenity conducted a reasonable investigation

"When a consumer disputes an entry on his credit report, the furnisher must conduct a reasonable investigation – not merely rubberstamp information in the file." *Gross*, 33 F.4th at 1249. A reasonable investigation "requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Gorman*, 584 F.3d at 1155. In any particular case, the reasonableness of an investigation may depend on "the furnisher's relationship to the debt and to the consumer; the level of detail in the credit reporting agency's notice of dispute; and the feasibility of implementing investigatory procedures, including training staff." *Gross*, 33 F.4th at 1253. "Unless 'only one conclusion about the conduct's reasonableness is possible,' the question is normally inappropriate for resolution at the summary judgment stage." *Id.* (quoting *Gorman*, 584 F.3d at 1157).

---

[3] At the motion hearing, Comenity cited *Roberts v. Carter-Young, Inc.*, 131 F.4th 241 (4th Cir. 2025). But in *Roberts*, the plaintiff alleged that the debtor engaged in fraud and retaliation in reporting a disputed debt. *Id.* at 248, 251. *Roberts* did not address whether a consumer's claim of identity theft, like the one in this case, is "objectively and readily verifiable."

[4] These recordings are available at *Panchenko v. Bank of America Recordings*, https://loker.filev.io/r/s/d2e3pvw6is40agmwtpGOOJy1moOACjpz5IkRmeHwuBpV2ksQyIrvQbLH [https://perma.cc/G5KL-RGXV].

Here, Panchenko has presented several genuine disputes as to whether Comenity conducted a reasonable investigation, thus precluding summary judgment.

First, as noted above, Comenity possessed several call recordings from the account user in 2017 and 2018, which it could have compared against Panchenko's voice. Sierra Ford, who Comenity designated as its person most knowledgeable about its policies and procedures, testified that "one of the critical procedures that [Comenity] leverage[s] when doing an investigation" is to review various internal materials, including "any phone calls . . . if they're available." Ford Dep. (3/10/25) Tr. 135:20-137:3; *see also id*. 78:16-79:7 (testifying that Comenity's fraud dispute agents are "trained to leverage [Comenity's] applications to review any call reporting to aid in their investigation"). Here, the 2017 and 2018 call recordings were available, but it appears that none of the Comenity agents who addressed Panchenko's disputes listened to them. *See id*. 79:2-7, 138:11-15. To prepare for her deposition, Ford listened to the 2017 and 2018 calls, as well as Panchenko's calls from 2023, and could not say "if they were the same person or a different person." *Id*. 155:11-15; Ford Dep. (4/10/25) Tr. 11:22-25, ECF No. 139-25. A jury could find that Comenity failed to conduct a reasonable investigation because its agents did not review available information, which was inconsistent with Comenity's procedures.[5]

Second, the Comenity agent who handled Panchenko's August 18, 2023 ACDV testified that she did not review the documents that he provided with his dispute – including the police report and FTC identity theft report – which appears to be inconsistent with Comenity's procedures. Ford testified that if a Comenity agent receives an ACDV with images (*i.e.*, documents provided by the consumer), Comenity's procedure requires the agent to "review all of the images and see if there's any information in there that would help [Comenity] determine fraud did or did not occur on the account." Ford Dep. (4/10/25) Tr. 65:5-23. But here, the agent testified: "To be honest when I process[ed] this case, we were not checking the images which are

---

[5] At the motion hearing, Comenity argued that the Court was adopting a requirement under FCRA that every call recording must be reviewed. To be clear, the Court is not holding that a furnisher must always review every call recording to conduct a reasonable investigation. Rather, the Court finds that, under the facts of this case, Comenity's failure to review *any* of the available call recordings creates a genuine dispute as to the reasonableness of is investigation, particularly because Comenity potentially violated its own procedures.

10

provided by the customer." Banu Dep. Tr. 24:16-24, 25:7-9, 31:3-11, ECF No. 139-24; Ford Dep. (3/10/25) Tr. 103:15-104:12 (acknowledging that the agent "did not document that she reviewed" these documents). The agent agreed, however, that information Panchenko provided would have helped her investigation if she had reviewed it.[6] Banu Dep. Tr. 53:13-20, 61:2-64:12; *cf. Milgram*, 72 F.4th at 1221 (finding investigation reasonable where plaintiff failed to identify "facts the furnisher could have uncovered" to establish inaccuracy). This is another basis on which a jury could find that Comenity failed to conduct a reasonable investigation.

