Tomio B. Narita (SBN 156576)
Tomio.Narita@wbd-us.com
Nathan A. Searles (SBN 234315)
Nathan.Searles@wbd-us.com
Alisa A. Givental (SBN 273551)
Alisa.Givental@wbd-us.com
Kristina B. Hovsepyan (SBN 340674)
Kristina.Hovsepyan@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, California 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530

Attorneys for Defendant
Comenity Capital Bank

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEKSANDR PANCHENKO,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., et al.<br><br>Defendants. | CASE NO.: 5:23-cv-04965-EKL<br><br>**DEFENDANT COMENITY CAPITAL BANK'S BRIEF IN SUPPORT OF DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 32** |

Pursuant to the Court's direction at the October 8, 2025 Pretrial Conference, Defendant Comenity Capital Bank ("Comenity") submits this brief in support of its Proposed Jury Instruction No. 32, "Meaning Of Inaccuracy," filed at ECF No. 136, pp. 38-39.

Under Ninth Circuit precedent, to establish a violation of section 1681s-2(b) of the Fair Credit Reporting Act, Plaintiff must first establish Comenity furnished "inaccurate" information about him to consumer reporting agencies. *Gross v. CitiMortgage, Inc.,* 33 F.4th 1246, 1251 (9th Cir. 2022) (joining the First Circuit and Eleventh Circuit, and noting: "This order of proof makes sense: if there is no inaccuracy, then the reasonableness of the investigation is not in play."). The Ninth Circuit has held that information can be inaccurate "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (furnisher's failure to report a consumer's dispute of a debt was misleading and thus inaccurate); *Gross*, 33 F.4th at 1252 (reporting debtor was responsible for debt that had been "abolished" by Arizona's anti-deficiency statute was "patently incorrect").

Until recently, courts outside the Ninth Circuit distinguished between disputes that are "legal" in nature versus those that are "factual" in nature. These out of circuit courts held that disputes about the "legal" validity of an obligation do not create an actionable "inaccuracy" because CRAs and furnishers should not be obligated to resolve such disputes.[1]

More recently, however, courts have abandoned the "legal" versus "factual" distinction, focusing instead on whether the disputed information is "objectively and readily verifiable." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 271 (2d Cir. 2023) ("[A] clear line has not been

---

[1] *See, e.g., Chiang v. Verizon New England Inc.,* 595 F.3d 26, 38 (1st Cir. 2010) ("Like CRAs, furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[ ] on questions that can only be resolved by a court of law.' "); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) ("Whether the mortgage is valid turns on questions that can only be resolved by a court of law…. This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation"); *Wright v. Experian Info. Sols., Inc.,* 805 F.3d 1232, 1242 (10th Cir. 2015) ("A reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report."); *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019) ("A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher" under section 1681s-2(b)); *Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020) ("we join the First, Ninth, and Tenth Circuits in holding that a consumer's defense to a debt 'is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA.' ")

drawn between legal and factual inaccuracies in the FCRA context… if a legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports.") (quoting *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567–68 (7th Cir. 2021)); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024) ("in determining whether a claimed inaccuracy is potentially actionable under [§ 1681s-2], a court must determine, *inter alia*, whether the information in dispute is 'objectively and readily verifiable.'"); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 252 (4th Cir. 2025) ("both legal and factual disputes can form the basis of a § 1681s-2(b) claim, so long as they are objectively and readily verifiable"); *Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 288 (5th Cir. 2025) ("the alleged inaccuracy reported by the consumer reporting agency must first be 'sufficiently objectively verifiable' to be actionable under the FCRA").

The Eleventh Circuit recently applied the "objectively and readily verifiable" standard and ruled in favor of a CRA where a plaintiff claimed he was a victim of a fraud scheme. *See Rozov v. Bank of Am., N.A.*, 2025 WL 1620921, at *3 (11th Cir. June 9, 2025) (providing an FBI victim report did not arm defendant with "objectively and readily verifiable" information for resolving fraud claim because defendant "would still need to confirm the veracity of the allegations Plaintiff[] provided to the FBI. And …without simply taking [plaintiff] at his word, his protestations of innocence do not demonstrate that his innocence is objectively and readily verifiable").[2]

While the Ninth Circuit has not had the opportunity to address this question directly,

---

[2] *See also Singletary v. Sunbit Now, LLC*, 2025 WL 2427165, at *11 (E.D. Va. Aug. 22, 2025) (granting furnisher's motion to dismiss: "Determining whether David committed fraud, however, would require Sunbit and TAB to evaluate the subjective nature of David's and Singletary's actions when forming the contract. This defect alone proves fatal to Singletary's § 1681s-2(b) claim."); *Easter v. IC System, Inc.*, 2025 WL 2499096, at *7 (S.D. Ala. Apr. 22, 2025) (granting furnisher's motion for summary judgment despite Plaintiff's evidence that she did not authorize the opening of an account in her name: "Plaintiff's dispute is based largely on her subjective intent, which is not established in Mediacom records.").

