IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| PANCHENKO, | ) | CV-23-4965-EKL |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | OCTOBER 23, 2025 |
| | ) | |
| BANK OF AMERICA, N.A., ET AL | ) | PAGES 1 - 74 |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EUMI K. LEE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:       LOKER LAW APC
                         132 BRIDGE STREET
                         ARROYO GRANDE, CA 93420
                 BY:   **MATTHEW LOKER**


FOR THE DEFENDANT:       WOMBLE BOND DICKINSON LLP
                         50 CALIFORNIA STREET, STE 2750
                         SAN FRANCISCO, CA 94111
                 BY:   **TOMIO NARITA**
                       **ALISA GIVENTAL**
                       **KRISTINA HOVSEPYAN**
                       **NATHAN SEARLES**


OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CCRR
                             CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

SAN JOSE, CALIFORNIA                    OCTOBER 23, 2025

P R O C E E D I N G S

(COURT CONVENED AT 1:40 P.M.)

THE CLERK:  CALLING CASE 5-23-CV-4965-EKL.  PANCHENKO VERSUS COMENITY CAPITAL BANK, FOR A FURTHER PRETRIAL CONFERENCE.

COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES ON THE RECORD STARTING WITH COUNSEL FOR THE PLAINTIFF.

**MR. LOKER:**  GOOD AFTERNOON, YOUR HONOR.

MATT LOKER FOR THE PLAINTIFF.

**THE COURT:**  GOOD AFTERNOON, MR. LOKER.

**MR. NARITA:**  GOOD AFTERNOON, YOUR HONOR.

TOMIO NARITA HERE FOR THE DEFENDANT.

I HAVE MY TEAM WITH ME, MS. GIVENTAL, MR. SEARLES AND MS. HOVSEPYAN.

**THE COURT:**  ALL RIGHT.  GOOD AFTERNOON, EVERYBODY.

SO WE ARE HERE FOR A FURTHER PRETRIAL CONFERENCE IN THIS MATTER.  WE HAVE A NUMBER OF THINGS OUTSTANDING, AND I HAVE A FEW UPDATES FOR YOU AS WELL.

SO LET'S START WITH THE BIGGEST ITEM WHICH HAS PROBABLY BEEN ON YOUR MINDS WITH THE NEWS HAPPENING AND GOING ON, YOU MAY RECALL THAT DURING OUR LAST PRETRIAL CONFERENCE I INDICATED THAT THE COURT WOULD NOT BE HOLDING CIVIL TRIALS DURING THE TIME PERIOD OF THE SHUTDOWN ONCE THE ADMINISTRATIVE OFFICE OF THE COURTS RAN OUT OF FUNDS.

THERE'S BEEN A SHIFT IN POLICY, AND SO THE CURRENT -- WE HAVE BEEN INFORMED BY THE COURTS THAT THERE WILL BE FUNDING FOR OUR JURORS, SO MY INTENTION IS FOR US TO PROCEED WITH THE TRIAL AS SCHEDULED.

**MR. LOKER:** THANK YOU, YOUR HONOR.

**THE COURT:** SO WITH THAT, WE HAVE A LOT TO DO, BUT ANY QUESTIONS REGARDING THAT MOVING FORWARD IN THE BEGINNING OF NOVEMBER?

**MR. LOKER:** NO, YOUR HONOR.

**MR. NARITA:** NO.

**THE COURT:** ALL RIGHT.

SO I DID RECEIVE THE PARTIES' AGREEMENT AND REQUEST THAT THEY PROVIDE THE MEALS FOR THE JURORS IN ORDER TO ENSURE THEY GET HOME EARLIER, YOU GET HOME OR TO YOUR HOTELS EARLIER, AND SO THAT IS FINE. WE WILL ASSUME THAT COUNSEL CAN COVER -- WILL BE COVERING THE MEALS ON MONDAY, TUESDAY AND WEDNESDAY OF TRIAL.

**MR. NARITA:** JUST MECHANICALLY, YOUR HONOR, I THOUGHT ABOUT THAT. HOW WOULD YOU LIKE US TO HANDLE THE TRANSMISSION OF MONEY? IT WOULD MAKE ME NERVOUS TO WALK TOWARDS ONE OF YOUR CLERKS WITH CASH, BUT HOW DO YOU LIKE US TO DO THAT?

**THE COURT:** I WOULD HAVE YOU ALL ARRANGE IT DIRECTLY, SO YOU ARE ARRANGING THAT WITH CATERER OR FOOD DELIVERER OR DOORDASH OR HOWEVER WE ARE DOING IT. AND IT WOULD JUST BE FOR THE JURORS. I KNOW THERE HAD BEEN AN OFFER FOR THAT TO BE THE

COURT STAFF, IT'S JUST THE JURORS.  WE APPRECIATE THE EFFORT DURING THESE TIMES OR THE OFFER, BUT IT IS BEST THAT THE COURT STAY SEPARATE AND APART, BUT WE APPRECIATE THE OFFER BY COUNSEL.

MR. NARITA:  FANTASTIC.  I WILL SPEAK WITH MR. LOKER, BUT WE WILL ARRANGE TO HAVE THE EIGHT -- BASICALLY EIGHT LUNCHES DELIVERED BEFORE THEY ARE ABOUT TO HAVE THEIR LUNCH BREAK.

THE COURT:  RIGHT.

AND THEN WE WILL COORDINATE WITH ONE OF OUR OTHER LAW CLERKS.  (OFF THE RECORD DISCUSSION.)

MR. NARITA:  THANK YOU.

THE COURT:  AND THE JURY ROOM IS IN THE BACK HALLWAY HERE, SO THERE IS A DOOR AT THE ELEVATOR BANK WHICH THEY CAN MEET IN TERMS OF ENSURING THAT HAPPENS.  THEN ONCE WE BEGIN WITH DELIBERATIONS, THE COURT COVERS THE JUROR MEALS, SO WE WILL BE COVERING LUNCH FOR THE JURORS.  AND SO AFTER WEDNESDAY, IT'S NOT A CONCERN.

MR. LOKER:  OKAY.  AND MAYBE ON THE 30TH WHEN WE DO JURY SELECTION WE CAN ASK ABOUT DIETARY RESTRICTIONS, RELIGIOUS PREFERENCES ABOUT THE MEALS AND ALLERGIES?

THE COURT:  OH, THAT'S A GOOD IDEA.  YEAH.  WE ARE PLANNING TO SWEAR IN AND HAVE THE JURY SET BY NOON, IS MY HOPE.

MR. LOKER:  OKAY.

THE COURT:  IF NOT, AT THE LATEST, A LITTLE BIT PAST

NOON.

**MR. NARITA:**  OKAY.

THE CLERK:  I COULD MAKE A CHART AND COORDINATE THAT WITH THE EMPANELLED JURORS AND PROVIDE IT BACK TO COUNSEL.

**THE COURT:**  THANK YOU SO MUCH, LAURA.

ANY OTHER QUESTIONS ABOUT THAT?

**MR. LOKER:**  NOT FOR THE PLAINTIFF, YOUR HONOR.

**MR. NARITA:**  NOT FOR THE DEFENDANT.

**THE COURT:**  SO WITH THAT, JUST BETWEEN THE UP AND DOWN AND THIS TIME, I'M STILL ASSUMING, AND THE SCHEDULE I PROPOSED PROVIDES GIVE ROOM FOR THIS, BUT THAT LUNCH WILL MORE LIKELY BE PUSHING 40 MINUTES, I THINK THAT'S JUST REALISTIC FOR YOU ALL TO EAT AS WELL AND FOR MY COURT STAFF TO EAT AS WELL, BUT WE ARE GOING TO AIM FOR SOMEWHERE BETWEEN AROUND 40 OR 45 MINUTES, BUT I THINK IT WILL STILL BE FINE WITH THE SIX HOURS THAT WE PLAN FOR EACH DAY FOR TESTIMONY, THAT SHOULD GIVE THE COURT STAFF ENOUGH TIME AS WELL AS YOU ALL ENOUGH TIME TO EAT, THE MORE I THOUGHT ABOUT IT.

SO LET ME REVIEW THE SCHEDULE AGAIN.  CURRENTLY WE ARE TALKING ABOUT A SCHEDULE FROM 9:00 THEN TO 4:30, A 40 TO 45-MINUTE LUNCH BREAK, TWO 15-MINUTE BREAKS.  AND WE ESTIMATED A TOTAL OF 17 HOURS OF TRIAL TIME, SIX HOURS THE FIRST DAY, SIX HOURS THE SECOND DAY, FIVE HOURS THE THIRD DAY, BECAUSE WE ASSUME THAT -- AND MY HOPE IS THAT WE ACTUALLY HAVE OUR VERDICT FORMS, CHARGING INSTRUCTIONS, EVERYTHING DONE DURING THE LUNCH

BREAK, SO THAT HAD BEEN AN EXTENDED LUNCH BREAK THAT DAY.

MR. LOKER:  YES, YOUR HONOR.

SO THERE IS A LITTLE BIT OF GIVE IN THE 5 OR 10 MINUTES ADDITIONAL EACH DAY, BUT THERE'S ALWAYS AUBURN RATE.  WE ARE ASSUMING 17 HOURS, 8 AND A HALF EACH SIDE.

MR. LOKER:  YES, YOUR HONOR.

MR. NARITA:  AND YOUR HONOR, I THINK YOU TOLD US LAST TIME YOU WANT COUNSEL HERE AT LEAST 8:30, OR SOMETHING AROUND THAT TIME.

THE COURT:  IF YOU HAVE NO DISPUTES, NOTHING FOR US TO TALK ABOUT, 8:45 IS FINE, BUT 8:30 COUNSEL BEING HERE, AND THEN BASICALLY AT THE END OF THE DAY AFTER THE JURY LEAVES, I WILL SAY, COUNSEL, IS THERE ANYTHING WE NEED TO DISCUSS?  IF YOU SAY YES, WE NEED TO DISCUSS THESE THREE THINGS, THEN WE WILL TAKE THE FULL HALF AN HOUR, BUT IF YOU SAY, WE DON'T THINK SO, BUT CAN WE TOUCH BASE JUST 10 MINUTES BEFORE, THEN WE WILL DO THAT.

MR. NARITA:  OKAY.  THANK YOU, YOUR HONOR.

THE COURT:  SO LET ME FOLD THIS IN RELATEDLY.  I'M GOING TO TALK TODAY ABOUT NO SPEAKING OBJECTIONS.  I REALLY TRY TO MINIMIZE SIDEBARS, JURORS HATE THEM, I HATE THEM.  THEY WILL COUNT AGAINST YOUR TIME.  SO TO THAT END, THAT 15 OR 30-MINUTE MORNING CONFERENCE BECOMES IMPORTANT.  IF THERE'S ISSUES YOU WANT TO DISCUSS OR ANY EVIDENTIARY ISSUES OR JUST A PARTICULAR DOCUMENT YOU WANT TO PREVIEW, HOPEFULLY WE WILL BE DOING SOME

OF THAT DURING OUR PRETRIAL CONFERENCE, BUT IT'S A GOOD TIME TO, PERHAPS IF THERE'S ANYTHING YOU ALL NEED TO TALK ABOUT WITH EACH OTHER OR ME, THAT'S A GOOD TIME.

EVERY ONCE IN A WHILE I KNOW THERE ARE ISSUES THAT COME UP WHICH INVOLVE POCKET BRIEFS AND SO FORTH WHICH THE PARTIES WANT TO RAISE.  I HAVE A ONE MOTION RULE, LIKE I DO NOT LIKE THE MIDNIGHT DUMP OF MOTIONS, AND THIS IS SUCH A SHORT TRIAL THAT I DON'T EXPECT ANY OF THIS TO HAPPEN, BUT IF THERE'S SOMETHING WHICH PARTIES MUST BRIEF AFTER YOU MEET AND CONFER, I WILL PERMIT YOU TO FILE A BRIEF, BUT IT HAS TO BE IN BY 4 OR 5:00.

AND I KNOW YOU WILL BE IN TRIAL, BUT THAT MEANS YOUR TEAM WILL HAVE TO HANDLE IT.  IT HAS TO BE ON FILE BY 5:00, YOU HAVE TO MEET AND CONFER WITH THE OTHER SIDE BEFOREHAND, BEFORE IT'S FILED.  IT CAN ONLY ONE BE ONE ISSUE, NO SUBPARTS, NOT MULTIPLE A, B, C, D DOCUMENTS RAISING ISSUES.  AND THE MAXIMUM IS THREE PAGES ON CAPTION PAPER.  REGULAR RULES APPLY, 12 POINT FONT, ET CETERA.

I'M EXPECTING AT THE MOST WE WILL HAVE ONE OF THESE DURING THE COURSE OF THE TRIAL, I'M HOPING ZERO, BUT I JUST WANTED TO SET THOSE EXPECTATIONS BEFORE WE RECEIVED THIS.

**MR. LOKER:**  UNDERSTOOD, YOUR HONOR.

**MR. NARITA:**  THANK YOU, YOUR HONOR.

**THE COURT:**  SO THAT WAS A LOT OF BIG PICTURE ABOUT SCHEDULE AND THE TRIAL ITSELF.  ANY QUESTIONS ABOUT ANY OF THAT BEFORE WE TURN TO MORE SPECIFICS, ABOUT WITNESS LIST AND

EXHIBIT LIST?

**MR. NARITA:**  WILL WE HAVE ANOTHER CHANCE TO TALK ABOUT JURY SELECTION AT SOME POINT TODAY OR SHOULD WE RAISE THAT NOW?  WHAT IS THE COURT'S PREFERENCE?

**THE COURT:**  ACTUALLY NOW IS A GREAT TIME TO TALK ABOUT IT.

**MR. NARITA:**  I WANTED TO MAKE SURE I UNDERSTOOD THE MECHANICS ABOUT THE PAPER PASSING STRIKE METHODOLOGY THAT YOUR HONOR REFERRED TO AND ALSO JUST KIND OF WANTED TO LOOK AT THE JURY BOX AGAIN HERE.  I WAS PICTURING IT IN MY MIND.

AND SO WHEN I PICK A JURY, I LIKE TO HAVE A LITTLE PIECE OF PAPER THAT HAS THE JUROR NUMBERS ON IT AND DRAW THE BOX.

**THE COURT:**  I'M DOING THE SAME THING RIGHT NOW.

**MR. NARITA:**  WOULD YOUR HONOR MIND TELLING US WHEN YOU PUT PEOPLE IN, LIKE WHERE DO THEY SIT AND WHO IS THE FIRST JUROR SEATED?

JUST, LIKE, VISUALIZE THAT.

**THE COURT:**  I AM LITERALLY -- WE HAVE BEEN IN THE SAME DISCUSSIONS.

**MR. NARITA:**  OKAY.

**THE COURT:**  SO WE ARE GOING TO WORK IN ROWS OF SIX, BECAUSE I'M REQUESTING 40.  SO BETWEEN PEOPLE NOT APPEARING AND PEOPLE WHO WILL BE EXCUSED BEFOREHAND IN THE PRE-EXCUSAL, MY GUESS IS THE MAX WE WOULD HAVE IS 36.

SO I'M OPERATING FROM ROWS OF SIX, 36.  SIX ROWS, 36.  I'M

GOING BACK AND FORTH ON THIS IN MY OWN LIST, BUT -- SO STARTING FROM THE BACK LEFT-HAND SIDE.  I'M JUST GOING TO STAND UP RIGHT NOW -- OH, THANK YOU.  LAURA WILL ASSIST.

THAT IS JUROR NUMBER ONE.

SO ONE, TWO, AND THEN NUMBERING, GOING TOWARDS THE BACK DOORS, THROUGH 6.

**MR. NARITA:**  GOT IT.

**THE COURT:**  THEN SEVEN, WHERE LAURA IS NOW STANDING, THROUGH 12, AND THEN THE BACK ROW WILL BE THE FIRST ROW OF THE LEFT-HAND SIDE, STARTING CLOSEST TO THE PAINTINGS ON THAT WALL.

LAURA, ARE LIKE THE VANA WHITE OF COURTROOMS.

**MR. NARITA:**  SHE'S GETTING HER STEPS IN, YOUR HONOR.

**THE COURT:**  SHE IS.  ONE OF US IS.

WE WILL BE BEGINNING SEAT 13, AND THEN 14, 15, 16, 17, 18.

AND THEN GOING BACK, SO THAT WOULD BE 19 ON THE INSIDE. SO THEN 19 THROUGH 24, 25 THROUGH 30, 31 THROUGH 36.

**THE COURT:**  WE HAVE BEEN DISCUSSING THIS WEEK SORT OF THE BEST WAY TO PUT THE ROWS.  MY GOAL IS TO STAY ON THIS SIDE SO YOU DON'T HAVE TO DO A FULL SWEEP WHEN LOOKING AT YOUR JURORS.

THE JURORS, WHERE LAURA AND COUNSEL ARE SET UP, THAT'S WHERE THE PODIUM WOULD BE, SO YOU CAN EASILY ADDRESS BOTH SIDES, ALL 36.  AND THEN FROM THAT POINT, THE JURORS WILL BE SEATED, THEY ARE GOING TO HAVE THEIR NUMBERS --

**MR. NARITA:**  THEY WILL ALREADY HAVE BEEN ASSIGNED

NUMBERS BEFORE THEY COME IN, CORRECT?

**THE COURT:** YES. SO I BELIEVE THIS IS RIGHT, AND LAURA, CORRECT ME IF I'M WRONG WITH THIS, BUT THEY ARE GOING TO HAVE THEIR ASSIGNED NUMBERS. WE MAY HAVE EXCUSED SOME OF THEM, PRE-EXCUSED SOME OF THEM, BUT THEIR NUMBERS WON'T CHANGE AFTER THE PRE-EXCUSAL.

**THE CLERK:** I GUESS IT DEPENDS ON HOW MANY. THE NUMBERS WON'T CHANGE, BUT I THINK YOU WOULD STILL, MAYBE IF ONE THROUGH FIVE WERE PRE-EXCUSED, THEN MAYBE YOU WOULD HAVE TO START WITH SIX.

**THE COURT:** OR I WILL JUST MOVE THEM. I THINK THAT'S WHERE THE POST-ITS COME IN. THE POST-ITS WITH THE NUMBERS -- SO I USUALLY HAVE MY JURY.