The record reflects other potential deficiencies in Comenity's response to Panchenko's disputes. For example, when Panchenko called Comenity on August 7, 2023, an agent told him that Comenity could not investigate further because it had already addressed two of Panchenko's prior disputes. Panchenko Decl. Ex. 5, ECF No. 139-6. Ford testified that the agent's response was inconsistent with Comenity's policy: "We have a reinvestigation procedure in which we can provide the consumer with the option to provide us new information. . . . So I feel the agent could have provided the option to provide any new information that would further support the case, and we would have taken additional review of the claim of identity theft." Ford. Dep. Tr. 153:2-154:3. Further, it appears that Comenity did not investigate certain details from the credit application associated with the disputed account. The application was flagged as a potential duplicate based on another application submitted under the same address, but with a different name. *See* Ford Dep. (4/10/25) Tr. 32:2-33:17. Finally, the address used for the account application was associated with a newspaper facility – not a residential address. *See* Shashidhar Dep Tr. 24:7-15, ECF No. 139-34 ("Q. Next to the yellow flag, it says newspaper facility. Do you see that? A. Yes. Q. Why does it say newspaper facility? A. I don't know. Q. Aside from this entry that we have a screenshot of, have you ever seen anything else say newspaper facility? A. No.").

For these reasons, Panchenko has produced sufficient evidence to create a genuine dispute of material fact as to whether Comenity conducted a reasonable investigation.

---

[6] Other Comenity analysts who handled some of Panchenko's disputes testified that they do not substantively review documents provided by the consumer, nor do they listen to call recordings. *See* Golpinath Dep. Tr. 32:13-19, 41:10-19, ECF No. 139-26; Kadaresh Dep. Tr. 18:6-19:14, 27:24-29:7, ECF No. 139-29; Shanmugam Dep. Tr. 37:19-25, 43:16-44:12, ECF No. 139-33.

### 3. Whether Comenity willfully violated FCRA

"Statutory and punitive damages are available under the FCRA only where a defendant 'willfully fails to comply' with the statute." *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (quoting 15 U.S.C. § 16811n(a)). "A willful violation of the FCRA occurs where a defendant knowingly or recklessly violated the FCRA." *Shaw v. Experian Info. Solutions Inc.*, 891 F.3d 749, 760 (9th Cir. 2018); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007) ("[R]eckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)."). Like reasonableness, "[w]illfulness under the FCRA is generally a question of fact for the jury." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Here, Panchenko has produced evidence that Comenity's agents knowingly did not review important information – in particular, documents that he provided with his dispute. *See supra* Section III.B.2. Additionally, although Comenity encouraged agents to review disputes accurately, it also set targets for its agents to review 32 to 36 disputes each eight-hour workday. *See* Banu Dep. Tr. 35:19-36:15. As a result, an agent might routinely spend an average of just 15 to 20 minutes on each dispute. *See* Shanmugam Dep. Tr. 22:14-23:4. This evidence is sufficient to create a genuine dispute of material fact as to willfulness.

### 4. Whether Panchenko produced evidence of damages

The FCRA provides "recovery for emotional distress and humiliation," as well as other compensatory damages. *Guimond*, 45 F.3d at 1333; *see also Drew*, 690 F.3d at 1109.

Panchenko has presented sufficient evidence to create a genuine dispute of material fact that he suffered emotional distress and mental anguish due to Comenity's alleged FCRA violations. Panchenko states that he "experienced the physical symptoms typically associated with anxiety, frustration, stress, lack of sleep, nervousness, anger, and embarrassment." Panchenko Decl. Ex. 7 at 6, ECF No. 139-8. Panchenko's dispute with Comenity happened just one month after he moved to the United States, during a time of great uncertainty due to the war in Ukraine, his home country. *See* Panchenko Dep. Tr. 159:4-161:24. He states that the impact on his mental health was significant: "The constant stress and anxiety led to difficulty eating and sleeping,

12

disrupting my daily life and wellbeing. I found myself trapped in a cycle of panic attacks, plagued by intrusive thoughts that hindered my ability to concentrate or make decisions." Panchenko Decl. Ex. 7 at 7; *see also* Panchenko Dep. Tr. 136:12-137:10 (testifying regarding his stress and panic attacks), *id*. 223:16-224:8 (testifying that he experienced headaches every day). Panchenko's wife similarly testified that Panchenko was so nervous that he could not eat, and she had to remind him to do so. Odeianenko Dep. Tr. 86:24-87:4, ECF No. 139-30.

Panchenko also presents evidence that he suffered adverse credit consequences due to Comenity's reporting, including a denial of credit for an Apple credit card. Comenity argues that it "was not responsible" because Panchenko's credit report reflected other delinquencies, too. This argument presents a genuine dispute of fact for the jury to decide.[7] *Gross*, 33 F.4th at 1253 (rejecting argument that plaintiff's "financial issues were caused by entries made by others on his credit report" because the "causation issue is quintessentially one for the jury").

C.   **CCCRAA**

The CCCRAA provides that: "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know that the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). In determining whether information is inaccurate, courts apply the same standard that applies to FCRA claims. *Carvalho*, 629 F.3d at 890-91.