there are strong reasons to believe it will embrace the "objectively and readily verifiable" approach along with its sister circuits. As Judge Sherilyn Peace Garnett of the Central District of California recently observed, like many other circuit courts, the Ninth Circuit in *Gross* rejected the "legal" versus "factual" distinction. *Jessica Lee Davis & Corey Dell Davis v. Trans Union, LLC et al ("Davis")*, No. 2:22-CV-05819-SPG-AS, 2025 WL 2851881, at *9 (C.D. Cal. July 22, 2025) (noting *Gross* had concluded the "legal" versus "factual" distinction was "ambiguous, potentially unworkable, and could invite furnishers to evade their investigation obligation by construing the relevant dispute as a legal one." (quoting *Gross,* 33 F.4th at 1250–51).

Because of the "Ninth Circuit's skepticism towards the legal-factual distinction, and in light of the weight of authority from other Circuits," Judge Garnett applied the "'objectively and readily verifiable' test to analyze whether Plaintiffs' claimed inaccuracies are actionable" and she granted summary judgment for a furnisher on a section 1681s-2(b) claim. *Davis*, 2025 WL 2851881, at *9 (citing *Gorman* and *Holden* and *Roberts*: "To determine whether PNC's communications did in fact discharge Plaintiffs' liability, PNC would have been required to engage in 'complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform.'").

The weight of authority from other Circuits is persuasive. It begins with the ordinary meaning of the word "accuracy" – which means "freedom from mistake or error" or "conformity to truth or to some standard or model" and concludes that "[t]his definition requires a focus on objectively and readily verifiable information." *Mader,* 56 F.4th at 269 (citing Webster's Dictionary 13–14 (1971); *Sessa,* 74 F.4th at 42 (citing *Mader,* 56 F.4th at 269); *Holden,* 98 F.4th at 1367 (citing *Webster's Dictionary* (3d ed. 1961)); *Reyes*, 140 F.4th at 288 ("Because 'inaccurate' and 'verified' are not defined in the FCRA, we look to the ordinary meaning of those terms."); *Roberts*, 131 F.4th at 250-51 ("these definitions' reference to 'truth' suggests accuracy involves an objective inquiry").

As the Second Circuit observed in *Mader*, this definition "is consistent with [the Courts'] prior holding[s] requiring that an inaccuracy be 'patently incorrect or ... misleading.'" *Mader,* 56 F.4th at 269 (citing *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021));

*Gorman,* 584 F.3d at 1163 ("a credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading…' ") (citing *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)); *Holden,* 98 F.4th at 1367 (same); *Reyes,* 140 F.4th at 285 ("an item of information is 'inaccurate' within the meaning of the FCRA "either because it is patently incorrect, or because it is misleading…").

Using an "objectively and readily verifiable" standard for inaccuracy is also consistent with courts, like the Ninth Circuit, that have held investigations must be reasonable. "Requiring investigations that resemble full court proceedings would not be reasonable." *Roberts,* 131 F.4th at 251 (citing *Johnson*, 357 F.3d at 430–31 (holding that "creditors ... [must] conduct a reasonable investigation" which involves "some degree of careful inquiry" into "their records to determine whether the disputed information can be verified"); *Gorman*, 584 F.3d at 1155 ("The Fourth Circuit's reasoning in *Johnson* is entirely persuasive.").

As the Fourth Circuit recently explained, use of this standard "makes sense. Furnishers are not tribunals. They have neither the resources nor the expertise to conduct the level of investigation that takes place in judicial proceedings or to make the kinds of determinations about disputes that courts make. But furnishers can investigate disputes about 'objectively and readily verifiable' information." *Roberts*, 131 F.4th at 251 (citing *Mader*, 56 F.4th at 270).[3]

When this Court denied Comenity's motion for summary judgment, it concluded "there is a genuine dispute of fact as to whether there was "objectively and readily verifiable" information that could help resolve whether Panchenko opened and used the account. *See* ECF No. 148, p. 9. Although Comenity respectfully disagrees with the Court's decision to deny the motion, it is apparent that the jury should be instructed on the "objectively and readily verifiable" standard.

For these reasons, the Court should give Comenity's Proposed Jury Instruction No. 32.

---

[3] The *Roberts* Court elaborated: "a dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable… A dispute that …. requires credibility determinations and quasi-discovery isn't either. …Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation." *Roberts,* 131 F.4th at 251

DATED: October 14, 2025		Respectfully submitted,

>	WOMBLE BOND DICKINSON (US) LLP
>	TOMIO B. NARITA
>	NATHAN A. SEARLES
>	ALISA A. GIVENTAL
>	KRISTINA B. HOVSEPYAN
>
>	By:	*/s/ Tomio B. Narita*
>		Tomio B. Narita
>		Attorneys for Defendant
>		Comenity Capital Bank