SO IMAGINE A FOLDER, I WILL HAVE A FOLDER THAT DAY, BUT YOU HAVE YOUR FOLDER AND YOU HAVE YOUR POST-ITS, AND SO THE JURORS WILL HAVE THEIR INDIVIDUAL NUMBERS AND THEY WILL BE SEATED IN THESE SEATS. BUT ONCE THEY ARE SEATED IN THOSE SEATS, THEY ARE NOT GOING TO MOVE DURING THE COURSE OF --

**MR. NARITA:** -- BUT JUST SO I'M CLEAR, YOUR HONOR, IF THE FIRST THREE JURORS GOT EXCUSED FOR CAUSE BEFORE THEY EVEN CAME TO JOIN US, WOULD THE FIRST JUROR THAT CAME INTO THE COURTROOM BE JUROR NUMBER ONE OR WOULD IT BE JUROR NUMBER FOUR?

**THE COURT:** THE FIRST JUROR WHO CAME -- MY UNDERSTANDING, AND WE WILL VERIFY THIS AS WE GO, MY UNDERSTANDING IS THAT PERSON IS STILL JUROR NUMBER FOUR,

BECAUSE THE RECORD HAS TO STAY COMPLETE BEFORE -- SO IN THE PAST, THE WAY IN WHICH I HAVE ALWAYS DONE IT IS THAT JUROR NUMBER, EVEN THE RANDOM WAY, STAYS THE SAME.  BUT LAURA IS LOOKING AT ME LIKE THAT MAY NOT BE TRUE.

BUT WE WILL CONFIRM, BUT NO MATTER WHAT, THE WAY THEY ARE SEQUENCED, THEIR END WILL STAY THE SAME.

**MR. NARITA:**  SO THERE WILL BE SIX FOLKS SITTING IN THE BACK ROW, BUT IT COULD BE JUROR NUMBER TWO, JUROR NUMBER FOUR, FIVE, SIX, SEVEN OR EIGHT, SOMETHING LIKE THAT.

**THE COURT:**  THAT'S WHAT I WAS PLANNING TO DO, YES.

**MR. NARITA:**  WE WANT TO BE ABLE TO CROSS-REFERENCE THEM, OBVIOUSLY, TO ANY QUESTIONNAIRE THEY HAVE FILLED OUT, AND THEIR NAMES AND SO FORTH.

**THE COURT:**  CORRECT.

SO IF YOU PUT YOUR QUESTIONING, FOR EXAMPLE IN THE RANDOMLY ASSIGNED ORDER, WHAT WE REFER TO AS THE JUDGE LIST ORDER, YOU WILL HAVE THE RANDOMIZED ORDER, AND THAT SHOULD STILL MATCH.  I WOULD LINE THEM UP IN THAT WAY.

**MR. NARITA:**  OKAY.  SO THE COURT WILL BE PROVIDING THE PARTIES WITH A LIST THAT WILL HAVE NAMES AND THEN AN ASSIGNED NUMBER.

**THE COURT:**  YES.  SO YOU WILL HAVE A SENSE BECAUSE YOU KNOW THAT THE JUROR -- YOU EACH HAVE THREE PEREMPTORIES, EACH SIDE HAS THREE PEREMPTORIES, AND THEN YOU KNOW THE TOTAL JUROR NUMBER WILL BE EIGHT.

**MR. NARITA:**  CORRECT.

**THE COURT:**  SO YOU SHOULD HAVE A SENSE OF HERE ARE THE EIGHT PLUS SIX, THE 14 IN PLAY, PLUS YOU WILL BE ASSUMING A CERTAIN NUMBER OF "FOR CAUSE," YOU WILL HAVE A SENSE, OR YOUR BEST GUESS, SO YOU WILL HAVE A SENSE OF WHERE YOU ARE FOCUSING YOUR QUESTIONING.

**MR. NARITA:**  OKAY.  AND THEN I HAD -- SO THANK YOU FOR ALL OF THAT.  I DID HAVE A MECHANICAL QUESTION ABOUT THE PAPER PASSING THAT YOU TALKED ABOUT.

**THE COURT:**  YES.

**MR. NARITA:**  SO OUR JURORS COME IN, THEY TAKE THEIR SEATS, MY RECOLLECTION FROM OUR LAST MEETING WITH YOU, YOUR HONOR, WAS THAT IF AFTER THEY ARE QUESTIONED FOR A WHILE, I THINK YOU WILL WANT ME AND MR. LOKER TO COME TO A SIDEBAR ABOUT "FOR CAUSE" CHALLENGES.

**THE COURT:**  WE ARE GOING TO GO BACK TO CHAMBERS.

**MR. NARITA:**  SO WE WOULD GO BACK TO CHAMBERS, MAYBE ONE PERSON IS EXCUSED FOR CAUSE, I'M JUST USING HYPOTHETICALS.

NOW THE PAPER PASSING METHOD WOULD THEN BE THAT MR. LOKER AND I WOULD RETIRE TO OUR SEATS, WE WOULD STRIKE THREE, OR WE DO THAT IN CHAMBERS.

**THE COURT:**  NO.  YOU WILL TAKE YOUR SEATS.

SO WE ARE IN CHAMBERS, IT WILL ACTUALLY BE THE JURY ROOM, WE ARE GOING TO DISCUSS -- I WILL BEGIN WITH PLAINTIFF, IS THERE ANY -- MR. LOKER, IS THERE ANY WHICH PLAINTIFF IS

CHALLENGING FOR CAUSE?  I'VE GONE BACK AND FORTH WHETHER OR NOT I'M GOING TO DO IT HERE IN THE COURTROOM OR EXCUSE THE JURORS, WHETHER IT BE HERE IN COURTROOM OR IN CHAMBERS, BUT IN EITHER CASE I CAN TELL YOU WHAT IT'S GOING TO SOUND LIKE, WHICH IS MR. LOKER, ARE THERE ANY WHICH PLAINTIFFS ARE EXCUSING FOR CAUSE OR ASKING TO EXCUSE FOR CAUSE?  MR. NARITA, ARE THEY THE SAME?  WE WILL SEE IF THERE'S ANY OVERLAP.

I WILL QUICKLY DECIDE THOSE THEN WE WILL BEGIN WITH PLAINTIFFS, THEN WE WILL DO DEFENDANTS, CAUSE CHALLENGES, YOU CAN ARGUE BRIEFLY ON EACH, AS NEEDED.  I WILL ISSUE MY RULINGS, YOU WILL HAVE THOSE, SO THEN ON YOUR CHART FOLDER YOU WILL CROSS THOSE OUT FOR YOUR OWN PURPOSES.

THEN WE WILL COME BACK OR THE JURY WILL COME BACK, EVERYONE WILL BE HERE, WE ARE NOT GOING TO TELL THEM THAT THEY HAVE BEEN USED FOR CAUSE OR NOT FOR CAUSE, WE WILL BEGIN WITH THE PAPER PASSING.

**MR. NARITA:**  OKAY.

**THE COURT:**  SO THE PAPER PASSING WILL BEGIN BEGINNING WITH PLAINTIFF.  THEY WILL -- HE WILL WRITE DOWN, CLOSE, PASS TO YOU.  YOU WILL WRITE DOWN, CLOSE PIECE OF PAPER, PASS BACK.

WHEN WE HIT TWO PASSES, YOU WILL STOP BECAUSE TWO PASSES MEANS WE ARE DONE.  YOU SHOULD KNOW WHO YOUR JURORS ARE AT THAT POINT.  YOU WILL PASS IT UP TO ME, I WILL TAKE A LOOK, WE WILL STEP INTO THE HALLWAY, CONFIRM JUST TO MAKE SURE, BECAUSE ONCE WE LET THEM GO, WE LET THEM GO.

WE COME BACK IN, I WILL THEN EXCUSE EVERYBODY, BOTH THE CAUSES AND PEREMPTORIES AND WE WILL HAVE OUR JURY, WE WILL ASK THOSE MEMBERS TO STAND UP, MADAM CLERK WILL SWEAR THEM IN.

**MR. NARITA:** OFF WE GO.

**MR. LOKER:** AND IS THE PAPER WE ARE PASSING BACK AND FORTH, IS THAT A FORM THAT'S PREPARED BY THE COURT OR DO WE USE A PAPER FROM OUR NOTEBOOK?

**THE COURT:** WE ARE DECIDING WHICH ONE BUT IT WILL BE ONE OF THESE TWO.

WILL LAURA -- CAN YOU PASS THESE TO THEM? IT WILL MOST LIKELY BE THE TOP ONE AND THE BOTTOM ONE, BUT I HAVEN'T DECIDED YET.

AND YOU SHOULD INDICATE WHILE YOU ARE PASSING, DON'T JUST LEAVE A BLANK, SAY YOU ARE PASSING SO WE KNOW.

**MR. NARITA:** GOT IT.

AND I ASSUME NO LONGER THAN 45 MINUTES CONSIDERATION PER PASS, RIGHT YOUR HONOR?

**THE COURT:** EVERYBODY IS STARING AT YOU, IT'S THE SILENT -- THE PRESSURE OF SILENCE.

**MR. NARITA:** WE WILL MOVE EXPEDITIOUSLY.

**THE COURT:** SO WHY DON'T WE FINISH THIS UP IN TERMS OF THE JURY, ACTUALLY.

SO WE SENT THE MODIFIED QUESTION, COMBINING I BELIEVE JURY QUESTION SIX AND SEVEN THAT COUNSEL HAD SENT IN. WE SENT YOU THE ADDITIONAL QUESTIONS, INCLUDING THAT ONE, TO JURY SERVICES.

THOSE QUESTIONNAIRES ARE GETTING -- OR GOT SENT OUT, ARE IN THE PROCESS OF BEING SENT OUT.  WE WILL RECEIVE RESPONSES BY OCTOBER 24TH.  JURY SERVICES IS GOING TO BE SENDING THEM TO US ALL.  WE HAVE OUR FURTHER PRETRIAL CONFERENCE OR PRE-EXCUSAL CONFERENCE ON THE 28TH.  THE DEADLINE FOR ME TO EXCUSE ANYBODY, PRE-EXCUSAL WISE, IS THE 29TH.  SO I WILL BE SENDING THEM THOSE AFTER THAT CONFERENCE.  AND AS WE DISCUSSED, SELECTION IS ON THE 30TH.

IF WE ARE NOT DONE WITH OUR WORK OR I FEEL AS THOUGH ONCE I LOOK AT YOUR EXHIBIT LIST, WE ARE JUST -- EXHIBITS THAT ARE TOO FAR, I MAY ASK YOU ALL TO COME BACK THE AFTERNOON OF THAT THURSDAY AFTER VOIR DIRE TO CONTINUE THE WORK.

**MR. NARITA:**  OCTOBER 30TH, YOUR HONOR?

**THE COURT:**  I'M HOPING NOT.  I'M HOPING -- WE WILL SEE.  I HAVE SOME CONCERNS ABOUT THE STATE OF THE EXHIBIT LIST STILL.  BUT I DID WANT TO RESERVE THAT POSSIBILITY THAT I MIGHT SAY, COUNSEL GO TO LUNCH AND I WILL SEE YOU AFTER LUNCH AND LET'S COME BACK.

SO AT THE PRE-EXCUSAL CONFERENCE, YOU WILL ALL HAVE THEIR QUESTIONNAIRES, AND WHAT I EXPECT TO BE DISCUSSING IS, IS THERE ANYONE WHO WE ARE WORRIED ABOUT FOR HARDSHIPS?  NONE OF THE QUESTIONS, I REALIZED, ASK THAT SPECIFICALLY, BUT OFTEN THEY WILL PUT IT IN "ANYTHING ELSE I SHOULD KNOW?" "THE JUDGE SHOULD KNOW" SO WE WILL TAKE A LOOK AT THAT.

SO ANYTHING WE NEED TO DISCUSS HARDSHIP-WISE, ANYTHING WE

NEED TO DISCUSS JUST ON THE FACE, THE RESPONSES ARE SO BLATANTLY OUT OF LINE AND THERE'S CONCERNS, IN TERMS OF "FOR CAUSE."

WE MAY ALSO HAVE TIME THAT DAY TO MEET MORE, I HAVE A CRIMINAL CALENDAR, I NEED TO SEE IF IT'S GOING TO STICK OR NOT, THAT WOULD BE MY AFTERNOON, THAT WOULD BE MY PREFERENCE IS TO DO IT THEN BUT I JUST NEED TO SEE.

**MR. LOKER:**  UNDERSTOOD.

**THE COURT:**  ANY -- SO I THINK THAT'S THE JURY -- ANY QUESTIONS ABOUT VOIR DIRE?

I WILL PROBABLY, I MAY FOLLOW UP WITH THEM SOME REGARDING -- I WILL LIKELY FOLLOW UP WITH THEM ABOUT HARDSHIPS THE DAY -- DURING VOIR DIRE, IF NECESSARY.  WE DISCUSSED EACH SIDE HAVING 20 MINUTES, AND YOU MAY RESERVE TIME FOR REBUTTAL, SO EITHER SIDE.

**MR. NARITA:**  YOUR HONOR, DOES THE COURT TELL THE VENEER ANYTHING ABOUT THE CASE OR NO?

**THE COURT:**  IT'S JUST YOUR STATEMENT.  IF YOU ALL WOULD LIKE TO PROVIDE MORE INFORMATION, YOU CAN.

**MR. NARITA:**  NO, I THINK THAT'S FINE.

**THE COURT:**  I ALWAYS OFFER A MINI OPENING BUT NOBODY EVER TAKES ME UP ON IT.  AND WITH THIS, IT'S A SHORT ENOUGH TRIAL THAT I THINK IT WILL BE OKAY WITHOUT.

**MR. LOKER:**  AGREED.

**MR. NARITA:**  NO OBJECTION, YOUR HONOR.

THE COURT:  OKAY.

ALL RIGHT.  ANY LAST OTHER QUESTIONS?

MR. LOKER:  NOT FOR THE PLAINTIFF, YOUR HONOR.

MR. NARITA:  NOTHING FOR THE DEFENDANT.

THE COURT:  OKAY.  LET'S TURN TO WITNESS LIST AND EXHIBIT LIST.

SO I RECEIVED PARTIES' REVISED WITNESS LIST AND EXHIBIT LIST.  LET ME JUST PULL THEM UP.  AND IN TERMS OF THE REST OF OUR AGENDA, WHAT I HAVE FOR TODAY IS WITNESS LIST, EXHIBIT LIST, I WANT TO TOUCH BASE WITH THE PARTIES ABOUT THE PROPOSAL FOR HANDLING PERSONAL IDENTIFYING INFORMATION.

WE DISCUSSED THAT WE WERE GOING TO DISCUSS DEPO DESIGNATIONS, I SEE THEM HERE BEFORE ME, SO I WILL TAKE A QUICK LOOK.

I HAVE RECEIVED PARTIES' BRIEFS REGARDING JURY INSTRUCTION NUMBER 32 AND WAS GOING TO HEAR VERY SHORT ARGUMENT ABOUT THAT. I HAVE A STRONG SENSE OF WHICH WAY I'M PLANNING TO GO WITH THAT.

AND IF WE HAVE TIME, I WOULD LIKE TO AT LEAST TALK THROUGH THE REST OF THE JURY INSTRUCTIONS.  I'VE GONE THROUGH THEM BRIEFLY, I MAY JUST -- I JUST WANT TO HEAR A LITTLE BIT FROM EACH OF THE SIDES AND JUST MAKE SURE I DON'T NEED ADDITIONAL BRIEFING ON ANY OF THE REST OF THEM.  I DON'T BELIEVE I DO BUT THERE'S ONE OR TWO I WANT TO EXPLORE FURTHER.

WE ARE NOT GOING -- WHAT WE WILL NOT DISCUSS TODAY IS

VERDICT FORMS BECAUSE A LOT OF THAT WILL BE BASED OFF OF WHAT HAPPENS WITH THE JURY INSTRUCTIONS.  WE WILL HIT UPON THAT DURING THE PRE-EXCUSAL CONFERENCE AND THEN OBVIOUSLY DURING THE LAST CHARGING INSTRUCTION, CHARGING INSTRUCTION CONFERENCE.

THE LAST THING I WILL SAY IN TERMS OF OUR AGENDA FOR TODAY BECAUSE I MAY NEED TO RESERVE TIME IF PARTIES ARE INTERESTED IN ANY WAY, JUDGE VAN KEULEN IS HERE THIS WEEK, SHE'S HERE TODAY, BUT SHE'S GOING TO BE OUT SHORTLY THEREAFTER, SO YOU ARE SORT OF IN YOUR LAST AND FINAL, IN TERMS OF GETTING ANY FURTHER OPPORTUNITY OR HAVE FURTHER SETTLEMENT DISCUSSIONS WITH HER.

AND AS YOU KNOW, SHE'S RIGHT NEXT DOOR.  WE WILL HAPPILY ESCORT YOU DOWN THE HALL IF THAT WOULD BE FRUITFUL IN ANY WAY.

**MR. NARITA:**  HOPEFULLY NOT WITH THE HELP OF THE BAILIFF, YOUR HONOR.

**THE COURT:**  NO, BUT IF THERE'S A POSSIBILITY, SHE TOLD ME -- I BELIEVE SHE MENTIONED LAST WEEK THAT SHE HAS TIME THIS AFTERNOON IF YOU NEED TO SEE HER OR TO SCHEDULE SOMETHING.

**MR. NARITA:**  OKAY.  WE APPRECIATE THAT INFORMATION.

**MR. LOKER:**  THANK YOU, YOUR HONOR.

THE COURT:  SO LET ME JUST PULL UP.  ALL RIGHT.

SO I LOOKED AT THE WITNESS LIST, IT WAS STILL ABOUT NINE AND A HALF-HOURS EACH SIDE, AND RECOGNIZE YOU ARE DOING THIS PLUS YOUR OPENING AND CLOSINGS WITHIN THIS TIME PERIOD, IT WILL BE UP TO THE PARTIES TO DECIDE HOW AND WHETHER YOU ARE GOING TO BE SHORTENING FURTHER AND HOW YOU ARE GOING TO MAKE IT FIT INTO

THAT TIME PERIOD.

PART OF IT WHICH I NOTICED THOUGH IS WE STILL HAVE A LOT OF THIRD PARTIES, THE CREDIT REPORTING AGENCY IS PRESENT, AND THIS TIES TO OBJECTIONS WHICH WERE RAISED IN TERMS OF EXHIBIT LISTS AS WELL.

AND I GUESS I WANTED TO EXPLORE THAT A LITTLE BIT.

IN A LOT OF CIVIL CASES, THE WAY THINGS ARE HANDLED IS THROUGH AFFIDAVITS WHERE BUSINESS RECORDS, AFFIDAVITS BY THE CUSTODIAN OF RECORDS, DO WE NOT HAVE THOSE IN THIS CASE?  WHAT IS HAPPENING WITH THAT IN TERMS OF THE NEED TO CALL THE THIRD PARTY WITNESSES TO SUCH A DEGREE?