Comenity argues that it did not know or have reason to know that it was reporting inaccurate information from December 21, 2015, through March 2, 2019, when it sold the account and stopped furnishing information to the credit reporting agencies. Ford Decl. ¶ 10. The Court agrees that Panchenko did not produce any evidence that Comenity knew, or should have known, that the account was fraudulent before Panchenko alerted Comenity to the alleged identity theft in 2023. In his opposition, Panchenko clarifies that his CCCRAA claim is not premised on

---

[7] Panchenko produced evidence of other damages, too. For example, he states that the credit dispute process was time intensive and "interfered with [his] ability to look for a job." Panchenko Decl. ¶¶ 38, 41; *see also* Panchenko Dep. Tr. 138:14-139:11, 147:24-148:20. However, because Panchenko has produced sufficient evidence to support that he suffered emotional distress from Comenity's conduct, the Court need not address whether there is a genuine dispute of fact with respect to Panchenko's other claimed damages. *Drew*, 690 F.3d at 1109.

1  information Comenity furnished from 2015 through 2019.  Rather, Panchenko argues that

2  Comenity "submitted inaccurate information to the credit bureaus on five separate occasions

3  following receipt of Panchenko's disputes" in 2023.  Opp. at 23, ECF No. 139.  But this theory of

4  liability seeks to hold Comenity liable under the CCCRA for conduct that is regulated by the

5  FCRA – that is, for failing to conduct a reasonable investigation.  Accordingly, Panchenko's

6  CCCRA claim is preempted and Comenity is entitled to summary judgment.  *Carvalho*, 629 F.3d

7  at 888-89.[8]

### D.    CITA

"California's Identity Theft Law allows a 'victim of identity theft' to bring an action for damages, civil penalties, and injunctive relief against a 'claimant to establish that the person is a victim of identity theft in connection with the claimant's claim against that person.'"  *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1092 (9th Cir. 2008) (quoting Cal. Civ. Code § 1798.93(a), (c)).  A "claimant" is "a person who has or purports to have a claim for money or an interest in property in connection with a transaction procured through identity theft." *Id*. (quoting Cal. Civ. Code § 1798.92(a)).  The victim of identity theft must show, among other things, that "the claimant continued to pursue its claim against the victim after the claimant was presented with facts that were later held to entitle the victim to a judgment."  *Id*. (quoting Cal. Civ. Code § 1798.93(c)(6)).

Comenity argues that it is not a "claimant" under the CITA because it is a former owner of the account.  Mot. at 16-17.  Comenity is correct that, under the CITA, the definition of "claimant" does not include "a person who had an interest in a disputed debt at some point in the past, but who no longer retains the interest at the time suit is filed."  *Satey*, 521 F.3d at 1093.  "If, as happened here, a 'claimant' sells the disputed debt to another entity, and the victim of identity theft has not yet filed suit, the victim of identity theft may no longer sue the former 'claimant'

---

[8] At the motion hearing, Panchenko argued that his CCCRAA claim is not preempted because it is brought under California Civil Code § 1785.25(a).  Panchenko is correct that claims under § 1785.25(a) are not preempted by FCRA.  *Carvalho*, 629 F.3d at 888.  But even though Panchenko's claim is styled as a § 1785.25(a) claim, in substance, he is asserting that Comenity conducted an inadequate investigation under § 1785.25(f).  That claim is preempted.  *Id*. at 888-89.

14

under California's Identity Theft Law." *Id.* Here, the undisputed facts reflect that Comenity sold the account to a third party in February 2019 – years before this case was filed in 2023 – and Comenity has never asserted a claim against Panchenko since then. Ford Decl. ¶ 10. Accordingly, there is no genuine dispute of material fact as to Panchenko's CITA claim, and Comenity is entitled to summary judgment.[9]

### IV.     CONCLUSION

For the foregoing reasons, Comenity's motion for summary judgment is GRANTED as to the FDCPA, CCCRAA, and CITA claims (Counts 1, 3, and 4), and DENIED as to the FCRA claim (Count 2).

**IT IS SO ORDERED.**

Dated: August 13, 2025

_____
Eumi K. Lee
United States District Judge

---

[9] Panchenko argues that Comenity still had a "claim" against him when he filed this action because it "maintained a derogatory tradeline on Panchenko's credit reports" at that time. Opp. at 25 (citing *Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561, 563-64 (9th Cir. 2017)). Panchenko cites *Kim* for the proposition that listing a derogatory tradeline may constitute "pursuit of a claim" under the CITA. *Kim*, 702 App'x at 563. But *Kim* does not address, let alone undermine, the rule in *Satey* that bars CITA claims against former claimants, like Comenity here. *Satey*, 521 F.3d at 1093.