**MR. LOKER:**  YEAH, AND THAT'S OUR EXPERIENCE AS WELL, YOUR HONOR, WHERE THE EXHIBITS THEMSELVES ARE STIPULATED TO.

WE HAVEN'T REACHED SUCH A STIPULATION, AS FAR AS I REMEMBER, THOUGH IF I FORGOT ON THIS PARTICULAR CASE, REMIND ME, MR. NARITA.

IN TERMS OF THE CREDIT BUREAUS, I HAVE SPOKEN WITH EACH ONE OF THEIR COUNSELS AND THEY AGAIN OFFERED A BUSINESS RECORDS DECLARATION, SO I ANTICIPATE TO RECEIVE THOSE WHICH HOPEFULLY LIMIT THE NEED FOR THEM, IF NOT EXCLUDE THEM.

THE OFFICER, I DON'T ANTICIPATE HE WILL COME, WE HAVE SUBPOENAED HIM DURING DISCOVERY IN THIS MATTER, TALKED TO HIM AND HIS COUNSEL, SO I WOULD BE SURPRISED IF HE SHOWED UP.

SO EVEN THOUGH THE PAPER DOES REFLECT 9.5 HOURS, WE ARE MINDFUL OF THE 8.5 HOUR ALLOWANCE AND WE WILL WORK TO BE WITHIN

THAT.

THE COURT: OKAY. SO YOU ARE EXPECTING TO --

MR. LOKER: -- NARROW IT.

THE COURT: AND YOU ARE EXPECTING TO HAVE AN AFFIDAVIT AS NECESSARY, I BELIEVE IT'S 902 AND SO FORTH TO ENSURE --

MR. LOKER: CORRECT.

THE COURT: MR. NARITA?

MR. NARITA: I THINK WE ARE OF THE SAME MIND, YOUR HONOR. WE HAVE SUBPOENAS OUTSTANDING TOO, AND I GUESS MY POSITION ON THAT IS IF THE DECLARATIONS COME BACK AND IF THEY ARE INDEED SUFFICIENT TO AUTHENTICATE AND LAY A FOUNDATION FOR THE ADMISSION OF THE EXHIBITS THEN I EXPECT THEY WILL BE ADMITTED INTO EVIDENCE AND WE WON'T HAVE TO CALL CUSTODIANS.

SO WE HAVE SENT OUT SIMILAR REQUESTS TO THE CONSUMER REPORTING AGENCIES. I THINK WE HAVE ALSO SENT A SUBPOENA TO THE OFFICER AS WELL. I DON'T KNOW HIM AS WELL AS MR. LOKER DOES SO I DON'T KNOW THAT HE NECESSARILY WON'T SHOW UP OR NOT BUT I KNOW WE HAVE MADE THAT EFFORT.

THE COURT: BECAUSE IT SEEMS AS THOUGH IN TERMS OF THE THIRD PARTY WITNESSES, THAT WOULD LIMIT THAT GREATLY AND IT'S NOT THAT HARD TO ENSURE THEY CONFORM WITH THE FEDERAL RULES OF EVIDENCE.

MR. LOKER: THEY HAVE DONE SO IN PREVIOUS TRIALS, YOUR HONOR, AND THE PLAINTIFF DIDN'T OBJECT TO ANY OF THE

EXHIBITS ON COMENITY'S EXHIBIT LIST, SO I THINK IT'S JUST A MATTER OF ANY OBJECTIONS FROM COMENITY TO OUR EXHIBITS, WHICH THERE ARE DUPLICATE, THEY SHOULD BE THE SAME.

**THE COURT:**  IF THEY ARE DUPLICATE, IS IT DUPLICATE DOCUMENTS OR DUPLICATE OBJECTIONS?

**MR. LOKER:**  SORRY.  DUPLICATE DOCUMENTS.

SO THE EXHIBITS WE HAVE ARE SIMILAR AND MOST OF IT SAME TO THE EXHIBITS THAT COMENITY HAS ON THEIR WITNESS LIST.

SO COMENITY'S WITNESS LIST HAS QUITE A BIT OF DOCUMENTS THAT WERE INCLUDED IN OURS, BUT EVEN STILL, WE DIDN'T OBJECT TO THOSE DOCUMENTS COMING IN.

THE COURT:  SO I HAVE TO ASK COUNSEL TO DE-DUPLICATE THE EXHIBITS.

**MR. NARITA:**  I THINK WE DID.  I WILL SPEAK TO SOMEONE WHO MIGHT KNOW MORE BUT I BELIEVE WE HAVE MADE A BIG EFFORT TO DE-DUPLICATE.

**MS. GIVENTAL:**  YOUR HONOR, I THINK THAT --

**MR. LOKER:**  I MIGHT HAVE THE OLD ONE RIGHT HERE.

**MS. GIVENTAL:**  I THINK THAT WHAT WE ARE TALKING ABOUT IS THAT THERE ARE SIMILAR EXHIBITS, SO WE MIGHT HAVE ONE EXHIBIT THAT IS A CREDIT REPORT DATED AUGUST 16TH, 2023, AND HE MIGHT HAVE A DIFFERENT REPORT.

SO THEY ARE SEPARATE EXHIBITS.  IF IT'S THE SAME ONE, TO THE EXTENT THAT THERE'S ANY DUPLICATION, WE ARE NOT AWARE OF IT.

**MR. LOKER:** OKAY.

I WOULD HAVE TO GO BACK AND LOOK THEN, MAYBE I MISUNDERSTOOD, BUT I DO SEE COMMONALITY BETWEEN THE EAVES NOTES WHICH ARE COMENITY DOCUMENT, ACDV'S, BUT I CAN TALK TO COUNSEL OFF-THE-RECORD INSTEAD OF LOOKING AT IT HERE.

THE COURT: SO LET ME ASK THIS THEN BECAUSE I'M CONCERNED ABOUT THE NUMBER OF OBJECTIONS STILL OUTSTANDING.

SO MY INTENTION, JUST -- I'M NOT GOING TO RULE ON THEM BEFOREHAND, YOU ALL CAN USE YOUR TRIAL TIME FOR THAT PURPOSE, BUT I WAS GOING TO AT LEAST MAKE SURE THERE ARE CATEGORIES THAT I'M FAMILIARIZING MYSELF WITH.

SO I WAS GOING TO HAVE COUNSEL PROVIDE THE EXHIBITS THURSDAY, COURTESY COPIES THIS THURSDAY, SO THAT I COULD TAKE A LOOK AT THEM.

I CAN NOT -- BUT THAT MEANS YOU ARE PRE-MARKING THEM, YOU ARE PREPARING THEM FOR TRIAL, AND IF THERE'S STILL DUPLICATIONS, THAT'S AN ISSUE.

**MR. NARITA:** I DON'T THINK THERE'S DUPLICATION.

**MR. LOKER:** AND YOUR HONOR, THAT WOULD BE THURSDAY THE 23RD FOR THE EXHIBITS?

**THE COURT:** YES.

SO DELIVER TO THE COURTHOUSE BY 10:00 WITH AN UPDATED OR REVISED EXHIBIT LIST AS NEEDED. TWO BINDER SETS FOR MY STAFF. YOU CAN HOLD ON TO THE ORIGINALS FOR THE TRIAL DATE, OR MAYBE THE THURSDAY BEFOREHAND. IF YOU DON'T WANT TO CARRY THOSE IN

ADDITION TO EVERYTHING ELSE.

**MR. NARITA:**  YOUR HONOR, I DIDN'T WRITE DOWN THE DATE THAT YOUR HONOR JUST SAID, WHAT DATE WOULD YOU LIKE THOSE BY?

**THE COURT:**  SO I WOULD LIKE MY WORKING SET OF BINDERS BY THIS THURSDAY, OCTOBER 23RD AT 10:00 AT THE CLERK'S OFFICE.

THEN BY OCTOBER 30TH, THE DAY OF JURY SELECTION, YOU ARE GOING TO BRING IN THE WITNESS EXHIBITS, UNLESS YOU WOULD RATHER DO THEM THAT MONDAY, BUT I FIND SOMETIMES IT'S A LITTLE -- COUNSEL AND MYSELF WOULD APPRECIATE JUST GETTING THEM TO THE COURTHOUSE.

**MR. LOKER:**  AND FOR THE WITNESS EXHIBIT, THAT'S A SMALL BINDER WE ARE GOING TO GO THROUGH WITH THAT PARTICULAR WITNESS.  THAT'S THE ONE THAT'S DUE THE 30TH.

**MR. NARITA:**  FOR THE WITNESS STAND?

**THE COURT:**  RIGHT.

ANY CONCERNS ABOUT THAT?

**MR. LOKER:**  NO, YOUR HONOR.

**THE COURT:**  AND IF WHEN YOU ALL ARE MEETING AND CONFERRING, THERE'S FURTHER CHANGES TO THE EXHIBIT LIST, GO AHEAD AND FILE AN AMENDED -- IF YOU ARE AMENDING YOUR EXHIBIT LIST, GO AHEAD AND FILE THE AMENDED EXHIBIT LIST.

SO I NOTICE THE DEFENSE EXHIBIT LIST STARTS AT 63, THAT BECOMES CONFUSING OF WHOSE ARE WHOSE, SO I WOULD LIKE DEFENSE EXHIBITS TO START LATER.

YOU CAN CHOOSE A NUMBER.  WE ARE DEFINITELY NOT GOING TO

GET TO A HUNDRED.

MR. LOKER, DEFENSE CAN START AT 100 OR THE DEFENSE CAN START AT 200, BUT SOMETHING WHICH IS A CLEAR NUMBER STARTING OTHERWISE.

**MR. NARITA:**  OKAY.  WE CAN DO THAT, YOUR HONOR.

WE WILL PLAN TO START IT AT 100, YOUR HONOR, AND RENUMBER THE EXHIBITS.

**THE COURT:**  GREAT.  I THINK IT'S EASIER FOR A QUICK REFERENCE.  SO YOU WILL DELIVER TWO COPIES THIS THURSDAY.

WE DISCUSSED NO SPEAKING OBJECTIONS, MINIMAL, OR NO SIDEBARS.

CONTINUING WITH THE OBJECTION THEORY, I NOTICED FOR MIL NUMBER 4, I HADN'T SEEN THAT YET.  DID YOU ALL FILE THAT AND I JUST MISSED IT OR DID YOU E-MAIL IT TO ME?

**MR. LOKER:**  I THINK WE -- DID WE MISS IT?  WHAT WAS THE NUMBER?  4?

**THE COURT:**  NUMBER 4 WAS INVOLVING, DIRECT DISPUTES.

**MR. LOKER:**  I THINK WE MISSED THAT ONE, I DON'T REMEMBER SUBMITTING THAT, YOUR HONOR.

**THE COURT:**  OKAY.  SO I'M GOING TO ASK PARTIES MEET AND CONFER AND COME UP WITH SOME PROPOSED LANGUAGE FOR THE LIMITING INSTRUCTION.  AND YOU CAN JUST GO AHEAD AND FILE THAT.

**MR. LOKER:**  I APOLOGIZE, YOUR HONOR.

**THE COURT:**  AND CAN YOU DO IT BY -- HOW MUCH TIME DO YOU NEED?  THIS THURSDAY?

**MR. NARITA:**  THAT SHOULD BE ENOUGH.

**MR. LOKER:**  THAT WOULD BE FINE.

**THE COURT:**  GREAT.  SO PARTIES WILL FILE IT BY OCTOBER 23RD.  AND YOU ALL ARE STILL -- BECAUSE I WANT TO TRY A POWERPOINT THIS TIME FOR THE WITNESS LIST AND THE COUNSEL LIST AND SUCH BECAUSE I FIND THAT WHEN I READ THEM OUT LOUD TO THE JURY, THERE'S THIS GLAZED OVER LOOK AND I DON'T THINK THEY HEAR ANY OF IT, SO I'M GOING TO TRY TO PUT THEM UP ON A SCREEN.

SO I HAD ASKED YOU ALL TO PROVIDE ME THE ATTORNEY AND THE WITNESS LIST BY TUESDAY, A WEEK FROM TODAY, AT THE PRE-EXCUSAL.  SO JUST BE READY TO DO THAT.  AND IF YOU COULD FILE THAT BUT ALSO E-MAIL ME A COPY BECAUSE I'M GOING TO DROP IT INTO A POWERPOINT.

**MR. NARITA:**  THERE'S SOME PRONUNCIATION CHALLENGES IN THIS CASE TOO, YOUR HONOR.

**THE COURT:**  DOES THAT MEAN THAT YOU ALL WILL -- DOES THAT MEAN PARTIES ARE GOING TO BE READING THAT LIST?

**MR. NARITA:**  I VOLUNTEER --

**MR. LOKER:**  I COULD.

**MR. NARITA:**  -- MR. SEARLES FOR THAT DUTY.

**MR. LOKER:**  YEAH.  NATHAN IS GOOD AT THAT.

**THE COURT:**  MAYBE -- WILL PARTIES ACTUALLY STIPULATE TO THAT?  BECAUSE IF THE NAMES THAT ARE TRICKY, I MIGHT ASK FOR HIM TO READ THEM OUT LOUD.

**MR. NARITA:**  WE WOULD BE HAPPY TO DO THAT,

YOUR HONOR.

THE COURT:  THANK YOU, MR. SEARLES.

MR. NARITA:  YOU JUST GOT VOLUNTEERED.

THE COURT:  WELL THEN IN THAT CASE IT WOULD BE REALLY GOOD TO HAVE THEM ALSO WRITTEN OUT, ACTUALLY.

ALL RIGHT.  SO YOU WILL PROVIDE THAT TO ME BY TUESDAY, BOTH FILING AND SENDING BY E-MAIL SO I CAN CUT AND PASTE.

ALL RIGHT.  SO I THINK WE ARE NOW TO THE PRELIMINARY INSTRUCTIONS.  I MEAN THE PII, THE PERSONAL IDENTIFYING INFORMATION.  WHAT'S THE PARTIES PROPOSAL?

MR. LOKER:  WHAT WE WOULD PROPOSE, YOUR HONOR, IS FOR THE EXHIBITS THAT GO BACK TO THE JURY, JUST REDACT IN COMPLIANCE WITH FEDERAL RULE CIVIL PROCEDURE 5.2 WHICH WOULD BE LEAVING THE LAST FOUR OF THE SOCIAL, THAT WOULD BE THE BIGGEST ONE THAT WE WILL BE REDACTING.  I'M NOT SURE IF ANYTHING ELSE WOULD ACTUALLY APPLY, BUT THAT WOULD BE OUR PROPOSAL, JUST IN THAT EXHIBIT BINDER, HAVE EVERYTHING REDACTED.

THE COURT:  OKAY.  CAN WE SCAN UP THE --

THE CLERK:  THE PARTIES ARE GOING TO PROVIDE THEM ELECTRONICALLY?

MR. LOKER:  AND I CAN REDACT, AS IT'S SUBMITTED ELECTRONICALLY.

THE COURT:  WHAT'S THEIR TIME FRAME FOR DOING THAT, ELECTRONIC?

THE CLERK:  I WILL NEED THAT WHEN THE JURY GOES TO

DELIBERATE.

SO I WILL NEED, ONCE WE HAVE OUR FINAL LIST AND EVERYTHING IS DONE AND BEFORE CLOSING, THEN YOU WILL HAVE CONFERRED ON THE USB, AND THAT'S WHAT I WILL TAKE BACK BECAUSE I WILL HAVE A CART AND WE WILL PRESENT IT THAT WAY.

**MR. NARITA:**  COULD WE GO OVER THAT AGAIN?

SO AT THE END OF TRIAL, YOU ALLUDED TO THIS, YOUR HONOR, WHEN WE WERE HERE LAST TIME, THE PARTIES ARE -- AS I RECALL ARE ORDERED TO MEET AND CONFER ABOUT WHAT ACTUALLY GOT INTO EVIDENCE AND AGREE ON A LIST.  AND THEN AS I HEARD YOUR CLERK, YOU WANT US TO PROVIDE ELECTRONIC COPIES OF THE AGREED LIST OF EXHIBITS FOR THE JURY TO THE CLERK.

**THE COURT:**  OF THE ACTUAL EXHIBITS.

**MR. NARITA:**  OF THE ACTUAL EXHIBITS TO THE CLERK; IS THAT CORRECT?

**THE COURT:**  THAT'S CORRECT.

**MR. NARITA:**  ON JUST LIKE A USB EXTERNAL DRIVE, SOMETHING OF THAT SORT?

**THE COURT:**  YES.

**MR. NARITA:**  OKAY.

**THE COURT:**  AND WE WILL THINK ABOUT -- THINK THROUGH TIMING, BECAUSE DEPENDING ON WHAT TIME WE END THAT WEDNESDAY, IT MIGHT JUST BE THAT THEY HAVE BEEN INSTRUCTED BUT THEN THEY DON'T BEGIN DELIBERATIONS UNTIL THE NEXT MORNING, AND THEY WILL HAVE THE USB IN HAND, BUT WE CAN THINK THAT THROUGH AS WE GET A

SENSE OF HOW THE EVIDENCE AND THE TIMING IS WORKING OUT.

**MR. NARITA:** OKAY. AND THEN THERE WILL BE CLOSING ARGUMENTS TOO?

**THE COURT:** YES. THAT'S HAPPENING ALL ON WEDNESDAY.

**MR. NARITA:** HOPE SPRINGS ETERNAL.

**THE COURT:** IT WILL BE HAPPENING ON WEDNESDAY.

ALL RIGHT. SO THAT PROPOSAL, ESPECIALLY IF IT'S ONLY SOCIAL SECURITY, I THOUGHT IT WAS MORE THAN SOCIAL SECURITY, BUT THEN THAT PROPOSAL SHOULD WORK.

**MR. LOKER:** THERE'S MORE IN 5.2, I THINK IT'S JUST THE SOCIALS THAT WILL BE REDACTED. IF I REMEMBER THE RULE CORRECT -- I COULD LOOK ON MY PHONE REAL QUICK.

**THE COURT:** I JUST MEANT IN TERMS OF WHAT'S IN THOSE DOCUMENTS THEMSELVES.

**MR. NARITA:** DATE OF BIRTH IS IN THERE FOR SURE.

THERE'S SOME ADDRESS INFORMATION, BUT MOST OF IT'S ADDRESSES HE SAID HE LIVED AT.

**THE COURT:** SO NONE OF THAT WILL BE REDACTED, INCLUDING HIS DATE OF BIRTH?

**MR. LOKER:** SORRY. SO WE WILL REDACT THE SOCIAL SECURITY, LEAVING THE LAST FOUR.

AS MR. NARITA STATED, THERE'S YEARS FOR THE DATES OF BIRTH, SO JUST LEAVE THOSE YEARS, AND THEN WE WILL REDACT EVERYTHING EXCEPT FOR THE LAST FOUR DIGITS OF THE ACCOUNT NUMBERS, THE FINANCIAL ACCOUNT NUMBERS.

THE COURT:  THAT'S WHAT I WAS WONDERING.

MR. LOKER:  YES.

THE COURT:  SO LET'S JUST MAKE SURE, I PULLED UP RULE 5.2 AS WELL.  SO EVERYTHING IN COMPLIANCE WITH THAT.

SO THE LAST FOUR DIGITS OF THE SOCIAL SECURITY, YOU ARE LEAVING THAT, AS WELL THE YEAR OF BIRTH AND THE LAST FOUR DIGITS OF THE FINANCIAL ACCOUNT NUMBERS?

MR. LOKER:  YES, YOUR HONOR.

THE COURT:  OKAY.  SO THE PARTIES' PROPOSAL MAKES SENSE TO THE COURT, JUST MAKE SURE THOSE DOCUMENTS THAT ARE GOING BACK TO THE JURY COMPLY.

LET ME JUST CONFIRM WITH COUNSEL.

SO THE COPIES WHICH I HAVE, FOR EXAMPLE, AND THE COPIES WHICH THE WITNESS WILL BE LOOKING AT, THEY ARE NOT GOING TO BE REDACTED OR THOSE ARE ALL GOING TO BE REDACTED AND THE SAME?

MR. LOKER:  WE USUALLY REDACT EVERYTHING SO EVERYTHING WE ARE PRESENTING ON THE SCREEN FOR THE JURY WILL BE REDACTED, THE BINDERS WE PROVIDE THE COURT ON THE 28TH WILL BE REDACTED AND THE WITNESS WILL HAVE REDACTED VERSIONS, JUST SO EVERYONE HAS THE SAME THING WE ARE LOOKING AT.

THE COURT:  THANK YOU, JUST MAKING SURE.

MR. LOKER:  MY APOLOGIES.

MR. NARITA:  THE ONE WRINKLE IN THAT, YOUR HONOR, POTENTIAL WRINKLE, IS THAT THE POLICE REPORT, AS YOU KNOW THERE'S A POTENTIALLY SIGNIFICANT ISSUE IN THIS CASE ABOUT

REDACTIONS THAT WERE ALREADY ON THE POLICE REPORT, AND SO IF WE START REDACTING ON TOP OF THE ADDITIONAL REDACTIONS THAT WERE ALREADY THERE, THAT WOULD BE CREATE A LOT OF CONFUSION.

SO PERHAPS MR. LOKER AND I CAN TALK ABOUT THIS OFF-THE-RECORD BUT WE WOULD WANT TO MAKE SURE THAT THE POLICE REPORT GETS TO THE JURY IN THE FORM THAT IT WAS IN OR IF SOME ADDITIONAL REDACTION WAS DONE TO IT BY THE PARTIES THAT SOMEHOW MADE REALLY CLEAR.

**THE COURT:**  WHY DON'T YOU JUST DO THOSE REDACTIONS IN A DIFFERENT COLOR OR IN A COLOR.

**MR. LOKER:**  A DIFFERENT COLOR OR WE CAN OVERLAY TEXT FOR OUR REDACTIONS.  BECAUSE THE POLICE OFFICER DID THEIR REDACTIONS JUST IN BLACK, SO WE CAN DISTINGUISH OUR OWN BY ADDING TEXT TO OUR REDACTIONS AND MAKE THAT CONSISTENT.

**THE COURT:**  THIS SEEMS VERY --

**MR. LOKER:**  WE CAN WORK IT OUT, YOUR HONOR.

**MR. NARITA:**  WE WILL TRY AND WORK THROUGH THAT WITH MR. LOKER, BUT THAT'S --

**THE COURT:**  MR. NARITA, LET ME CLARIFY.  DO YOU HAVE CONCERNS ABOUT THE REDACTIONS THAT THE POLICE PUT ON?

**MR. NARITA:**  WELL THEY KNOW WHAT THEY DID, SO WE DON'T WANT TO CHANGE THAT BECAUSE THAT IS WHAT WAS PRESENTED TO COMENITY, RIGHT.

**THE COURT:**  CORRECT, RIGHT.

**MR. NARITA:**  SO I THINK IT'S --

THE COURT: WHICH THE POLICE ALWAYS DO.

MR. NARITA: THEY EITHER DO OR THEY DON'T. THE POINT IS WE GOT A HIGHLY REDACTED DOCUMENT AND WE WOULD LIKE THE JURY TO SEE THAT HIGHLY REDACTED DOCUMENT IN THE FORM THAT WAS PROVIDED TO US SO IT KNOWS WHAT WE SAW AND WHAT WE DIDN'T SEE.

AND I JUST DON'T WANT TO CREATE CONFUSION BY THEN REDACTING OTHER THINGS ON IT AND HAVING THE JURY WONDER LIKE, OKAY, WELL WAIT, WHAT WAS THERE AND WHAT WASN'T THERE?

MR. LOKER: WE CAN MAKE IT CLEAR.

THE COURT: I THINK THERE ARE DIFFERENT WAYS, WHETHER IT'S THROUGH LABELING, LIKE WE DISCUSSED DOING IT A DIFFERENT COLOR FOR THAT ONE DOCUMENT OR -- TECHNOLOGY IS AN AMAZING THING, YOU COULD DO THE ORIGINAL ONE IN ONE COLOR, I THINK THERE ARE DIFFERENT WAYS TO DO THAT, SO I'M GOING TO HAVE PARTIES MEET AND CONFER.

HOPEFULLY YOU WON'T NEED COURT INTERVENTION, BUT LET ME KNOW BY NEXT TUESDAY AT THE PRE-EXCUSAL CONFERENCE IF THERE ARE ANY OUTSTANDING ISSUES REGARDING THE POLICE REPORT.

MR. LOKER: UNDERSTOOD.

THE COURT: THE OTHER WAY WHICH -- YEAH. YOU ARE VERY -- I WILL LET COUNSEL FINISH DISCUSSING THIS.

MR. NARITA: OKAY. THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. TURNING NOW TO THE DEPO DESIGNATIONS, IT LOOKS TO ME LIKE I HAVE A BINDER FROM EACH?

MR. LOKER: THAT'S CORRECT.

THE COURT: DID PARTIES MAKE AN EFFORT TO MEET AND CONFER REGARDING THE OBJECTIONS?

MR. LOKER: I MEAN, I DIDN'T OBJECT TO THEIR PORTIONS, YOUR HONOR.

IN TERMS OF THE OBJECTIONS TO OUR DESIGNATIONS, WE DISCUSS THEM, I BELIEVE THAT THEIR OBJECTIONS, WHERE THEY ARE SAYING IT WAS INCOMPLETE OR UNCLEAR, WHETHER CROSS DESIGNATIONS, I WAS UNDER THE IMPRESSION THAT WOULD HAVE RESOLVED ANY OF THEIR ISSUES, BUT THAT WAS THE EXTENT OF IT.

THE COURT: MR. NARITA?

MR. NARITA: THERE WASN'T A LOT OF TIME PERMITTED, YOUR HONOR, FOR MEETING AND CONFERRING BECAUSE WE GOT THESE KIND OF LATE IN THE DAY, BUT YOU KNOW, ON MR. LOKER'S POINT ABOUT COMPLETING THE TESTIMONY WITH OUR COUNTER DESIGNATIONS, THAT'S KIND OF THE POINT.

THERE WERE MULTIPLE INSTANCES, AND I'M SURE THERE'S FOLKS ON MY TEAM WHO ARE HERE WHO COULD SPEAK TO THE COURT WITH MORE SPECIFICITY, BUT THERE WAS MULTIPLE INSTANCES WHERE THERE WAS THINGS TAKEN CLEARLY OUT OF CONTEXT OR A QUESTION HERE AND AN ANSWER OVER THERE, AND IT WAS JUST, WE REALLY HAD TO DO A LOT OF WORK TO MAKE SURE THAT THE JURY IS ACTUALLY GETTING THE COMPLETE STORY, AND WE WERE DISAPPOINTED IN THAT.

AND ALSO IF YOUR HONOR IS BEING SO STRICT WITH THE PARTIES ABOUT TIME LIMITATION, FRANKLY I DON'T THINK WE SHOULD BE CHARGED WITH TIME TO PUT IN THE REST OF MR. LOKER'S DIRECT

EXAMINATION OR CROSS-EXAMINATION OF OUR WITNESSES.  IT'S -- A LOT OF THIS IS JUST NECESSARY TESTIMONY THAT HAS TO COME OUT FOR ANY OF HIS DESIGNATIONS TO MAKE SENSE.

SO WE DID OUR BEST WITH THE TIME THAT WAS PROVIDED TO US TO GET COUNTER-DESIGNATIONS BACK TO EVERYONE AND OBJECTIONS THAT WE THOUGHT MADE SENSE.

**THE COURT:**  BECAUSE WHAT I'M SEEING RIGHT NOW IS MASSIVE OBJECTIONS THROUGHOUT.  ALL OF THE DESIGNATIONS -- MY UNDERSTANDING IS THAT PARTIES HAD WANTED VIDEO CLIPS AND DO THESE VIDEO CLIPS BEFOREHAND.  AND YOU KNOW, FRANKLY SPEAKING, THAT 30 MINUTES OF PRECONFERENCE TIME, MOST THE TIME AND MOST JUDGES COUNT DEPO DESIGNATIONS GOING TO THOSE 30 MINUTES.  I COULD BURN YOUR WHOLE 30 MINUTES OF THE PRETRIAL CONFERENCE EACH DAY JUST GOING THROUGH THESE AND WE STILL PROBABLY WOULDN'T BE DONE.  SO I HAVE SOME CONCERN HERE.

**MR. NARITA:**  AND TO THE COURT'S CONCERN ABOUT TIME, THE OTHER THING THAT WE NOTICED AS THESE ALL PILED INTO US IS THERE IS A LOT OF DUPLICATION, THERE IS A LOT OF CUMULATIVE EXAMINATION ON THESE.  THE SAME POINT IS BEING MADE OVER AND OVER.  SO THERE IS --

**THE COURT:**  WELL PART OF IT IS BECAUSE THEY NEED TO SHOW THE REASONABLENESS OF THE INVESTIGATION.  SO IF THEY ARE GOING THROUGH DIFFERENT WITNESSES WHO SUPPOSEDLY LOOKED OR DIDN'T EXPLORE SOMETHING WHEN THESE ALLEGED INACCURACIES CAME IN, THEY ARE GOING TO NEED -- IF IT'S DIFFERENT WITNESSES OR

DIFFERENT PEOPLE FROM COMENITY, THEY MAY NEED TO HAVE THAT, RIGHT?

**MR. NARITA:** UNDERSTOOD.

BUT I THINK WHAT I WAS ALLUDING TO IS THERE MAY BE A WAY TO TRY AND CUT DOWN SOME OF THE CUMULATIVE NATURE OF SOME OF THE DESIGNATIONS THAT DON'T RELATE TO ANY SPECIFIC ACDV THAT SOMEONE MIGHT HAVE HANDLED BY TALKING WITH MR. LOKER, AND YOU KNOW, NOW THAT WE HAVE -- THAT WAS HIS DESIGNATIONS FOR A WHILE, AND WE HAVE COME UP WITH SOME IDEAS ABOUT STIPULATING TO CERTAIN FACTS THAT SEEM TO BE COMMON THROUGHOUT OUR INVESTIGATOR'S DEPOSITIONS.

IF WE COULD STIPULATE TO THOSE FACTS, WE COULD PROBABLY CUT OUT A LOT OF THE DEPOSITION TIME AND THAT WOULD ELIMINATE A LOT OF OUR OBJECTIONS, AND A LOT OF OUR COUNTER-DESIGNATIONS.

SO I'M NOT TRYING TO PREVENT HIM FROM PUTTING IN SOMETHING ABOUT HOW SOMEBODY INVESTIGATED AN ACDV, BUT THERE WAS A LITANY OF QUESTIONS HE ASKED PEOPLE OVER AND OVER AGAIN THAT'S JUST THE SAME THING WITH EACH ONE THAT WE THINK IN THE END IS JUST CUMULATIVE AND MAYBE WE COULD STIPULATE TO CERTAIN FACTS ALONG THOSE LINES THAT WOULD CUT DOWN A LOT OF THIS TIME AND I THINK THAT WOULD JUST NARROW THINGS.

**THE COURT:** MR. LOKER?

**MR. LOKER:** THAT'S FINE, YOUR HONOR.  MAYBE WE CAN GO DOWN TO THE LOUNGE AFTER THIS AND TALK.

WE HAVE OUR TIME RESTRAINTS, I WENT THROUGH THE VIDEOS,

MADE THE VIDEOS, AND WE ARE WITHIN THE TIME FRAME, SO I THOUGHT THAT THE WE WERE PRETTY DIRECT, BUT OF COURSE I WILL TALK TO MR. NARITA THIS EVENING.

**THE COURT:** OR MAYBE THIS AFTERNOON.

**MR. LOKER:** CORRECT. YEAH. AFTER WE ARE DONE HERE WE ARE PLANNING TO GO DOWN TO THE LOUNGE.

**THE COURT:** I AM MORE THAN HAPPY TO LET YOU ALL DO THAT, BECAUSE I'M -- THE NUMBER OF OBJECTIONS HERE IS NOT TENABLE, SO YOU ALL NEED TO DO BETTER.

IN THAT CASE I MAY SUGGEST WE GIVE YOU THE -- I'M WONDERING WHETHER OR NOT WE NEED TO GIVE YOU THE DEPO DESIGNATIONS BACK THEN YOU ALL DROP THEM OFF ON THURSDAY WITH THE EXHIBIT BINDERS.

**MR. LOKER:** THAT MAKES SENSE, YOUR HONOR.

**THE COURT:** SO JUST REMIND ME TO RETURN THE DEPO DESIGNATION BOOKS, IF POSSIBLE -- BINDERS.

ALL RIGHT. SO WHERE I'M AT AT THIS POINT IS THE JURY INSTRUCTIONS AND THE LAST CHANCE SETTLEMENT OPPORTUNITY ARE THE TWO THINGS LEFT ON MY AGENDA.

IS THERE ANYTHING ELSE WE NEED TO DISCUSS TODAY?

**MR. LOKER:** NOT FOR THE PLAINTIFF, YOUR HONOR.

**MR. NARITA:** NO, NOT FOR THE DEFENDANT.

**THE COURT:** ALL RIGHT.

SO -- WELL ONE LAST THING BEFORE WE LEAVE DEPO DESIGNATIONS. IS THERE, IN TERMS OF STIPULATION OF FACTS,

WHICH I THINK MAKES SENSE, AND SOME OF THE COMMENTS I HAVE FOR YOU REGARDING JURY INSTRUCTIONS ARE HEY, CAN WE AGREE TO DEFINE WHAT A CREDIT REPORTING AGENCY IS, AND WHO ARE CREDIT REPORTING AGENCIES FOR PURPOSES OF THIS CASE, WITH FOR EXAMPLE A STIPULATION THAT I THOUGHT OF WHICH WOULD MAKE THINGS EASIER FOR OUR JURORS.

SOMETIMES I HAVE PARTIES DO A CAST OF CHARACTERS.  I DON'T THINK WE NECESSARILY NEED TO GET TO THAT POINT HERE, MAYBE WE DO, MAYBE WE DON'T, BUT I THINK SOME OF THE BASIC FACTS OF CREDIT REPORTING AGENCIES ARE X, AND -- OR THE FOLLOWING ENTITIES ARE CREDIT REPORTING AGENCIES, JUST SO THAT THEY KNOW WHO NEED TO REPORT WHAT TO WHOM.

**MR. NARITA:**  WHEN THEIR NAMES COME UP IN THE TESTIMONY, THE JURY WILL UNDERSTAND WHO THEY ARE.

**THE COURT:**  RIGHT.  AND YOU DON'T HAVE TO LAY THE FOUNDATION EVERY TIME, AND WHO ARE THEY AND WERE THEY -- SO I THINK THAT WOULD BE HELPFUL.

**MR. NARITA:**  OKAY.

**THE COURT:**  SO IN TERMS OF TIME FRAMES FOR STIPULATIONS, JUST SO THAT -- BECAUSE OFTEN I WILL READ STIPULATIONS OFF AT THE BEGINNING RIGHT BEFORE TESTIMONY BEGINS.  I CAN ALSO DO IT AT DIFFERENT POINTS, IF THAT MAKES SENSE, BUT WHEN DO -- WOULD IT BE HELPFUL TO HAVE A DEADLINE FOR YOUR STIPULATIONS?

**MR. NARITA:**  IT'S HELPFUL FOR US.

**MR. LOKER:**  I AGREE, YOUR HONOR.

**THE COURT:**  WHEN CAN PARTIES GET THESE DONE IN GOOD FAITH?  BECAUSE I DON'T WANT TO HAVE MULTIPLE ROUNDS OF HAVING TO SEE YOU ALL OVER AND OVER.

**MR. NARITA:**  IS IT TOO LATE TO FILE SOMETHING ON THE 31ST OF OCTOBER?

**THE COURT:**  YES.

**MR. NARITA:**  THE 30TH?

**MR. LOKER:**  I WAS GOING TO ASK FOR THIS FRIDAY, JUST TO GET IT DONE.

**MR. NARITA:**  OKAY.  WELL --

**MR. LOKER:**  IS THAT TOO LATE?

**THE COURT:**  THIS FRIDAY WOULD WORK, I'M WORRIED THAT YOU ARE GOING TO -- I DON'T WANT YOU TO SHORT CHANGE YOUR DISCUSSIONS.

OCTOBER 28TH, THE SAME DAY WE ARE DOING THE PRETRIAL CONFERENCE?

**MR. LOKER:**  THAT'S GOOD YOUR HONOR.

**MR. NARITA:**  THANK YOU, YOUR HONOR.

**THE COURT:**  ALL RIGHT.

SO LET'S MOVE ON TO JURY INSTRUCTIONS.

SO COUNSEL, I RECEIVED YOUR BRIEFS REGARDING JURY INSTRUCTION NUMBER 32.  THE COURT, JUST AS A TENTATIVE, WAS INCLINED TO AGREE WITH PLAINTIFF, IT SEEMED AS THOUGH DEFENDANT WAS ASKING THE COURT TO ADOPT THE STANDARDS FROM OTHER

CIRCUITS, AND PERHAPS IT'S THE WAY OR THE DIRECTION THAT THE LAW IS GOING, WHO KNOWS, BUT RIGHT NOW IT'S NOT THE LAW IN THE NINTH CIRCUIT.  AND I'M HESITANT TO GO FURTHER THAN WHAT IS ALREADY STATED WITHIN PLAINTIFF'S PROPOSAL, SO I FIGURED WE WOULD HAVE SHORT ARGUMENT, A COUPLE MINUTES, REGARDING EACH, FROM EACH SIDE.

**MR. LOKER:**  THANK YOU, YOUR HONOR.

**MR. NARITA:**  THANK YOU, YOUR HONOR.

**MS. GIVENTAL:**  THANK YOU, YOUR HONOR.

WE ARE ASKING THE COURT TO ADD ONE SENTENCE TO THE SAME JURY INSTRUCTION.  IN SUBSTANCE, WE ARE AGREED ON THE JURY INSTRUCTION ABOUT THE DEFINITION ACCURACY, WE JUST WANT TO ADD THE INFORMATION TO THE JURY WHICH IT'S NOT NEW, IT'S BEEN -- COURTS ALL OVER THE U.S., INCLUDING THE NINTH CIRCUIT, HAVE AGREED THAT SOME DISPUTES ARE NOT ACTIONABLE.

SO IT'S A SENTENCE THAT DESCRIBES A STANDARD FOR SOMETIMES A DISPUTE IS TOO COMPLEX TO BE ACTIONABLE.

NOW UNTIL RECENTLY UNTIL THE EMERGING LAW THAT WE ARE CITING ALL OVER OUR BRIEF, THE DISCUSSION OR THE STANDARD THAT WAS DISCUSSED FOR THAT WAS FACTUAL VERSUS LEGAL.  THE NINTH CIRCUIT HAS TAKEN UP THAT QUESTION IN GROSS, CITED IN OUR BRIEF.

THE QUESTION OF THE STANDARD AS OBJECTIVELY AND READILY VERIFIABLE, THAT HAS NOT BEEN TAKEN UP BY THE NINTH CIRCUIT, IT'S NOT THAT IT WAS IN FRONT OF THE NINTH CIRCUIT IN DAVIS

LIKE PLAINTIFF'S BRIEF SAYS, IT WASN'T.  THE DAVIS -- IT'S ACTUALLY ABOUT TO GO UP TO THE NINTH CIRCUIT TO BE DECIDED BECAUSE THE NINTH CIRCUIT -- BASICALLY THERE WAS -- IN DAVIS THERE WAS AN MSJ RULING THAT SAID THAT THE REPORTING WAS NOT PATENTLY INCORRECT, MOTION FOR SUMMARY JUDGEMENT GRANTED FOR DEFENSE, WENT UP ON APPEAL, THE NINTH CIRCUIT SAID, WELL YOU HAVEN'T LOOKED AT IT, IS IT MATERIALLY MISLEADING.

SO IT WENT DOWN AND THEN THE SAME COURT, THE DISTRICT COURT IN THE CENTRAL DISTRICT DECIDED THAT IT'S NOT MISLEADING, IT'S ACTUALLY NOT ACTIONABLE, APPLIED THE OBJECTIVELY AND REASONABLY VERIFIABLE STANDARD, AND NOW THAT IS UP ON APPEAL BUT THE MOTION FOR SUMMARY JUDGEMENT WAS GRANTED EMPLOYING THAT STANDARD.

SO THE POINT IS THE QUESTION OF THERE ARE SOME DISPUTES THAT ARE NOT ACTIONABLE, THAT'S BEEN TAKEN UP BY THE NINTH CIRCUIT, BUT WHAT HASN'T BEEN FULLY DECIDED IS HOW DO WE TELL THE COURTS AND THE JURY WHAT IS OR ISN'T ACTIONABLE?

AND HERE THIS IS A REALLY COMPLEX DISPUTE THAT INVOLVES ESSENTIALLY, IN OUR VIEW, COMENITY HAVING TO BE A TRIBUNAL AND TO DO THINGS THAT ARE NOT REASONABLE FOR A FURNISHER TO HAVE TO DO AS PART OF THEIR INVESTIGATION TO HAVE TO -- WELL, PLAINTIFF WOULD SAY THAT YOU SHOULD CALL THE IDENTITY THEFT VICTIM.  WE WOULD PUT ON EVIDENCE TO SHOW THAT THAT'S NOT THE STANDARD, THAT'S NOT WHAT'S DONE IN THE INDUSTRY, RIGHT.

IF THAT IS WHAT WOULD BE NECESSARY IN ORDER TO RESOLVE

THIS DISPUTE THEN WE THINK THAT THIS DISPUTE IS BEYOND WHAT IS ACTIONABLE UNDER THE FCRA FOR A FURNISHER TO HAVE TO DO.

AND SO WE THINK THAT IT'S IMPORTANT FOR THE JURY TO KNOW THAT THEY DON'T JUST HAVE TO DECIDE WHETHER IT'S PATENTLY INCORRECT OR MISLEADING, THEY HAVE THIS THIRD OPTION OF SAYING IT'S JUST NOT ACTIONABLE BECAUSE YOU CAN'T ASK A FURNISHER TO DECIDE SOMETHING SO COMPLEX TO SO MANY DIFFERENT PARAMETERS GOING ON, RIGHT, THAT YOU COULD CALL THIS PERSON, YOU COULD CALL THIS PERSON, YOU COULD INVESTIGATE WITH THE HOMELAND SECURITY ABOUT HOW MANY TIMES HE'S ENTERED THE COUNTRY OR NOT, AND THEN AT SOME POINT THE JURY WILL HEAR ALL THIS EVIDENCE AND DECIDE IT WAS INCORRECT OR IT WAS PATENTLY INCORRECT OR IT WAS MATERIALLY MISLEADING OR HAVE THE OPPORTUNITY TO SAY --

**THE COURT:** OBJECTIVELY AND READILY -- WELL, I'M JUST GOING TO -- LET ME START WITH AN EARLIER QUESTION.

SO COUNSEL, IN TERMS OF THE DAVIS, REMIND ME OF THE FACTS IN DAVIS, DID IT INVOLVE IDENTITY THEFT?  I DON'T BELIEVE IT DID, CORRECT.

**MS. GIVENTAL:** IT DOESN'T INVOLVE IDENTITY THEFT.

**THE COURT:** WHAT DID IT INVOLVE, EXACTLY -- SORRY, IT'S BEEN A WEEK SINCE I LOOKED AT YOUR BRIEFS SO I'M REMINDING MYSELF.

**MS. GIVENTAL:** IT INVOLVED SORT OF A MULTI-LAYERED DISPUTE ABOUT HOW MUCH WAS OWED ON A LEASE AT THE END, AND THERE WAS COMPETING ARGUMENTS ABOUT HOW MUCH WAS OWED AND SO

THERE WAS -- THE PLAINTIFF BELIEVED THAT THEY RECEIVED THIS INFORMATION FROM THIS PARTY AND THIS ONE FROM THE LOAN WAS ASSIGNED TO -- THERE WAS AN ASSIGNMENT, AND THEN AT THE SAME TIME, I GUESS THEY ARE GETTING INFORMATION FROM THEIR BANK THAT THEY THINK THAT THEY MADE A PAYMENT, AND SO THERE'S ALL THESE DIFFERENT PIECES TO IT.

THE COURT:  AND PART OF THE ISSUE IN DAVIS IS IT WAS -- THERE WAS AN OPEN LEGAL DISPUTE, LIKE THERE WAS AN OPEN LEGAL QUESTION OR A LEGAL DISPUTE, SOMETHING WHICH THE BANK WOULD NOT BE IN A SITUATION TO OBJECTIVELY AND READILY VERIFY.

MS. GIVENTAL:  IT WASN'T ACTUALLY LEGAL, IT WAS FACTUAL -- AND YOU KNOW WHAT, I THINK FACTUAL AND LEGAL DISPUTES, IT'S REALLY JUST A QUESTION OF FRAMING A LOT OF THE TIMES, RIGHT, BECAUSE IT COULD BE A DISPUTE ABOUT SOME OF THE CASES WE CITE TO, IT'S A DISPUTE ABOUT HOW MUCH IS OWED TO A LANDLORD, RIGHT.

AND SO YOU COULD CALL IT A LEGAL DISPUTE BECAUSE IT'S A DISPUTE ABOUT HOW MUCH IS, LIKE IN ROBERTS, GOES TO A LANDLORD, BUT THEN ALSO YOU COULD SAY IT'S A FACTUAL DISPUTE ABOUT WHAT HAPPENED, FIRST THIS HAPPENED AND THEN THIS HAPPENED, AND IF YOU FIGURE OUT THE SEQUENCE OF EVENTS AND APPLY IT TO THE LAW AND THEN YOU LOOK AT THE LEASE, THEN THAT'S -- YOU KNOW, IS THAT A FACTUAL DISPUTE OR A LEGAL DISPUTE?

I WOULD SAY THAT IN DAVIS IT'S MORE FACTUAL THAN LEGAL BECAUSE IT'S ABOUT LITERALLY HOW MUCH MONEY WAS RECEIVED.  BUT

THEN THERE'S THESE DEFENSES THAT I THINK YOU ARE PROBABLY REFERRING TO THAT ARE LEGAL IN NATURE.

BUT THAT'S THE THING, IT'S COMPLEX AND THE FACTUAL VERSUS LEGAL DELINEATION HAS BEEN REJECTED BY THE NINTH CIRCUIT. GROSS SAID NO, THAT'S NOT WHERE WE DRAW THE LINE, LIKE SOMETIMES FURNISHERS WILL HAVE TO INVESTIGATE EVEN LEGAL DISPUTES.

AND IN FACT, IN DAVIS, THE MOST RECENT DECISION THAT IS NOW GOING UP ON APPEAL, THE PLAINTIFF WAS ARGUING THAT IT SHOULD BE A FACTUAL VERSUS LEGAL DISPUTE, NO, THE DEFENSE WAS ARGUING IT SHOULD BE FACTUAL VERSUS LEGAL, AND THEN THE PLAINTIFF CAME IN AND SAID NO, THAT STANDARD IS OUTDATED, IT SHOULD BE OBJECTIVELY AND READILY VERIFIABLE.

AND THE COURT AGREED WITH THE PLAINTIFF BUT RULED IN FAVOR OF THE DEFENSE BECAUSE THEY FOUND THAT YOU CAN'T JUST DRAW THIS BRIGHT LINE AT FACTUAL VERSUS LEGAL, YOU HAVE TO LOOK AT THE COMPLEXITY OF THE DISPUTE AND WHETHER IT'S FAIR TO REQUIRE A FURNISHER, AND IN SOME OF THE CASES THE CRA'S, TO MAKE THIS COMPLEX LEVEL OF A DECISION IN A DISPUTE THAT THEY HAVE A VERY MINIMAL AMOUNT IN RESOURCES TO RESOLVE.

**THE COURT:** THIS SOUNDS LIKE A CLOSING ARGUMENT TO ME.

**MS. GIVENTAL:** WELL, WE WOULD LIKE TO MAKE THIS -- WE COULD MAKE THIS A CLOSING ARGUMENT BUT WE THINK THAT THE JURY IS ENTITLED TO AN INSTRUCTION THAT TELLS ME THAT THIS IS AN

OPTION, OTHERWISE NOWHERE AMONG THEM, RIGHT, LIKE WHAT THEY ARE LOOKING AT IS THE ELEMENT OF ACCURACY IS, IT HAS TO BE EITHER PATENTLY INACCURATE OR INCOMPLETE.

OKAY, WELL IF THEY AGREE WITH PLAINTIFF THAT HE'S A VICTIM OF IDENTITY THEFT, THEN THEY ARE LIKE, IT'S PATENTLY INACCURATE, DONE.

BUT WHERE DO THEY GET TO SEE THE OPTION TO SAY, WE AGREE WITH THE PLAINTIFF?  HE IS A VICTIM OF IDENTITY THEFT.  AND THIS IS JUST AN EXAMPLE, RIGHT, BUT WE THINK THAT THERE'S NO WAY THAT COMENITY COULD HAVE FIGURED THAT OUT BASED ON THE READILY AVAILABLE INFORMATION.

**THE COURT:**  BUT DOESN'T THAT GO TO THE REASONABLE INVESTIGATION?  BECAUSE IT SEEMS AS THOUGH THE DEFINITION WHICH YOU ARE OFFERING -- THE INSTRUCTION WHICH DEFENDANT IS OFFERING WOULD BASICALLY BLEND THE STANDARDS, IT WOULD BLEND THE DIFFERENT ELEMENTS TOGETHER INTO ONE AND BASICALLY CAUSE THEM TO COLLAPSE UPON THEMSELVES, IN TERMS OF THEY WOULD AUTOMATICALLY --

**MS. GIVENTAL:**  I THINK YOUR HONOR IS VERY RIGHT.

IF YOU LOOK AT THE CASE LAW, AND I READ EVERY SINGLE CASE THERE IS ON THE SUBJECT --

**THE COURT:**  I'M SURE YOU HAVE.  I CAN TELL.

**MS. GIVENTAL: :**  -- THERE WAS AN OVERLAP BETWEEN REASONABLE AND ACCURACY.  SO FINE, WE COULD PUT IT IN THE REASONABLENESS INSTRUCTION.  SOMEWHERE, THE JURY SHOULD BE ABLE

ABLE TO MAKE THAT DECISION THAT HEY, THIS IS NOT REASONABLE TO HAVE ASKED COMENITY TO DO THIS, THIS IS NOT AN ACTIONABLE DISPUTE.

COURTS, NOW SO FAR FIVE CIRCUITS, HAVE DECIDED THAT THAT HAPPENED AT THE LEVEL OF ACCURACY. YOU DECIDE THAT EARLIER THAN YOU LOOK AT THE INVESTIGATION. BECAUSE IT'S NOT -- YOU DON'T GET THERE. BUT WE COULD PUT IT SOMEWHERE ELSE, WE JUST THINK IT'S IMPORTANT FOR THE JURY TO KNOW THAT THAT'S AN OPTION OTHERWISE THEY DON'T KNOW, AND AT THE END OF THE DAY THEY ARE JUST LIKE LOOKING AT WAS THIS INVESTIGATION REASONABLE, BASED ON THE THINGS WE ARE HEARING, RATHER THAN SHOULD THIS INVESTIGATION HAVE BEEN REQUIRED BECAUSE IF THEY GOT THE WRONG OUTCOME OR IF THEY GOT -- YOU KNOW, THEY DIDN'T LOOK AT SOME THINGS BUT LOOKING AT THOSE THINGS REQUIRED, I DON'T KNOW, CALLING AROUND FOR 30 DAYS OR SENDING A SUBPOENA.

**THE COURT:** OKAY.

MR. LOKER?

**MR. LOKER:** IT'S PRETTY STRAIGHT FORWARD FOR ME, YOUR HONOR.

SO IN CRAFTING THE JURY INSTRUCTION, WHAT WE DO IS WE LOOK AT WHAT'S THE STANDARD FOR, WHAT SHOULD BE EXCLUDED IN A JURY INSTRUCTION? WHAT WE HAVE, PAGE 1, LINE 22 OF OUR BRIEF, IS THAT THE JURY INSTRUCTION NEEDS TO CORRECTLY STATE THE LAW.

SO FROM THERE WHAT WE DO IN CRAFTING OUR JURY INSTRUCTION IS WE LOOK AT THE NINTH CIRCUIT. AND THE NINTH CIRCUIT, TEN

TIMES, HAS DEFINED "ACCURACY" TO MEAN WHAT WE PUT IN OUR JURY INSTRUCTION.  INCLUDED IN THOSE TEN TIMES IS A CASE OF DREW V. EQUIFAX, WHICH IS IN OUR BRIEF PAGE 3, LINE 7, AND THAT'S AN IDENTITY THEFT SITUATION.

SO THE NINTH CIRCUIT LOOKED AT ACCURACY IN TERMS OF IDENTITY THEFT, CAME UP WITH THIS DEFINITION, HAS REPEATED ITS DEFINITION, THE SAME DEFINITION FOR "ACCURACY" TEN TIMES.

AND WHEN WE LOOK AT THE OTHER CASES THAT MS. GIVENTAL IS LOOKING AT, THOSE ARE PRETTY UNIQUE SITUATIONS.  SO PERHAPS THOSE CIRCUIT COURTS CAME UP WITH A VARIANCE OF THE RULE BASED UPON THE COMPLEXITIES THAT WERE BEFORE THEM.

I CAN'T SPECULATE ABOUT WHAT THE NINTH CIRCUIT MIGHT DO, THOSE JUDGES HAVE BEEN PRACTICING ON THE BENCH PERHAPS LONGER THAN I HAVE BEEN ALIVE, SO I DON'T KNOW WHAT THEY ARE GOING TO DO WHEN THEY GET THERE, BUT IF THEY DO CHANGE OF THE DEFINITION, AND WE HAVE A SUBSEQUENT TRIAL AFTER THAT, PERHAPS WE WILL ADOPT THAT DEFINITION, BUT RIGHT NOW THE STATE OF THE LAW IN THE NINTH CIRCUIT IS THE ACCURACY DEFINITION THAT WE PROPOSED TO THE COURT.

**THE COURT:**  OKAY.  ALL RIGHT.

OKAY.  WELL THANK YOU FOR ARGUMENT ON THAT.  I THINK I MAY, GIVEN -- I'M PLANNING TO ISSUE A WRITTEN ORDER ON THIS ONE, A VERY SHORT WRITTEN ORDER, SO I WILL JUST GO AHEAD AND TAKE THAT UNDER SUBMISSION BUT YOU WILL SEE SOMETHING OR ELSE I WILL RULE FROM THE BENCH ON IT NEXT TIME BUT I AM INCLINED TO

GO WITH PLAINTIFF'S PROPOSED INSTRUCTION.

**MR. LOKER:** THANK YOU, YOUR HONOR.

**THE COURT:** SO LET'S WALK THROUGH THE REST OF THEM BRIEFLY.

**MR. LOKER:** OKAY.

**THE COURT:** IF IT'S HELPFUL. MS. GIVENTAL, ARE YOU GOING TO BE TAKING THE LEAD?

**MS. GIVENTAL:** YES, YOUR HONOR.

**THE COURT:** WONDERFUL. AND AM I PRONOUNCING YOUR LAST NAME CORRECTLY?

**MS. GIVENTAL:** GIVENTAL, YES.

**THE COURT:** WONDERFUL.

ALL RIGHT. LET ME GET MY JURY INSTRUCTION BINDER. ONE MOMENT.

I HADN'T REALLY DISCUSSED HOW I WAS PLANNING TO INSTRUCT THE JURY AND SO FORTH, SO JUST SO YOU KNOW, I AM INTENDING TO PRE-INSTRUCT THE JURY, NOT IN TERMS OF THE FULL SUBSTANTIVE INSTRUCTIONS, AS TO FCRA, I THINK THAT'S -- GIVEN IT'S A THREE-DAY TRIAL, IT FEELS LIKE THAT WOULD BE A LOT IN TERMS OF THE INSTRUCTION, BUT I'M PLANNING DO THE ONE SERIES, WHAT I'M REFERRING TO AS THE ONE SERIES.

SO BEGINNING WITH 1.3 AND GOING THROUGH 1.21, IN TERMS OF THE ONES WHICH COUNSEL HAD STIPULATED TO, I'M LOOKING THROUGH THEM, AND I ALSO WILL LIKELY ADD -- I MAY ADD A COUPLE REGARDING EVIDENCE FROM THE 2.0 SERIES.

I WAS LOOKING AT THE EXPERT OPINION TESTIMONY, I WAS LOOKING AT POSSIBLY -- ACTUALLY THAT'S THE ONLY ONE I WAS LOOKING AT, BUT I MAY INCLUDE THAT ONE AS WELL IN THE PRE-INSTRUCTION, AND THEN WOULD INSTRUCT AS TO EVERYTHING ELSE AND REPEAT THOSE, SUCH AS BURDENS OF PROOF AND SUCH, I MAY BE REPEATING THEM IN MY INSTRUCTIONS TO THE JURY AT THE END BUT I WILL MAKE SOME FINAL CHOICES.

MS. GIVENTAL:  THANK YOU, YOUR HONOR.

THE COURT:  OKAY.  SO LET'S GO WITH THE DISPUTED INSTRUCTIONS.

SO WE DISCUSSED WHAT PARTIES HAVE LABELED AS NUMBER 32, THEN WE HAVE NUMBER 33 AND THE INVESTIGATION OBLIGATION.

AND SO SUCCINCTLY, JUST BECAUSE I HAVEN'T LOOKED AT YOUR AUTHORITY AT THIS POINT, I'M JUST GOING TO ASK EACH SIDE TO TALK TO ME FOR A MINUTE OR TWO, AND I DO MEAN A MINUTE OR TWO THIS TIME, JUST ABOUT THE DIFFERENCES.  SOME OF THESE THE DIFFERENCES SEEMED REALLY MINOR.  WHAT THE DIFFERENCES ARE AND WHY THEY ARE IMPORTANT OR WHY YOUR SIDE IS RIGHT, SO TO SPEAK.

SO MR. LOKER, I WILL BEGIN WITH YOU THIS TIME.  SO WE ARE BEGINNING WITH NUMBER 33.

MR. LOKER:  THANK YOU, YOUR HONOR.

IN TERMS OF NUMBER 33, I'M TRYING TO REMEMBER THE DISPUTE THAT MS. GIVENTAL AND I DISCUSSED, BUT TO SIMPLIFY THINGS, WE ARE FINE WITH THEIR INSTRUCTION.

MS. GIVENTAL:  OKAY.

MR. LOKER:  I DON'T REMEMBER WHY WE WERE FIGHTING.

MS. GIVENTAL:  IT WAS A QUESTION OF EMPHASIS, BUT THIS IS ONE OF THE ONES WHERE THE DIFFERENCES WERE RELATIVELY MINOR BUT WE THOUGHT OURS WAS MORE CLEAR AND IT WAS IMPORTANT TO US AND I THINK MAYBE IT WAS LATE.

MR. LOKER:  THAT ONE WE ARE FINE WITH THEIR INSTRUCTION, YOUR HONOR.

MS. GIVENTAL: WE WILL TAKE THAT.

THE COURT:  OKAY.  SO PLAINTIFF STIPULATES TO COMENITY DISPUTED INSTRUCTION NUMBER 33.

I'M STILL GOING TO REVIEW THEM, SO I WILL LET YOU KNOW IF I DISAGREE.

NUMBER 34.  REASONABLE INVESTIGATION.

MS. GIVENTAL:  DID YOU WANT ME TO GO FIRST THIS TIME.

THE COURT:  I WILL GO FIRST WITH YOU THIS TIME, YES.

MS. GIVENTAL:  OKAY.

SO OUR VERSION HAS -- WE FEEL THAT WE ARE LOOKING AT THE SAME CASES AND PLAINTIFF IS TAKING OUT ALL THE STUFF THAT WAS POTENTIALLY FAVORABLE TO THE DEFENSE IN TERMS OF DEFINITION OF WHAT MAKES A REASONABLE INVESTIGATION AND LEAVES OUT ALL THE HARSHER THINGS AND WE THINK THAT YOU NEED TO HAVE BOTH.

SO FOR EXAMPLE, ONE OF THE THINGS THAT IS IN GOREMAN AND A BUNCH OF CASES THAT CAME AFTERWARDS IS THAT IF THE INFORMATION ABOUT THE DISPUTE IS VERY SCANT AND VAGUE, YOU KNOW THAT BRACKETS WHAT YOU CAN INVESTIGATE BECAUSE YOU DON'T KNOW AS

MUCH ABOUT IT.

KICKING THAT PHRASE OUT FROM GOREMAN FROM THE INSTRUCTION DOESN'T LET THE JURY KNOW, YOU KNOW, THAT YOU REALLY NEED TO LOOK AT WHAT INFORMATION IS BEING PROVIDED.

AND THAT'S -- IT'S COMING OUT, I MEAN WE HAVE DIRECT QUOTES FROM EACH NINTH CIRCUIT CASE THAT WE ARE CITING, INCLUDING DREW THAT WAS JUST QUOTED FROM ORAL ARGUMENT.  WE ARE QUOTING THAT LANGUAGE BUT WE ARE NOT QUOTING IT BECAUSE WE ARE TAKING IT OUT OF QUOTES FOR THE INSTRUCTION.

**THE COURT:**  MR. LOKER?

**MR. LOKER:**  IN TERMS OF THAT JUST LOOKING AT JURY INSTRUCTION 34 OFFERED BY COMENITY, OUR POSITION IS THAT THE FIRST PORTION IS MISLEADING.  SPECIFICALLY WHAT I'M REFERRING TO IS THE NATURE OF THE DISPUTE.

SO READING THE FULL INSTRUCTION, OR SENTENCE RATHER, IN DETERMINING WHETHER COMENITY CONDUCTED A REASONABLE INVESTIGATION, THE PERTINENT QUESTION IS WHETHER COMENITY ACTED REASONABLY IN LIGHT OF WHAT IT LEARNED ABOUT THE NATURE OF THE DISPUTE FROM THE DESCRIPTION IN THE NOTICE OF THIS DISPUTE IT RECEIVED FROM THE CONSUMER REPORTING AGENCY.

OUR POSITION IS THAT SECTION, THAT SENTENCE IS MISLEADING BECAUSE THERE IS A FOOTNOTE WITHIN THAT PORTION OF THE OPINION WHERE THE NINTH CIRCUIT SAYS THAT WE DON'T MEAN TO CABIN THE SCOPE OF THE INVESTIGATION BY THE NATURE OF THE DISPUTE.  WHEN THE COURT IS LOOKING AT THE NATURE OF THE DISPUTE, THEY ARE

TALKING ABOUT DISPUTE CODES THAT WERE APPLIED.

HERE IT'S A 103, OTHER DISPUTE CODE OPTIONS 104.  AND WHAT BECOMES CONFUSING ABOUT THAT IS IT SOUNDS LIKE THE JURY CAN SIMPLY LOOK AT THE ACDV CO103 AND GO FROM THERE, BUT THE NINTH CIRCUIT SAID THE INVESTIGATION NEEDS TO GO FURTHER, IT DOESN'T LIMIT THE SCOPE OF THE DISPUTE.

**THE COURT:**  LET ME ASK, MY INITIAL TAKE ON THIS, AND THIS WAS A FIVE-MINUTE NOT LOOKING AT THE CASE LAW REVIEW WAS WHY DO WE NEED A JURY INSTRUCTION ON THIS, ISN'T THIS SOMETHING WHICH PARTIES ARE GOING TO BE INCLUDING TESTIMONY AND OTHER THINGS ABOUT AND ISN'T REASONABLENESS SOMETHING WHICH THE JURY IS WELL EQUIPPED TO --

**MR. LOKER:**  AND I DIDN'T WANT TO TALK OVER YOU.

WE HAVE GONE BOTH WAYS ON THAT, YOUR HONOR, SOMETIMES WE HAVE HAD THE FCRA INSTRUCTION I'VE OFFERED, SOMETIMES WE HAD NO JURY INSTRUCTION.

I'M OKAY ON THE PLAINTIFF'S SIDE HAVING NO JURY INSTRUCTION AND WE JUST PRESENT THE -- AND OBVIOUSLY THE TESTIMONY, AND ONCE WE GET TO CLOSING ARGUMENT WE CAN TALK ABOUT WHY WE THINK WHAT HAPPENED WAS UNREASONABLE.

SO LACKING A JURY INSTRUCTION, I THINK IS FINE ON OUR END.

**THE COURT:**  ALL RIGHT.  MS. GIVENTAL?

**MS. GIVENTAL:**  I WAS JUST GOING TO SAY FIRST OF ALL, WE DON'T VIEW THE SENTENCE FROM GOREMAN, TALKING ABOUT DISPUTE CODES, GOREMAN NEVER DISCUSSED DISPUTE CODES, I DON'T THINK THE

DISPUTE CODES IS THE DESCRIPTION OF THE INVESTIGATION WAS IN GOREMAN.  AND ALSO THAT PHRASE OR THAT CONCEPT THAT WHAT YOU GET FROM THE CRA'S THAT TELLS YOU AND WHAT INFORMATION YOU RECEIVED IS WHAT ENCAPSULATES THE DISPUTE IS IN GOREMAN THREE DIFFERENT TIMES.

ONE OF THE TIMES IT IS FOOTNOTED BUT THE OTHER TWO TIMES IT'S NOT.  WE ARE NOT SAYING THAT YOU ONLY LOOK AT DISPUTE CODE 103 AND THAT'S IT, YOU LOOK AT WHAT THE CRA HAS PROVIDED TO YOU, AND BASED ON WHAT'S PROVIDED, THAT ENCAPSULATES WHAT YOU HAVE TO DO.  BUT YOU DON'T START IMAGINING, LET ME KNOW ABOUT WHAT THE DISPUTE MIGHT BE, IT'S WHAT IS PROVIDED TO YOU, YOU CAN'T JUST START GUESSING.

**THE COURT:**  OKAY.

**MR. LOKER:**  AND ANOTHER OPTION, YOUR HONOR, THERE IS CERTAIN CRITERIA WITHIN A STATUTE ITSELF, 15 USC 1681 F2B1, THAT IS OFTEN QUOTED.

SO FOR EXAMPLE, ROBBINS, JUDGE KOH BEFORE SHE WE WENT UP TO THE NINTH CIRCUIT, IN ROBBINS QUOTED THAT SECTION AND SAID THAT SPECIFIC STATUTE THAT CONTAINS THE WHAT SHOULD BE REQUIRED, FOR A REASONABLE INVESTIGATION.

SO FROM THE PLAINTIFF'S PERSPECTIVE WE ARE FINE JUST DROPPING THE INSTRUCTION ON ITS ENTIRETY.  ANOTHER OPTION WOULD BE INCLUDING THAT STATUTE.

**MS. GIVENTAL:**  I THINK AN INSTRUCTION IS CRUCIAL AND ALSO --

THE COURT: SO SORRY. MS. GIVENTAL, HOLD ON.

WHAT WAS THE -- WHAT IS THE LANGUAGE FROM THE STATUTE OR WHAT SECTION OF WHAT PART OF THE STATUTE?

MR. LOKER: 6181-S-2B1.

THE COURT: OKAY.

MS. GIVENTAL: IT DOESN'T HAVE THE WORD "REASONABLE INVESTIGATION" IN IT AT ALL, THAT'S SOMETHING THAT'S BEEN ADDED BY CASE LAW WHICH I THINK IS WHY THIS IS IMPORTANT.

THE COURT: OKAY.

BUT IT'S INCLUDED RIGHT NOW IN TERMS OF THE STIPULATED INSTRUCTION NUMBER 30 WHERE IT SAYS COMENITY NEGLIGENTLY OR WILLFULLY FAILED TO CONDUCT A REASONABLE INVESTIGATION INTO THE DISPUTE AS PART OF SOMETHING WHICH HAS ALREADY BEEN ADDED INTO THE JURY INSTRUCTIONS, THE FACT THAT THERE WAS ALREADY A REASONABLE INVESTIGATION ARGUMENT.

SO AGAIN, I'M NOT HEARING PER SE WHY WE HAVE TO HAVE AN INSTRUCTION REGARDING THAT. I WILL TAKE A LOOK THROUGH, LIKE I SAID, I JUST SPENT FIVE MINUTES PROBABLY PER EACH OF YOUR DISPUTED INSTRUCTION, I WILL TAKE A LOOK AND DECIDE WHETHER OR NOT I NEED ANY FURTHER INFORMATION FROM THE PARTIES, BUT I I APPRECIATE THESE DIFFERENT ALTERNATIVES AND WE WILL TAKE A LOOK.

MR. LOKER: THANK YOU, YOUR HONOR.

MS. GIVENTAL: THANK YOU, YOUR HONOR.

THE COURT: I DON'T REMEMBER WHO STARTED LAST TIME, I

BELIEVE IT WAS MS. GIVENTAL.

MR. LOKER, TURNING TO DISPUTED INSTRUCTION NUMBER 36, WILLFUL VIOLATION.

MR. LOKER:  YES, YOUR HONOR.

AND FOR THE -- THIS PARTICULAR DEFINITION, WE -- IT LOOKS LIKE THE DISPUTE IS NEAR THE END.  SO FOR US WHEN WE ARE DEFINING RECKLESS DISREGARD, THE PLAINTIFF JUST TOOK THAT FROM THE MODEL OF 5.5 WHERE IT'S TALKING ABOUT PUNITIVE DAMAGES.

THE ISSUE THAT WE HAVE WITH MS. GIVENTAL'S INSTRUCTION IS THAT LAST SENTENCE THAT STATES, "PUT ANOTHER WAY, A DEFENDANT ACTS IN RECKLESS DISREGARD WHEN IT ADOPTS A VIEW OF ITS STATUTORY OBLIGATIONS THAT IS OBJECTIVELY UNREASONABLE."

WE PREFER TO USE THE GENERAL INSTRUCTION.

THE COURT:  ONE MOMENT, MS. GIVENTAL.

SO IS THE LAST SENTENCE YOU ARE SAYING IS WHAT YOU OBJECT TO IN TERMS OF COMENITY'S?

MR. LOKER:  CORRECT, YOUR HONOR.

MS. GIVENTAL:   THE LAST SENTENCE IS OUT OF SAFECO, THE SUPREME COURT CASE THAT DEFINED WHAT WILLFULNESS MEANS UNDER THE FCRA, AND THE MODEL INSTRUCTIONS ARE NOT FCRA-SPECIFIC AND THERE'S, ALSO UNDER THE FCRA UNDER THE CODE THAT ADDRESSES CIVIL LIABILITY FOR WILLFUL NONCOMPLIANCE, A WILLFUL VIOLATION IS, DISCUSSES STATUTORY PENALTIES AND THEN PUNITIVE DAMAGES SEPARATELY.

SO IN SAFECO, IT'S TALKING ABOUT WHAT A WILLFUL VIOLATION

IS IN A VERY SPECIFIC CONTEXT, AND YOU CAN'T LOOK AT JUST THE MODEL INSTRUCTIONS THAT DON'T TALK ABOUT FCRA, AND ARE TALKING ABOUT ONLY PUNITIVE DAMAGES BECAUSE THERE'S CIVIL LIABILITY FOR WILLFUL NONCOMPLIANCE THAT IS A CREATURE OF JUST THE FCRA, BECAUSE IT HAS THE WILLFUL STATUTORY PLUS PUNITIVE AS TWO COMPONENTS OF WHAT WILLFUL IS.

IN FACT, IF I MAY ADD ONE MORE THING.

**THE COURT:**  ONE MOMENT.

ALL RIGHT.  MS. GIVENTAL, GO AHEAD.

**MS. GIVENTAL:**   I WAS JUST GOING TO ADD THE STATUTE FOR CIVIL LIABILITY FOR WILLFUL NONCOMPLIANCE, IT SAYS "ANY ACTUAL DAMAGES SUSTAINED BY THE CONSUMER AS A RESULT OF THE FAILURE FOR DAMAGES OF NOT LESS THAN 100 AND NOT MORE THAN 1,000," THAT'S ALL PART OF THE DISCUSSION OF WILLFULNESS, THERE'S A SECTION B I'M GOING TO SKIP OVER, THEN IT SAYS POINT TWO, "SUCH AMOUNT OF PUNITIVE DAMAGES AS THE COURT MAY ALLOW."

SO THERE'S ACTUALLY SOME DISPUTE ABOUT WHETHER THE PUNITIVE DAMAGES CAN EVEN BE AWARDED BY THE JURY, I THINK THAT THAT'S SOMETHING THAT'S LIKE A BIG QUESTION MARK FOR EVERYBODY, BUT I THINK THAT THAT'S ANOTHER REASON WHY TAKING WHAT THE SUPREME COURT SAYS ABOUT WHAT WILLFULNESS MEANS IN THE CONTEXT OF FCRA IS PARTICULARLY IMPORTANT BECAUSE WE ARE NOT EVEN SURE WHO IS SUPPOSED TO BE DECIDING IT, ARGUABLY WE ARE TAKING THE DEFINITION OF "PUNITIVE" OUT OF THE MODEL INSTRUCTIONS THAT ARE NOT APPLICABLE TO FCRA, STICKING IT INTO FCRA BUT MAYBE IT

DOESN'T EVEN HAVE ANY PLACE IN JURY INSTRUCTIONS BECAUSE IT MAY BE SOMETHING THAT ONLY A COURT MAY ALLOW AND THEN IGNORING THE STANDARD FOR WILLFULNESS THAT IS ESTABLISHED BY SAFECO BY THE SUPREME COURT.

**THE COURT:**  OKAY.

MR. LOKER, LET ME HEAR BRIEF REBUTTAL FROM YOU.

**MR. LOKER:**  JUST VERY BRIEFLY.

THE LAST SENTENCE I HIGHLIGHTED THAT STARTS WITH "PUT ANOTHER WAY," I THINK THAT WILL CAUSE JURY CONFUSION, AND I ENVISION A JURY QUESTION ABOUT THERE'S TWO SECTIONS, TWO SENTENCES RATHER, WITHIN THIS JURY INSTRUCTION THAT TALKS ABOUT WHAT DOES IT MEAN TO BE RECKLESS DISREGARD, AND IT'S HARD FOR ME TO TELL IN READING IT, ARE THEY MUTUALLY EXCLUSIVE?  DO WE HAVE A WILLFULNESS BASED ON SENTENCE ONE OR IS IT TWO?

SO I JUST THOUGHT IT WAS CONFUSING AND HARD FOR THE JURY TO DECIPHER, WHAT DOES IT MEAN TO BE WILLFUL, WHEN WE HAVE BOTH THOSE SENTENCES IN THERE.

**THE COURT:**  THERE'S A COUPLE OF POINTS FROM COMENITY'S PROPOSED INSTRUCTIONS WHICH I FOUND CONFUSING TO READ, AND THAT LAST SENTENCE I'M STILL FIGURING OUT THE LAW ON THIS AND I WILL TAKE A LOOK AT SAFECO, BUT THE WAY IT'S PHRASED I FOUND CONFUSING.

SIMILARLY IN TERMS OF THE LAST DISPUTED INSTRUCTION WE WERE TALKING ABOUT, WELL TWO BACK, THE DISPUTED INSTRUCTION NUMBER 34, I FOUND THAT FIRST SENTENCE ACTUALLY JUST -- IT WAS

A LOT OF CLAUSES UPON CLAUSES OF JUST CONFUSING.

SO EVEN IF I WERE TO ADOPT COMENITY'S IN PART, IN TERMS OF 36, I WOULD HAVE CONCERNS ABOUT THAT LAST SENTENCE.

SO JUST -- I'M NOT ASKING YOU TO REWRITE IT ON THE FLY, IT'S SOMETHING IF I DECIDE WE ARE GOING MORE IN ONE DIRECTION THAN THE OTHER, THERE STILL MIGHT BE SOME MORE WORDSMITHING.

**MR. LOKER:**  UNDERSTOOD.

**MS. GIVENTAL:**   THANK YOU, YOUR HONOR.

**THE COURT:**  AND I ALSO PROVIDE THAT GUIDANCE IN TERMS OF IF THERE'S SOMETHING WHICH PARTIES CAN THEN AGREE TO, BECAUSE YOU GO BACK TO THE WELL OR TRY TO MAKE YOUR WORDING TIGHTER, THEN PERHAPS YOU CAN JUST DO SO.

**MR. LOKER:**  YES, YOUR HONOR.

**THE COURT:**  ALL RIGHT.  SO I BELIEVE WE ARE AT 37 WITH COMENITY.

**MS. GIVENTAL:**   OUR ISSUE WITH PLAINTIFF'S VERSION OF 37 IS THAT IT SAYS "MUST" INSTEAD OF "MAY" IN TWO PLACES.

THEIR INSTRUCTION IS ACTUALLY THREE PARAGRAPHS AT THE LAST -- IN THE SECOND PARAGRAPH, THE LAST WORD OF THE FIRST LINE OF THAT PARAGRAPH, "YOU MUST AWARD PANCHENKO ONLY THE ACTUAL DAMAGES THAT PANCHENKO IS ABLE TO PROVE."  AND THEN AT THE VERY END, AGAIN IN THE LAST SENTENCE OF THE INSTRUCTION IT SAYS, "A FINDING OF COMENITY'S VIOLATION OF WILLFUL ALSO MEANS YOU MUST AWARD PUNITIVE DAMAGES."

THAT'S JUST NOT THE CASE, AND IN FACT AGAIN I JUST READ

THAT PHRASE IN A DIFFERENT CONTEXT BUT IT SAYS YOU CAN AWARD STATUTORY PENALTIES OF A HUNDRED TO A THOUSAND, SUCH AMOUNT OF PUNITIVE DAMAGES AS THE COURT MAY ALLOW.

SO EVEN IF THE JURY IS DOING THIS, RIGHT, PUNITIVE DAMAGES AWARDING, IT'S STILL PERMISSIVE, IT'S NOT REQUIRED.  I THINK THAT'S THE KEY DIFFERENCE.

**THE COURT:**  MR. LOKER?

**MR. LOKER:**  FOR US, YOUR HONOR, WE INCLUDED THE MANDATORY LANGUAGE BECAUSE THAT WAS MY READING OF THE STATUTE. SO THEY SAID YOU MUST DECIDE THE AMOUNT OF DAMAGES.  I THOUGHT IT WAS MANDATORY AS OPPOSED TO PERMISSIVE.  I'M HAPPY TO LOOK AT THE STATUTE ITSELF BUT THAT WAS JUST MY READING OF WHY WE PUT THAT IN THERE.

**THE COURT:**  ON THE FIRST SENTENCE, SO YOU MUST AWARD PANCHENKO ANY ACTUAL DAMAGES.

SO LET ME HEAR YOUR RESPONSE TO THE SECOND ONE.

**MR. LOKER:**  HONESTLY, YOUR HONOR, I WOULD HAVE TO LOOK AT THE STATUTE AGAIN BECAUSE I THOUGHT THEY WERE MANDATORY, BUT IF I'M WRONG WE WILL CHANGE THAT TO A "MAY."

**THE COURT:**  SO I'M GOING TO HAVE THE PARTIES MEET AND 61 FER REGARDING DISPUTED INSTRUCTION 37.

**MR. LOKER:**  OKAY.

**MS. GIVENTAL:**   AND I WANT MY NOTES BACK.

**THE COURT:**  SO YOU CAN DO THAT THIS AFTERNOON.

**MR. LOKER:**  YES, YOUR HONOR.

THE COURT: AND LET'S PLAN ON GETTING THAT ONE TO ME SOONER RATHER THAN LATER. I HATE MULTIPLE DEADLINES BUT I'M ABOUT TO DO IT. SO WHY DON'T -- LET'S SUBMIT IT TO ME BY THURSDAY.

MR. LOKER: OKAY.

THE COURT: IS THAT SUFFICIENT TIME?

MR. LOKER: YES, YOUR HONOR.

MS. GIVENTAL: FOR NUMBER 37, YOUR HONOR?

THE COURT: YEAH. AND IF AT THE END OF THIS YOU ALL DECIDE THERE IS SEVERAL YOU NEED TO MEET AND CONFER ABOUT THEN LET ME KNOW AND WE CAN GIVE YOU A LATER DEADLINE.

MR. LOKER: UNDERSTOOD, YOUR HONOR.

THE COURT: BECAUSE THAT'S ONE IT SEEMS LIKE IT'S GOING TO -- THE STATUTE IS GOING TO SAY WHAT THE STATUTE IS GOING TO SAY SO YOU ALL NEED TO SORT THAT ONE OUT.

MR. LOKER: I AGREE.

THE COURT: LET'S TURN TO 39, EXAMPLES OF EMOTIONAL DISTRESS OFFERED BY PANCHENKO.

THIS ONE SEEMED TO BE PLAINTIFF IS SAYING THERE SHOULD BE EXAMPLES, DEFENDANT IS SAYING THERE SHOULDN'T BE EXAMPLES.

MR. LOKER: CORRECT.

MS. GIVENTAL: CORRECT.

THE COURT: I DON'T REMEMBER WHO IS SUPPOSED TO START FIRST THIS TIME.

MR. LOKER, YOU ARE UP.

**MR. LOKER:**  THAT'S THE STAR READING OF THE CASE LAW.

SO AGAIN WHEN WE ARE CRAFTING THE JURY INSTRUCTIONS, WE ARE TRYING TO EXPLAIN TERMS TO THE JURY IN THIS PARTICULAR CASE.  PRE LAW SCHOOL, I TRIED TO TAKE MYSELF BACK TO THAT, WOULD I UNDERSTAND EMOTIONAL DISTRESS AND WHAT IT ENTAILS?  I'M NOT EXACTLY VERY IN TOUCH WITH MY FEELINGS SO I THOUGHT HAVING THOSE WAS HELPFUL, AND THAT'S ALL I HAVE FOR YOUR HONOR.

**MS. GIVENTAL:**  WE THINK THAT -- FIRST OF ALL, WE THINK THAT JURORS DO KNOW WHAT EMOTIONAL DISTRESS IS, IT'S A PRETTY COMMON CONCEPT.  AND WE ALSO THINK THAT THE LIST, ITSELF, IS POTENTIALLY MISLEADING BECAUSE IT'S NOT A LIST OF EVERY SINGLE EXAMPLE OF EMOTIONAL DISTRESS THAT IS OUT THERE, IT'S A LIST OF SOME THINGS WE HAVE SEEN IN DEPOSITIONS, FOR EXAMPLE, THAT PLAINTIFF SPECIFICALLY TESTIFIED TO.

SO THEN IT'S KIND OF ZEROING IN ON SOMETHING THAT PLAINTIFF IS EXPECTED TO TESTIFY ABOUT WHICH WE THINK THE JURY IS GOING TO THEN LOOK AT THE DEFINITION AND SAY, HEY HE SAID THIS WORD PANIC ATTACK AND IT'S IN THE INSTRUCTION, AND IT'S GOING TO LEAD THE JURY TO BELIEVE THIS IS EMOTIONAL DISTRESS, THIS COUNTS MORE, THEY HAVE DEFINITELY MET THEIR BURDEN, RATHER THAN USING THEIR COMMON SENSE AS JURORS AND HUMANS UNDERSTANDING WHAT EMOTIONAL DISTRESS IS THAT'S NOT TIED TO SPECIFIC KIND OF TRIGGER WORDS.

AND WE THINK IT'S KIND OF PUTTING THE COURT'S STAMP OF APPROVAL OF PARTICULAR WORDS OVER OTHERS.  LIKE MAYBE WE PICK A

LIST OF OTHER WORDS THAT ARE EXAMPLES.

MR. LOKER:  THAT'S FINE.

MS. GIVENTAL:  MEANING WE SHOULD DROP IT?

MR. LOKER:  NO, YOU SAID YOU CAN PICK ANOTHER LIST OF THE EXAMPLES.

MS. GIVENTAL:  WE DON'T BELIEVE WE NEED THE INSTRUCTION AT ALL, BUT YES.

THE COURT:  SO YOU HAVE BEEN TRYING THESE CASES ACROSS THE STATE OF CALIFORNIA, LET'S BE FRANK, IS THIS INSTRUCTION NORMALLY THERE?

MR. LOKER:  WE HAVE USED IT.

MS. GIVENTAL:  AGAINST WHOM?

THE COURT:  PLEASE ADDRESS THE COURT, MS. GIVENTAL.

MS. GIVENTAL:  MY APOLOGIES.

YOUR HONOR, I HAVE NEVER USED IT, BUT I DON'T THINK I'M A GOOD PERSON TO ASK BECAUSE I'M NOT A TRIAL LAWYER.

MR. NARITA:  YOUR HONOR, I HAVE NEVER HAD AN INSTRUCTION LIKE THIS, YOUR HONOR.

THE COURT:  MR. LOKER, HOW MANY TIMES HAVE YOU USED IT BEFORE?

MR. LOKER:  I WOULD HAVE TO GO BACK AND LOOK, YOUR HONOR, THE MOST IMMEDIATE ONE THAT COMES TO MIND IS JUDGE HUANG, I BELIEVE WE DID IT WITH JUDGE CARTER AS WELL, BUT YOU KNOW, IF IT'S NOT NECESSARY, I THINK DURING CLOSING, WE CAN EXPLAIN TO THE JURY WHAT WE THINK IS EMOTIONAL DISTRESS.

SO IT'S SIMILAR TO THE REASONABLE INSTRUCTION, YOU KNOW, I DON'T WANT TO GIVE THE JURY TOO MUCH AND CONFUSE THEM, AND IF THIS IS CONFUSING, I'M HAPPY TO DROP IT.

**THE COURT:** OKAY.

SO BOTH WITH THIS AND THE REASONABLENESS, I'M SORT OF A LITTLE ON THE FENCE ABOUT WHETHER OR NOT I WOULD INCLUDE ANYTHING AT ALL. WE ARE HERE TODAY FOR ME JUST TO GET A LITTLE TASTE OF EACH OF YOUR JURY INSTRUCTIONS, SO I APPRECIATE INITIAL THOUGHTS.

**MR. LOKER:** DROPPING IS OKAY, YOUR HONOR.

**THE COURT:** OKAY. AND MS. GIVENTAL, HOW DO YOU FEEL ABOUT DROPPING REASONABLENESS?

**MS. GIVENTAL:** NOT GOOD.

**THE COURT:** OKAY. WE WILL SEE WHAT HAPPENS.

ALL RIGHT. THEN CONTINUING. SO WE HAVE 40, AND IT SAYS 40 AND 41, BUT I THINK IT'S ACTUALLY SUPPOSED TO BE 40 AND 40 BECAUSE I BELIEVE THERE'S BOTH RELATED TO EMOTIONAL DISTRESS DAMAGES OFFERED BY COMENITY.

**MR. LOKER:** CORRECT.

**THE COURT:** OFFERED BY PANCHENKO OR COMENITY. MS. GIVENTAL?

**MS. GIVENTAL:** YES, YOUR HONOR. THANK YOU. AND THAT'S OUR MISTAKE.

SO THE DIFFERENCE IS THAT WE ARE ESSENTIALLY ADDING A SECOND SENTENCE BECAUSE WE ARE -- BASED ON LOOKING AT CASE LAW

THAT DISCUSSES WHEN IS EMOTIONAL DISTRESS AVAILABLE, THE RECOVERY WHEN THERE IS NO ACTUAL OR OUT-OF-POCKET HARM, COURTS TEND TO REQUIRE THE EMOTIONAL DISTRESS TO BE PRETTY PRECISE, AND IT HAS TO BE DETAILED, IT CAN'T JUST BE VAGUE STATEMENTS BY THE PLAINTIFF THAT ARE SELF-SERVING.

AND SO WHAT WE WERE TRYING TO DO IS TO MAKE IT CLEAR TO THE JURY THAT OKAY, YEAH, NOT ALWAYS, YOU CAN AWARD EMOTIONAL DISTRESS EVEN IF THERE IS NO OUT-OF-POCKET DAMAGES BUT YOU SHOULDN'T BE DOING THAT BASED ON VAGUE STATEMENTS AND SOMETHING -- HERE WE ARE NOT ANTICIPATING, FOR EXAMPLE, MEDICAL TESTIMONY, RIGHT.  SO THIS IS FROM A LINE OF CASES THAT ARE DISCUSSING WHERE THERE ISN'T AN EXPERT THAT'S GOING TO TALK TO THE EMOTIONAL DISTRESS.

SO THEN, WELL HOW MUCH EMOTIONAL DISTRESS OR WHAT CAN YOU SAY IN ORDER TO EVEN PUT THAT ON THE TABLE?  AND IN THE DECISIONS THAT WE CITE TO, THE VERBIAGE THAT COMES UP OVER AND OVER AGAIN IS SOMETHING ALONG THE LINES OF SUFFICIENTLY DETAILED, APPROPRIATELY LINKED.

**THE COURT:**  ARE THESE THE CONTEXT OF SUMMARY JUDGEMENT, ARE THEY IN THE CONTEXT OF POST-TRIAL BRIEFING?  IS IT WHAT ARE THEY IN THE CONTEXT OF, THESE CASES?

**MS. GIVENTAL:**  MOSTLY SUMMARY JUDGEMENT.

**THE COURT:**  OKAY.

**MR. LOKER:**  YES, I DIDN'T WANT TO SPEAK OVER ANYONE, I APOLOGIZE.

SO THE ISSUE WE HAVE WITH COMENITY'S INSTRUCTION IS, WHERE IT STARTS WITH, HOWEVER, WE THINK FROM THERE IT BECOMES CONFUSING AND COULD BE MISLEADING TO THE JURY, AND THE ISSUES MS. GIVENTAL HIGHLIGHTED COULD BE DEALT WITH DURING CLOSING ARGUMENT.  SO MR. PANCHENKO AND HIS WIFE AND HIS FRIEND TALKING ABOUT DURING TRIAL WHAT THEY OBSERVED, AND MR. PANCHENKO BEING HIS EMOTIONAL DISTRESS, OR OBVIOUSLY HE WILL TESTIFY ABOUT THAT.  WHERE WE ADD IN THE "HOWEVER" IN TERMINOLOGY LIKE "SUFFICIENTLY DETAILED" AND "APPROPRIATELY LINKED," THAT TO ME BECOMES CONFUSING AND WOULDN'T BE NECESSARY.

AND I'VE --

**THE COURT:**  TO ME IT READS VERY MUCH LIKE A SUMMARY JUDGEMENT, IS THE REASON I ASKED, RIGHT, WHETHER OR NOT SUSPICION TO RAISE A TRIABLE ISSUE AND SO FORTH, IT DID NOT SEEM APPROPRIATE PER SE FOR A JURY INSTRUCTION, BUT I WILL CONTINUE TO REVIEW.

**MR. LOKER:**  THANK YOU, YOUR HONOR.

**THE COURT:**  ANYTHING FURTHER, MR. LOKER?

**MR. LOKER:**  NO, YOUR HONOR.

**THE COURT:**  OKAY.

**MS. GIVENTAL:**  I WAS JUST GOING ADD THAT I'M WONDERING WHETHER THEN IT'S NECESSARY TO TELL THE JURY THAT YOU CAN RECOVER EMOTIONAL DISTRESS WITHOUT ANY OUT-OF-POCKET DAMAGES, BECAUSE IN FACT IT'S ON THE LIST OF THINGS THAT ARE RECOVERABLE USING THE MODEL INSTRUCTION THAT I THINK WE AGREED

ON.

MR. LOKER:  SORRY, WHICH ONE WAS THAT?

THE COURT:  WHICH ONE ARE YOU REFERRING TO?

MS. GIVENTAL:   I SHOULD HAVE BEEN ABLE TO ANSWER THAT QUESTION.

THE COURT:  IF YOU GIVE ME MORE DETAIL, I THINK I COULD FILL IN WHAT YOU ARE MAYBE TRYING TO REFER TO.

ARE YOU TALKING ABOUT THERE'S ANOTHER STIPULATED INSTRUCTION WHICH COVERS --

MS. GIVENTAL:  WHAT IS RECOVERABLE AND AS ACTUAL DAMAGES, AND IT LISTS EMOTIONAL DISTRESS.

THE COURT:  RIGHT.  NUMBER 38?  PAGE 46?

MS. GIVENTAL:   YEAH.

MR. NARITA:  YOUR HONOR, 38 COMES FROM THE MODEL CIVIL JURY INSTRUCTIONS AND THE MODEL INSTRUCTS US TO SELECT FROM 5.2 WHICH OF THE TYPES OF DAMAGES ARE IN PLAY IN THE CASE.

AND SO WE REACHED AGREEMENT ON THIS ONE WHICH WAS MR. LOKER LOOKED AT 5.1 AND 5.2 TOGETHER, AND SO DID WE, AND WE CAME UP WITH WHAT IT WOULD LOOK LIKE, RIGHT.

MENTAL AND EMOTIONAL PAIN AND SUFFERING EXPERIENCED WAS THE ONLY THING FROM THE LIST OF THE MODEL INSTRUCTION THAT REALLY APPLIED TO THIS CASE.  SO IT MADE ITS WAY INTO OUR STIPULATED INSTRUCTION FOR ACTUAL DAMAGES.

AND THAT LEAD BOTH PARTIES TO TRY AND START DEFINING OKAY, WELL WHAT DOES EMOTIONAL DISTRESS MEAN OR NOT MEAN?

WE GOT MR. LOKER'S INSTRUCTION, WE RESPONDED TO HIS INSTRUCTION, WE ADDED ONE, SO --

THE COURT: SO MR. LOKER, IS 40 NECESSARY, PERIOD?

MR. LOKER: I DON'T THINK SO ANYMORE, NOW THAT WE HAVE HAD A CHANCE TO TALK THROUGH IT, I THINK NUMBER 38 WOULD BE SUFFICIENT.

THE COURT: YEAH, I FEEL LIKE WE ARE MAKING IT VERY COMPLICATED.

MR. LOKER: RIGHT. SO LET'S JUST GET RID OF THEM.

THE COURT: LET'S GET RID OF 40. SO EVERYBODY IS NODDING, SO I'M TAKING THIS AS --

MS. GIVENTAL: YES, YOUR HONOR.

MR. LOKER: YES, YOUR HONOR.

THE COURT: SO 40 IS OUT.

AND I HAVE PROMISED MY COURT STAFF THAT WE HAVE NINE MINUTES LEFT. SO JUST SO YOU KNOW WHERE WE ARE AT.

SO NOW WE HAVE 42 AND 44.

MR. LOKER: YES, YOUR HONOR.

THE COURT: OKAY. LET ME LOOK AT 42, PROXIMATE CAUSE. GOING BACK TO PALSGRAF.

COUNSEL, TELL ME WHAT THE DISPUTE IS.

MR. LOKER: I REMEMBER PALSGRAF A LITTLE BIT, I THINK IT WAS CIVIL PROCEDURE, BUT THE DISPUTE HERE, YOUR HONOR, NUMBER 42 IS WHETHER THE DAMAGES THAT MR. PANCHENKO IS SEEKING NEED TO COME FROM A SUBSTANTIAL FACTOR OF THE CONDUCT OR THE

PROXIMATE CAUSE.

MY READING OF THE TERMINOLOGY IS SUBSTANTIAL FACTOR.  WE HAVE THE CITED DECISIONS AS WELL AS ROBBINS WHICH WE DISCUSSED EARLIER, SO IT'S JUST THOSE TWO WORDS, SUBSTANTIAL FACTOR AND PROXIMATE CAUSE.

**MS. GIVENTAL:**  YOUR HONOR, YES, THAT IS THE CRUX OF THE DISPUTE AND WE THINK THAT PROXIMATE CAUSE IS USED A LOT, IT'S A LEGAL CONCEPT, SUBSTANTIAL FACTOR, IN A SPRINKLING OF CASES, I HAVE SEEN THOSE WORD, BECAUSE I DON'T THINK I'VE SEEN IT IN ANYTHING THAT IS A DEFINING CASE OR NINTH CIRCUIT MANDATORY AUTHORITY, AND SO WE FELT NOT COMFORTABLE MAKING THAT THE STANDARD.

**MR. LOKER:**  AND I THINK PROXIMATE CAUSE IS A LITTLE MORE CONFUSING AND I DIDN'T SEE IT REFERRED TO IN ALL OF THESE CASES THAT WERE CITED.  I THOUGHT THE JURY COULD UNDERSTAND A LITTLE BIT MORE SUBSTANTIAL FACTOR AS OPPOSED TO PROXIMATE CAUSE.

**THE COURT:**  WHERE DOES PROXIMATE CAUSE COME -- IT'S REFERENCED EARLIER IN THE STIPULATED INSTRUCTIONS?

**MR. LOKER:**  I BELIEVE IT IS DEFINED SOMEWHERE.

**MS. GIVENTAL:**  I DON'T THINK IT'S DEFINED ANYWHERE.

**MR. LOKER:**  OKAY.  I MUST BE MISTAKEN THEN.

**MS. GIVENTAL:**   NOT AS A STANDALONE INSTRUCTION, I DON'T THINK IT IS.  I THINK THAT'S WHY WE HAVE THE PROXIMATE CAUSE INSTRUCTION ON IT.

MR. LOKER:  SORRY, I THOUGHT YOU FOUND IT.

MS. GIVENTAL:   OH, SORRY, NO, I FOUND IT IN OUR LIST AND IT'S NUMBER 42 BECAUSE WE TITLED THEM AS PROXIMATE CAUSE, WHICH TO BE FAIR THEY SHOULD HAVE YOUR -- YOU KNOW, WHATEVER WE MEAN BY PROXIMATE CAUSE.  BUT -- SO YEAH, I GOT EXCITED BUT THEN I THINK THE REASON WE HAVE IT THERE IS BECAUSE IT'S NOT DEFINED AS A STANDALONE INSTRUCTION IN THE MODEL INSTRUCTIONS BUT I THINK IT'S REFERENCED.

THE COURT:  WHERE IS IT REFERENCED?

MS. GIVENTAL:  I THINK IT'S REFERENCED IN MODEL INSTRUCTIONS BUT NOT IN A STANDALONE INSTRUCTION.

THE COURT:  SO I'M GOING TO HAVE PARTIES MEET AND CONFER ABOUT THIS ONE BECAUSE I THINK THERE IS A LAYER UPON LAYER OF THIS.

IT LOOKS LIKE PARTIES RAISE PROXIMATE CAUSE IN 37 WHICH YOU WERE GOING TO MEET AND CONFER ABOUT ANYWAYS BECAUSE, BUT THEN I'M WONDERING IN TERMS OF ADDING, I MEAN BECAUSE NORMALLY IT'S -- I THOUGHT -- MY RECOLLECTION OF FCRA WAS JUST THERE WAS CAUSATION, PERIOD.  I DON'T RECALL IT GOING INTO SUCH DETAIL ABOUT PROXIMATE CAUSE VERSUS THIS, BUT I'M JUST WONDERING, I CAN'T TELL IF THIS IS A SELF-CREATED ISSUE.

MR. LOKER:  IT'S POSSIBLE.

THE COURT:  SO CAN YOU ALL LOOK AT, WHEN YOU ARE MEETING AND CONFERRING ABOUT 37, CAN YOU ALSO LOOK AT 42? BECAUSE SUBSTANTIAL FACTOR SEEMS A LITTLE OFF TO ME, THE

NATURAL AND PROBABLE RESULT, OKAY, WELL NOW WE ARE GETTING VERY PALSGRAF AND I'M JUST NOT SURE WE NEED TO BE IN EITHER PLACE, I THINK IT'S JUST IN TERMS OF FOR JURY PURPOSES VERSUS LEGAL CAUSE, PROXIMATE CAUSE VERSUS, I THINK WE ARE OVERCOMPLICATING IT PERHAPS.

MR. LOKER: UNDERSTOOD, YOUR HONOR.

MS. GIVENTAL: THANK YOU, YOUR HONOR.

THE COURT: 44. SEE, ISN'T THIS A GOOD PREVIEW OF OUR CHARGING CONFERENCE?

MR. LOKER: YES, YOUR HONOR.

THE COURT: ALL RIGHT. 42, PUNITIVE DAMAGES.

SO I PULLED UP -- BOTH OF YOU RELIED ON MODEL JURY INSTRUCTION 55, AND THEN I PULLED UP 55 BUT I DIDN'T HAVE A CHANCE TO DO A COMPARISON YET. WHAT HAPPENED?

MR. LOKER: THE DISTINCTION, YOUR HONOR, IS WHETHER PUNITIVE DAMAGES ARE AWARDED BASED ON PREPONDERANCE OF THE EVIDENCE, WHICH IS OUR SELECTION, COMENITY PICKED CLEAR AND CONVINCING EVIDENCE.

MS. GIVENTAL: AND BOTH, YOUR HONOR, IT'S A CHOICE.

MR. LOKER: IT'S A BRACKET.

MS. GIVENTAL: IT'S A BRACKET, AND IT'S ONE OR THE OTHER, SO THEY ARE BOTH FROM THE MODEL INSTRUCTION AND THE REAL QUESTION IS WHICH ONE SHOULD APPLY?

THE COURT: THIS SEEMS LIKE THERE SHOULD BE A FCRA ANSWER, IS THERE NOT?

**MR. LOKER:** LOOKING AT THE MODEL INSTRUCTION, IT GAVE US FURTHER INSIGHT. SO WHAT WE COPIED AND PASTED UNDER OUR AUTHORITY, IT STARTS AT "WHETHER." IT SAYS "WHETHER PUNITIVE DAMAGES NEED TO BE PROVED BY A PREPONDERANCE OF THE EVIDENCE OR A CLEAR AND CONVINCING EVIDENCE, ALSO DEPENDS UPON THE STANDARDS APPLICABLE FOR THE UNDERLYING CLAIM FOR RELIEF." THEN THE AUTHORITY LOOKS AT WHETHER IT'S A FEDERAL CLAIM OR A STATE LAW CLAIM.

FOR FEDERAL CLAIMS, OUR VIEW, AND I KNOW MS. GIVENTAL WILL DISAGREE WITH ME, OUR VIEW IS THAT IT'S THE PREPONDERANCE OF THE EVIDENCE. AND IN LOOKING AT THE AUTHORITY CITED BY OPPOSING COUNSEL BY COMENITY, OF COURSE THOSE ARE ALL DISTRICT COURT OPINIONS, BUT THOSE DISTRICT COURT OPINIONS ARE LOOKING AT BREACH OF CONTRACT CLAIMS WHICH WOULD BE A STATE LAW CLAIM, AND THAT'S WHY IN THOSE DISTRICT COURT OPINIONS, THEY SAID CLEAR AND CONVINCING EVIDENCE, BUT WE DON'T THINK THEY ARE APPLICABLE HERE SINCE WE HAVE A FEDERAL CLAIM ONLY.

**THE COURT:** SO I'M WONDERING WHETHER OR NOT THIS ONE WE SHOULD HAVE BRIEFING ON, IF THAT TRULY IS THE DISTINCTION WHICH IS BEING DRAWN AND THAT LOGICAL LADDER WHICH MR. LOKER JUST WENT DOWN, I KNOW COMENITY DISAGREES IN TERMS OF -- OR MAYBE YOU DON'T.

**MS. GIVENTAL:** WELL, I DON'T DISAGREE THAT THE ANALYSIS OR THE DISCUSSION IN THE MODEL INSTRUCTIONS TALKS ABOUT DIFFERENCE SCENARIOS, I DON'T KNOW IF IT DRAWS A CLEAR

LINE BETWEEN FEDERAL AND STATE BUT IT DOES TALK ABOUT THE TYPE OF CLAIMS AT ISSUE, AND I THINK FOR EXAMPLE TORT CLAIMS, I THINK CLEAR AND CONVINCING, I THINK SOME STATUTORY ONES ARE CLEAR AND CONVINCING, BUT THERE IS NO ANSWER THAT WE HAVE FOUND THAT DEFINITIVELY SAYS FOR FCRA, AND THEN THERE IS COMMENTARY TO THE MODEL INSTRUCTION THAT IT COULD BE EITHER/OR DEPENDING ON THE CIRCUMSTANCES WITHOUT MAKE A CLEAR RULE WHICH CIRCUMSTANCES APPLY TO WHAT.

**MR. LOKER:**  HAPPY TO BRIEF IT, YOUR HONOR.

THIS IS ACTUALLY THE FIRST TIME IT'S EVER COME UP IN ANY OF OUR TRIALS, ANY OF OUR CASES, SO I'M HAPPY TO SUBMIT A BRIEF.  WE HAVE ALWAYS DONE PREPONDERANCE OF THE EVIDENCE IN THE OTHER TRIALS BUT IT HASN'T BEEN DISPUTED.

**MS. GIVENTAL:**  AND I THINK WE FOUND ONE APPELLATE LEVEL CASE WHERE THEY USED CLEAR AND CONVINCING, BUT ALSO WITH A COMMENT THAT THE PARTIES AGREED ON IT.

**MR. LOKER:**  SO IT WILL BE INTERESTING.

**THE COURT:**  A LITTLE INTERESTING.  I MEAN, I ACTUALLY -- EVEN IF IT HELPS SHORTCUT SOME OF OUR OWN RESEARCH. SO WHEN CAN YOU GET ME A BRIEF BY?

**MR. LOKER:**  I MEAN, I COULD DO FRIDAY, IF THAT'S OKAY.

**THE COURT:**  MS. GIVENTAL?

**MS. GIVENTAL:**  NEXT WEEK?

**MR. LOKER:**  NEXT WEEK IS FINE, I GUESS.

**THE COURT:** LET'S SEE, LET'S DO -- I WOULD LIKE IT BEFORE MY LAST CONFERENCE BEFORE THE PRE-EXCUSAL.  WELL, MAYBE IT'S OKAY.  NEXT MONDAY?

**MS. GIVENTAL:** THANK YOU, YOUR HONOR.

**THE COURT:** DO YOU NEED MORE PAGES?  FIVE PAGES?

**MR. LOKER:** I THINK IT'S PRETTY NARROW.

**MS. GIVENTAL:** PROBABLY.  I'M JUST WORDY.  BUT WE GOT UNDER FIVE BY FAR LAST TIME.

**THE COURT:** LET'S AIM FOR THAT.  I WILL GIVE YOU UP TO FIVE.

**MR. LOKER:** SO FIVE PAGES BY MONDAY THE 27TH?

**THE COURT:** YES.  ABOUT THE APPLICABLE STANDARD FOR DISPUTED INSTRUCTION 44.

ALL RIGHT.  SO DO YOU HAVE ANY INTEREST IN ME REACHING OUT TO JUDGE VAN KEULEN?  DO PARTIES WANT TO DISCUSS?  I'M NOT TRYING TO PLAY -- I'M NOT TRYING TO DO SCARE TACTICS IN TERMS OF THIS, MY MAJOR REASON IS BECAUSE SHE IS LEAVING TOWN AND SHE KNOWS YOUR CASE AND SHE KNOWS -- HAS INTERACTED WITH BOTH COUNSEL BEFORE AS WELL, SO I'M JUST WONDERING IN TERMS OF HAVING SOMEBODY WHO ALREADY KNOWS YOUR CASE.

**MR. NARITA:** WHEN DID YOU SAY SHE WAS LEAVING TOWN, YOUR HONOR?

**THE COURT:** IT'S SOME TIME LATER THIS WEEK, OR AT THE LATEST, EARLY NEXT WEEK.  I NEED TO PULL UP MY E-MAIL FROM HER.  YOU HAVE A LOT OF WORK COMING UP AND I WOULD HATE FOR YOU TO DO

ALL THAT WORK IN VAIN IF IT'S SOMETHING WHICH THERE IS SPACE.

**MR. LOKER:**  YOUR HONOR, I PERSONALLY WOULDN'T LIKE TO USE JUDICIAL RESOURCES CONSIDERING WHERE WE ARE.  I HAVE SETTLED CASES WITH EACH, THREE OUT OF FOUR, I DON'T KNOW IF KRISTINA AND I HAVE SETTLED A CASE TOGETHER, I FEEL LIKE WE CAN WORK TOGETHER, I DON'T KNOW IF WE NEED TO DISCUSS -- WE NEED TO SIT DOWN WITH JUDGE VAN KEULEN, I JUST DON'T KNOW IF THAT WOULD BE A GOOD USE OF HER TIME.

**MR. NARITA:**  I TEND TO AGREE, YOUR HONOR.  FROM WHAT I'VE OBSERVED BOTH, NOT ONLY DO MR. LOKER AND I KNOW EACH OTHER WELL, IT APPEARS WE BOTH HAVE REALLY GOOD CLIENT CONTROL AND CLIENT INTERACTION AND SO CASES CAN SETTLE WITH PHONE CALLS.

**MR. LOKER:**  RIGHT.

**THE COURT:**  OKAY.

**MR. LOKER:**  I APPRECIATE IT THOUGH.

**THE COURT:**  OKAY.

SO I KNOW YOU ARE MEETING DOWN IN THE ATTORNEY LOUNGE, IF YOU ALL CHANGE YOUR MIND, YOU KNOW HOW TO REACH LAURA.

WHY DON'T YOU JUST ADD THIS ON TO YOUR LIST OF WHETHER OR NOT YOU ALL THINK THAT IT MIGHT BE HELPFUL ON SOME LEVEL.  I'M GOING TO ASSUME IT'S NOT, I'M NOT GOING TO SEND YOU DOWN THE HALL OTHERWISE, BUT YOU ARE BOTH IN THE BUILDING, I DON'T WANT TO LOSE THE OPPORTUNITY SINCE YOU ALL HAVE ANOTHER HOUR, HOUR AND A HALF, WHERE YOU WILL BE TOGETHER.

**MR. NARITA:**  OKAY.  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  ANYTHING ELSE BEFORE WE CALL IT A DAY?

MR. LOKER:  NOT FROM THE PLAINTIFF, YOUR HONOR.

MR. NARITA:  NOTHING FROM THE DEFENDANT, YOUR HONOR.

THE COURT:  OKAY.  THANK YOU VERY MUCH, THANK YOU FOR --

MR. NARITA:  YOUR HONOR, IF I COULD MAKE ONE GRATUITOUS COMMENT OF THANKS TO THE COURT AND THE COURT'S STAFF FOR CONTINUING TO WORK SO HARD FOR ALL OF THE PARTIES, GIVEN THE CIRCUMSTANCES OF THE SHUTDOWN.  WE ALL APPRECIATE THAT.

THE COURT:  OKAY.

MR. LOKER:  THANK YOU, YOUR HONOR.

THE COURT:  WELL, THANK YOU TO MY STAFF.  AND I APPRECIATE THAT NOTE.

(PROCEEDINGS ADJOURNED AT 3:33 P.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATED:  OCTOBER 24, 2025