UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

OLEKSANDR PANCHENKO,                )
                                    )   CV-23-04975 EKL
                PLAINTIFF,          )
                                    )   SAN JOSE, CALIFORNIA
        VS.                         )
                                    )   OCTOBER 28, 2025
COMENITY CAPITAL BANK,              )
                                    )   PAGES 1 - 99
                DEFENDANT.          )
_____ )


TRANSCRIPT OF PRETRIAL PROCEEDINGS
BEFORE THE HONORABLE EUMI K. LEE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:      LOKER LAW, APC
                        BY: MATTHEW M. LOKER
                            CHARLES B. CUMMINS
                        132 BRIDGE STREET
                        ARROYO GRANDE, CALIFORNIA 93420


FOR THE DEFENDANT:      WOMBLE BOND DICKINSON U.S., LLP
                        BY: TOMIO B. NARITA
                            ALISA A. GIVENTAL
                            KRISTINA HOVSEPYAN
                            NATHAN A. SEARLES
                        50 CALIFORNIA STREET, SUITE 2750
                        SAN FRANCISCO, CALIFORNIA 94111


OFFICIAL COURT REPORTER:
                        IRENE L. RODRIGUEZ, CSR, RMR, CRR
                        CERTIFICATE NUMBER 8074

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

SAN JOSE, CALIFORNIA                    OCTOBER 28, 2025

P R O C E E D I N G S

(COURT CONVENED 10:45 A.M.)

THE CLERK:  WE'RE CALLING CASE NUMBER 5:23-CV-4965-EKL, PANCHENKO VERSUS COMENITY CAPITAL BANK.

ON FOR A PRETRIAL CONFERENCE.

COUNSEL, STATE YOUR APPEARANCES FOR THE RECORD STARTING WITH COUNSEL FOR THE PLAINTIFF.

MR. LOKER:  GOOD MORNING, YOUR HONOR.

MATTHEW LOKER ON BEHALF OF THE PLAINTIFF AND CHARLES CUMMINS IS HERE WITH ME AS WELL.

THE COURT:  GOOD MORNING TO YOU BOTH.

MR. NARITA:  YOUR HONOR, TOMIO NARITA FOR THE DEFENDANT.  I'M HERE WITH MY COLLEAGUES ALISA GIVENTAL, KRISTINA HOVESPYAN, AND NATHAN SEARLES.

THE COURT:  GOOD MORNING TO YOU ALL.

SO WE'RE HERE FOR A CONTINUING PRETRIAL CONFERENCE, BUT PROBABLY MORE IMPORTANT FOR TODAY, THE PRE-EXCUSAL CONFERENCE IN THIS CASE.  WE ARE SET TO BEGIN VOIR DIRE AND JURY SELECTION ON THURSDAY WITH TRIAL BEGINNING ON MONDAY.

TODAY OUR MAIN GOAL IS HARDSHIPS.  IF THERE'S ANYTHING ELSE YOU WANT TO RAISE, YOU'VE NOW RECEIVED THE QUESTIONNAIRES AS OF FRIDAY, THIS PAST FRIDAY AFTERNOON.

I ASSUME NO ISSUES IN TERMS OF RECEIVING THEM?

MR. LOKER:  NO ISSUE, YOUR HONOR.

MR. NARITA:  WE GOT THEM, YOUR HONOR.  THANK YOU.

THE COURT:  AS YOU ALL RECALL, I HAD REQUESTED 40 JURORS.  WE HAD A VERY HIGH YIELD, ESPECIALLY WITH THE TWO ADDITIONAL QUESTIONNAIRES THAT WERE RECEIVED YESTERDAY.

I HAVE GONE THROUGH THEM FOR HARDSHIPS.  AS YOU KNOW, THE HARDSHIPS ARE IN MY TERRITORY RATHER THAN YOURS.  BUT I DO -- IF THERE ARE THINGS OR COMMENTS, I WELCOME YOUR COMMENTS IN TERMS OF WHAT I'M LEANING TOWARDS AND WITH WHO I INTEND TO PRE-EXCUSE TODAY.

SO I THOUGHT I WOULD JUST LIST WHERE I AM RIGHT NOW. THERE ARE APPROXIMATELY 12 JURORS WHO RAISED POTENTIAL HARDSHIP ISSUES IN TERMS OF IN THE OTHERS BOX, LIKE OTHER THINGS THAT YOU WANT THE JUDGE TO KNOW AT THE END.

THE ONES THAT STRUCK ME THAT I AM LIKELY TO EXCUSE ARE JUROR NUMBER 4, JUROR NUMBER 9, 11, 25, AND 35.

SO THIS INCLUDES A FEDERAL WORKER WITH CONFLICTING MEDICAL; A FULL-TIME STUDENT; SOMEONE WHO HAS FULL CHILD CARE, INCLUDING ONE CHILD WHO IS UNDER FIVE YEARS OLD; FULL CHILD CARE RESPONSIBILITIES; SOMEONE WHOSE TWO-YEAR OLD IS GOING THROUGH HEART SURGERY; AND THE LAST TWO IS A PREBOOKED TRIP DURING THE WEEK OF VETERAN'S DAY.  I'M, FRANKLY, SHOCKED THAT WE DIDN'T HAVE MORE PEOPLE WHO HAD A CONFLICT.

THE OTHER -- LAST ONE WHO I'M SLIGHTLY TEMPTED BY IS JUROR NUMBER 12 WHO IS A FIRST YEAR TEACHER, AND HAVING HER RESCHEDULED TO THE SUMMER SO SHE'S NOT EXCUSED BUT BASICALLY

RESCHEDULED, AND THAT'S TRUE WITH ONE OR TWO OF THE OTHERS.

I NOTE THAT THERE ARE A COUPLE OF OTHER PEOPLE WHO INDICATED BACK PAIN OR MIGRAINES, BUT I THINK IT'S SOMETHING THAT I WOULD LIKE TO DISCUSS WITH THEM FURTHER.

SO ANY COMMENTS ABOUT THOSE OR ANY CONCERNS OR ANYTHING ELSE WHICH PEOPLE WANT TO RAISE IN TERMS OF DO THE PARTIES WANT TO RAISE IN TERMS OF PRE-EXCUSAL?

MR. LOKER:  YOUR HONOR, FOR THAT LIST YOU GAVE, WE HAD THOSE ON OUR END AS WELL.  THERE ARE A COUPLE OF OTHERS THAT I WAS HOPING TO DISCUSS WITH YOU IN TERMS OF HARDSHIP.

DO YOU WANT TO GO THROUGH THOSE NOW OR HEAR FROM MR. NARITA FIRST?

THE COURT:  LET ME -- I JUST REALIZED I PULLED UP MANY SHEETS BEFORE YOU ALL CAME IN, BUT I DID NOT PULL UP THIS SHEET, SO GIVE ME ONE MOMENT.

(PAUSE IN PROCEEDINGS.)

THE COURT:  SO YOU HAVE SOME HARDSHIPS.  DO YOU HAVE OTHER ISSUES YOU WANT TO RAISE, MR. LOKER, JUST IN TERMS OF AGENDA WISE?

MR. LOKER:  THERE WERE JUST A COUPLE THAT WE WANTED TO DISCUSS ABOUT ACTUAL BIAS, YOUR HONOR.

THE COURT:  OKAY.  ALL RIGHT.  MR. NARITA.

MR. NARITA:  YEAH.  COULD WE START WITH HER HONOR'S LIST OF THE HARDSHIPS AND JUST KIND OF GO THROUGH THOSE TO SEE WHETHER THE DEFENSE WOULD LIKE TO COMMENT OR TALK TO THE COURT

ABOUT THOSE?

THE COURT:  WELL, I JUST GAVE YOU THE LIST, SO IF YOU HAVE COMMENTS ABOUT 4 AND 9 -- 4, 9, 11, 25 OR 35, LET'S START WITH THOSE.

ANY CONCERNS WITH THOSE HARDSHIPS.

MR. NARITA:  YOUR HONOR, ON JUROR NUMBER 4, THE WOMAN, MS. NELSON, WHO SHE SAID SHE HAS A MEDICAL APPOINTMENT THAT SHE HAS SCHEDULED FOR OCTOBER 30TH.  IT'S OBVIOUSLY YOUR HONOR'S PREFERENCE WHAT TO DO HERE.  SOME MEDICAL CONDITIONS ARE EMERGENCIES AND THEY, YOU KNOW, THEY REALLY NEED TO BE ATTENDED TO.  SHE DIDN'T SAY ANYTHING ABOUT THAT.

IT MAY BE AN INCONVENIENCE TO HER.  I CERTAINLY DON'T WANT TO INCONVENIENCE JURORS, BUT SOMETIMES PEOPLE DO GET INCONVENIENCED.

SO THE WAY I READ HER COMMENT WAS, LOOK, I HAVE THIS APPOINTMENT THAT IS SCHEDULED ON THE MORNING OF JURY SELECTION, AND I WOULD HAVE TO RESCHEDULE IT, WHICH WOULD BE AN INCONVENIENCE TO ME.

I DIDN'T READ IT TO BE, LOOK, I'VE GOT SOME KIND OF CRITICAL MEDICAL THING THAT HAS TO BE HEARD RIGHT NOW.  SO --

THE COURT:  AND, FRANKLY SPEAKING, MR. NARITA, IN NORMAL TIMES I PROBABLY WOULD AGREE WITH YOU.

DURING THE TIME OF SHUTDOWN WHERE SHE'S A FEDERAL WORKER WOULD HAVE TO COME HERE AND SERVE FOR A WEEK, EVEN THOUGH SHE'S ALREADY HAVING TO SERVE AS AN ESSENTIAL WORKER, I AM NOT

INCLINED -- I'M INCLINED TO GIVE HER HER MEDICAL APPOINTMENT WHICH WILL TAKE HER THREE MONTHS TO RESCHEDULE.

MR. NARITA:  UNDERSTOOD.  I JUST THOUGHT THAT WAS WORTH EXPLORING BRIEFLY.

ON NUMBER 9, THIS IS MR. CHANG, I GUESS, A FULL-TIME STUDENT WHO SAYS HE'S IN MIDTERM SEASON.  IS THAT THE --

THE COURT:  YES.

MR. NARITA:  I DON'T HAVE ANY ISSUES WITH NUMBER 9. I JUST WAS GOING THROUGH THEM, YOUR HONOR, BECAUSE I HAVEN'T HAD A CHANCE TO LOOK AT YOUR HONOR'S.

I TEND TO STRONGLY AGREE WITH YOUR HONOR'S OBSERVATIONS ON NUMBER 11, MS. ALKATATBEH, WHO HAS FOUR CHILDREN AND ONE THAT IS THREE YEARS OLD AND SHE TAKES CARE OF THEM ALL.  SO NO COMMENT THERE.

NUMBER 25, YOUR HONOR --

THE COURT:  IT'S THE TWO-YEAR OLD WITH HEART SURGERY.

MR. NARITA:  YES.  THAT DOESN'T REQUIRE MUCH MORE DISCUSSION.

THE COURT:  NOPE.  NEXT.

MR. NARITA:  AND THEN THE LAST ONE IS NUMBER 35, YOUR HONOR.  IF YOU WOULD GIVE ME ONE MOMENT.

THE COURT:  35 IS A PREBOOKED TICKET.

MR. NARITA:  YES.

THE COURT:  ON VACATION FOR A WEEK.  SO EVEN UNDER

THE STRINGENT STANDARDS OF STATE COURT, THAT PERSON WOULD BE EXCUSED.  NORMALLY I WOULD REQUIRE THEM TO SHOW THEIR TICKETS, BUT I'M NOT IN STATE COURT ANYMORE.  AND WE WERE VERY GENEROUS WITH THE NUMBER OF JURORS, WHICH WE ALLOTTED FOR FOR THIS TRIAL.

MR. NARITA:  THAT'S WHAT I WAS SUSPECTING GIVEN THAT THIS JUROR WAS NUMBER 34 --

THE COURT:  THAT'S 35.

MR. NARITA:  EXCUSE ME, 35.  SO WE HAVE NO ISSUES WITH THAT.  SO THANK YOU, YOUR HONOR, FOR ALLOWING ME A MOMENT TO GO OVER THOSE WITH YOU.

THE COURT:  OKAY.  SO THOSE FIVE WILL BE EXCUSED.

MADAM CLERK, WE'RE GOING TO INDICATE FOR JURY SERVICES, BECAUSE THEY ASKED ME TO, THAT NUMBER 4, THE FEDERAL WORKER; NUMBER 12 -- WELL, I HAVEN'T GOTTEN TO NUMBER 12.  WE'LL COME BACK TO THEM.

NUMBER 4; AND NUMBER 9, THE FULL-TIME STUDENT; AND NUMBER 35, THE PREBOOKED TICKET, SHOULD BE RESCHEDULED WITHIN THE YEAR.

OKAY.  SO LET'S CONTINUE.  SO THE OTHER HARDSHIPS.  I'M ON THE FENCE ABOUT NUMBER 12 AND THE ONE WHO IS THE FIRST YEAR TEACHER.

THE ONES WHO I AM LEANING TOWARDS NO IN TERMS OF HARDSHIPS ARE 3, 8, 21, 38, AND 40.

3 AND 8 EXPRESSED FINANCIAL HARDSHIP CONCERNS.

21 EXPRESSED MIGRAINES.

THE INDIVIDUAL NUMBER 38 IS THE SPINAL SURGERY INDIVIDUAL.

AND NUMBER 40 IS THE SMALL BUSINESS OWNER.

THERE MIGHT HAVE BEEN ONE OR TWO OTHER MINOR HARDSHIPS THAT I MISSED.  FEEL FREE TO POINT THOSE OUT.

BUT ANY COMMENTS REGARDING THOSE?

MR. LOKER:  NUMBER 3 I ALSO HAD A CONCERN ABOUT, YOUR HONOR, JUST NOTING IN RESPONSE TO QUESTION NUMBER 32 IS THAT THEY WON'T RECEIVE COMPENSATION FOR THEIR DAYS HERE WHICH WOULD CAUSE THEM TO NOT HAVE ENOUGH MONEY TO PAY FOR RENT, FOOD, UTILITIES, AND TRANSPORTATION.  SO THAT, TO ME, SOUNDED LIKE A HARDSHIP, SO I HAD THEM ON MY LIST AS SOMEONE WHO MIGHT BE EXCUSED.

THE COURT:  I'M LEANING TOWARDS EXPLORING THAT AND JUST SEEING.  I CAN DO THAT DURING MY VOIR DIRE.  I WASN'T PLANNING ON DOING A VOIR DIRE, BUT I THINK I WILL PROBABLY BE DOING A LITTLE QUESTIONING REGARDING HARDSHIPS.

MR. LOKER:  OKAY.  UNDERSTOOD, YOUR HONOR.

THE COURT:  ANY COMMENTS ABOUT NUMBER 3?

MR. NARITA:  YEAH.  MY COMMENTS FOR NUMBER 3 WAS MR. RODRIGUEZ IS AGE 34, HE HAS NO KIDS, HE WORKS AT TESLA.  HE SAYS THAT, I GUESS, THEY DON'T COMPENSATE HIM FOR HIS TIME HERE.

AND THAT MAY BE TRUE, BUT IT JUST DIDN'T SEEM TO ME THAT THERE WAS AN EXTREME HARDSHIP, IF THAT'S TRUE, FOR SPENDING A

WEEK OF JURY SERVICE AND PEOPLE CAN'T HAVE PAID TIME OFF AND SO FORTH.  SO THAT WOULD BE UP TO THE COURT OBVIOUSLY.

THE COURT:  OKAY.  ALL RIGHT.  SO ANY OTHERS ABOUT ANY OF THE REST WHICH I'VE RAISED?

MR. NARITA:  YOUR HONOR, MR. DIAZ, MARIO DIAZ, HE'S A 23-YEAR OLD --

THE COURT:  CAN YOU PROVIDE ME THE NUMBER.

MR. LOKER:  12.

MR. NARITA:  I AM SORRY.  NUMBER 12.

THE COURT:  OKAY.

MR. NARITA:  HE'S A 23-YEAR OLD WHO LOOKS LIKE HE RECENTLY GOT HIS MASTER'S IN EDUCATION FROM SAN JOSE STATE UNIVERSITY AND THEN LANDED A JOB AS A HIGH SCHOOL TEACHER.

AND HE HAS NO CHILDREN.  AND I CERTAINLY WISH HIM WELL LAUNCHING HIS CAREER, BUT HIS EXPLANATION FOR HIS HARDSHIP WAS HIS CONCERN, HIS OBVIOUS CONCERN FOR HIS STUDENTS, AND HE DOESN'T WANT ANY ABSENCE BY HIM TO AFFECT HIS STUDENTS.  AND THAT'S LAUDABLE CERTAINLY.  AND HE DOESN'T WANT HIS ABSENCE TO AFFECT HIMSELF.

BUT, YOU KNOW, I WOULD ASSUME THAT THERE'S A WAY TO HAVE A SUBSTITUTE TEACHER FOR A WEEK AND SO FORTH.  SO I JUST WASN'T SURE THAT THAT WAS A HARDSHIP THAT WOULD MEET THE COURT'S STANDARDS.  BUT IT IS UP TO THE COURT.

THE COURT:  I MEAN, I'M GOING BACK AND FORTH ON THAT ONE, BECAUSE IF WE CAN RESCHEDULE WITH HIM IN THE YEAR, WHICH I

WASN'T SURE IF WE COULD.  I MEAN, I KNOW THAT WHEN I TAUGHT AT THE UNIVERSITY AND SUCH I COULD EASILY DEFER, AND HE COULD HAVE FILLED OUT HIS FORMS EARLIER, BECAUSE NORMALLY THERE'S A DEFERRAL PROCESS, AND I WAS THINKING HE COULD JUST BE DEFERRED TO THE SUMMER.

I'LL CIRCLE BACK TO HIM AT THE END OF TODAY AND JUST MAKE A DECISION.  I APPRECIATE THE FEEDBACK.

MR. NARITA:  OKAY.

THE COURT:  SO ARE WE DONE?  IT DOESN'T SOUND LIKE THERE'S ANY DISAGREEMENT IN TERMS OF THE OTHER ONES OR ANY OTHER THOUGHTS YOU WANTED TO SHARE REGARDING HARDSHIPS?

MR. LOKER:  FOR NUMBER 40, YOUR HONOR, THAT'S A SMALL BUSINESS OWNER.  AND HE HAS THREE EMPLOYEES.  THAT, TO ME, SOUNDED LIKE A HARDSHIP BECAUSE IT SOUNDED LIKE HIS BUSINESS IS AT THE STAGE WHERE HE'S DOING OPERATOR, AND WITHOUT HIM BEING THERE, I DON'T KNOW HOW THAT WOULD AFFECT HIS INCOME.

THE COURT:  I DIDN'T READ HIS COMMENTS THAT WAY, BUT THAT'S A GOOD REASON TO ASK HIM.  I'M DUBIOUS WE'LL GET TO HIM UNLESS I PRE-EXCUSE MORE.  AND I NEED TO EXCUSE THE OTHER FIVE BASICALLY FOR US TO HAVE A CHANCE TO GET TO HIM, AND THERE NEEDS TO BE NO-SHOWS.  I THINK IT'S DUBIOUS, BUT I WAS PLANNING TO EXPLORE THAT WITH HIM IN THE SECOND HALF IF IT LOOKED LIKE WE WERE GOING TO REACH CLOSE TO HIM IN VOIR DIRE.

MR. LOKER:  THANK YOU, YOUR HONOR.

MR. NARITA:  ANOTHER JUROR, YOUR HONOR, ON YOUR

LIST, NUMBER 8, WAS NICOLE AVILA.  SHE IS A --

THE COURT:  A 50-YEAR-OLD THERAPIST.

MR. NARITA:  RIGHT.  SHE HAS NO CHILDREN.  SHE WORKS FULL TIME AS A THERAPIST.  AND HER ONLY EXPLANATION IS THAT SHE DOESN'T GET PAID FOR MISSING JURY DUTY.

SO, AGAIN, THAT'S UP TO THE COURT TO DECIDE THAT ISSUE.

THE COURT:  SO WITH ALL OF THOSE, I'M PLANNING TO EXPLORE TO SEE WHAT THEY SAY AND SEE WHAT THE FINANCIAL IMPACT TRULY IS, BUT UNLESS THERE'S SOMETHING YOU WANTED TO ADD IN TERMS OF ENCOURAGING THE COURT TO PRE-EXCUSE THEM.

MR. NARITA:  OKAY.  THEN I'LL LIMIT MY COMMENTS TO THAT.  IF THE COURT -- I WASN'T AWARE OF THAT.  SO LET ME JUST -- NO COMMENT ON JUROR NUMBER 38.

YEAH, NO COMMENT ON 38 AS WELL.

SO I DON'T THINK I HAVE ANY FURTHER COMMENTS ON THE FOLKS THAT YOUR HONOR HAS LISTED.

THERE WAS, THERE WAS ONE JUROR WHO -- OH, I'M SORRY.

THE COURT:  ANYTHING ELSE ON HARDSHIPS?

MR. NARITA:  YES.  LET ME SEE IF I CAN FIND IT.  I'M SORRY.

MR. LOKER:  NOT FOR THE PLAINTIFF, YOUR HONOR.

THE COURT:  OKAY.

MR. NARITA:  THERE WAS ONE ON THERE.  IF YOU WOULD GIVE ME ONE MOMENT, YOUR HONOR.  I DON'T THINK IT'S A -- I'M NOT SURE IF IT'S A HARDSHIP OR NOT.  IF I COULD BRING IT TO THE

COURT'S ATTENTION, JUROR NUMBER 10, MR. RAMIREZ, IS A 23-YEAR-OLD GENTLEMAN LIVING HERE IN SAN JOSE AND SAYS HE'S DISABLED, BUT THERE'S NOT A LOT OF DETAIL ABOUT THAT.

AND THEN I THOUGHT SOME OF HIS RESPONSES TO SOME OF THE QUESTIONS LOOKED A LITTLE CHOPPY AND DIDN'T ALWAYS MAKE A LOT OF SENSE, SO I DIDN'T -- UNLESS THERE'S FURTHER INVESTIGATION TO BE DONE ON THAT, BUT THAT'S PROBABLY SOMETHING YOUR HONOR AND THE PARTIES CAN TALK TO HIM ABOUT WHEN HE ARRIVES, JUROR NUMBER 10.

HE SAYS HE'S UNEMPLOYED.  AND WHEN HE'S ASKED WHO HIS EMPLOYER IS, HE SAYS NO ONE I KNOW OF.

WHEN HE WAS ASKED HOW LONG HE WORKED FOR HIS EMPLOYER, HE SAID I DON'T REMEMBER THE TIME I DID.

WHEN HE'S ASKED IF HE HAS ANY RELATIVES IN ANOTHER COUNTRY, HE SAYS I'VE GOT SOME FAMILY IN MEXICO, I BELIEVE.

THE COURT:  SO IT SEEMS LIKE HE IS WORTH EXPLORING AND DEFINITELY SOMEBODY WHO IS IN STRIKING ZONE, SO YOU ALL SHOULD -- IT'S NOT A HARDSHIP BASIS AND IT'S ALSO NOT A CAUSE BASIS IN TERMS OF THE CURRENT RECORD.

MR. NARITA:  OKAY.  THANK YOU, YOUR HONOR.

NOTHING FURTHER FROM THE DEFENDANT.

THE COURT:  ALL RIGHT.  AND, MR. LOKER, YOU HAD ONE FOR THE PLAINTIFF YOU WANTED TO RAISE WITH THE COURT FOR CAUSE?

MR. LOKER:  YES, FOR CAUSE, YOUR HONOR.

SO NUMBER 15, YOUR HONOR.  AND THAT IS MR. MARTIN.  TWO

CONCERNS WE HAD ABOUT MR. MARTIN.  UNDER QUESTION 20 HE STATED THAT HE IS CONCERNED THAT TORT LAW HAS BEEN PERVERTED IN SOME CASES.

THE SECOND CONCERN RELATES TO NUMBER 21.  MY BROTHER-IN-LAW IS CURRENTLY BEING SUED BY SOMEONE WHO HAS A FABRICATED MEDICAL CONDITION AND IS DEMANDING DAMAGES.

YOU KNOW, THOSE ANSWERS MAKE US FEEL LIKE HE HAS A PRESET DISPOSITION AGAINST PLAINTIFFS IN LITIGATION AND THAT HE WOULD PREJUDGE THE SCENARIO THINKING IT'S JUST ANOTHER CASE BY A PLAINTIFF THAT LACKS MERIT.

THE COURT:  YOU MAY BE ABLE TO ESTABLISH BIAS, BUT I DON'T THINK IT'S QUITE THERE.

MR. NARITA:  YEAH.  YOUR HONOR, MY ONLY COMMENTS ON THAT IS THAT MR. NELSON -- MR. MARTIN, EXCUSE ME.  WE HAVE AN INCREDIBLY INTELLIGENT AND WELL-EDUCATED JURY.  HE'S AMONG THEM.  HE HAS GOT A MASTER'S IN ELECTRICAL ENGINEERING FROM STANFORD AND HAS WORKED FOR APPLE FOR 34 YEARS.

YOU KNOW, THERE'S PROBABLY SOME CONTEXT TO HIS COMMENTS THAT SHOULD BE EXPLORED.

THE COURT:  YOU WILL DURING VOIR DIRE.

MR. NARITA:  BUT I DON'T SEE A BIAS OR A FOR CAUSE CHALLENGE.

THE COURT:  LET ME ASK YOU ALL -- BUT LET ME ASK MR. LOKER.  ABOUT JUROR NUMBER 10, DID YOU HAVE CONCERNS?  I HAD JUST REALIZED I DID NOT ASK.  IF THE PARTIES STIPULATE TO A

JUROR, I WOULD BE --

MR. LOKER:  10 WAS NOT ON MY LIST OF CONCERNS, BUT LET ME REVIEW.

OH, 10, THAT WAS THE ONE THAT MR. NARITA WAS JUST DISCUSSING.  I DIDN'T HAVE ANY ISSUES WITH HIM.

THE COURT:  OKAY.  SO WE'LL WAIT AND SEE.  10 WE'LL WAIT AND SEE.  IT'S DEFINITELY WORTH YOU ALL EXPLORING GIVEN THAT THEY ARE GOING TO BE WITHIN THE EIGHT WITH THE PRE-EXCUSALS -- I MEAN, OR CLOSE TO THE EIGHT.  NUMBER 10 WILL BE IN THE EIGHT AND NUMBER 15 WILL BE CLOSE.

MR. LOKER, I DON'T THINK IT ESTABLISHES IT FIRMLY ENOUGH.  IF YOU EXPLORE IT, WE'LL SEE WHETHER OR NOT THERE'S A FOR CAUSE CHALLENGE.

MR. LOKER:  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO WITH THAT -- AND REMIND ME, WE WILL BACK TO JUROR NUMBER 12.  WE'LL SEE HOW MUCH MY -- IN TERMS OF THE TEACHER.

MR. LOKER:  AND WHEN YOU SAY WE'LL COME BACK TO JUROR 12, IS THAT SOMETHING THAT YOU WANT US TO REMIND YOU ABOUT LATER TODAY?

THE COURT:  YEAH, BY THE END OF TODAY.

MR. LOKER:  OKAY.  JUST MAKING SURE.

THE COURT:  BECAUSE OUR DEADLINE TO PRE-EXCUSE IS TOMORROW AT NOON SO.

MR. LOKER:  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO WE ARE DONE WITH OUR HARDSHIPS.

AND WITH THE ONES WHO I HAVE LISTED, I WILL EXPLORE WITH THEM, WHEN I -- AT LEAST THE ONES THROUGH, SAY, 21.  WITH 38 AND 40, I'LL PROBABLY GIVE THEM SHORT SHRIFT IN TERMS OF -- UNLESS IT LOOKS LIKE THEY'RE SUDDENLY IN THE STRIKE ZONE, AND THEN I WILL ASK QUESTIONS OF THEM.

BUT WITH 3 -- WITH 3, 8, 12, 21 I'M PLANNING TO AT LEAST EXPLORE THAT SOMEWHAT --

MR. LOKER:  THANK YOU, YOUR HONOR.

THE COURT:  -- FOR AN ADDITIONAL PASS.

JUST SO YOU KNOW WHERE I'M TO HEAD TO NEXT, WE'RE GOING TO FOLLOW UP REGARDING THE JOINT STATUS REPORT AND SOME OF THE ISSUES RAISED THERE, THE BIFURCATION QUESTION, AND THEN AFTER THAT PREVIEWING DEPO DESIGNATIONS.

I HAVE A HARD STOP A LITTLE BIT PAST NOON TODAY BECAUSE WE DO HAVE A CRIMINAL CALENDAR THIS AFTERNOON, SO -- AND THEN IF WE NEED THE TIME, SO THURSDAY JUST -- I'LL GIVE YOU A SCHEDULE PREVIEW.  THURSDAY WE HAVE JURY SELECTION STARTING.  I NEED TO GET A SENSE OF WHEN THE JURY IS GOING TO COME IN.  LET ME JUST DOUBLE CHECK THAT.  BUT WE WILL BE TAKING A LUNCH BREAK.  IF WE HAVE ANYTHING LEFT AFTERWARDS, I'LL HAVE COUNSEL COME BACK AROUND 2:00, AND WE WILL KEEP GRINDING THROUGH WHATEVER ELSE WE NEED TO.

MY GOAL IS THAT THE JURY INSTRUCTIONS ARE PRETTY MUCH SET,

AT LEAST CLOSE ENOUGH THAT I CAN POST THEM FOR YOU ALL TO GIVE ANY LAST REMARKS VERSUS US GOING THROUGH A FULL INSTRUCTION CONFERENCE.

MR. LOKER:  YES, YOUR HONOR.

THE COURT:  JUST BECAUSE THERE'S NOT REALLY MUCH WE'RE GOING TO CHANGE JUST BY WAY OF TESTIMONY THAT WOULD AFFECT THE JURY INSTRUCTIONS IN THIS CASE.

ALL RIGHT.  BUT LET ME PULL UP MY NOTES.

ALL RIGHT.  JUST LOOKING THROUGH MY NOTES, IT LOOKS LIKE THE JURORS WILL BE DOWN THERE BETWEEN 7:30 AND 8:00 ON THURSDAY.  THEY SHOULD BE IN THE COURTROOM BY 9:00.

MY GOAL IS THAT WE'RE DONE WITH VOIR DIRE, AND WE'RE DONE SELECTING OUR JURY BY NOON.  SO WE'LL SEE.  BUT THAT IS MY GOAL.  AND AT THE LATEST, 12:30, BUT I REALLY WOULD LIKE TO DO NOON.  AND GIVEN MY PRE-EXCUSALS, I THINK THAT SHOULD HELP.

COUNSEL, WE'LL SEE WHERE WE ARE AT THE END OF TODAY, BUT MY GUESS IS THAT I'LL PROBABLY BE HAVING YOU COME BY 8:30, IF NOT EARLIER.

SO JOINT STATUS REPORT.  THE PARTIES HAVE ARRIVED AT A JOINT STATUS REPORT IN THE VERY WEE HOURS, TRIAL BRIEFS IN THE VERY WEE HOURS, AND SOME OTHER THINGS AROUND.  AND SO WE ARE IN THE FEDERAL SHUT DOWN.  MY STAFF IS WORKING REALLY HARD.  I AM WORKING VERY HARD.  YOU KNOW, I'LL BE HONEST, I READ YOUR PRE -- YOUR STATUS REPORT WHEN IT CAME IN AT WHATEVER TIME THAT WAS.  YOU HAVE TO BE MORE RESPECTFUL OF OUR TIME.

SO IF THE DEADLINE IS MONDAY OR TUESDAY, UNLESS IT'S, HEY, JUDGE, WE CAN'T GET THIS TO YOU UNTIL X TIME, THAT MEANS BUSINESS HOURS.  MY STAFF DOES NOT NEED TO STAY UP UNTIL 9:00 O'CLOCK, 10:00 O'CLOCK.  I DON'T NEED TO STAY UP UNTIL MIDNIGHT WAITING FOR YOUR SUBMISSIONS.

AM I CLEAR?

MR. LOKER:  YES, YOUR HONOR.

MR. NARITA:  YES, YOUR HONOR.

THE COURT:  SO THE COURT HAD ORDERED PARTIES TO MEET AND CONFER REGARDING DISPUTED INSTRUCTIONS NUMBER 37 AND 42 AND 44.

SO THE PARTIES AGREE THAT DISPUTED INSTRUCTION NUMBER 42, WHICH WAS THE PROXIMATE CAUSE INSTRUCTION, DOES NOT NEED TO BE GIVEN, AND THE PARTIES HAVE WITHDRAWN THEIR VERSIONS OF THAT INSTRUCTION.

SO THIS LED TO THE MEET AND CONFER EFFORTS AROUND INSTRUCTION NUMBER 37, WHICH THEN LED TO DISCUSSION REGARDING 44.

SO THE PARTIES, I KNOW RECALL, 37 -- I GUESS THE TITLE OF IT WAS RECOVERY FOR VIOLATION, AND THE ISSUE BECAME WHETHER OR NOT THE STANDARD FOR PUNITIVE DAMAGES AND WHETHER OR NOT PUNITIVE DAMAGES WAS -- SHOULD BE IN THE HANDS OF THE JURY OR THE JUDGE.  DEFENDANT RAISED THE QUESTION OF WHETHER OR NOT IT'S A QUESTION FOR THE JURY OR THE JUDGE FOR THE FIRST TIME IN THESE PAPERS.

SO IN RESPONSE, PANCHENKO -- PLAINTIFF ARGUED THAT THIS WAS UNTIMELY, AND, SECOND OF ALL, WAS -- DID NOT FALL IN LINE WITH THE MANY, MANY FCRA CASES THAT I KNOW BOTH COUNSEL HAVE DONE AND HAS GENERALLY -- AND IS NOT SUPPORTED BY THE STATUTORY LANGUAGE.

DEFENDANT IN THEIR RESPONSE ARGUED THAT IT'S CLEAR WITHIN 1681(N), SECTION 1681(N)(A) AND OTHER SUBPARTS THAT THE PLAIN LANGUAGE, AS WELL AS -- AND ALSO CITED TO 1681(O) INDICATING THAT THIS SHOULD BE IN THE HANDS OF THE JUDGE, WHICH WOULD SUGGEST BIFURCATION OF THE TRIAL.

SO HERE'S MY TAKE, AND I'LL LET YOU ALL ARGUE IT, WITH A TIME LIMIT ON ARGUMENT, BUT I DO AGREE IT'S UNTIMELY.  THIS SHOULD HAVE BEEN RAISED EARLIER.  BIFURCATION WAS SPECIFICALLY ASKED OF IN THE JOINT PRETRIAL STATEMENT.  THIS WAS NOT RAISED AS AN ISSUE IN THAT.

SECOND OF ALL, I DON'T THINK THE PLAIN LANGUAGE NECESSARILY SUPPORTS DEFENDANT'S READING IN TERMS OF "AS THE COURT MAY ALLOW" VERSUS "DETERMINED BY THE COURT."

MY READING WOULD BE TO ADD "THE COURT MAY ALLOW."  IT SEEMS PERFECTLY FITTING TO DO BY WAY OF POST-TRIAL MOTIONS, WHICH IS WHAT I SAW IN THE CASE LAW CITED BY BOTH PARTIES, INCLUDING CASE LAW RESEARCH WHICH I DID THIS MORNING ON MY OWN.

THIRD OF ALL, DEFENDANTS HAVE NOT CITED ANY AUTHORITY AS THEY RECOGNIZED, WHICH I APPRECIATE THE UP-FRONTNESS, BECAUSE THAT WOULD HAVE MADE ME QUITE GRUMPY, BUT I APPRECIATE THE

DEFENDANT SAYING THAT THERE IS NO BINDING AUTHORITY REGARDING THIS, AND I HAVEN'T FOUND ANYWHERE WHERE THIS HAS EVEN BEEN APPLIED AT ALL.

SO FOR ALL OF THOSE REASONS, THE COURT IS NOT INCLINED TO BIFURCATE, IS NOT INCLINED TO PUT THIS IN THE HANDS OF -- IN MY OWN HANDS UNLESS THERE'S SOME STIPULATION TO WAIVE JURY TRIAL.

SO WITH THAT, WE'LL BEGIN.

MR. NARITA:  THANK YOU, YOUR HONOR.  LET ME ADDRESS FIRST THE UNTIMELINESS POINT.

THE COURT:  WELL, LET ME PUT A TIME LIMIT.

MR. NARITA:  SURE.

THE COURT:  SO LET'S SAY 5 TO 6 MINUTES.  I DON'T THINK IT SHOULD TAKE ANY LONGER THAN THAT.

OKAY.  PROCEED.

MR. NARITA:  ON THE UNTIMELINESS ISSUE AND THE BIFURCATION POINT, YOUR HONOR, YOU WILL RECALL WHEN WE WERE HERE THE LAST TIME, THE PARTIES WERE ARGUING OVER WHAT STANDARD SHOULD BE APPLIED TO PUNITIVE DAMAGES BECAUSE THE JURY INSTRUCTIONS -- BECAUSE THE MODEL INSTRUCTION FOR THE NINTH CIRCUIT HAS TWO DIFFERENT PROPOSED VERSIONS:

ONE IS CLEAR AND CONVINCING, AND ONE IS PREPONDERANCE OF THE EVIDENCE.

AND MS. GIVENTAL POINTED OUT TO THE COURT THAT AT THAT POINT WE WEREN'T EVEN SURE THAT THIS WAS AN ISSUE FOR THE JURY. WE DID -- WE WERE STRUGGLING AT THAT POINT ALREADY WHETHER THIS

WAS AN ISSUE FOR THE JURY.

SO YOUR HONOR EFFECTIVELY SENT US ALL BACK TO THE DRAWING BOARD AND SAID, LOOK, GO RESEARCH THIS AND FIGURE OUT WHETHER IT'S CLEAR AND CONVINCING OR IT'S PREPONDERANCE OF THE EVIDENCE.

AND WE WENT BACK TO THE DRAWING BOARD, AND IN DOING THAT, WE COULDN'T FIND ANY INDICATION THAT THIS IS AN ISSUE FOR THE JURY.  WE FOUND NOTHING THAT HAS -- NO COURT THAT HAS GRAPPLED WITH THIS IN THE FAIR CREDIT REPORTING ACT CONTEXT AND HAS SAID, YEAH, PUNITIVE DAMAGES GO TO THE JURY.

SO THEN WE LOOKED AGAIN AT THE PLAIN LANGUAGE OF THE STATUTE, WHICH SAYS THAT THE -- IT IS SUCH PUNITIVE DAMAGES AS THE COURT MAY ALLOW, WHICH IS THE SAME LANGUAGE USED IN THE FOLLOWING SUBSECTION ABOUT WHETHER ATTORNEYS' FEES ARE GOING TO BE AWARDED.

THE COURT:  NO, THE LANGUAGE IS NOT THE SAME.

MR. NARITA:  NO, IT IS NOT EXACTLY THE SAME.

THE COURT:  "AS THE COURT MAY ALLOW" IS DIFFERENT FROM "AS DETERMINED BY THE COURT."

MR. NARITA:  CORRECT.

THE COURT:  OKAY.

MR. NARITA:  BOTH SUBSECTIONS, YOUR HONOR, DO USE THE WORD "COURT."

THE COURT:  THE COURT IN MANY, MANY STATUTES.

MR. NARITA:  CORRECT, YOUR HONOR.  BUT GIVEN THE

DOCTRINE OF CONFORMANCE AND GIVEN THAT THIS ISSUE HAS NEVER BEEN SQUARELY ADDRESSED BY ANY COURT THAT WE FOUND -- WE JUST FOUND COURTS ASSUMING THAT IT IS SO.  YOU KNOW, WHEN WE WERE DIRECTED TO GO BACK TO THE DRAWING BOARD, THAT'S WHAT WE SAID, LOOK, WHY DOES THIS GO TO THE JURY WHEN THAT'S NOT WHAT CONGRESS SPECIFIED IN THE STATUTE?

THE COURT:  SO THAT CONFERENCE, WHICH YOU'RE DISCUSSING, WAS OUR PRETRIAL CONFERENCE ON OCTOBER 21ST; CORRECT?

MR. NARITA:  I BELIEVE SO, WHEN WE FIRST HAD --

THE COURT:  AND WHEN WAS YOUR JOINT PRETRIAL STATEMENT?

MR. NARITA:  WEEKS BEFORE THAT.

THE COURT:  IN SEPTEMBER; RIGHT?

MR. NARITA:  CORRECT.

THE COURT:  SO I APPRECIATE YOU USING THIS -- I APPRECIATE THE CONTEXT OF SAYING, OH, WE ONLY THOUGHT ABOUT THIS BECAUSE WE WENT AND WE DUG DEEP, WHICH I APPRECIATE YOU ALL DIGGING DEEP, BUT, I MEAN, THAT'S NOT THE HOOK TO REOPEN AN ISSUE.  I MEAN, THIS IS -- THESE ARE INJURE JURY INSTRUCTIONS. THIS IS YOUR LAW.  YOU BOTH FOCUS ON THIS AREA OF THE LAW.

SO TO SAY, OKAY, WELL, WE ONLY GOT THERE BECAUSE, JUDGE, YOU MENTIONED IT A WEEK AGO, IS NOT A SUFFICIENT BASIS TO REOPEN THE QUESTION OF BIFURCATION IN TERMS OF PROCEDURALLY.

BUT CONTINUE IN TERMS OF THE SUBSTANCE OF YOUR ARGUMENT.

MR. NARITA:  THANK YOU.  AND JUST ON THE BIFURCATION POINT, YOUR HONOR, WE DON'T SEE THIS AS A REQUEST TO BIFURCATE THE TRIAL.

A BIFURCATED TRIAL, AS I UNDERSTAND IT, WOULD BE YOU GO TO THE TRIER OF FACT, PERHAPS IT'S THE JURY, AND YOU SAY DO YOU FIND THAT THERE WAS A WILLFUL VIOLATION?  AND YOU ASK THEM TO CHECK A BOX.

IF THEN THEY CHECK THAT BOX, YOU START ANOTHER TRIAL WHERE YOU BRING IN EVIDENCE RELATING TO WHETHER PUNITIVE DAMAGES SHOULD BE AWARDED AND THEN YOU SEND THE TRIER OF FACT BACK FOR PHASE 2 OF A BIFURCATED TRIAL.

THAT'S NOT WHAT WE'RE ASKING.  WE'RE SAYING THAT THE JURY DOES ITS JOB BY -- IF IT FINDS LIABILITY, IT FINDS LIABILITY.  IF IT FINDS THERE'S WILLFULNESS, THEN THERE'S A FINDING OF WILLFULNESS.  IF IT FINDS ACTUAL DAMAGES, IT FINDS ACTUAL DAMAGES.  AND THEN SUCH PUNITIVE DAMAGES AS THE COURT MAY ALLOW.  THAT'S NOT A SECOND PHASE.  THAT'S JUST, THAT'S JUST THE COURT MAKING THE DECISION.

SO WE'RE NOT ASKING FOR SOME FORM OF BIFURCATION.

THE COURT:  SO YOU WOULDN'T WANT ANY ADDITIONAL TESTIMONY, YOU WOULDN'T WANT ANY ADDITIONAL ARGUMENT?

MR. NARITA:  WELL, ARGUMENT PERHAPS IF THE COURT WANTED ARGUMENT.

BUT THE COURT WOULD BE THE ONE THAT WOULD DECIDE BASED ON THE RECORD THAT WAS PRESENTED WHETHER AND HOW MUCH PUNITIVE

DAMAGES OUGHT TO BE AWARDED.  THAT'S -- WE'RE DRAWING ON A SOMEWHAT BLANK SLATE, YOUR HONOR, BECAUSE WE HAVEN'T SEEN ANY COURT GRAPPLE WITH THIS, BUT THAT IS THE WAY THAT WE READ THE PLAIN LANGUAGE OF THE STATUTE.

AND EVERY CASE THAT WE HAVE READ HAS JUST ASSUMED THAT THIS WAS AN ISSUE FOR THE JURY WITHOUT REALLY DECIDING --

THE COURT:  SO WHAT CASES ARE YOUR BEST CASES THAT SUPPORT YOUR POSITION?  OR WHAT SUPPORTS YOUR POSITION, BECAUSE RIGHT NOW YOU'RE ARGUING PURELY IN THE VACUUM.

MR. NARITA:  CORRECT.  WELL, NOT FULLY IN A VACUUM. WE DID PUT IN WHAT WE HAD, YOUR HONOR, WHICH WAS THE NINTH CIRCUIT CASES TALKING ABOUT THE DOCTRINE OF CONFORMANCE AND ALSO ABOUT READING THE PLAIN LANGUAGE OF THE STATUTE.

AND HERE I THINK THE WORD "COURT" IS REALLY THE OPERATIVE WORD.  WE OBVIOUSLY ACKNOWLEDGE THAT THERE ARE OTHER --

THE COURT:  SO WHY ISN'T MY PLAIN READING OF THE STATUTE JUST AS PERSUASIVE?  WHY DOES IT MAKE MORE SENSE IN FACT UNDER THE PLAIN LANGUAGE BECAUSE THE PLAIN LANGUAGE IS NOT THE SAME?  YOU CANNOT PULL ONE WORD OUT.

SO WHY DOESN'T MY SUGGESTION MAKE MORE SENSE IN TERMS OF WHAT THAT PLAIN LANGUAGE MEANS, MAKE MORE SENSE THAN YOUR SUGGESTION GIVEN THE FACT THAT THE LANGUAGE DIFFERS IN TERMS OF THE VERBS THAT ARE BEING USED.

MR. NARITA:  WELL, I THINK IF THAT WERE TRUE, YOUR HONOR, THEN THAT WOULD EFFECTIVELY MAKE RULE 59 OR

PORTIONS OF RULE 59 SUPERFLUOUS IN THIS CASE.

THE COURT ALWAYS HAS THE POWER TO, QUOTE-UNQUOTE, ALLOW ANY KIND OF AWARD, DAMAGE AWARD OR ANYTHING ELSE WITH THE POWER TO ORDER A NEW TRIAL UNDER RULE 59.  WE CAN DO A REMITTITUR OR WE CAN DO ALL TYPES OF THINGS.

THE COURT:  MR. NARITA, I HEAR YOUR POINT SAYING THAT IT WOULD THEN RENDER RULE 59 SUPERFLUOUS.  AND ANY OTHER POINTS BECAUSE WE'RE AT 7 MINUTES NOW?

MR. NARITA:  NO OTHER POINT ON THAT FOR RIGHT NOW, YOUR HONOR.

THE COURT:  OKAY.  MR. LOKER.

MR. LOKER:  TO ADDRESS ONE OF YOUR QUESTIONS, YOUR HONOR, ABOUT THE CASE LAW.

SO WE HAVE AT PAGE 5 OF THE BRIEF LINE 17 TO 24, IT'S A CASE ARMENI, A-R-M-E-N-I, VERSUS TRANS UNION THAT SPECIFICALLY LOOKED AT THIS LANGUAGE.  IT'S IN OUR BRIEF, BUT SINCE YOU ASKED THE QUESTION TO MR. NARITA.

AND IN TERMS OF UNTIMELINESS, THAT CASE DEALS WITH THE MERITS OF THE REQUEST.

BUT IN TERMS OF THE UNTIMELINESS, YOU KNOW, WE DISCUSSED BIFURCATION WHEN WE WERE MEETING AND CONFERRING ABOUT THE PRETRIAL STATEMENT, AND IT DIDN'T COME UP.  YOU KNOW, I KNOW THAT WHEN WE'VE BIFURCATED PUNITIVE DAMAGES IN OTHER MATTERS -- YOU KNOW, MY LAST CASE WAS BIFURCATED -- TO YOUR POINT, WE KEPT OUT EVIDENCE OF THE NET WORTH OF THE DEFENDANT, AND WE DIDN'T

TALK ABOUT THAT AND OTHER FACTORS RELATED TO PUNITIVE DAMAGES. SO THAT'S WHY HE WAS SAYING THIS BIFURCATION ISSUE OF PUNITIVE DAMAGES SHOULD HAVE BEEN DISCUSSED IN THE PRETRIAL STATEMENT. WE'RE MEETING AND CONFERRING REGARDING THAT.  BUT I DON'T HAVE ANYTHING FURTHER, YOUR HONOR.

THE COURT:  IN TERMS OF YOUR AUTHORITY, ARMENI DIRECTLY ADDRESSES IT, AND THEN YOU HAVE A STRING OF OTHER CITES AT THE BOTTOM OF PAGE 5 GOING ON TO PAGE 6, ECF PAGES, ECF PAGE NUMBERS IS WHAT I'M CITING TO YOU.

ANYTHING ELSE I SHOULD KNOW ABOUT THOSE CASE CITES THAT YOU ARE CITING?

MR. LOKER:  SO STARTING FIRST WITH THE CASES THAT COME AFTER ARMENI.  THOSE CAME DIRECTLY FROM THE DECISION. THAT'S WHAT ARMENI RELIED UPON FOR THOSE DECISIONS.

THE COURT:  YES.  STARTING WITH CAIRNS, C-A-I-R-N-S.

MR. LOKER:  SORRY, ARMENI -- THE FIRST THAT WAS CITED WAS SAUNDERS.

THE COURT:  NO.  I'M TALKING ABOUT THE NEXT PARAGRAPH.

MR. LOKER:  I SEE.  I MISUNDERSTOOD YOUR CUE.  MY APOLOGIES.

THE COURT:  NO WORRIES.

MR. LOKER:  AND THEN GOING TO CAIRNS AND SHORAKA AND MARTINEZ, AND MARTINEZ BEING ONE OF MY CASES, THOSE DIDN'T ADDRESS SQUARELY THE ISSUE OF WHETHER IT GOES TO THE COURT.

THOSE CASES EACH SAID THAT PUNITIVE DAMAGES ARE RESERVED FOR THE JURY.

THE COURT: OKAY.

MR. LOKER: SO AS YOU NOTED IN THE BEGINNING, THERE'S NOT A LOT OF CASE LAW ON THIS. THIS IS ONE OF THE FIRST TIMES, OR THE FIRST TIME RATHER, THAT I LOOKED AT WHETHER IT GOES TO THE COURT OR THE JURY. BUT THOSE QUOTES I PULLED BECAUSE THEY SPECIFICALLY SAID IT GOES TO THE JURY.

THE COURT: ALL RIGHT. ANYTHING FURTHER, MR. LOKER?

MR. LOKER: NOT FROM THE PLAINTIFF, YOUR HONOR.

THE COURT: ALL RIGHT. MR. NARITA, GIVEN THE TIME DIFFERENCE, I'M GOING TO ASSUME THERE'S NOTHING FURTHER.

MR. NARITA: THAT'S RIGHT. THAT'S ALL RIGHT, YOUR HONOR.

THE COURT: OKAY. ALL RIGHT.

THE COURT IS NOT INCLINED TO -- FOR THE REASONS STATED, THE COURT IS NOT INCLINED TO BIFURCATE THE TRIAL OR FIND THAT THE QUESTION OF PUNITIVE DAMAGES IS A QUESTION FOR THE JUDGE VERSUS THE JURY. AND I'LL NEED TO TAKE A CLOSER LOOK AT THE RELATED INSTRUCTIONS BECAUSE I ONLY GOT AS FAR AS THAT QUESTION GIVEN THE HOUR OF WHICH THIS WAS RECEIVED, BUT I'LL TAKE A LOOK AT THE REST OF THE RELATED JURY INSTRUCTIONS.

MR. LOKER: THANK YOU, YOUR HONOR.

MR. NARITA: THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. I HAD ONE TOPIC, WHICH I

FORGOT TO RAISE EARLIER.  I HAD NOT RAISED THE EXHIBITS.  THERE ARE THREE EXHIBITS WHICH I HAD REFERENCED.  MAYBE WE SHOULD GO THERE AND THEN TO DEPO DESIGNATIONS.

MR. NARITA:  SURE, YOUR HONOR.  WAS YOUR HONOR PLANNING TO RETURN BACK TO JURY INSTRUCTIONS AT ALL OR IS THAT ALL THAT THE COURT HAD ABOUT JURY INSTRUCTIONS?

THE COURT:  WAS THERE SOMETHING THAT YOU WANT TO RAISE -- COUNSEL WOULD LIKE TO RAISE ABOUT JURY INSTRUCTIONS?

MR. NARITA:  WELL, THERE IS, BUT I'M MINDFUL OF THE COURT'S HARD STOP TOO.

IF I COULD DO THAT IN JUST 30 SECONDS MAYBE JUST AS A BOOKMARK FOR YOUR HONOR.

THE COURT:  THAT WOULD BE GREAT.  GIVE ME ONE MOMENT.

MR. NARITA:  SURE.

THE COURT:  FOR SOME REASON -- I HAVE MANY PIECES OF PAPER UP HERE TODAY, SO I JUST MISPLACED THE PIECE OF PAPER WITH MY JURY INSTRUCTION NOTES.  SO LET ME MAKE I CAN SURE THAT I HAVE IT.

ALL RIGHT.  MR. NARITA.

MR. NARITA:  YOUR HONOR, WHEN WE LEFT OFF LAST TIME WE WERE TOGETHER, WE HAD SOME DISCUSSION ABOUT WHETHER THERE OUGHT TO BE AN INSTRUCTION TO THE JURY THAT DEFINES WHAT A REASONABLE INVESTIGATION IS OR NOT.

AND BOTH PARTIES HAD SUBMITTED INSTRUCTIONS TO YOU

SUGGESTING WHAT THAT SHOULD BE.  WE BOTH AGREED THAT THERE OUGHT TO BE AN INSTRUCTION ABOUT WHAT A FURNISHER'S -- FLESHING OUT WHAT A FURNISHER'S REASONABLE INVESTIGATION SHOULD BE.

THE COURT:  DID WE ACTUALLY -- DID YOU BOTH AGREE AT THE END OF THE LAST CONFERENCE BECAUSE I DON'T KNOW IF I RECALL YOU BOTH NECESSARILY AGREEING?

LET ME PULL UP MY NOTES.

MR. NARITA:  WELL, ALLOW ME TO REPHRASE.  WE BOTH SUBMITTED SPECIALIZED INSTRUCTIONS ON THE ISSUE.  IT WAS, IT WAS INSTRUCTION NUMBER 34.  WE HAD COMPETING VERSIONS OF THAT, AND THERE WAS SOME ARGUMENT ON THAT POINT.

THE COURT:  YES.

MR. NARITA:  AND YOUR HONOR DID NOT ASK US TO DO ANY FURTHER BRIEFING ON THE ISSUE, BUT AS I RECALL, YOUR HONOR DIDN'T REACH A DECISION ON WHETHER OR NOT OF THE INSTRUCTION SHOULD BE GIVEN OR IN WHAT FORM.

MY ONLY POINT I WANTED TO RAISE WITH THE COURT TODAY IS THAT, YOU KNOW, WE DO FEEL VERY STRONGLY THAT AN INSTRUCTION OF SOME SORT OUGHT TO BE GIVEN TO THE JURY ON WHAT THE WORD "REASONABLE" MEANS IN THIS VERY SPECIALIZED CONTEXT OF THE FAIR CREDIT REPORTING ACT, AND I WOULD --

THE COURT:  OKAY.  SO YOU'RE ASKING FOR AN INSTRUCTION.

I HAD INDICATED, I BELIEVE -- I'M JUST TRYING TO CATCH UP WITH MY NOTES.  I INDICATED THAT I WAS INCLINED NOT TO GIVE A

JURY INSTRUCTION.

THE PARTIES HAD ARGUED, AND I UNDERSTAND THAT BASICALLY, THAT DEFENDANT BASICALLY WANTED BOTH SIDES OF THE CASE LAW SO TO SPEAK, I BELIEVE IS HOW THEY FRAMED IT.  AND MR. LOKER -- I WANTED TO JUST CONFIRM MR. LOKER'S POSITION AT THE END OF THAT.

WAS YOUR SHAKEOUT -- WAS PLAINTIFF'S SHAKEOUT THAT IN TERMS OF THE POSITION THAT THERE SHOULD BE AN INSTRUCTION THAT WAS YOUR INSTRUCTION OR IS IT THAT THERE SHOULD BE NO INSTRUCTION?

MR. LOKER:  OUR POSITION ON NUMBER 34, YOUR HONOR, IS THAT OUR INSTRUCTION JUST MIRRORED WHAT THE NINTH CIRCUIT HAS PREVIOUSLY SAID, AND THAT'S WHERE WE ENDED IT.

THE COURT:  OKAY.  OKAY.  WELL, I MEAN, I AM STILL LOOKING AT THAT INSTRUCTION.

MR. NARITA:  OKAY.  THAT'S ALL I WANTED TO RAISE WITH THE COURT.

THE COURT:  OKAY.  ALL RIGHT.

LET'S GO THROUGH THE EXHIBITS AND THE DEPO DESIGNATIONS, UNLESS THERE'S ANYTHING FROM THE STATUS REPORT THAT I MISSED.

MR. LOKER:  NOTHING FROM THE PLAINTIFF, YOUR HONOR.

WELL, THIS MORNING I FILED A COUPLE OF EXHIBITS THAT WERE SUPPOSED TO BE FILED WITH THE STATUS REPORT LAST NIGHT.  THOSE WERE SIMPLY JURY INSTRUCTIONS FROM OTHER CASES THAT ADDRESS THE STATUS REPORT.

THE COURT:  I SAW THAT REFERENCED.  SO, OKAY.  THANK

YOU.

MR. LOKER:  THANK YOU.

THE COURT:  ANYTHING ELSE FROM THE STATUS REPORT, MR. NARITA, THAT THE DEFENDANT WANTED TO ADDRESS?

MR. NARITA:  NOTHING FROM THE DEFENDANT'S SIDE, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO NOW LET'S TURN TO THOSE EXHIBITS.

MR. LOKER:  I BELIEVE 25 WAS THE FIRST ONE THAT THE COURT HIGHLIGHTED.

THE COURT:  YES.  WELL, LET'S DISCUSS EXHIBITS MORE GENERALLY.  ANY OTHER UPDATES REGARDING AN EXHIBIT LIST OR ANYTHING ELSE WHICH THE COURT SHOULD KNOW?

I RECEIVED YOUR UPDATED EXHIBIT LIST.  I'VE GONE THROUGH THEM.  I THINK A LOT OF THEM ARE ADDRESSED EITHER THROUGH THE COURT'S PRIOR IN LIMINE RULINGS OR THROUGH LIMITING INSTRUCTIONS, OR THE THIRD CATEGORY I PUT IN IS A LOT OF THEM DEAL WITH OR ARE GOING TO BE CONTEXT SPECIFIC IN TERMS OF WHAT HAPPENS WITH AUTHENTICATION, WHETHER THAT IS GOING TO BE PROVED THROUGH STIPULATION, WHICH IT DOES NOT SEEM LIKE THERE'S GOING TO BE A STIPULATION AS TO THAT, WHETHER OR NOT IT'S INSOFAR AS BRINGING IN THIRD PARTY WITNESSES, AND WHETHER -- OR WHETHER OR NOT THAT'S BY WAY OF DECLARATION OR AFFIDAVIT.  BUT THESE WERE THE THREE THAT I THOUGHT WERE USEFUL TO DISCUSS TODAY.

MR. SEARLES:  YOUR HONOR, NATHAN SEARLES.

THE COURT:  YES.

MR. SEARLES:  YOU JUST ASKED IF THERE WERE ANY OTHER ISSUES AS FAR AS THE EXHIBIT LISTS.

THE COURT:  YES.

MR. SEARLES:  WE FOUND -- OUR CLIENT FOUND TWO DOCUMENTS THAT WERE HYPERLINKED THROUGH THE POLICIES AND PROCEDURES.  WE'VE PROVIDED THEM TO MR. LOKER ON FRIDAY.

WE WOULD LIKE TO PROVIDE THOSE TO THE COURT AND SUBMIT THEM IN AN AMENDED EXHIBIT LIST.

THE ISSUE IS THOSE DOCUMENTS ARE BASED ON REVISION DATES.  SO WE HAVE PROVIDED AN OLDER VERSION, AND WE HAVE PROVIDED A NEW VERSION THAT WASN'T APPLICABLE DURING THE TIME OF THIS REVIEW.

SO THE POLICIES CHANGE, YOUR HONOR.  SO WE HAVE A FEBRUARY OF '23 DOCUMENT, AND THEN WE HAVE A NOVEMBER OF '23 DOCUMENT.

IN SEARCHING THROUGH THE RECORDS, OUR CLIENT FOUND AN AUGUST OF 2023 DOCUMENT, WHICH WOULD BE APPLICABLE DURING THE TIME OF THIS ACTION.  SO WE WANTED TO PROVIDE THAT.  WE SENT IT TO MR. LOKER SO HE KNOWS.

SO HE'S SEEN AN OLDER VERSION OF IT, AND HE'S SEEN A NEWER VERSION.  WE ARE JUST TRYING TO PROVIDE AN INTERMEDIARY VERSION THAT WAS APPLICABLE DURING THE TIME IN WHICH THESE REVIEWS WERE TAKING PLACE.

THE OTHER DOCUMENT THAT WE WISH TO ADD TO OUR EXHIBIT LIST IS JUST A COMPLAINT IN THIS MATTER.

MR. LOKER: AND I OBJECTED, YOUR HONOR, JUST BASED UPON IT COMING OUT ON FRIDAY. YOU KNOW, THE WITNESSES TESTIFIED ABOUT THE PROCEDURES THEY LOOKED AT AND WERE WORKING UNDER.

THIS ONE, YOU KNOW, I HAVEN'T SEEN IT UNTIL FRIDAY, I DIDN'T TALK TO A 30(B)(6) ABOUT IT OR ANYONE ELSE ABOUT IT, SO I WOULD JUST OBJECT AS IT BEING UNTIMELY.

THE COURT: DO YOU HAVE IT? DID YOU FILE THIS? IS THERE SOMETHING WHICH IS ON THE DOCKET WHICH REFLECTS THESE ADDITIONAL EXHIBITS THAT YOU WERE ASKING TO SUPPLEMENT THE EXHIBIT LISTS WITH?

MR. SEARLES: NO, YOUR HONOR. WE WERE MEETING AND CONFERRING WITH COUNSEL LAST NIGHT, AND I JUST WANTED TO PROVIDE IT TODAY.

I DIDN'T WANT TO FILE IT AND GIVE IT TO THE COURT WITHOUT US HAVING THIS DISCUSSION AND SOMEHOW THE COURT REVIEWING IT NOT KNOWING THAT MR. LOKER OPPOSED IT.

MR. NARITA: SO A LITTLE MORE CONTEXT, YOUR HONOR, IF I COULD.

THE COURT: SO MY CONCERN IN PART IS BASICALLY, I MEAN, FOR THE REASONS THAT MR. LOKER STATED. AND I DON'T KNOW IF THESE ARE DIFFERENT, IF THESE ARE NOT DIFFERENT. I NEED A LOT MORE CONTEXT THAN HAVING YOU ALL TALK AT ME ABOUT THIS RIGHT NOW IS NOT NECESSARILY GOING TO HELP.

MR. NARITA: OKAY. AND WE CAN CERTAINLY PROVIDE THE

DOCUMENTS TO THE COURT.  THEY'RE QUITE SHORT, FOUR PAGES.

SO THIS IS THE CONTEXT, WE DID --

THE COURT:  DO YOU HAVE THE DOCUMENT?  DO YOU HAVE THE PRIOR EXHIBITS?  AND ARE YOU WILLING TO MAKE YOUR 30(B)(6) AVAILABLE FOR FURTHER -- FOR A DEPOSITION?

MR. NARITA:  WE CERTAINLY ARE, YOUR HONOR.  IF MR. LOKER IS INTERESTED, WE CAN CERTAINLY MAKE A 30(B)(6) AVAILABLE.

HE WAS PROVIDED WITH THE DOCUMENTS THAT WE JUST FOUND ON FRIDAY, AND THEN WE GOT WORD FROM HIM I THINK YESTERDAY -- YEAH, YESTERDAY, THAT HE OBJECTS TO THESE, THESE TWO DOCUMENTS SO.

MR. SEARLES:  YOUR HONOR, I'M HAPPY TO LEAVE THE COURT NOW AND GO GET A PRINTED COPY FOR YOU IF THAT WOULD PLEASE THE COURT.

THE COURT:  SO, COUNSEL, THIS ALL SHOULD HAVE BEEN RAISED EARLIER.  I MEAN, YOU CAN DO WHAT YOU CHOOSE TO DO.  IF YOU WANT TO GO GET A COPY AND ASK THE COURT TO CONSIDER, AND IF YOU WANT TO FILE SOMETHING TO ASK THE -- TO REQUEST TO AMEND YOUR EXHIBIT LIST, YOU CAN.  YOU CAN CONTINUE TO MEET AND CONFER.

THESE ARE OPTIONS WHICH I WOULD THINK ABOUT IN TERMS OF WHETHER OR NOT TO OFFER A 30(B)(6) TO MR. LOKER IN THE COMING FIVE DAYS BEFORE WE START TRIAL.  THESE ARE WAYS TO TRY TO -- TO ADDRESS THE POSSIBLE PREJUDICE BECAUSE YOU CAN EITHER

REPRESENT TO ME THAT THEY'RE DIFFERENT, BUT UNLESS I HAVE THE DOCUMENTS BEFORE ME AND YOU CAN SHOW ME AND TELL ME OR STIPULATE TO THE FACT THAT THE TESTIMONY WILL BE BINDING AS TO THIS VERSION OF THE AGREEMENT, THESE ARE ALL DIFFERENT OPTIONS. BUT I DON'T REALLY KNOW WHAT RELIEF YOU EXPECT ME TO AFFORD YOU RIGHT NOW.

MR. SEARLES:  UNDERSTOOD, YOUR HONOR.  AND WE JUST WANTED TO MAKE THE COURT AWARE, AND WE WERE HOPING TO RESOLVE OBVIOUSLY BETWEEN OURSELVES TODAY.

BUT NONETHELESS, AS I SAID, WE DIDN'T WANT TO GIVE THE COURT A COPY AND HAVE IT REVIEWED WITH ANY PREJUDICE TO OPPOSING COUNSEL WHO STATED THAT HE HAD OBJECTED.

THE COURT:  OKAY.

MR. LOKER:  TWO GENERAL UPDATES REGARDING THE EXHIBITS, YOUR HONOR.  WE HAVE BUSINESS RECORDS, DECLARATIONS FROM EACH OF THE THREE CREDIT BUREAUS, WHICH I'VE PROVIDED TO COUNSEL, AND WE INTEND TO PROCEED USING THOSE BUSINESS RECORDS AS OPPOSED TO THE FOUNDATION AND AUTHENTICATION ISSUES.

WE ACTUALLY DO HAVE ABOUT 20 STIPULATIONS AS TO FACTS WHICH MIGHT HELP EXPEDITE THE TRIAL.

THE COURT:  I'M VERY EXCITED.  YOU ALL SHOULD HAVE STARTED WITH THAT THIS MORNING.

MR. LOKER:  YEAH.  WE'RE STILL WORKING ON THEM. MR. SEARLES AND I WERE WORKING ON THEM KIND OF LATE LAST NIGHT. SO THERE'S A COUPLE OF TWEAKS THAT WE HOPE TO MAKE AND THEN WE

CAN GET THEM TO THE COURT.

THE COURT: WONDERFUL. THANK YOU FOR THE UPDATE REGARDING STIPULATIONS. I MEAN, I'VE SEEN THEM DIFFERENT WAYS. I HAVE SEEN THEM READ BEFORE THE INSTRUCTIONS OR RIGHT BEFORE THE OPENINGS -- WELL, I'VE SEEN THEM AS PART OF PRE-INSTRUCTION, AND I'VE SEEN THEM RIGHT AFTER THE OPENINGS, AND I'VE SEEN THEM AT THE FINAL INSTRUCTIONS. IT'S HARD FOR ME TO KNOW RIGHT NOW WITHOUT KNOWING WHAT THEY LOOK LIKE.

BUT DOES COUNSEL HAVE THOUGHTS ON THAT?

MR. LOKER: I WAS THINKING ABOUT THAT AS WELL, YOUR HONOR. SO WE TYPICALLY HAVE HAD THEM READ AS PART OF THE PRE-INSTRUCTION.

THE COURT: YES.

MR. LOKER: BUT HERE, SINCE THERE'S SO MANY OF THEM, SINCE THERE ARE 20 OF THEM, I DIDN'T KNOW IF COUNSEL WOULD BE OPEN TO HAVE IT GO BACK TO THE JURY BECAUSE THERE ARE A LOT OF ACRONYMS AND CONTROL NUMBERS AND DIFFERENT TYPES OF NOTES REFERENCED WITHIN THERE, SO I DIDN'T KNOW IF THAT WOULD BE HELPFUL FOR THE JURY TO HAVE THAT SO THEY COULD FOLLOW THE FLOW OF THE DOCUMENTS.

MR. NARITA: YOUR HONOR, I MEAN, WE'RE HAPPY TO HAVE THE STIPULATION READ INTO EVIDENCE, BUT I DON'T WANT TO PUT ANY EXTRA EMPHASIS ON IT BY CREATING AN EXHIBIT THAT GOES TO THE JURY ROOM. I THINK IT CAN BECOME PART OF THE RECORD FOR SURE, AND IT WILL BE MUCH MORE EFFICIENT, FRANKLY, THAN HAVING THEM

LISTEN TO SNIPPETS OF EIGHT DIFFERENT VIDEO DEPOSITIONS TO GET THE SAME INFORMATION.

AND MR. LOKER CAN -- IF HE THINKS THERE'S SOMETHING USEFUL, HE CAN ARGUE IN HIS CLOSING ARGUMENT, AND I CAN DO THE SAME.

THE COURT:  WELL, LET'S THINK ABOUT IT.  I MEAN, ONE OPTION MAY BE -- I PRE-INSTRUCT.  SO IF I PRE-INSTRUCT, THAT WOULD TYPICALLY GO BACK WITH THE JURY, AND IT WOULD BE LISTED AS ANOTHER JURY INSTRUCTION, JUST IN TERMS OF THE PARTIES HAVE REACHED THE FOLLOWING STIPULATIONS.

SO THERE'S A STIPULATION, JURY MODEL INSTRUCTION.  SO YOU COULD ADD TO THAT AND JUST SAY HERE'S THE STIPULATIONS.  SO IT WILL BE IN FRONT OF THEM THE WHOLE TIME, BUT IT WOULD BE BACK WITH THEM, OR WE CANNOT, AND THEY CAN ASK FOR THAT IF THEY WANT THAT READ TO THEM.

SO LET ME SEE THE LENGTH OF IT AND WHAT IT COVERS.

MR. LOKER:  YES, YOUR HONOR.

THE COURT:  BUT I'M OPEN TO EITHER.

LISTENING TO THIS DOES MAKE ME THEN QUESTION WHETHER I'M GOING TO END UP PRE-INSTRUCTING ON MONDAY.

MR. LOKER:  UNDERSTOOD, YOUR HONOR.

THE COURT:  WHICH I WAS THINKING ABOUT PRE-INSTRUCTING ON THURSDAY, BUT IF WE'RE STILL WORKING THIS STUFF OUT, IT'S GOING TO HAVE TO BE MONDAY.

MR. LOKER:  OKAY.

MR. NARITA:  THANK YOU, YOUR HONOR.

THE COURT:  SO, I MEAN, REGARDING THE EXHIBIT, COUNSEL, YOU ALL NEED TO MEET AND CONFER ABOUT THAT.

IF COMENITY IS PLANNING TO FILE SOMETHING, FILE SOMETHING WITH THE COURT SAYING WHY IT SHOULD BE INCLUDED, WHY IT SHOULD NOT BE PREJUDICIAL, LIKE, ASKING FOR LEAVE.

IT'S LATE AT THIS POINT.  AND I UNDERSTAND YOU'RE SAYING, WELL, THERE'S AN EMBEDDED HYPERLINK, BUT THIS IS SORT OF ON DEFENDANT IN THE COURSE OF DISCOVERY.  IT'S PREJUDICIAL. LIKE --

MR. NARITA:  YOUR HONOR, WE ABSOLUTELY TAKE RESPONSIBILITY FOR THAT, THERE'S NO QUESTION.

THE COURT:  AND I UNDERSTAND THAT.  BUT IT'S A QUESTION OF WHETHER OR NOT YOU'RE GIVEN RELIEF FROM THAT FACT, AND I JUST DON'T KNOW IF YOU ARE.  WE ARE ON OUR THIRD PRETRIAL CONFERENCE.

SO MEET AND CONFER.  FILE ANYTHING YOU NEED TO TODAY.

MR. NARITA:  OKAY.  WE WILL DO THAT.

THE COURT:  ALL RIGHT.  SO THOSE THREE EXHIBITS, IS IT WORTH US DISCUSSING THOSE?

MR. NARITA:  I'M HAPPY TO DO SO, YOUR HONOR.

THE COURT:  ALL RIGHT.  LET'S BEGIN WITH 25.  THIS WAS, I BELIEVE, THE CAPITAL ONE LETTER.

MR. LOKER:  CORRECT, YOUR HONOR.

THE COURT:  LET'S PULL IT UP.  THIS IS THE

ACCEPTANCE OF THE DISPUTE BY CAPITAL ONE.

AND THE OBJECTION, WHICH WAS RAISED TO IT, WAS FEDERAL RULE OF EVIDENCE 401, 403, BASICALLY A RELEVANCE CLAIM AS WELL AS THE SAME FOUNDATION, AUTHENTICATION, AND HEARSAY OBJECTIONS. OH, AND THEN A HEARSAY OBJECTION.

SO, MR. LOKER, CAN YOU ADDRESS 401, 403, THE RELEVANCE OBJECTIONS AND HEARSAY OBJECTION?

MR. LOKER:  AND FOR THIS LETTER, YOUR HONOR, FROM JULY 28TH, 2023, WHAT THIS WOULD BE OFFERED FOR WOULD BE THE IMPACT ON MR. PANCHENKO AS HE'S GOING THROUGH THE DISPUTE PROCESS WITH THESE VARIOUS BANKS PROVIDING THE SAME SORT OF SUPPORT FOR HIS DISPUTES AND RECEIVING THIS LETTER BACK FROM CAPITAL ONE WHILE HE WAS RECEIVING REJECTIONS BACK FROM THE OTHER BANKS AND THE CREDIT REPORTING AGENCIES.

SO HERE WHAT HE WOULD BE TESTIFYING ABOUT WOULD BE HIS IMPRESSION UPON RECEIVING IT, THINKING THAT HE WOULD BE MOVING PAST THE FRAUD.

IT ALSO RELATES TO POTENTIAL TESTIMONY WE ANTICIPATE FROM MR. ULZHEIMER TALKING ABOUT INDUSTRY STANDARDS, AND HERE WE SEE THAT A DIFFERENT MEMBER OF THAT INDUSTRY REACHED A DIFFERENT RESOLVE.  SO IT'S A PRETTY NARROW OFFERING IN TERMS OF THIS LETTER, EXHIBIT 25.

THE COURT:  SO I'M HEARING AN EXCEPTION TO THE HEARSAY ARGUMENT IN TERMS OF A PRESENT SENSE IMPRESSION, WHICH, FRANKLY SPEAKING, IS A STRETCH.  I DON'T REALLY SEE THAT

FULFILLING THE DIFFERENT CRITERIA.

AND THEN I SEE POSSIBLY AN ARGUMENT FOR THE TRUTH OF THE MATTER -- THAT IT'S NOT BEING OFFERED FOR THE --

MR. LOKER:  THE TRUTH.

THE COURT:  -- THE TRUTH, BUT THEN YOU JUST SAID IT IS BEING OFFERED FOR THE TRUTH.

MR. LOKER:  FAIR ENOUGH, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. NARITA.

MR. NARITA:  YEAH.  DITTO TO WHAT YOUR HONOR JUST SAID.  I THINK IT IS BEING OFFERED FOR ITS TRUTH.

ALSO, ON THE 403 ASPECT OF IT, THE -- IF THERE'S GOING TO BE ANY TESTIMONY ON THIS, WE THINK IT'S GOING TO BE A BIG MISLEADING DISTRACTION, BUT CAPITAL ONE WAS NOT REPORTING A FRAUDULENT TRADESLINE ON MR. MR. PANCHENKO'S REPORT.  THEY DID NOT HAVE AN ACCOUNT THAT HE SAYS WASN'T HIS.

THEY HAD AN INQUIRY SO BURIED IN THE BACK OF HIS CREDIT REPORT THAT HE SAW IN I GUESS MAY.  THEY HAD MADE AN INQUIRY, FOR WHATEVER REASON, NO ONE KNOWS, AND HE DISPUTED THAT INQUIRY.

WHY THIS LETTER CAME BACK TO HIM IN THIS FORM, NOBODY KNOWS.  THERE'S BEEN NO DEPOSITION TESTIMONY OF CAPITAL ONE. THERE'S BEEN NO SUGGESTION THAT A FRAUD CLAIM WAS MADE OR A FRAUD -- WHAT THIS FRAUD INVESTIGATION IS.

SO IT WOULD BE HIGHLY MISLEADING SINCE HE DIDN'T EVEN DISPUTE THE ACCOUNT AS A FRAUDULENT ACCOUNT.  IT WAS JUST AN

INQUIRY ON HIS CREDIT REPORT.

SO WE THINK IT'S GOING TO BE A BIG DISTRACTION AND REALLY CONFUSE THE JURY.  AND CAPITAL ONE, YOU KNOW, CLEARLY WAS NOT NAMED AS A DEFENDANT, WAS NOT SOMEONE THAT HE'S PURSUED.  SO IT'S NOT -- I DON'T EVEN KNOW WHETHER THAT GOES TO THE IMPACT ON HIM.

THE COURT:  SO, MR. LOKER, LET'S HEAR ABOUT THIS POINT, ABOUT WHETHER OR NOT THERE'S ANY EVIDENCE, WHICH WE PROFFERED, OR ANY EVIDENCE.  YOU MAKE A PROFFER ABOUT ANY EVIDENCE THAT WOULD BE PRESENTED CONCERNING THE NATURE OF THIS CAPITAL ONE INQUIRY AND WHETHER OR NOT THERE'S ANY RELEVANCE AS TO IT?

MR. LOKER:  JUST WHAT I SAID EARLIER, YOUR HONOR.  I DON'T HAVE ANYTHING FURTHER.  I GET THE GIST OF WHERE THE COURT IS GOING TO GO ON THAT ONE.

THE COURT:  OKAY.  SO I THINK THAT'S GOING TO BE A REAL CHALLENGE IF WE DON'T REALLY KNOW WHAT THE UNDERLYING INQUIRY IS ABOUT.

MR. LOKER:  UNDERSTOOD, YOUR HONOR.

THE COURT:  SO FAR THE COURT WOULD BE INCLINED TO SUSTAIN THAT OBJECTION.

SO LET ME HEAR ABOUT THE OTHER TWO, WHICH WERE EXHIBITS 33 AND 34, AND I WILL QUICKLY SUMMARIZE AT LEAST MY UNDERSTANDING AGAIN.

SO THESE ARE EXPERIAN AND EQUIFAX REPORTS.  THEY'RE DATED

FROM DECEMBER OF 2024.  THE DEFENDANTS ARE ARGUING THAT THESE ARE NOT RELEVANT, THAT THEY'RE OUTSIDE OF THE TIME PERIOD IN TERMS OF THE -- THE 2024 REPORT IS OUTSIDE THE TIMEFRAME OF THE EVENTS THAT OCCURRED HERE.

AND IN RESPONSE PLAINTIFFS ARGUE THAT THIS WILL -- THAT THIS WILL REFLECT SOME OF THE RELIEF HE'S BEEN SEEKING, RIGHT?

MR. LOKER:  YES.

THE COURT:  SO, MR. LOKER, LET ME HEAR BRIEFLY FROM YOU AND THEN I WILL HEAR FROM MR. NARITA.

MR. LOKER:  THANK YOU, YOUR HONOR.

AND THOSE ARE THE POINTS.  SO EXHIBITS 33 AND 34, IF YOU LOOK AT THE CREDIT REPORTS, THEY'RE WHAT I WOULD CALL CLEAN CREDIT REPORTS.  THEY DON'T HAVE ANY OF THE ACCOUNTS THAT WERE DISPUTED AS FRAUD.

AND THIS IS WHAT MR. PANCHENKO WAS LOOKING FOR BACK IN MAY OF 2023 WHEN HE CAME TO THE COUNTRY AND PULLED HIS CREDIT REPORT, HE EXPECTED TO HAVE NOTHING ON THERE.

SO WHAT THESE SHOW, YOU KNOW, IS WHAT HE THOUGHT HE WOULD BE DOING WHEN HE GOT HERE IN ESTABLISHING HIMSELF, AND IT GO TOWARDS HIS DAMAGES AND THE RELIEF THAT HE EXPERIENCED WHEN HE SAW THESE CREDIT REPORTS AS OPPOSED TO WHAT HE FELT WHEN HE SAW THE CREDIT REPORTS THAT ARE POPULATED BY COMENITY AND THAT FRAUD.

THE COURT:  MR. NARITA.

MR. NARITA:  WELL, YOUR HONOR, AS TO THOSE POINTS,

THESE CREDIT REPORTS WERE PRODUCED TEN MONTHS AFTER THIS LITIGATION WAS FILED AGAINST THESE DEFENDANTS, AND SO A LONG, LONG TIME OUTSIDE OF THE PERIOD WHERE MR. PANCHENKO IS SEEKING ANY KIND OF DAMAGE OR STRESS.  HE TESTIFIED QUITE CLEARLY IN HIS DEPOSITION THAT AS SOON AS HE RETAINED MR. LOKER IN THE EARLY FALL OF 2023, THAT HIS STRESS WAS BASICALLY OVER.

SO THESE REPORTS REALLY DON'T BEAR ON ANY CLAIM THAT IS AT ISSUE IN THE CASE.  THEY DON'T BEAR ON EMOTIONAL STRESS OR ANYTHING ELSE OR ANY ALLEGED CREDIT DENIAL.

ALSO, THEY WOULD BE MISLEADING BECAUSE COMENITY DROPPED OF OFF THESE -- THE COMENITY ACCOUNT DROPPED OFF OF BOTH OF THOSE LIKE ALMOST A YEAR EARLIER, AND SO WE WOULD GET INTO THIS HIGHLY CONFUSING MESS OF GOING DOWN THAT ROAD TO DEMONSTRATE THAT.

SO THEY'RE NOT -- THEY DON'T HAVE ANY BEARING ON COMENITY, WHICH WAS THE ONLY DEFENDANT LEFT.

OUR TRADELINE WAS DELINEATED FROM EXPERIAN I THINK AUGUST 16TH, 2024 AND FROM EQUIFAX ON THE SAME DAY, AUGUST 16TH, 2024 -- EXCUSE ME, 2023.

SO TO BE OFFERING UP SOME CREDIT REPORT THAT HE GOT A YEAR LATER WHEN WE WERE OFF THIS REPORT A YEAR EARLIER IS HIGHLY MISLEADING.

THE COURT:  I NEED YOU TO BREAK THIS DOWN A LITTLE BIT.  I THINK I'M FOLLOWING, BUT I JUST NEED TO MAKE SURE.  YOU'RE USING SOME SPEAK THAT I JUST WANT TO MAKE SURE THAT I

UNDERSTAND.

ARE YOU SAYING THAT THE COMENITY -- I'M TRYING TO REMEMBER THE DATES AND THE TIMELINE, WHICH OFTEN I HAVE PARTIES STIPULATE TO AS WELL, WHICH IS VERY HELPFUL FOR THE JURY AND THE JUDGE.

BUT ARE YOU SAYING THAT THESE ISSUES WERE RESOLVED BY COMENITY IN A YEAR BEFORE THE AUGUST 2024 OR IN AUGUST -- STATE WHAT YOU WERE SAYING AGAIN.

MR. NARITA:  I DID A POOR JOB OF EXPLAINING THE DATES, YOUR HONOR.

ON AUGUST 16TH, 2023, ON AUGUST 16TH, 2023, OUR TRADELINE DROPPED OFF OF BOTH OF THESE REPORTS, EXPERIAN AND EQUIFAX.  ON THE SAME DAY IT'S GONE.

AND THEN ABOUT A MONTH OR SO LATER, HE SUED US AND EVERYBODY ELSE.

AND THEN NOW HE'S GOT THESE REPORTS FROM A YEAR LATER, NEARLY AN ENTIRE YEAR LATER.

I MEAN, I'M NOT SURE WHAT HIS TESTIMONY IS.  I GUESS HIS TESTIMONY IS GOING TO BE SOMETHING LIKE, BOY, MY STRESS FINALLY ENDED AND I FINALLY GOT A RELIEF A YEAR LATER IN JULY OF 2024. WELL, THAT'S JUST HIGHLY MISLEADING AND CONFUSING AND WOULD REQUIRE A LOT OF UNNECESSARY TESTIMONY.

THIS IS TO THE 401, 403 POINT.  I THINK THERE'S ALSO WHETHER, YOU KNOW, HE COULD LAY A FOUNDATION FOR IT AS A BUSINESS RECORD.

THE COURT:  WELL, HE SAID THAT HE NOW HAS THE STATEMENTS AND DECLARATIONS.

MR. NARITA:  WELL, IF HE DOES, THEN HE DOES, AND THEN IF THE COURT ACCEPTS THOSE, THEN IT WOULD GET PAST THOSE HURDLES.

THE COURT:  SO IS THERE A POSSIBILITY OF COMENITY OPENING THE DOOR AT A CERTAIN POINT IN TERMS OF WHETHER OR NOT IT STARTS TALKING ABOUT WHAT OTHER BANKS DID OR DID NOT DO OR OTHER REPORTERS DID OR DID NOT DO?

MR. NARITA:  OPENING THE DOOR TO WHAT, YOUR HONOR?  I'M NOT UNDERSTANDING.

THE COURT:  JUST IN TERMS OF WHETHER OR NOT THEY -- OTHER REPORTING -- THAT OTHER FURNISHERS CORRECTED INFORMATION QUICKER?  I THINK THAT'S PART OF PLAINTIFF'S POINT.

MR. NARITA:  WELL, I'M ASSUMING PART OF MR. LOKER'S CASE-IN-CHIEF IS GOING TO BE AN ARGUMENT THAT THERE WERE SOME CREDITORS THAT CORRECTED THE INFORMATION QUICKER.

I DON'T KNOW HOW HE'S GOING TO DO HIS CASE, BUT THERE ARE CERTAINLY TRIAL EXHIBITS THAT HE'S OFFERED TO SUGGEST THAT THAT'S GOING TO BE THE TESTIMONY, AND WE'LL -- YOU KNOW, WE'RE GOING TO BE PREPARED TO EXPLAIN WHAT WE DID AND WHEN WE DROPPED AND WHY.

SO THAT'S, THAT'S ALL GOING TO HAPPEN UP UNTIL, YOU KNOW, THE PERIOD IS OVER, WHICH IS ACTUALLY RIGHT BEFORE THE LAWSUIT WAS FILED.

THE COURT:  OKAY.  SO AUGUST 2023 IS WHEN COMENITY CORRECTED.

MR. NARITA:  FOR THESE TWO, FOR THESE TWO IT WAS AUGUST 2023.

FOR TRANS UNION, WE WERE SHOWING ON HIS REPORT AS A -- YOU KNOW, BASICALLY AS A POSITIVE ACCOUNT ON, LIKE, ABOUT TEN DAYS BEFORE HE SUED US ON THE 17TH OF SEPTEMBER 2023.

SO THE WHOLE SHOW IS OVER AS TO COMENITY BY NOVEMBER 17TH, 2023 -- EXCUSE ME, SEPTEMBER -- I NOT ONLY NEED TO SPEAK UP, BUT I NEED TO SPEAK BETTER.  SO I'LL TRY TO DO THAT.

THE DATE WAS SEPTEMBER 17TH, 2023.  MY APOLOGIES.

THE COURT:  MR. NARITA YOU SPEAK JUST FINE, BUT SOMETIMES YOU DO TRAIL OFF, SO SOMETHING TO BE AWARE OF BECAUSE IT MAKES IT A LITTLE HARDER FOR THE COURT REPORTER.  AND I SAY THAT BECAUSE I HAVE THE SAME TENDENCIES.

MR. NARITA:  IT'S HAUNTED ME FOR THE LAST 34 YEARS. I APOLOGIZE.

MR. LOKER:  AND ONE OF THE ISSUES WE HAVE IS REFERENCING THE DELETION THAT MR. NARITA WAS TALKING ABOUT. MR. PANCHENKO NEVER RECEIVED NOTICE OF THAT.  HE GETS NOTICES FROM THE BUREAU SAYING THAT THINGS ARE VERIFIED, AND THEN WE DON'T SEE DELETIONS SUBMITTED BY COMENITY UNTIL DECEMBER OF 2023 REGARDING THE TRANS UNION TRADELINE.

AND, AGAIN, HE DIDN'T RECEIVE NOTICE OF THAT.  THAT'S JUST COMENITY SUBMITTING AN AUD, AN AUTOMATED UNIVERSAL DATA FORM,

TO TRANS UNION TO DELETE.  SO WHETHER HE DELETED EARLIER, YOU KNOW, HE DIDN'T KNOW ABOUT IT.  NO ONE TOLD HIM.

AND A SECOND POINT BEING DO WE WANT TO JUXTAPOSE THE TWO REPORTS DURING THE DISPUTE PERIOD AS WELL AS THE CREDIT REPORTS THAT CAME OUT IN 2024?

AND AGAIN, GO BACK TO LIKE THIS 2024 CREDIT REPORT IS WHAT HE SHOULD HAVE HAD IN THE BEGINNING WHEN HE WAS MOVING HERE TO THE COUNTRY.

AND THE SECOND CREDIT REPORTS I WAS REFERRING TO FROM 2024 WOULD BE EXHIBITS 33 AND 34.

THE COURT:  MR. LOKER, I MEAN, GIVEN HOW FAR, THAT THIS IS A YEAR LATER AFTER THE FIRST, I'M NOT REALLY SEEING THE RELEVANCE.  WE'LL SEE.

I MEAN, ALL OF THIS IS SUBJECT TO WHAT WILL HAPPEN IN TRIAL, BUT RIGHT NOW I'M NOT HEARING THE RELEVANCE IN PARTICULAR ABOUT THESE EXHIBITS GIVEN THAT THEY ARE SO SIGNIFICANTLY.

MR. LOKER:  UNDERSTOOD.

THE COURT:  SO AFTER THE FACT.

ALL RIGHT.  LET ME -- THIS ACTUALLY -- - MR. NARITA'S COMMENTS RAISED SOMETHING WHICH I MEANT TO RAISE EARLIER WITH THE PARTIES.  AT THIS POINT BECAUSE WE HAVE OUR CAPTION AND EVERYTHING ELSE AND THE JURY INSTRUCTION WILL HAVE MY COVER PAGE ON IT AND SO FORTH, DOES IT MAKE SENSE TO CHANGE THE CASE CAPTION?  SO TO JUST HAVE IT BE PANCHENKO VERSUS COMENITY

BECAUSE OTHERWISE I THINK IT'S GOING TO ADD TO CONFUSION CONFUSION.

MR. LOKER:  WE AGREE, YOUR HONOR.

MR. NARITA:  NO OBJECTION TO THAT, YOUR HONOR.

THE COURT:  ALL RIGHT.  WE'LL GO AHEAD AND CHANGE THE CASE CAPTION SUCH THAT IT WILL REFLECT THE ONLY REMAINING DEFENDANT LEFT.

ALL RIGHT.  YOU NOW KNOW MY INCLINATIONS AS TO THOSE THREE EXHIBITS.

MR. LOKER:  THANK YOU, YOUR HONOR.

THE COURT:  LET'S TURN TO DEPO DESIGNATIONS, UNLESS THERE'S ANYTHING ELSE ABOUT EXHIBITS.

MR. LOKER:  NOT FROM THE PLAINTIFF, YOUR HONOR.

MR. NARITA:  NOT FROM DEFENDANT, YOUR HONOR, NO.

THE COURT:  ALL RIGHT.  I WILL NEED YOU ALL TO WALK ME THROUGH BECAUSE I SEE THAT THERE IS -- THESE JUST SHOWED UP TODAY OBVIOUSLY.

SO TALK ME THROUGH WHERE WE ARE, WHAT WE'RE EXPECTING. ARE THERE DISPUTES LEFT?  YOU WANT TO DO VIDEO CLIPS.  I INDICATED THAT DEPENDING ON TIME, DEPO DESIGNATIONS ARE NORMALLY DEALT WITH IN THE 30 MINUTES BEFORE THE START OF EACH TRIAL DATE.

SINCE YOU WANT TO DO A VIDEO, I RECOGNIZE THAT YOU NEED THEM A LITTLE BIT EARLIER OR IT WOULD BE HELPFUL TO HAVE THEM EARLIER THAN THAT, BUT I'M CONCERNED ABOUT THE AMOUNT OF TIME.

SO IF IT'S GOING TO END UP TAKING A LOT OF TIME TO ADDRESS YOUR OBJECTIONS, WE'RE GOING TO HAVE TO TALK ABOUT WHERE THE TIME GETS TAKEN OFF FROM.

BUT LET'S BEGIN WITH -- CAN SOMEONE WALK ME THROUGH WHERE WE WERE AND WHERE WE ARE?

MR. LOKER:  YES, YOUR HONOR.  SO FOR THE PREVIOUS ROUND OF DESIGNATIONS THAT WE HAVE FILED HAS BEEN TRIMMED DOWN IN TERMS OF THE OBJECTIONS BASED UPON THE STIPULATIONS THAT MR. SEARLES AND I WERE ABLE TO REACH, AND IT DID LIMIT THE TESTIMONY BY A DECENT PERCENTAGE.  WE'RE TAKING AFTER FIVE TO TEN MINUTES PER VIDEO.

THERE ARE REMAINING OBJECTIONS, AND IN THE BINDER THAT YOU HAVE BEFORE YOUR HONOR, WE'VE HIGHLIGHTED THE TESTIMONY AS PROFFERED BY EACH SIDE -- I'M SORRY, UNDERLINED.

THE RED UNDERLINES ARE THE TESTIMONY THAT ARE OFFERED BY THE PLAINTIFF.

THE BLUE UNDERLINES ARE THE TESTIMONY THAT COMENITY WOULD LIKE INCLUDED IN THE VIDEO CLIP.

THE OBJECTIONS THEMSELVES, I THINK ONCE WE GET INTO A FLOW, THEY'RE FOR REPETITIVE REASONS.  WE SEEK TO ELICIT THE SAME TESTIMONY THROUGH THE VIDEOS, AND, OF COURSE, COMENITY HAD THE SAME OBJECTIONS.  I HOPE IT WON'T TAKE TOO LONG TO WORK THROUGH.

THE COURT:  SO THE RED UNDERLINED -- REPEAT THAT ONE MORE TIME, MR. LOKER.

MR. LOKER:  THE RED UNDERLINED ARE THE DESIGNATIONS OFFERED BY THE PLAINTIFF.

THE COURT:  UH-HUH.

MR. LOKER:  AND THE BLUE UNDERLINES ARE THE DESIGNATIONS OFFERED BY COMENITY.

THE COURT:  ALL RIGHT.  SO LET'S TAKE A -- LET'S JUST START AT THE TOP IN TERMS OF JUST SO I HAVE A SENSE OF -- THIS IS SLIGHTLY DIFFERENT FROM WHAT I'M USED TO IN TERMS OF THE INDEX FORMAT.  THAT'S PROBABLY ON ME VERSUS YOU IN EXPLAINING EXACTLY WHAT I HAD IN MIND.

BUT LET'S START WITH -- CAN YOU JUST -- LET'S START WITH PAVITHRA S.?

MR. LOKER:  CORRECT.

THE COURT:  ALL RIGHT.  I'M UNDER TAB NUMBER 1.  I HAVE THE DEPO DESIGNATIONS.  IT LOOKS LIKE THERE ARE A NUMBER OF PAGES.

WALK ME THROUGH WHAT I'M LOOKING AT.

MR. LOKER:  THANK YOU, YOUR HONOR.

SO FOR PAVITHRA, THERE'S A GENERAL OBJECTION FROM COMENITY BECAUSE SHE HANDLED A DIFFERENT TYPE OF DISPUTE, AND I BELIEVE WE HANDLED THAT WITH OUR STIPULATIONS, BUT THEY CAN CORRECT ME IF I'M WRONG.  BUT ONCE WE GET PASSED THE GENERAL OBJECTION, GOING TO PAGE 3, AND NO OBJECTION, THAT'S JUST WHO SHE IS.

PAGE 6 IS WHERE WE TALK ABOUT THE FACT THAT SHE'S UNDER OATH.

PAGE 12 ALSO DOES NOT HAVE OBJECTIONS.

I'LL GO TO 21 RATHER BECAUSE 21 IS WHERE WE HAVE THE FIRST SET OF OBJECTIONS.

AND IF YOU WOULD LIKE, I COULD TALK TO YOU ABOUT, LIKE, WHY WE THOUGHT THIS TESTIMONY WOULD BE RELEVANT.

THE COURT:  SO I SEE ON -- THIS IS PAGE 21, LINE 14 THROUGH PAGE 23, LINE 11, THE OBJECTIONS BY COMENITY ARE IN INCOMPLETE, LACKS FOUNDATION, AND RISKS CONFUSING OR MISLEADING THE JURY DESIGNATIONS REFERENCES PRIOR TO THE TESTIMONY OF THE WITNESS AND IS NOT INCLUDED IN THE DESIGNATION.

I'M NOT SURE WHAT THAT ALL MEANS.

MR. SEARLES:  YES, YOUR HONOR.  THAT REPEATED OBJECTION, UNFORTUNATELY, IS BECAUSE WE FIND THAT THE PLAINTIFF HAS DESIGNATED LIMITED PORTIONS WITHOUT PROVIDING THE FULL BACKGROUND TO THE TESTIMONY IN WHICH THEY WISH TO CITE.

THE COURT:  THEN DID YOU DO COUNTERDESIGNATIONS?

MR. SEARLES:  WE DID, YOUR HONOR.  THEY'RE ASTERISKS IN COUNTERDESIGNATIONS THAT SHOW WHICH OF THOSE DESIGNATIONS WERE NECESSARY BECAUSE OF THE COUNTER -- OR BECAUSE OF THE LACK OF PROVIDING THE FULL FOUNDATION FOR THE TESTIMONY PLAINTIFF WISHES TO INTRODUCE.

THE COURT:  SO DO THE COUNTERDESIGNATIONS ADDRESS THE OBJECTIONS?

MR. LOKER:  I THOUGHT SO, AND I HAD NO OBJECTIONS TO THEIR COUNTERDESIGNATIONS.

MR. SEARLES:  YOUR HONOR, WE DON'T HAVE ANY ISSUE AS LONG AS THE TIME IS PUSHED AGAINST COMENITY FOR HAVING TO BUILD A FOUNDATION FOR PLAINTIFF'S DESIGNATIONS.  THAT'S AN ISSUE THAT WE'VE TRIED TO RAISE WITH COUNSEL.  WE WANT TO MAKE SURE IT IS CLEAR, THAT THE COURT IS MINDFUL OF TIME, THAT WE'RE NOT BEING ASSESSED FOR LAYING THE FOUNDATION FOR PLAINTIFF'S INTENDED TESTIMONY.

MR. LOKER:  AND THAT PART I DISAGREE WITH, YOUR HONOR.  SO IN SELECTING THESE DESIGNATIONS, WE, OF COURSE, WANT THE JURY TO UNDERSTAND THE SITUATION.  SO I DON'T WANT TO PUT UP A VIDEO AND HAVE THEM BE CONFUSED.

AND I FEEL LIKE THIS IS AKIN TO ANY TESTIMONY, WHETHER IT'S LIVE IN COURT OR THROUGH DESIGNATIONS LIKE THIS.

SO I'LL ASK THE QUESTIONS THAT I HAVE, AND COMENITY HAS THE OPPORTUNITY TO COME UP AND ASK THE QUESTIONS THAT THEY HAVE.

THIS IS DIFFERENT BECAUSE THEY'RE COMING FROM DEPOSITIONS.

SO OUR POSITION IS THAT COMENITY IN, IN TERMS OF TIME, YOU KNOW, THEIR COUNTERDESIGNATION SHOULD BE ON THEIR LIST IN TERMS OF TIME.

AND WHEN WE GO THROUGH AND MAKE THESE VIDEOS, IT SPLITS UP WHOSE, YOU KNOW, TIME IT IS.

THE COURT:  AND WHY DOES THAT NOT ADDRESS IT?  I'M NOT SURE WHO IS SPEAKING TO ME FROM COMENITY'S SIDE RIGHT NOW BECAUSE BOTH OF YOU ARE ADDRESSING THE COURT.

IS THERE GOING TO BE A LEAD IN TERMS OF DEPO DESIGNATIONS SO WE'RE NOT --

MR. NARITA:  ON THAT -- IF I COULD JUST ADDRESS THE TIME POINT, YOUR HONOR, BECAUSE IT'S IMPORTANT.

YOUR HONOR HAS BEEN VERY POINTED WITH THE PARTIES ABOUT THE TIME OF THE TRIAL.

THE COURT:  BY KEEPING YOU WITHIN AND GIVING YOU EXTRA TIME THAN WHAT YOU ORIGINALLY REQUESTED, COUNSEL.  LET'S JUST BE VERY CLEAR ABOUT THAT FOR THE RECORD AS WELL.

MR. NARITA:  I UNDERSTAND.  AND JUST FOR THE RECORD, YOUR HONOR, WE STILL BELIEVE THAT IT'S GOING TO BE VERY DIFFICULT, IF NOT IMPOSSIBLE, FOR COMENITY TO PUT ON A COMPLETE DEFENSE TO WHAT MR. LOKER IS TRYING TO DO IN THE TIME PERMITTED, BUT WE ARE WORKING DILIGENTLY TO MAKE SURE THAT WE CAN.

AND THE TIME --

THE COURT:  SO, COUNSEL, YOU SHOULD HAVE REQUESTED MORE TIME DURING THE ORIGINAL TRIAL ESTIMATES.

SO -- CONTINUE.

MR. NARITA:  YES.  THANK YOU, YOUR HONOR.

SO WE'RE NOT SAYING THAT EVERY ONE OF OUR COUNTERDESIGNATIONS SHOULD COUNT TOWARDS MR. LOKER'S TIME. THAT IS NOT OUR POINT.

WE'RE JUST SAYING THERE ARE A SELECT FEW, WHICH WE'VE GOT MARKED WITH AN ASTERISK, THAT ARE REQUIRED JUST TO GET ACROSS

THE POINT THAT HE'S TRYING TO GET ACROSS, AND WE SHOULDN'T BE SADDLED WITH THAT TIME IN OUR CASE.  THAT'S ALL.

WE DO HAVE OTHER OBJECTIONS AND ISSUES WITH THEM, BUT I WANTED TO ADDRESS THE TIME POINT SPECIFICALLY.

THE COURT:  HOW MUCH IS THE TOTAL TIME OF THE COUNTERDESIGNATIONS AND HOW MUCH ARE YOU REQUESTING BE ALLOTTED TO PLAINTIFF?

MR. NARITA:  DO WE HAVE A RUNNING TIME ON THAT?

MR. SEARLES:  I DON'T BELIEVE WE HAVE A TIME.  I THINK PLAINTIFF'S COUNSEL HAS BEEN PULLING THE VIDEO.  SO HE WOULD BE AWARE OF WHAT TIME IS BETWEEN THE TWO.

THE COURT:  I MEAN, YOU HAVE THE TIME HERE ON YOUR CHART.  HAVE YOU NOT ADDED THESE UP?

MR. LOKER:  SO FAR IT'S ABOUT 50/50, YOUR HONOR.

SO, FOR EXAMPLE, FOR POOJITHA KADARESH, OUR PORTION THAT WE'VE ASKED TO PRESENT IS 21 MINUTES; COMENITY'S IS 18 MINUTES, FOR A TOTAL OF 40 MINUTES.

SO ON THE CHART, WHAT WE'VE BEEN DOING ON OUR END IS WORKING TO STAY BELOW THE 30 MINUTES THAT WE OFFERED TO THE COURT IN OUR WITNESS ESTIMATES.

THE COURT:  AND THEN THE PORTION WHICH THEY'RE ASKING TO BE ALLOTTED TO PLAINTIFF IS 3 MINUTES OF THAT.  LIKE, THAT'S WHAT I'M TRYING TO GET AT, IS WHAT IS THE TIME IN TERMS OF THE ACTUAL ASTERISK AMOUNT VERSUS --

MR. LOKER:  OF THAT, I COULD GENERATE FROM HERE, I

JUST DON'T HAVE THAT ANSWER HANDY.

YOU KNOW, FROM THE PLAINTIFF'S PERSPECTIVE, YOUR HONOR, IF THEY THINK THAT OUR DESIGNATIONS AREN'T CONVEYING THE SUFFICIENT INFORMATION, I MEAN, THAT'S MORE A PROBLEM FOR ME. THEY DON'T NEED TO ADD TO MY TIME TO TRY TO HELP ME TELL THE STORY.

YOU KNOW, I FEEL LIKE THESE DESIGNATIONS ARE NOT REALLY ADDING VALUE, BUT, AGAIN, I'M BIASSED.

THE COURT:  OKAY.  SO HERE'S WHAT I'M STRUGGLING WITH.

MR. SEARLES, ARE YOU THE ONE WHO IS ADDRESSING THE COURT AT THIS POINT?

MR. SEARLES:  YES, YOUR HONOR.

THE COURT:  PLEASE ADDRESS PLAINTIFF'S POINT CONCERNING WHY ISN'T THIS JUST LIKE CROSS-EXAMINATION OR AN ADVERSE DIRECT AND YOU'RE THEN DOING YOUR DIRECT?

MR. SEARLES:  YES, YOUR HONOR.  SO OFTEN WE'RE ESSENTIALLY SETTING THE BALL ON THE TEE FOR PLAINTIFF TO HIT IT OUT, BUT BY THE DESIGNATIONS THAT WE'RE BEING FORCED TO DO --

THE COURT:  HIS POINT IS THAT IF IT'S CONFUSING, IT'S CONFUSING FOR HIM, IT'S CONFUSING IN TERMS OF THE JURY'S DESIGNATIONS, IN TERMS OF WHAT THE JURY IS HEARING OF HIS DESIGNATIONS.

SO, I MEAN, ISN'T IT?  LET ME FINISH.

MR. SEARLES:  OKAY.  GO AHEAD, YOUR HONOR.

THE COURT:  SO ISN'T IT COMENITY'S CHOICE THEN, JUST IN TERMS OF ADDRESSING THE POINT RAISED BY MR. LOKER?

MR. SEARLES:  SO TALKING A LITTLE BIT ABOUT BASEBALL HERE.  HE'S SHOWING A HOME RUN, AND WE HAVE TO SHOW WHETHER THE BALL WAS PITCHED BY A MAJOR LEAGUE PLAYER OR AFTER OF A TEE, AND THAT'S TAKING OUR TIME TO LET THE JURY KNOW THE FUNDAMENTAL OF THE RUN, LIKE, HOW DID IT HAPPEN.

AND I JUST THINK THAT'S BIASSED AND US HAVING TO USE THE TIME TO ACTUALLY GIVE THE FOUNDATION TO HOW WAS THE RUN SCORED.

ALL HE GETS TO SHOW IS THE RUNNER GOING AROUND THE BASES AND WE HAVE TO SPEND THE TIME TO TELL THE JURY HOW THEY GOT THERE.  IT'S VERY PREJUDICIAL TO US TO BE USING OUR TIME TO HAVE MR. LOKER BE ABLE TO HIT THE HOME RUN AND US NOT SHOW HOW IT HAPPENED.

THE COURT:  SO IS THERE A BINDER FROM COMENITY?

MR. LOKER:  OH, SORRY.  I BROUGHT TWO BINDERS FOR THE DESIGNATIONS THAT ARE HERE.

MR. SEARLES:  WE DON'T HAVE ONE, YOUR HONOR.  WE HAVE -- WE WORKED ON IT YESTERDAY AND SO WE HAVE -- THIS IS THE JOINT ONE THAT PLAINTIFF HAS BROUGHT.

THE COURT:  DOES THIS HAVE BOTH?

MR. LOKER:  YES, IT'S JOINT.  SORRY.

THE COURT:  SO LET'S GO THROUGH -- I MEAN, LET'S GO THROUGH AN EXAMPLE.  WE'RE NOT GOING TO HAVE TIME TO SORT THIS THROUGH IN THE NINE MINUTES WE HAVE REMAINING.

AND THEN I'M GOING TO HAVE COUNSEL GO BACK AND SEE IF THERE'S ANYTHING FURTHER, IF THERE'S SOME WHICH DO MAKE SENSE IN TERMS OF FOUNDATION AND SUCH, BUT, I MEAN, PLAINTIFF'S ARGUMENT RESONATES IN TERMS OF THAT'S WHAT WOULD HAPPEN DURING ADVERSE DIRECT.

SO IF THERE IS SOMETHING WHICH -- BECAUSE I ASSUME THAT -- WHEN ARE YOU PLANNING TO PRESENT THESE IN TERMS OF THE COMENITY WITNESSES?

MR. LOKER:  DAY 1 AND DAY 2.  WE PLAN TO START WITH MR. PANCHENKO; DO SOME OF THE DESIGNATIONS; GO TO PABLO; MORE DESIGNATIONS; END WITH ALLA.

THE COURT:  OKAY.  SO I JUST WANT TO SEE AN EXAMPLE BECAUSE THAT'S HARD TO DO THIS.

MR. SEARLES:  NO, I UNDERSTAND.  AND I WOULD JUST ASK THAT WE USE ONE OF THE OTHER REPRESENTATIVES, BECAUSE AS MR. LOKER POINTED OUT, PAVITHRA, THE 30(B)(6) IN THIS ONE, SHE HANDLED -- THE RESPONSIBILITIES FOR HER ARE COMPLETELY SEPARATE THAN THE OTHER SIX ASSOCIATES THAT WERE THE ACDV'S, AND SHE'S A 30(B)(1).  I APOLOGIZE.

THE COURT:  SO, MR. SEARLES, WHY DON'T YOU CHOOSE ONE.

MR. SEARLES:  SO WE COULD START, YOUR HONOR, WITH -- LET'S SEE.  LET ME SEE WHAT WE ADJUSTED YESTERDAY BECAUSE OF OUR STIPULATION.

MR. LOKER:  ONE EXAMPLE, JUST IN THE INTEREST OF

TIME, COULD BE MS. ARSHIYA BANU.  SHE'S NUMBER 2 IN YOUR BINDER, YOUR HONOR.

THE COURT:  THANK YOU.

MR. LOKER:  PAGE 15.  THAT'S ONE WHERE COMENITY SAID IT WAS INCOMPLETE AND HAD COUNTERDESIGNATIONS.  15:23 TO 16:16, PAGE 15, LINE 23 THROUGH PAGE 16, LINE 16, WAS WHAT PLAINTIFF DESIGNATED.

(PAUSE IN PROCEEDINGS.)

THE COURT:  ARE COMENITY'S DESIGNATIONS ON PAGES 16 AND 17 COUNTERDESIGNATIONS OR ARE THEY -- I MEAN, ARE THEY DESIGNATIONS WHICH ARE ASTERISKED WHICH YOU'RE ASKING TO BE ALLOTTED TO PLAINTIFF?

MR. SEARLES:  YES, THEY HAVE AN ASTERISK, YOUR HONOR.

THE COURT:  I DON'T UNDERSTAND WHY BREAD FINANCIAL IS A DIFFERENT INQUIRY HERE.

MR. LOKER:  BREAD, B-R-E-A-D, FINANCIAL IS THE SAME COMPANY, F-I-N-A-N-C-I-A-L.

THE COURT:  I MISSPOKE.  IT WAS A DIFFERENT COMPANY.  BUT IT SEEMS IT'S A DIFFERENT LINE.

MR. LOKER, GO AHEAD.

MR. LOKER:  THE INITIAL DESIGNATION BY THE PLAINTIFF RELATED TO ACCURINT.  ACCURINT, A-C-C-U-R-I-N-T.  THAT'S A SYSTEM THAT COMENITY'S INVESTIGATORS, THESE 30(B)(1) WITNESSES, LOOKED AT IN THE SCOPE OF THEIR INVESTIGATION.

SO THE PURPOSE OF THIS DESIGNATION WAS JUST TO INTRODUCE ACCURINT'S AND HOW COMENITY UTILIZES IT, BUT ALSO TO TALK ABOUT HOW THE COMENITY INVESTIGATORS DON'T KNOW WHERE COMENITY -- OR, I'M SORRY, ACCURINT GETS THIS INFORMATION.

AND THEN THE COUNTERDESIGNATIONS ARE BEGINNING AT PAGE 14, LINE 20 THROUGH PAGE 15, LINE 8.  YOU KNOW, THOSE DON'T NECESSARILY RELATE TO ACCURINT IN ANY WAY.

THE COURT:  RIGHT.

MR. LOKER:  THEY REFER TO VCARS, V-C-A-R-S, AND EASE, E-A-S-E.  SO IT DOESN'T REALLY GET TO THE POINT THAT I WAS TRYING TO MAKE THROUGH THAT DESIGNATION.

YOU KNOW, THERE'S AN ADDITIONAL QUESTION THAT COMENITY DESIGNATED, CROSS-DESIGNATED, 15:21 TO 15:22, WHERE I ASKED MS. BANU, WHAT DID SHE LOOK AT TO PREPARE FOR HER DEPOSITION? AND, AGAIN, IT'S NOT REALLY GETTING TO THE POINT OF THE DESIGNATION THAT WE SEEK TO OFFER.

I'M SORRY.  I'M SORRY.  GOING DOWN AT THE DESIGNATIONS AT 16:22 TO 17:21.  THOSE AGAIN DON'T RELATE TO THE POINT THAT WE WERE HOPING THEM TO MAKE THROUGH THIS DESIGNATION.  YOU KNOW, IT'S TALKING ABOUT THE OTHER SYSTEMS, AND, AGAIN, KIND OF UNRELATED TO OUR POINT.

THE COURT:  MR. SEARLES.

MR. SEARLES:  YES, YOUR HONOR.  I WOULD FIRST START WITH THE DESIGNATION ON 15:21 TO 15:22.  THAT'S JUST THE QUESTION THAT IS ASKED ABOUT BEFORE THE WITNESS GIVES AN

ANSWER, AND THAT I THINK IS FUNDAMENTALLY WRONG TO NOT GIVE A QUESTION THAT THERE'S --

THE COURT:  GO TO YOUR NEXT POINT.

MR. SEARLES:  THE OTHER ITEMS I JUST THINK -- I BELIEVE FINISH OUT THE TESTIMONY OF THE OTHER WITNESS.  AND I'VE HEARD YOUR HONOR'S STATEMENTS, AND I HAVE NO FURTHER COMMENTS OTHER THAN THAT.  WE CAN RECONSIDER OUR POSITION ON THOSE.

THE COURT:  BECAUSE TO ME THESE SEEM LIKE DIFFERENT POINTS, AND SO TO -- AND SO IF I'M HAVING TO GO THROUGH EACH ONE OF THIS, I MEAN, THE OTHER OPTION IS THAT THAT CAN COUNT AGAINST COMENITY'S TIME.  SO I WOULD TAKE A VERY CLOSE LOOK.

AND IF THERE ARE THINGS THAT ARE NECESSARY TO AVOID ABSOLUTE MISLEADING, PLAINTIFF SHOULD TAKE THOSE INTO ACCOUNT, BUT I'M CONCERNED THAT I'M GOING TO HAVE TO GO THROUGH EACH OF THESE, GET CONTEXT OR -- I MEAN, MY FIRST READ OF THESE IS THAT THIS JUST SEEMS TO BE ABOUT ACCURINT AND HOW ACCURINT WORKS, AND, TO ME, THAT SEEMS SEPARATE AND APART.

BUT IF I'M HAVING TO READ THESE AND MAKE THESE DECISIONS OR IF WE'RE HAVING TO ARGUE ABOUT EACH ONE OF THESE, YOU CAN IMAGINE HOW MUCH TIME WE'RE GOING TO USE.

MR. NARITA:  MAY I MAKE A SUGGESTION, YOUR HONOR?

WE'RE HERE, MR. SEARLES IS HERE, MR. LOKER IS HERE, AFTER WE ADJOURN, WE CAN HIT THE BRICKS AGAIN DOWNSTAIRS AND SEE IF WE CAN MAKE ANY MORE PROGRESS ON THESE AND TRY AND NARROW IT

DOWN AGAIN.

THE COURT: BECAUSE, I MEAN, YOU'RE CLOSE. YOU'RE BETTER. IT'S REALLY A QUESTION OF TIME AT THIS POINT. AND, YOU KNOW, PART OF IT IS JUST HE'S TRYING TO POINT OUT DIFFERENT THINGS IN THE TESTIMONY. AND DO YOU NEED THIS, RIGHT? IS COMENITY GOING TO BE RELYING ON BREAD FINANCIAL AND THE INFORMATION HERE? I'M NOT SURE.

BUT IT JUST DOESN'T SEEM TO MAKE SENSE FOR US TO SPEND THE TIME GOING THROUGH THIS.

MR. SEARLES: IF I COULD GET ONE ITEM OF CLARIFICATION FROM YOUR HONOR. ONE OF THE AREAS IS AN EXHIBIT THAT IS SHOWN TO A WITNESS, AND IT'S GOING TO BE BY VIDEO. SO WE'RE NOT GOING TO HAVE THE ITEM BEING INTRODUCED AS MUCH OF PLAINTIFF'S CURRENT DESIGNATIONS ARE. THEY DON'T SHOW -- SAY WHAT ARE YOU LOOKING AT? THIS IS ACCURINT.

THEY'RE JUST -- THERE'S AN IMAGE ON THE VIDEO AS IT'S CURRENTLY CUT THAT IS THE ACCURINT, AND IT'S NOT ACTUALLY SAYING WHAT ARE YOU LOOKING AT BEFOREHAND.

SO THERE'S NO FOUNDATION AS TO WHAT THE WITNESS IS TALKING ABOUT IN THE CURRENT DESIGNATIONS.

SO I JUST -- THAT IS A SITUATION THAT I THINK IS DIFFERENT THAN WHAT WE'VE LOOKED AT TODAY.

AND I KNOW MR. LOKER AND I, WE SPENT A LOT OF TIME HERE LAST TUESDAY OR THURSDAY, WORKING ON THE STIPULATIONS. WE'RE GOING TO GO TO DOWNSTAIRS AND WORK ON IT SOME MORE, BUT I FIND

THAT PARTICULAR AREA A LITTLE MORE CHALLENGING THAN WHAT WE JUST DISCUSSED.

THE COURT:  SO IF IT'S AN EXHIBIT, IS IT AN EXHIBIT SHOWING ON THE SCREEN?

MR. SEARLES:  YES, YOUR HONOR, I BELIEVE THAT'S THE INTENT, YES.

THE COURT:  SO I MEAN, I THINK THE QUESTION IS GOING TO BE IS THAT EXHIBIT INTO EVIDENCE?

MR. LOKER:  WE HAVE IT BOTH WAYS, YOUR HONOR.  WE HAVE A PICTURE IN PICTURE WHERE THE EXHIBITS ARE SHOWN, AND I HAVE IT JUST THE WITNESS'S FACE.

SO WHAT WE'RE HOPING TO DO IS ALL OF THE EXHIBITS THAT WE GO THROUGH WITH THE 30(B)(1)'S ARE COMENITY'S RECORDS.  SO I THINK THAT THEY, YOU KNOW -- I DON'T BELIEVE THERE'S OBJECTIONS TO THEIR OWN RECORDS, SO I ENVISION THAT THEY WOULD BE ADMITTED INTO EVIDENCE.

THE COURT:  I THINK THEY DID OBJECT TO SOME OF THEIR OWN RECORDS, WHICH -- SO YOU ALL NEED TO DISCUSS THAT.  I WOULD GO THROUGH EXACTLY WHAT THAT EXHIBIT IS.

IF IT'S GOING TO BE IN EVIDENCE ALREADY, THEN IT'S IN EVIDENCE ALREADY, WHETHER THROUGH -- I DON'T KNOW IF YOU HAVE A CUSTODIAN OF RECORDS AFFIDAVIT FROM COMENITY OR IF IT'S PART OF THE DESIGNATIONS.  LIKE, IF YOU CAN STIPULATE TO THAT BECAUSE IT'S AUTHENTICATED BY YOUR 30(B)(1), I MEAN, IF IT'S ALREADY AUTHENTICATED BY YOUR 30(B) IN DEPOSITION, THEN WHY WASTE --

YOU ALL SHOULD BE STIPULATING TO THE AUTHENTICITY TO THAT, BECAUSE THAT JUST WASTES THE JURY TIME.  THEY DON'T CARE TO HEAR:

WHAT DO YOU SEE BEFORE YOU?

ARE YOU FAMILIAR WITH THIS DOCUMENT?

YES, I AM.

WHAT IS THIS DOCUMENT BATES STAMP LABELED BLAH BLAH BLAH?

IT'S A FIVE PAGE DOCUMENT REGARDING THIS.

THEY DON'T NEED TO HEAR ALL OF THAT IF IT IS RIGHT THERE RIGHT BEFORE IN THE CLIP, RIGHT, BECAUSE THEN YOU CAN STIPULATE TO THE AUTHENTICITY, AND THAT WILL SAVE TIME FOR BOTH OF YOU ALL.

MR. LOKER:  UNDERSTOOD, YOUR HONOR.

MR. SEARLES:  RIGHT.

THE COURT:  SO I WOULD JUST TAKE A LOOK AT EACH ONE OF THOSE.  YOU'LL HAVE THEM UP THERE AND MAKE -- DECIDE WHAT MAKES SENSE.

MR. LOKER:  YES, YOUR HONOR.

MR. SEARLES:  THANK YOU, YOUR HONOR.

THE COURT:  DOES THAT HELP?

MR. SEARLES:  YES, IT DOES.

MR. LOKER:  YES.

THE COURT:  GREAT.  AND THAT'S A KEY ONE.  IF YOU'RE WORRIED ABOUT TIME AND FOUNDATION, AND IT'S YOUR WITNESS, COMENITY'S WITNESS, THEN BY ALL MEANS, STIPULATE TO THAT.

THAT'S A STIPULATION THAT WE DON'T NEED TO READ OUT LOUD, WE'LL STATE THAT WE DON'T NEED TO HAVE THAT GO BACK TO THE JURY AND YOU CAN STIPULATE TO THE AUTHENTICITY OF THE DOCUMENT AND ESTABLISH THAT.

MR. LOKER:  UNDERSTOOD, YOUR HONOR.  THANK YOU.

THE COURT:  ALL RIGHT.  SO YOU'LL BE COMING BACK ON THURSDAY.

SO I'M WORRIED THAT WE'RE RUNNING REALLY TIGHT IN TERMS OF THESE DESIGNATIONS.  WHEN DO YOU THINK YOU CAN GET THEM BACK TO ME?  BECAUSE IF YOU'RE GOING TO DO YOUR JURY CLIP SO IT'S NICE AND PRETTY TO THE JURY, YOU'RE GOING TO HAVE PROBLEMS.

MR. LOKER:  YOUR HONOR, I MEAN, WE'LL GO DOWNSTAIRS RIGHT NOW AND THEN GO THROUGH THEM, BUT I THINK A LOT OF THE ISSUES ADDRESSED -- NOW THAT WE HAVE THE COURT'S GUIDANCE AS TO THE POINTS YOU MADE, I'M HOPING THAT WE CAN HASH THROUGH THEM TODAY.

PRINTING THE BINDERS DOESN'T TAKE TOO LONG.  MAYBE GET THEM TO YOU THURSDAY OR FRIDAY.  I'M NOT TRYING TO BE TOO OPTIMISTIC, BUT I DON'T KNOW WHAT COMENITY'S POSITION IS.  I THINK THURSDAY OR FRIDAY IS REALISTIC AND BRING THEM WITH US THURSDAY MAYBE.

MR. NARITA:  WELL, I THINK WE SHOULD DO EVERYTHING WE CAN TO GET THEM TO YOU BY THURSDAY, YOUR HONOR, BECAUSE IT SOUNDS LIKE HE WANTS TO PLAY SOME OF THEM ON MONDAY.

THE COURT:  RIGHT.

MR. LOKER:  CORRECT.

THE COURT:  SO FILE THE UPDATED INDEX TOMORROW AT THE END OF THE DAY OR TOMORROW BY -- ACTUALLY, LET'S DO IT -- BECAUSE YOU'RE DOING IT TODAY; RIGHT?

MR. LOKER:  YES.

THE COURT:  SO FILE IT BY THE END OF THE DAY TODAY. AND THIS ONE YOU CAN GO INTO THE WEE HOURS.

MR. LOKER:  OKAY.

THE COURT:  SO THAT WAY I CAN LOOK THROUGH IT.

I'M GOING TO SAY ONE BINDER.  YOU ALL -- I THINK IT PROBABLY MAKES SENSE -- ARE YOU PRINTING THESE OUT NEW?  YOU MIGHT BE ANYWAY.

MR. LOKER:  I HAVE BEEN, YES.

THE COURT:  OKAY.  THEN WE'RE GOING TO KEEP OUR BINDERS TODAY, BECAUSE THAT WAY AT LEAST WE'LL GET A SENSE --

MR. LOKER:  OKAY.  YES.

THE COURT:  -- OF WHAT IS HAPPENING.

MR. NARITA:  ONE OTHER ISSUE WE SHOULD RAISE, YOUR HONOR, ON DEPOSITION DESIGNATIONS.  SO WE HAVE ALSO DESIGNATED SOME DEPOSITION TESTIMONY OF SOME PEOPLE WHO WERE DEPOSED, AND WE'VE GENERATED ALL OF THE DESIGNATIONS AND SO FORTH.

WE DID NOT GET A PAGE, LINE KIND OF OBJECTION FORMAT FROM MR. LOKER, BUT WE DID GET SORT OF GENERALIZED OBJECTIONS LIKE DESCRIBING WHY HE DIDN'T THINK THAT OUR DEPOSITION DESIGNATIONS

SHOULD BE ADMITTED.  SO I JUST GOT A LONG LIST OF SORT OF GENERALIZED OBJECTIONS.

SO I'M NOT SURE MECHANICALLY HOW WE -- HOW THE COURT CAN ADDRESS THOSE WHEN THERE'S BEEN NOTHING SPECIFIC SINCE SO FAR.

I MEAN, WE CERTAINLY --

THE COURT:  SO DO I NOT HAVE COMENITY'S DESIGNATIONS, ONLY THE COUNTERDESIGNATIONS?

YES, THAT'S CORRECT.  NOW, I'M LOOKING TO THE BINDERS AND MS. GIVENTAL IS POINTING TO A BINDER.

MS. GIVENTAL:  YEAH.  THE BINDERS WE HAVE RIGHT HERE (INDICATING).

THE COURT:  THE BINDER YOU HAVE RIGHT THERE IS COMENITY'S DESIGNATION?

MS. GIVENTAL:  YES.

THE COURT:  AND I DON'T HAVE THEM RIGHT NOW.

MS. GIVENTAL:  WE HAVE THEM FOR YOU.

THE COURT:  CAN I GET THEM?  CAN YOU HAND A COPY TO MADAM CLERK.

MS. GIVENTAL:  (HANDING.)

AND THEN THE LINE-BY-LINE INDEX DESIGNATIONS SHOULD BE IN THE SAME DOCUMENT AS THE ONE THAT YOU'VE BEEN DISCUSSING.

MR. LOKER:  YES, THEY'RE IN THERE.

MS. GIVENTAL:  INCLUDING THE OBJECTIONS.

THE COURT:  SO, MS. GIVENTAL, WHERE IS THE INDEX FOR THESE?  IT'S IN THE BACK OF --

MS. GIVENTAL:  I DON'T KNOW THE ECF, BUT IT'S THE SAME ONE THAT YOU HAVE BEEN LOOKING AT WITH THE PLAINTIFF'S DESIGNATIONS.

THE COURT:  YES.

(PAUSE IN PROCEEDINGS.)

THE COURT:  SO AM I CORRECT THAT THESE DESIGNATIONS ARE BASICALLY ABOUT OTHER -- ABOUT CREDIT REPORTING TESTIMONY FROM BANK OF AMERICA, WHICH IS A FURNISHER, AS WELL AS ONE FROM EQUIFAX CREDIT REPORTING AGENCY'S DEPOSITIONS?

AND THE OBJECTIONS ARE BASICALLY THE COURSE OF THEIR INVESTIGATION DOESN'T MATTER IN TERMS OF THE REASONABLENESS OF COMENITY'S INVESTIGATION.

AM I CORRECT THAT THAT'S YOUR OBJECTION?

MR. LOKER:  CORRECT, THAT'S THE FIRST PART OF IT WITH REGARD TO THE 30(B)(1)'S.

THE SECOND ISSUE IS THAT IF WE'RE GOING TO TALK ABOUT -- IF THE JURY IS GOING TO HEAR ABOUT WHAT LUND AND MR. OCHOA-GARCIA DID, THE JURY IS GOING TO WONDER, WELL, WHY AREN'T THEY HERE?  YOU KNOW, WHAT DID THEY DO IN ORDER TO GET OUT OF THE LAWSUIT AND WHY AREN'T THEY HERE AT TRIAL?

BUT YOU'RE CORRECT, YOUR HONOR.  OUR MAIN POINT IS THEIR INVESTIGATION HAS NO RELEVANCE TO WHAT COMENITY'S INVESTIGATION WAS, AND IT WOULD JUST CONFUSE THE ISSUES AND FORCE US TO VIOLATE MOTION IN LIMINE NUMBER 1 THAT WAS FILED BY MR. PANCHENKO.

THE COURT:  THIS IS A BIG ISSUE THAT SHOULD HAVE BEEN SQUARELY RAISED VERSUS COMING THROUGH DEPO DESIGNATIONS.

YOU KNOW, THIS NOT A LINE-BY-LINE ISSUE.  THIS IS SOMETHING WHICH SHOULD HAVE BEEN RAISED ON ONE PARTY'S EITHER MOTION TO EXCLUDE OR MOTION TO EXCLUDE IN TERMS OF MOTIONS IN LIMINE.

ALL RIGHT.  LET ME HEAR BRIEFLY, AND THEN I'LL SAY HOW WE'RE MOVING FORWARD.

PLEASE STATE YOUR NAME.

MS. GIVENTAL:  GIVENTAL.

THE COURT:  THANK YOU.

MS. GIVENTAL:  THE POINT OF THESE DESIGNATIONS FOR BANA IS TO BOLSTER --

THE COURT:  BANA BEING B-A-N-A?

MS. GIVENTAL:  I'M SORRY, BANK OF AMERICA.

-- THE TESTIMONY OF OUR EXPERT AND UNDERMINE THE TESTIMONY OF THEIR REBUTTAL EXPERT ON WHAT IS THE INDUSTRY STANDARD FOR CONDUCTING THESE INVESTIGATIONS.

IT'S RELEVANT AND PROBATIVE TO DEMONSTRATE FOR THE SAME EXACT TYPE OF INFORMATION, FOR THE SAME TYPE OF DISPUTE, FOR THE SAME TYPE OF ACCOUNT, WITH THE SAME TYPE OF INFORMATION AVAILABLE TO THEM.  BANK OF AMERICA, JUST AS AN EXAMPLE, THEIR POLICY AND PROCEDURE IS NOT TO CALL --

THE COURT:  OKAY.  YOU'RE GETTING WAY ON A LEVEL THAT I'M JUST NOT READY TO HEAR RIGHT NOW.  I'M CUTTING YOU OFF

BECAUSE BASICALLY WE ARE --

MS. GIVENTAL:  NO PROBLEM.

THE COURT:  I NEED TO FAMILIARIZE MYSELF WITH THIS AND DECIDE WHETHER I NEED ANY FURTHER INFORMATION FROM YOU ALL BECAUSE YOU'RE TALKING LAYERS INTO THE SUBSTANCE.

MS. GIVENTAL:  MAY I SAY MORE GENERALLY?

THE COURT:  YES, THAT WOULD BE GREAT.

MS. GIVENTAL:  THE POINT ISN'T TO HAVE A MINI TRIAL ABOUT A SEPARATE FURNISHER, BUT TO HAVE -- TO DEMONSTRATE EXAMPLES OF HOW FURNISHERS UNDER THESE CIRCUMSTANCES BEHAVE.  THAT IS AT BANK OF AMERICA.

FOR EQUIFAX, THERE'S CRITICAL TESTIMONY ABOUT HOW THEY HANDLED THE NOTICE OF DELETION THAT THEY RECEIVED FROM EXPERIAN, AND THAT IN RESPONSE TO THAT, FOR EXAMPLE, THEY DELETED THAT TRADELINE ON AUGUST 16TH, 2023 TO WHICH MR. NARITA ALLUDED TO EARLIER.  SO THAT IS JUST ESTABLISHING BASIC FACTS THAT ARE IN --

THE COURT:  THEY DELETED THE LINE, MEANING THEY DELETED COMENITY'S -- THE COMENITY --

MS. GIVENTAL:  -- TRADELINE.

THE COURT:  CAN YOU DEFINE TRADELINE FOR ME.  I'M INFERRING IT FROM THE CONTEXT, BUT I JUST WANT TO MAKE SURE I UNDERSTAND IT.

MS. GIVENTAL:  IT'S ON THE CREDIT REPORT.  EVERY CREDITOR HAS A SECTION.

THE COURT:  SO IT IS THAT LINE.

MS. GIVENTAL:  THEY ARE PRESENT.

THE COURT:  THANK YOU.  THAT'S VERY HELPFUL.

LET ME DO THIS.  SO WE ARE AT 12:30 OR 12:27.  WE ARE 15 MINUTES PASSED WHERE I PLANNED TO BE.  YOU ALL ARE GOING DOWNSTAIRS ANYWAY.  I HAVE A CRIMINAL CALENDAR AT 1:30.

HOW LONG ARE THE MINUTE COUNTS ON YOUR DESIGNATIONS?

MS. GIVENTAL:  19 MINUTES ON ONE AND 25 ON THE OTHER, I BELIEVE.

THE COURT:  MEET AND CONFER AND SEE IF THERE'S ANYTHING THAT YOU CAN AGREE ON IN TERMS OF THESE AND THE APPLICABILITY, BUT THERE MIGHT NOT BE, BECAUSE THEY ARE ALL SORT OF BIGGER PHILOSOPHICAL QUESTIONS.

I'M GOING TO HAVE YOU COME BACK, BUT I NEED TO PREPARE FOR MY CALENDAR TOMORROW.  SO IT IS GOING TO BE -- YOU'RE GOING TO COME BACK AT 3:00 O'CLOCK.  AND JUST IF THIS WORKS -- I NEED TO CHECK WITH THE COURT STAFF ACTUALLY.

SO COME BACK AT 3:00 O'CLOCK FOR 30 MINUTES.  I JUST WANT A REPORT WHERE WE ARE AND YOU'RE GOING TO TELL ME EVERYTHING HAS BEEN RESOLVED IN TERMS OF THE PANCHENKO ONES AND THE COUNTERDESIGNATIONS, BUT WE'LL SEE.  I WANT AN UPDATE ON THAT.

AND IT WILL GIVE ME TIME TO TAKE A MOMENT TO LOOK AT THESE, BECAUSE RIGHT NOW YOU ALL ARE TALKING -- I NEED TO THINK ABOUT THESE IN THE CONTEXT OF THE LIMITING INSTRUCTIONS.

YOU ALSO NEED TO THINK ABOUT WHETHER OR NOT THE LIMITING

INSTRUCTIONS, WHICH WE HAVE ALREADY DISCUSSED AND I HAVE ALREADY DRAFTED AND YOU HAVE ALREADY DRAFTED, COULD BE USED TO ADDRESS SOME OF THE CONCERNS AROUND SOME OF THESE IN TERMS OF COMENITY'S DESIGNATIONS.

ANYTHING ELSE?  BECAUSE I HAVE GIVEN YOU ALL A LOT OF TIME IN TERMS OF PRETRIAL.  THERE SHOULDN'T BE BIG PICTURE ISSUES COMING UP.  IF THERE'S ANYTHING ELSE WE NEED TO DISCUSS, BECAUSE I HAVE NO OTHER TIME TO GIVE YOU, FRANKLY, AT THIS POINT THIS WEEK.

WE ARE IN COURT ALL DAY ON WEDNESDAY FOR OTHER ISSUES, AND WE HAVE OTHER THINGS TO DO RELATED TO TRIAL GENERALLY AS WELL AS THE CALENDARS NEXT WEEK ON FRIDAY.

SO THIS CAN'T COME OUT -- NO MORE COMING OUT OF LEFT FIELD.  NO MORE ADDITIONAL EXHIBITS.  NO ADDITIONAL BIG PICTURE ISSUES.  I'M GOING TO TAKE A LOOK AT THESE DESIGNATIONS DURING -- WHILE I'M HAVING LUNCH.  AND BECAUSE YOU ALL HAVE NO FURTHER TIME BASICALLY OF THE COURT'S TO BE HAD.  SO FIGURE IT OUT.  MAKE SURE THERE'S NOTHING ELSE THAT IS GOING TO BLIND SIDE ME.

MR. LOKER:  UNDERSTOOD, YOUR HONOR.

MR. NARITA:  THANK YOU, YOUR HONOR.

MR. LOKER:  THANK YOU.

THE COURT:  AND ON THAT NOTE, A COUPLE OF OTHER THINGS FOR YOU TO PONDER.  CONSIDER HOW MUCH TIME YOU WANT TO RESERVE FOR REBUTTAL JUST SO I CAN GIVE YOU THAT MINUTE WARNING

FOR YOUR VOIR DIRE.

MR. LOKER:  YES, YOUR HONOR.

THE COURT:  EMAIL ME A DRAFT OF -- EMAIL THE CRD, LAURA, THE DRAFT OF YOUR STIPULATIONS, JUST BECAUSE I WANT TO HAVE A SENSE OF WHERE THEY ARE HEADED AND A FLAVOR OF THEM. YOU'RE GOING TO BE FILING THOSE LATER.

MR. LOKER:  OKAY.  YES.

THE COURT:  AND I WANT TIME COUNTS.  IT SEEMS LIKE, MR. LOKER, YOU CAN RUN THIS.

MR. LOKER:  YES.

THE COURT:  SO JUST SO I HAVE A SENSE OF -- AND YOU CAN DO IT RIGHT BEFORE YOU COME UP AND SEE ME AT 3:00, BUT HOW MUCH TIME ARE THOSE DESIGNATIONS?  HOW MUCH TIME ARE COMENITY'S COUNTERDESIGNATIONS?  WHAT ARE YOU REQUESTING -- WHAT PERCENTAGE ARE LEFT ASTERISK?  SO HOW MUCH TIME IS LEFT ASTERISK OF THE COMENITY DESIGNATIONS?  HOW LONG ARE THE COMENITY DESIGNATIONS?

AND IT SEEMS LIKE THERE ARE NO COUNTERDESIGNATIONS, MR. LOKER.

MR. LOKER:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  OKAY.  SO I JUST WANT YOUR TIME COUNTS.

MR. LOKER:  UNDERSTOOD.

MR. NARITA:  YES.

THE COURT:  WE ARE NOW IN RECESS UNTIL 12 -- WELL, FOR US UNTIL 1:30.  WE WILL SEE YOU ALL AT 3:00, 30 MINUTES.

MR. LOKER:  THANK YOU, YOUR HONOR.

(RECESS TAKEN AT 12:31 P.M.)

**AFTERNOON SESSION**


(COURT CONVENED AT 3:16 P.M.)

THE COURT:  ALL RIGHT.  WE ARE BACK IN SESSION ON THE MATTER OF PANCHENKO VERSUS COMENITY NOW I COULD SAY.

MR. LOKER:  YES.

THE COURT:  SO COMENITY CAPITAL BANK; RIGHT?

MR. NARITA:  CORRECT, YOUR HONOR.

THE COURT:  SO WE'RE HERE FOR THE CONTINUED PRETRIAL CONFERENCE.  A NUMBER OF THINGS GOT ADDED TO THE AGENDA IN THE PAST LITTLE BIT.  AND THANK YOU FOR SENDING THE DRAFT STIPULATIONS IN JUST SO I HAD A SENSE.

I ALSO RECEIVED THE EXHIBIT, THE ADDITIONAL EXHIBIT WHICH COMENITY IS ASKING TO SUPPLEMENT THE EXHIBIT LIST WITH AND ALSO LOOK THROUGH SOME OF THE DEPO DESIGNATIONS JUST TO GET A SENSE IN TERMS OF COMENITY'S DEPOSITION DESIGNATIONS AND OBJECTIONS.

SO WE ARE GOING TO TRY TO DO IT IN HALF AN HOUR, WHICH IS VERY AMBITIOUS.  WE'LL SEE HOW IT GOES.  WE MIGHT PUSH 45 MINUTES.

BUT IN HALF AN HOUR WE'RE GOING TO TRY TO DO THE FOLLOWING:  IN THE TIMING WE'RE GOING TO DISCUSS THE DEPO DESIGNATIONS, INCLUDING COMENITY DESIGNATIONS AND OBJECTIONS;

WE'LL DISCUSS THE NEW EXHIBIT.

ONE QUICK HOUSEKEEPING.

MR. LOKER, I HAVE NOT RECEIVED YOUR TRIAL BRIEF.

MR. LOKER:  I CAN DOUBLE CHECK THAT, YOUR HONOR.  MY APOLOGIES.

THE COURT:  SO CHECK THAT.

MR. LOKER:  YES.

THE COURT:  BRIEF NOTES ABOUT THE STIPULATION.  I HAVE SOME SUGGESTIONS.

MR. NARITA:  OKAY.

THE COURT:  AND THEN SOME OTHER ADMINISTRATIVE ORDERS, HOUSEKEEPING STUFF SUCH AS EXCLUSION OF WITNESS AND OTHER THINGS FOR TRIAL.

I THINK THAT'S WHERE I'M AT RIGHT NOW.

MR. NARITA:  FANTASTIC.

THE COURT:  OKAY.  SO LET'S BEGIN WITH THE DEPO DESIGNATIONS IN TERMS OF COMENITY'S.

SO WHAT I'M SEEING IS THAT THERE'S THE BANK OF AMERICA ONES WE'VE TALKED ABOUT BRIEFLY.  I WANT YOU TO -- I WANT TO JUST GO AHEAD AND HEAR FULL ARGUMENT ABOUT THAT BECAUSE I THINK IT'S 401, 403 AND THE MIL 1 ARGUMENT, WHICH I'M A LITTLE LESS CONVINCED, BUT WE'LL HEAR.

AND LET'S START WITH THAT, AND THEN WE'LL TURN TO THE EQUIFAX ONE.

MR. LOKER:  OKAY.

THE COURT:  SO MR. LOKER.

MR. LOKER:  THANK YOU, YOUR HONOR.

IN TERMS OF THE BANK OF AMERICA WITNESSES, WE HAVE A

COUPLE OF ARGUMENTS, LIKE YOU SAID.

SO FIRST, WE THINK THAT THEIR TESTIMONY IS IRRELEVANT AS TO THE REMAINING DEFENDANT HERE.

SO FOR COMENITY, WHAT WE'RE GOING TO BE DISCUSSING WITH THE JURY IS WHETHER COMENITY CONDUCTED A REASONABLE INVESTIGATION IN LIGHT OF WHAT THEY RECEIVED FROM MR. PANCHENKO.

FOR COMENITY, THEY HAVE THEIR OWN PROCEDURES, THEY HAD THEIR OWN EVIDENCE WITHIN THE RECORD IN TERMS OF THE RECORDINGS, AND THEIR WITNESSES TALK ABOUT HOW THEY DID NOT READ THE DISPUTE THAT WAS RECEIVED BY MR. PANCHENKO. THEY DID NOT READ THE IMAGES THAT WERE ATTACHED.

IN BANK OF AMERICA THEY HAD SEPARATE PROCEDURES. THEY HAD DIFFERENT EVIDENCE WITHIN THEIR RECORD THAT THEY HAD ACCESS TO.

THEY DIDN'T HAVE THE RECORDINGS. THEY DIDN'T HAVE A PROCEDURE WHERE THEY WEREN'T READING THE DISPUTES AS THEY CAME THROUGH.

SO WE THINK THAT WHAT BANK OF AMERICA DID THAT LED MR. PANCHENKO TO FILE SUIT AGAINST THEM IS IRRELEVANT TO WHAT COMENITY DID BECAUSE WE HAD DIFFERENT TESTIMONY ABOUT WHAT WAS EXISTING WITHIN THE RECORDS.

WE ALSO THINK IT'S DUPLICATIVE BECAUSE COMENITY HAS AN EXPERT WHO IS GOING TO TALK ABOUT THE INDUSTRY STANDARD, WHAT HE BELIEVES THE INDUSTRY STANDARD TO BE. SO COMENITY, IN TALKING ABOUT WHY THEY WANT TO OFFER THE BANK OF AMERICA

TESTIMONY, SAY THEY WANT TO OFFER IT TO SHOW THE INDUSTRY STANDARD.

MR. ULZHEIMER IS ALREADY GOING TO BE DISCUSSING THAT.

AND ALSO, THE STATUTE DOESN'T SAY THAT IN ORDER TO AVOID LIABILITY, THE INVESTIGATION NEEDS TO COMPLY WITH THE INDUSTRY STANDARD.  THE INVESTIGATION NEEDS TO BE REASONABLE.

SO WHETHER THEY COMPLIED WITH THE INDUSTRY STANDARD OR NOT WE DON'T THINK IS RELEVANT, AND ALSO THERE'S NO TESTIMONY FROM LUND, L-U-N-D, AND OCHOA-GARCIA.  OCHOA-GARCIA IS HYPHENATED. I'M SORRY, OCHOA-GARCIA, O-C-H-O-A DASH GARCIA.  AND SO THEY DIDN'T SAY WHEN THEY WERE GOING THROUGH AND TALKING ABOUT WHAT THEY DID AND THAT THEY COMPLIED WITH INDUSTRY STANDARDS.  THEY SAID THAT THEY COMPLIED WITH THEIR OWN PROCEDURES WHICH AREN'T IN THE EVIDENCE ANYWHERE.

SO IT'S IRRELEVANT AND DUPLICATIVE ARE REALLY THE MAIN POINTS.  SO WE THINK THAT BEYOND THAT, IF WE GO AND TALK ABOUT THE FACT THAT THEY WERE A DEFENDANT AND MR. PANCHENKO SUED THEM, IT WILL LEAD TO A MINI TRIAL ABOUT EXACTLY WHAT THEY DID, WHY HE SUED THEM, AND ULTIMATELY THAT THE COMPENSATION THAT HE RECEIVED FROM THAT LAWSUIT.

THE COURT:  OKAY.

MS. GIVENTAL:  THANK YOU, YOUR HONOR.

SO, FOR EXAMPLE, ONE OF -- SOME OF THE DESIGNATIONS THAT WE'RE PROBABLY ABOUT TO TALK ABOUT WHERE PLAINTIFF IS DESIGNATING TESTIMONY FOR COMENITY DEPOSITIONS, OVER AND OVER

AGAIN THERE'S THIS PIECE ABOUT HOW MANY DISPUTES THEY DO PER DAY, RIGHT, TO SAY THAT THERE'S A LOT OF DISPUTES PER DAY.

BANK OF AMERICA'S TESTIMONY THAT WE HAVE DESIGNATED SHOWS THAT BANK OF AMERICA ALSO -- THEIR AVERAGE IS ABOUT 35 DISPUTES PER DAY.

SOME OF THE QUESTIONS TO COMENITY WERE, DO YOU CALL THE ALLEGED VICTIM OF IDENTITY THEFT AS PART OF YOUR PROCEDURES? AND THEIR EXPERT TESTIFIED THAT THAT SHOULD BE INDUSTRY STANDARD.

BANK OF AMERICA'S, BOTH, WITNESSES TESTIFIED THAT THEY DON'T.  THAT'S NOT PART OF THEIR PROCESS.  THEY DON'T HAVE A WAY OF DOING IT.

SOME OF THE TESTIMONY INVOLVES THE PROCESS BY WHICH THE COMENITY EMPLOYEES VERSUS BANK OF AMERICA EMPLOYEES MATCH UP PUBLIC RECORD INFORMATION THAT IS AVAILABLE IN SOURCES LIKE LEXISNEXIS WITH ACCOUNT INFORMATION FROM ORIGINATION OF THE ACCOUNT.  THERE ARE A LOT OF SIMILARITIES.  AND IT GOES TO, YES, THERE'S AN EXPERT, BUT IT'S MUCH MORE PROBATIVE TO HAVE ANOTHER INDUSTRY PLAYER WHO SAW THE EXACT SAME DISPUTES, THE SAME EXACT INFORMATION, AND ALTHOUGH --

THE COURT:  SO THIS IS WHAT I'M CONFUSED ABOUT BECAUSE THIS IS THE EXACT SAME DISPUTE WITH THE EXACT SAME INFORMATION PRESENTED TO BANK OF AMERICA.

DOES IT -- AND THEN BECAUSE THE REASONABLENESS OF INVESTIGATION GOES -- IT GOES IN LARGE PART TO WHAT INFORMATION

DID THEY RECEIVE AND WHAT WAS PRESENTED?  WHAT WAS THE NATURE OF THAT DISPUTE?  AND THEN WHAT INVESTIGATION WAS CONDUCTED; CORRECT?

MS. GIVENTAL:  YES, YOUR HONOR.

THE COURT:  SO ARE YOU SAYING THAT'S EXACTLY THE SAME, WHAT THEY RECEIVED FROM PANCHENKO WAS EXACTLY THE SAME THAN WHAT THEY HAVE?

MS. GIVENTAL:  YES, YOUR HONOR.  THE DISPUTES, THE WAY THEY WERE SUBMITTED THROUGH THE CREDIT REPORTING AGENCIES, WERE ESSENTIALLY THE SAME INFORMATION EVERY TIME AND THEN A LIST OF CREDITORS.

AND SO THEN THE CREDIT REPORTING AGENCY SENDS OUT THAT INFORMATION WHERE THEIR UNDERSTANDING OF THOSE DISPUTES TO EACH OF THE FURNISHERS, AND EACH OF THE FURNISHERS INVESTIGATE.

THE DIFFERENCE COULD BE HOW EACH FURNISHER INVESTIGATES DIFFERENTLY, BUT OUR WHOLE POINT HERE IS COMENITY'S INVESTIGATION WAS VERY SIMILAR TO BANK OF AMERICA'S.  IT IS STRIKINGLY SIMILAR.

SO WE WANTED TO DEMONSTRATE THAT, HEY, THIS IS A NORMAL WAY TO DO IT IN THE INDUSTRY.  WHEN YOU GET THIS KIND OF DISPUTE EIGHT YEARS LATER, IT MAKES SENSE TO CHECK WHETHER, HEY, DO THESE RECORDS LINE UP WITH PLAINTIFF'S INFORMATION FROM THAT TIME OF PUBLIC RECORDS?  IT DOES.  DOES IT MAKE SENSE TO CALL THE PERSON?  NOT WHAT BANK OF AMERICA DOES.

THE COURT:  IS THE INDUSTRY STANDARD -- IS THE

REASONABLENESS INQUIRY BASED ON AN INDUSTRY, QUOTE-UNQUOTE, "INDUSTRY STANDARD"?  IS THAT THE STANDARD FOR FCRA?

MS. GIVENTAL:  YOUR HONOR, THAT'S ONE OF THE REASONS WHY WE THINK IT'S IMPORTANT TO HAVE AN INSTRUCTION ON REASONABLENESS.

THE COURT:  EVEN THE STANDARD OFFERED BY THE DEFENDANT DOES NOT INCLUDE AN INDUSTRY STANDARD STANDARD.

MS. GIVENTAL:  IT TALKS ABOUT WHAT YOU NEED TO CONSIDER, RIGHT?  AND ONE OF THE THINGS THAT YOU HAVE TO CONSIDER IS THE INFORMATION THAT IS -- COMES IN AND IS AVAILABLE, AND THAT IS THE INDUSTRY STANDARD.  THAT'S WHAT EVERYONE DOES.

THE COURT:  NO, IT'S THE INFORMATION THAT COMES IN, WHICH IS THAT'S NOT THE INDUSTRY STANDARD.

MS. GIVENTAL:  THAT'S THE TRIGGER, YOU'RE RIGHT, YOUR HONOR.

THE TRIGGER, RIGHT, IS IN THAT DEFINITION OF REASONABLENESS, IS WHAT DID YOU LEARN ABOUT THE INVESTIGATION OF -- THE DISPUTES.  THEY LEARNED THE EXACT SAME THING, RIGHT, BANK OF AMERICA.

THE COURT:  IS THAT UNDERLYING ACCOUNT IDENTICAL ALSO BETWEEN THE TWO?

MS. GIVENTAL:  SO BANK OF AMERICA, I BELIEVE IT WAS AN AIRLINE ACCOUNT, AND THEN COMENITY WAS VIRGIN, VIRGIN.  SO THEY WERE TWO SEPARATE BRANDED CARD ACCOUNTS ON DIFFERENT

AIRLINES.

THE COURT:  AND I BELIEVE I SAW SOMETHING DURING THE BREAK.  WE TRIED TO LOOK AT THIS QUICKLY OVER THE BREAK, BUT IT WAS -- WITH OUR OTHER CALENDAR, IT WAS A VERY SHORT BREAK.

BUT WASN'T THERE ALSO A DIFFERENCE IN TERMS OF LIKE MATCHING CHECKS, IF THERE ARE CHECKS WHICH BANK OF AMERICA WAS INVOLVED, LIKE SOME SORT OF CHECK PAYMENTS WHICH WERE MADE IN TERMS OF THIS ACCOUNT THAT BANK OF AMERICA TRIED TO MATCH, IS THAT AN ISSUE HERE?

MS. GIVENTAL:  IN ONE INSTANCE THERE WAS REFERENCE TO A CHECK, AND THAT WAS AN EXAMPLE OF HOW THEY MIGHT MATCH, LIKE A MATCHING POINT.

COMENITY TALKS ABOUT SIMILAR MATCHING THINGS.

THE COURT:  SO THERE ARE DIFFERENT PAYMENT HISTORIES?

MS. GIVENTAL:  ACTUALLY BANK OF AMERICA PAYMENTS WERE USED TO PAY COMENITY.

BUT THERE ARE SOME DIFFERENCES, AND ONE OF THE THINGS THAT WE HAD PROPOSED, AND ACTUALLY WE'VE MET AND CONFERRED ABOUT THIS WHILE WE DIDN'T SEE YOU, DURING THAT TIME IN BETWEEN, AND WE PROPOSED THAT MAYBE WE REALLY NARROW, YOU KNOW, THE TESTIMONY TO THE THINGS THAT ARE IN OUR POSITION ANALOGOUS, RIGHT?  AND SO THINGS LIKE NOT CALLING, MATCHING IN PUBLIC RECORDS, THE NUMBER OF DISPUTES.  THERE MIGHT BE ONE OTHER THING WHERE -- YOU KNOW, TO MAKE SURE THAT THEY LINE UP, BUT --

AND THAT BOTH LOOK AT IT THE SAME WAY.

IN OUR ESTIMATION, YOU KNOW, IF THERE WAS SOMETHING THAT BANK OF AMERICA DID THAT WOULD BE, YOU KNOW, IN PLAINTIFF'S VIEW MORE APPROPRIATE AND COMENITY DIDN'T DO, THEN THEY COULD DESIGNATE THAT PART OF THE DEPOSITION TO DEMONSTRATE THAT ACTUALLY, IN FACT, IT GOES COUNTER TO US.

BUT THE FACT IS THAT IT LINES UP SO WELL, WHICH IS WHY WE THINK IT'S -- IT HAS A LOT OF WEIGHT TO PUT THAT EVIDENCE IN FRONT OF THE JURY, BUT COGNIZANT OF TIME AND, YOU KNOW, ANY CONCERN ABOUT DUPLICATION, THAT'S WHY WE'RE PROPOSING TO MAYBE NARROW IT THROUGH STIPULATION.

THE COURT:  TALK TO ME ABOUT 403 AND HOW THAT WEIGHS IN, THE 403 WEIGHING.

MS. GIVENTAL:  IN TERMS OF WHY IT WOULD BE PREJUDICIAL OR NOT PREJUDICIAL TO PUT IT IN?

THE COURT:  UH-HUH.

MS. GIVENTAL:  WE THINK THAT PLAINTIFF WANTS TO RELY ON THE FINDINGS OF A POLICE OFFICER, WHOSE INVESTIGATION WE KNOW NOTHING ABOUT, AS HAVING SOME KIND OF PROBATIVE VALUE THAT THERE'S SOMEONE OUT THERE.

THE COURT:  WELL, BECAUSE THERE WAS THAT AND THAT WAS THE DATA GOING IN, RIGHT?  THAT WAS THE INFORMATION BEING PROVIDED.  IT'S NOT TO SHOW THAT INDEED IDENTITY THEFT DID INDEED HAPPEN.

IT WAS GOING TO THE FACT OF SAYING, THIS IS THE

INFORMATION THAT THE FURNISHER RECEIVED OR THAT THE CRA

RECEIVED OR WHATEVER.

SO THERE'S A DISTINCTION IN TERMS OF THAT.

MS. GIVENTAL:  YES, BUT WE WANTED THE LIMITING

INSTRUCTION TO SAY THAT IT CANNOT BE USED FOR THE PURPOSES OF

DETERMINING -- NO WEIGHT SHOULD BE GIVEN TO THE FACT THAT THE

POLICE OFFICER MADE THAT FINDING, BUT THAT I BELIEVE ISN'T THE

LIMITING INSTRUCTION THAT IS GOING IN.

THE LIMITING INSTRUCTION IS LESS THAN THAT.  IT'S THAT --

YOU CAN'T DETERMINE -- IT DOESN'T MEAN THAT HE WAS A VICTIM OF

IDENTITY THEFT, RIGHT?  BUT THERE'S STILL A THIRD PARTY'S

CONCLUSION, IT'S A POLICE OFFICER, BASED ON INFORMATION.  WE

DON'T KNOW THE INPUTS.  WE DON'T KNOW THE INFORMATION THAT THE

POLICE OFFICER RECEIVED BECAUSE IT'S ALL REDACTED.  SO THE ONLY

THING WE'RE LOOKING AT IS THE CONCLUSION.

SO PLAINTIFF IS ABLE TO GET IN A THIRD PARTY'S --

THE COURT:  THOSE ARE NOT -- THESE ARE NOT

ANALOGOUS.

MS. GIVENTAL:  THEY'RE NOT ANALOGOUS.  I GUESS WHAT

WE'RE SAYING IS THESE ARE BOTH COLLATERAL, RIGHT?

LIKE, BANK OF AMERICA IS IN THE EXACT SAME POSITION AS

COMENITY RECEIVING THAT AS MANY YEARS LATER, AFTER THEY LONG

FORGOT ABOUT THE ACCOUNT, THE SAME, YOU KNOW, PRETTY BASIC

DISPUTE.  THEY HAVE VERY SIMILAR, STARKLY SIMILAR PROCEDURES,

AND THOSE ARE PROCEDURES THAT THE EXPERTS, THE PLAINTIFF'S

REBUTTAL EXPERT AT HIS DEPOSITION SAID WERE NOT REASONABLE. WHEREAS IN FACT -- AND HE WAS ACTUALLY ASKED IN THE DEPOSITION, CAN YOU NAME A SINGLE FURNISHER THAT YOU'RE AWARE OF WHOSE POLICY IS TO CALL THE VICTIM OF IDENTITY THEFT?  HE COULDN'T.

WE ARE TRYING TO DEMONSTRATE THAT, WELL, WE CAN DEMONSTRATE AT LEAST TWO INDUSTRY PLAYERS, RIGHT, THAT ARE ACTUAL INDUSTRY PLAYERS, NOT JUST BECAUSE THEIR EXPERT SAYS SO, RIGHT, BUT BECAUSE THEY WERE DEPOSED IN THIS CASE, THEY SAW THE EXACT SAME THING, AND THEY'RE VERY SIMILARLY POSITIONED, THEY BOTH DON'T, AS A POLICY, CALL THE ALLEGED VICTIM OF IDENTITY THEFT.

THE COURT:  JUST FOR CLARIFICATION.  DID THEY ACTUALLY RECEIVE THE POLICE REPORT?  I THOUGHT WE SAW SOME REFERENCE OF --

MS. GIVENTAL:  SO IN THE NINE DISPUTES THAT COMENITY RECEIVED, EIGHT OF THEM DID NOT HAVE THE POLICE REPORT.  ONE OF THEM DID.

BANK OF AMERICA, THE DEPOSITION TESTIMONY THAT -- THE TWO WITNESSES THAT WERE DEPOSED ARE WITNESSES THAT LOOKED AT DISPUTES THAT DID NOT RECEIVE THE POLICE REPORT.  AND SO THERE'S NO DISCUSSION ABOUT LOOKING AT OR NOT LOOKING AT ATTACHMENTS.

IT'S LOOKING AT DISPUTES THAT DON'T HAVE ANY ATTACHMENTS, BUT THEY HAVE THE SAME EXACT DISPUTE CODE.  THEY'RE ALSO 103. BANK OF AMERICA ALSO HAS A SEPARATE TEAM THAT DOES 103

DISPUTES.  SO THERE'S A LOT OF SIMILARITY IN HOW THESE

DISPUTES, WITHOUT ANY ATTACHMENTS, WITHOUT ANY POLICE REPORTS,

WERE HANDLED AND WHAT THEIR PROCEDURES ARE.

THE COURT:  SO DID ANY OF THE WITNESSES WHO

TESTIFIED SEE THE POLICE REPORT?

MS. GIVENTAL:  NO.  FOR BANK OF AMERICA?  NO.

THE COURT:  SO DOESN'T THAT GO -- OKAY.  WELL, I'M

GOING TO LEAVE IT THERE FOR TODAY BECAUSE WE STILL NEED TO GO

ON TO THE OTHER.

SO LET ME TURN TO THE OTHER, EXPERIAN.

MR. LOKER:  EQUIFAX.

THE COURT:  I MEAN EQUIFAX.  WITH EQUIFAX, I DO

SHARE THE CONCERNS RAISED BY COMENITY'S COUNSEL REGARDING THERE

NOT BEING AN OBJECTION LINE BY LINE.  THESE ARE DIFFERENT AREAS

OF TOPICS WHICH WERE COVERED.  IT SEEMS LIKE THERE WOULD HAVE

BEEN DIFFERENT OBJECTIONS.

BUT LET ME HEAR BECAUSE I THINK IT WOULD BE HELPFUL FOR MY

CONTEXT.

MS. GIVENTAL, ARE YOU ARGUING THIS AS WELL?

TALK TO ME ABOUT WHAT THIS TESTIMONY -- IN TERMS OF

PROFFER.  GIVE ME AN OFFER OF PROOF OF WHAT THIS WITNESS IS

SUPPOSED TO BE GOING TO AND HOW THIS WITNESS IS RELEVANT TO

YOUR CASE.

MS. GIVENTAL:  YOUR HONOR, WE DID REACH THE

AGREEMENT TO DO STIPULATIONS AS TO TWO OUT OF FOUR TOPICS THAT

ARE COVERED BY THE EQUIFAX DEPOSITION.

THE COURT:  OH, GREAT.

MS. GIVENTAL:  WOULD YOUR HONOR LIKE ME TO PROFFER THOSE AS WELL TO GIVE YOU A PREVIEW?

THE COURT:  YES, COULD YOU?  IT'S JUST HELPFUL FOR ME TO HAVE SOME CONTEXT RIGHT NOW.

MS. GIVENTAL:  TOPIC 1 IS THAT THERE WERE -- THAT EQUIFAX TESTIFIED TO RECEIVING DISPUTES FROM PLAINTIFF, FORWARDING THEM, THOSE DISPUTES, TO A NUMBER OF CREDITORS, CHASE, U.S. BANK, BANK OF AMERICA, COMENITY, CALVARY, ET CETERA, AND RECEIVING BACK THE RESPONSES FROM THOSE CREDITORS WHO ALL WERE CONFIRMING THE ACCURACY OF THEIR REPORTING.

THE COURT:  UH-HUH.

MS. GIVENTAL:  IN THE SAME BATCH AS COMENITY WAS DOING, RIGHT?  SAME DISPUTE, SAME INFORMATION, AND THEN RECEIVING THEM BACK.

WE WANT TO, AS PART OF DISCUSSION OF DAMAGES, RIGHT, BE ABLE TO POINT, AND I THINK THAT THERE WERE OTHER DISPUTES HAPPENING, AND TO THE EXTENT THAT DEMONSTRATES BOTH HANDLING BY OTHERS REACHING SIMILAR CONCLUSIONS, BUT ALSO DEMONSTRATES THAT, HEY, IF THERE WAS WRONGFUL OUTCOME HERE, IT'S ATTRIBUTABLE NOT JUST TO THE COMENITY TRADELINE.

MR. NARITA:  SO THAT'S STIPULATED.

WHAT ELSE IS STIPULATED?

MS. GIVENTAL:  THE -- SOMETHING THAT I ALLUDED TO BEFORE THE BREAK -- OR FOR US THERE WASN'T A BREAK, ACKNOWLEDGING THAT WE WERE HERE -- THE DELETION BY EQUIFAX OF THE COMENITY TRADELINE ON AUGUST 16TH, 2023 AS A RESULT OF INFORMATION THAT EQUIFAX RECEIVED FROM EXPERIAN ON THAT DATE. THAT'S ALSO STIPULATED.  WE HAVEN'T WORDED IT, BUT WE'VE CONCLUDED WE CAN SAVE EVERYONE TIME, AND IT SHOULD COME IN, AND WE'LL HAVE TO WORDSMITH HOW IT COMES IN.

THE COURT:  I MEAN, I THINK SOME OF THOSE BASIC OF FACTS OF THIS ACCOUNT WAS OPENED ON X DATE.  I'M NOT SAYING BY WHOM.  I'M NOT SAYING THAT.

AND THE COMENITY LINE WAS REMOVED ON X DATE.  ALL OF THOSE WOULD HELP.  I MEAN, I'M STILL SWIMMING IN THE DATES THAT YOU ALL HAVE.  I MIGHT TO DO A CHRON FOR MYSELF JUST TO KEEP TRACK OF RELEVANCY OF EVIDENCE.  AND IF I'M SWIMMING IN IT, HAVING SPENT THE LAST THREE PRETRIAL CONFERENCES WITH YOU ALL, THEY'RE GOING TO BE SWIMMING IN IT.  I THINK IT WOULD BE HELPFUL FOR YOU ALL.

MR. LOKER:  YES, AND WE DISCUSSED THAT WHEN WE WERE DOWNSTAIRS, YOUR HONOR.

THE COURT:  BUT, MS. GIVENTAL, I WASN'T TRYING TO CUT YOU OFF.

SO THE SECOND ONE WAS THE DELETION OF THAT TAG LINE.

MS. GIVENTAL:  YES, YOUR HONOR.

THEN THERE IS THE EXPERIAN DELETION WAS A RESULT OF THIS

PROCEDURE THAT IS A LOCK NOTIFICATION. EQUIFAX HAS TESTIMONY ABOUT WHAT WOULD HAVE HAPPENED HAD THEY NOT DELETED THE COMENITY TRADELINE IN RESPONSE TO EXPERIAN'S BLOCK OR NOTICE THAT THEY WERE DELETING HAD THEY RECEIVED THIS DOCUMENTATION OF THE POLICE REPORT, AND THE FTC REPORT, AND PLAINTIFF'S PASSPORT, THEY ALL CAME IN AS ONE PACKET, AND WHETHER THAT DOCUMENTATION WOULD HAVE BEEN SUFFICIENT UNDER EQUIFAX PROCEDURES TO DELETE TRADELINE?

THE COURT: IS THIS PART OF THE SAME STIPULATION OR WE'RE MOVING ON; CORRECT?

MS. GIVENTAL: NO. THAT'S A SEPARATE ITEM THAT HAS NOT BEEN STIPULATED.

THE COURT: OKAY.

MS. GIVENTAL: SO IN THAT PART OF THE TESTIMONY, EQUIFAX EXPLAINS THAT THE POLICE REPORT WAS INSUFFICIENT FOR EQUIFAX TO TIE PLAINTIFF TO HIS IDENTITY IN THEIR CREDIT FILE BECAUSE THE SOCIAL SECURITY NUMBER WAS REDACTED, DATE OF BIRTH WAS REDACTED, ADDRESS, ET CETERA, RIGHT? AND A BUNCH OF DIFFERENT REASONS FOR WHY THEY COULDN'T ACCEPT THE POLICE REPORT AS A BASIS FOR DELETING THE TRADELINE. THEY GO THROUGH THE SAME INFORMATION ABOUT ALL OF THE DOCUMENTS.

THE COURT: OKAY. YOU SAID THERE ARE FOUR TOTAL AND NOW I'M CONFUSED BETWEEN YOUR THREE VERSUS FOUR.

MS. GIVENTAL: THIS IS THE FOURTH ONE.

THE COURT: OKAY.

MS. GIVENTAL:  THE FOURTH ONE IS VERY SHORT AND MINOR, BUT IMPORTANT.

THERE WAS CONTACT FROM SOMEONE CONTENDING TO BE PLAINTIFF IN JANUARY 2018 CALLING EQUIFAX TO DETERMINE WHETHER THEY HAD A FREEZE NOTIFICATION ON THEIR CREDIT INTERACTING WITH EQUIFAX ABOUT ESSENTIALLY THE PROTECTION OF THEIR CREDIT FILE.

THAT IS LIKE A LITTLE TINY GLIP ESTABLISHED BY EQUIFAX, AND THERE ARE A FEW OTHERS ESTABLISHED BY OTHER CREDIT REPORTING AGENCIES WHICH GO TO THE OVERALL BIG PICTURE OF WHERE WAS PLAINTIFF?  WHO WAS UTILIZING HIS CREDIT?  COULD IT HAVE BEEN PLAINTIFF?  COULD IT HAVE BEEN -- WHO COULD IT HAVE BEEN?

THERE WERE IDENTITY THEFT DISPUTES SUBMITTED IN JUNE 2017 TO TRANS UNION.  SO THERE'S A LITTLE TINY FACTS THAT IS ESTABLISHED BY A LITTLE PIECE OF THE TESTIMONY THAT AUTHENTICATES A DOCUMENT AND A LINE IN IT.  VERY SHORT.  I'M NOT SURE IT WILL COME UP, BUT IF IT COMES UP, IF THAT LINE OF TESTIMONY COMES UP, WE DESIGNATED IT.

THE COURT:  OKAY.  SO IT SOUNDS LIKE YOU'VE MADE A LOT OF PROGRESS DURING THE MEET AND CONFER ACTUALLY.  IT IS THE FIRST TWO POINTS WERE THE ONES WHICH YOU ALL HAD STIPULATED TO AND ARE WORKING ON STIPULATIONS.  THE THIRD ONE SOUNDS AS THOUGH IN TERMS OF THE TRADELINE IT COULD BE A BIGGER -- I'M NOT SURE HOW MANY -- WHAT PORTION OF THAT DEPOSITION, WHAT PORTIONS OF THE DESIGNATIONS THAT ONE IS.  AND THEN THE LAST ONE SEEMS LIKE IT WILL BE VERY SMALL.

SO GIVEN THAT AND GIVEN THAT YOU ALL ARE MAKING PROGRESS, IT SEEMS AS THOUGH YOU SHOULD PROBABLY KEEP TRYING TO MAKE PROGRESS WITH THAT, BUT WITH A DEADLINE SO THAT I CAN -- I KNOW WHAT THE STIPULATIONS ARE, AND ALSO SO I CAN RULE HOPEFULLY EXPEDITIOUSLY ON ANYTHING OUTSTANDING.

IN PARTICULAR, I FEEL THE BOFA ONES IS SORT OF A WHOLE ONE.  I'M LESS CONCERNED ABOUT MAYBE WE NEED TO DO LINE BY LINE, BUT IT DOESN'T SEEM LIKE IT.

BUT WITH THE COMENITY ONES, I DO THINK WHATEVER IS LEFT, I DO NEED TO KNOW, MR. LOKER, WHAT IS PLAINTIFF OBJECTING?  WHAT IS THE BASIS OF THE OBJECTIONS?  AND THEN THE RESPONSE.

MR. LOKER:  YES, YOUR HONOR.  WE MADE QUITE A BIT OF PROGRESS, AND I THINK WE WORKED THROUGH MOST OF THE ISSUES.

THE COURT:  OKAY.  SO WHAT'S THE DEADLINE I CAN GET WHERE I'M GOING TO FINALLY GET YOUR FINAL ANYTHING, JUST NOT --

MR. SEARLES:  TOMORROW MIDDAY.

MR. LOKER:  LIKE NOON.

MR. SEARLES:  5:00.

MR. LOKER:  CAN WE DO TOMORROW AT 5:00, YOUR HONOR?

BECAUSE I THINK WE DID WORK THROUGH MOST OF IT, SO WE HAVE OUR TIME DOWN.  THERE'S GOING TO BE REMOVALS OF OBJECTIONS AND NARROWING.

THE COURT:  OKAY.

MR. LOKER:  SO I FEEL LIKE WE'RE PRETTY MUCH THERE.

THE COURT:  MR. SEARLES?

MR. SEARLES:  YES, YOUR HONOR.  I JUST WANT TO HAVE TIME TO FINALIZE IT AND MAKE SURE IT'S DONE, DONE.  I DON'T WANT TO RUSH THROUGH IT.  WE ARE TALKING ABOUT SEVEN TRANSCRIPTS SO --

MR. NARITA:  AND, YOUR HONOR, WE'RE WITHDRAWING A LOT OF OUR DESIGNATIONS, TOO.  THAT'S GOING TO ELIMINATE A LOT OF THE WORK THAT THE COURT MIGHT HAVE OTHERWISE HAD TO DO.  WE MADE INCREDIBLE PROGRESS IN THE TIME THAT YOU SENT US DOWNSTAIRS.  WE'RE JUST NOT --

THE COURT:  YOU'LL HAVE ANOTHER HOUR AFTER I EXCUSE YOU.

MR. NARITA:  OKAY.

THE COURT:  CAN WE SAY MIDAFTERNOON TOMORROW?  BECAUSE I WANT TO SEE IT, AND I DON'T WANT TO SEE IT AT MIDNIGHT.

MR. LOKER:  OKAY.

THE COURT:  SO 3:00 O'CLOCK?

MR. SEARLES:  THAT'S FINE, YOUR HONOR.

MR. LOKER:  THANK YOU.

THE COURT:  SO THIS WILL INCLUDE AN UPDATED DEPOSITION DESIGNATION, INCLUDING ANY OBJECTIONS, AND THE TOTAL TIME AS WELL AS YOUR STIPULATIONS --

MR. LOKER:  YES.

THE COURT:  -- WHICH RELATE TO THESE.

MR. NARITA:  CORRECT.

THE COURT:  SO YOUR STIPULATIONS AS OF THE DAY, AND HOPEFULLY MAYBE YOU'RE DONE WITH YOUR STIPULATIONS.  SO WE'LL SEE.

SO RELATEDLY WITH THE STIPULATIONS, I WAS LOOKING AT THEM AND WONDERING AND HOPING TO GET THEM IN TIME FOR ME TO SORT THROUGH THEM BEFORE THE END OF THE WEEK BECAUSE WHEN I WAS TAKING A LOOK AT THEM, IT LOOKS LIKE A LOT OF THEM WERE INVOLVING DIFFERENT WITNESSES.  SO I COULD SEE PERHAPS DIVIDING SOME OF AND SAYING YOU'RE ABOUT TO HEAR FROM X PERSON.  X PERSON IS BLAH BLAH BLAH, IS LOCATED IN INDIA.  SHE IS THE BLAH.  HERE ARE THE TWO POINTS, AND JUST READING THE STIPULATIONS.  SO THERE'S THAT JURY INSTRUCTION WHICH SAYS -- WHICH GENERALLY IS READ BEFORE THE DEPOSITION EXCERPTS.

MR. LOKER:  RIGHT.

MR. NARITA:  RIGHT.

THE COURT:  AND THEN LEADING INTO THAT.  AND SO THAT'S WHAT -- ONE OF THE REASONS I'M ASKING IF I CAN SEE THESE SOONER RATHER THAN LATER, AND YOU ALL CAN DECIDE SOONER RATHER THAN LATER SO WE CAN DECIDE WHEN TO HAVE THEM READ TO THE JURY.

MR. LOKER:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  I'M GLAD YOU'RE MAKING PROGRESS.

MR. NARITA:  THANK YOU, YOUR HONOR.  YOUR HONOR, MAY I ASK A CLARIFICATION FROM EARLIER?  I JUST DIDN'T -- I KNOW THE COURT SAID IT, BUT I DIDN'T WRITE IT DOWN OR I WAS

DISTRACTED.

WHAT IS YOUR HONOR'S THINKING AT THIS POINT ABOUT WHEN YOU INSTRUCT THE JURY AND HOW MUCH YOU'RE GOING TO PRE-INSTRUCT THEM AND SO FORTH BEFORE WE DO OPENING STATEMENTS OR START ANY WITNESSES?

THE COURT:  I WAS HOPING TO DO THE PRE-INSTRUCTIONS ON THURSDAY, BUT JUST GIVEN WHERE WE ARE AT, I THINK IT'S GOING TO END UP BEING MONDAY MORNING RIGHT BEFORE THE OPENING.

SO THEY'LL COME IN, I WILL PRE-INSTRUCT, YOU WILL DO YOUR OPENING.

AND THE SCOPE OF THE PRE-INSTRUCTION -- I'M NOT PLANNING ON DOING THE SUBSTANTIVE LAW.  I AM PLANNING TO DO THE 1 POINT SERIES.

AND THEN I WAS THINKING ABOUT DOING PART OF THE 2 POINT SERIES IN TERMS OF EXPERTS AND SO FORTH, BUT GIVEN WHERE WE ARE RIGHT NOW, I MIGHT JUST END UP DOING THE 1 POINT SERIES.

MR. NARITA:  OKAY.

THE COURT:  SO WE'LL SEE.  I'LL HAVE A BETTER SENSE WHEN I GO THROUGH TAKING YOUR ARGUMENTS FROM THIS MORNING, WAS IT, AND GOING THROUGH THE JURY INSTRUCTIONS AGAIN AND JUST SORT OF SEEING WHERE WE ARE GIVEN WHAT YOU FILED LAST NIGHT.

MR. NARITA:  OKAY.  I WAS JUST THINKING ABOUT OPENING STATEMENTS AND WHETHER I'M GOING TO SAY SOMETHING LIKE "HER HONOR JUST TOLD YOU THIS" OR WHETHER IT'S "I EXPECT THAT AT THE END OF THE CASE YOU'LL HEAR SOMETHING LIKE THIS."

THE COURT:  I'LL HAVE A VERY STRONG SENSE BY THURSDAY, ASSUMING I HAVE TIME TO WORK ON THIS.

ALL RIGHT.  SO LET'S KEEP GOING.

DEFENDANT'S DESIGNATION.  SO DEFENDANT'S NEW TRIAL EXHIBIT.  SO THANK YOU FOR PROVIDING A COPY TO THE COURT DURING THE BREAK.

LET ME HEAR, MR. LOKER, WHAT IS PLAINTIFF'S POSITION ON THIS?  AND I WOULD QUALIFY THIS BY STATING ONE OTHER THING AND JUST CONFIRMING ONE OTHER THING.

WHEN WE HAD TALKED IT THIS MORNING, I HAD ASSUMED THAT THIS WAS A NEW EXHIBIT THAT HAD NOT EVER BEEN PROVIDED TO YOU.  IT APPEARS THAT IT WAS PROVIDED TO PLAINTIFF IN DISCOVERY.

MR. LOKER:  THIS EXHIBIT WAS HYPERLINKED IN EXHIBIT NUMBER 161.  CLICKING THE HYPERLINK AND DOWNLOADING IT, IT WAS NEVER INTRODUCED INTO THE RECORD.  REGARDLESS, THE RECORD BEING LIKE THE PRODUCTION.  WE HAVE WITHDRAWN OUR OBJECTION.

MR. SEARLES PROVIDED TO ME DURING THE BREAK, I'VE READ IT, AND WE DON'T HAVE AN OBJECTION TO IT COMING IN NOW.

THE COURT:  OKAY.  ALL RIGHT.  SO GIVEN THAT AND GIVEN IT'S SO CENTRALLY TIED TO SOME OF THE, LIKE, WHAT DO YOU DO IN THE CASE OF FRAUD?  AND THEN GIVEN THAT PLAINTIFF HAS WITHDRAWN THEIR OBJECTION, THE COURT WILL ALLOW THIS EXHIBIT TO BE ADDED.

SO WHAT NUMBER IS IT GOING TO BE?

MR. NARITA:  WHAT IS THE NEXT IN ORDER?

MR. SEARLES:  IT'S ACTUALLY TWO EXHIBITS, YOUR HONOR.  IT'S TWO PAGES AND THEN THREE PAGES.

THE COURT:  OH, OKAY.

MR. SEARLES:  AND THAT WILL BE 243 FOR THE DOCUMENT THAT IS DATED 2022; AND THEN 244 WILL BE THE DOCUMENT THAT IS DATED AUGUST 11TH, 2023.

THE COURT:  I AM TRYING TO DECIDE WHETHER OR NOT TO MAKE IT 160A AND B, BUT MAYBE IT'S JUST EASIER TO GIVE IT THE NUMBERS.

MR. SEARLES:  WE'LL DEFER TO YOUR CHOICE, YOUR HONOR.

THE COURT:  OKAY.  LET'S JUST DO 243 AND 244 RIGHT NOW.  I WANT TO TAKE A LOOK AT YOUR WHOLE EXHIBIT LIST, BUT RIGHT NOW LET'S JUST DO THAT.

MR. SEARLES:  THANK YOU, YOUR HONOR, AND THANK YOU MR. LOKER.

THE COURT:  GREAT.  SO GOOD WHEN YOU GET INTO A ROOM TOGETHER.  IT HELPS.

MR. NARITA:  WE JUST NEED TO EAT LUNCH TOGETHER MORE OFTEN, YOUR HONOR.  WE ONLY DO THAT WHEN WE'RE WITH YOU.

THE COURT:  SEE, YOU CAN HAVE A DRINK DOWN THE STREET AFTERWARDS AND SETTLE THE CASE.

MR. NARITA:  VERY GOOD.

THE COURT:  ALL RIGHT.  STIPULATION.  SO I THINK THOSE ARE THE TOPICS, OTHER THAN THE ADMINISTRATIVE ORDERS AND

CLEANUP THAT I HAD.

WAS THERE ANYTHING ELSE OF SUBSTANCE THAT WE NEED TO TALK ABOUT BECAUSE WE'RE RIGHT AT ABOUT 30 MINUTES.

MR. NARITA:  OH, YES.  ONE HOUSEKEEPING MATTER THAT WOULD REALLY HELP MY PARALEGAL, WHICH IS -- BECAUSE WE HAD TO RENUMBER ALL OF OUR EXHIBITS, YOUR HONOR, STARTING AT 100 AND THEN REDACT THEM, AND YOUR HONOR ASKED US TO GET A SET TO YOU BY TOMORROW I THINK, THURSDAY.

WE WONDERED IF WE COULD GET ONE MORE DAY FROM YOU AND HAVE THEM GOT TO YOU BY FRIDAY IF THAT'S OKAY?  YOU WANTED THE COURTROOM SET OF OUR NEW EXHIBITS I GUESS.

THE COURT:  RIGHT.  BY FRIDAY.

MR. NARITA:  BY FRIDAY.

THE COURT:  I THINK THAT WILL BE OKAY.  I THINK THAT WILL BE ALL RIGHT.  THERE MIGHT BE OCCASION WHERE I NEED TO TAKE A LOOK AT ANY, THEN I'LL LET YOU KNOW.  BUT I THINK WE WILL BE OKAY, ESPECIALLY GIVEN THAT PLAINTIFF IS NOT OBJECTING TO YOUR EXHIBITS, THAT WAS NOT THE PRIMARY REASON.  YOU CAN THANK MR. LOKER, BUT THAT IS FINE IN TERMS OF FRIDAY.

OKAY.  OTHER HOUSEKEEPING STUFF WHICH I WANTED TO RAISE?

I REALIZE THAT THE ORDER, THE PRETRIAL ORDER I ISSUED DID NOT INCLUDE THE GENERAL FEDERAL RULE OF EVIDENCE 615 EXCLUSION OF WITNESS ORDER.  I'M PLANNING TO DO THAT.

ANY CONCERNS?

MR. NARITA:  NOT HERE, YOUR HONOR.

THE COURT: ALL RIGHT. SO WITH THAT THE COURT ORDERS THE EXCLUSION OF ALL WITNESS EXCEPTING PARTIES PURSUANT TO FEDERAL RULE OF EVIDENCE 615.

ALSO, I REALIZED THAT THE PRETRIAL ORDER I ISSUED DID NOT INCLUDE THE INFORMING THE OTHER SIDE AND MYSELF OF THE WITNESSES EACH INTENDS TO CALL THE NEXT DAY.

SO AT THIS POINT I CONSIDER IT COMMON COURTESY, BUT JUST TO BE CLEAR, THE DAY BEFORE, I EXPECT THAT YOU WOULD INFORM BOTH ME AS WELL AS OPPOSING COUNSEL WHICH WITNESSES ARE GOING TO BE CALLED.

MR. NARITA: DO YOU WANT ALSO US TO EXCHANGE LISTS OF DOCUMENTS THAT WE MIGHT OFFER AND JUST IN CASE THERE'S ANY LINGERING EVIDENTIARY ISSUE OR SOMETHING OR THE DOCUMENT?

THE COURT: I THINK THAT WOULD BE HELPFUL JUST IN CASE, BECAUSE AS YOU HAVE SEEN TODAY, A LOT OF TIMES THE THEORIES MAY SHIFT A LITTLE BIT AND A LOT OF TIMES JUST TALKING OUT BEFOREHAND CAN REALLY MINIMIZE SIDE-BARS AND SO FORTH.

MR. LOKER: UNDERSTOOD.

THE COURT: I THINK THAT IS IT. ANYTHING ELSE?

MR. NARITA: YOUR HONOR, I HAD ONE MECHANICAL ISSUE ABOUT SEATING THE JURY AND SO FORTH.

IT OCCURRED TO ME AFTER A FEW OF OUR JURORS WERE EXCUSED FOR CAUSE. WHEN WE WERE HERE THE LAST TIME, THE COURT WAS VERY HELPFUL AND LITERALLY POINTED US THROUGH AND WALKED THROUGH HOW THE JURY WOULD BE SEATED.

I JUST WANT TO MAKE SURE NOW WHEN THE FOLKS THAT GOT EXCUSED TODAY, WILL YOU JUST SLIDE THE NEXT JUROR OVER SO IT WILL BE JUROR NUMBER 1, 2, 4, FOR EXAMPLE?

THE COURT:  EXACTLY.

MR. NARITA:  AND THAT KIND OF THING SITTING IN THE BOX AND SO FORTH.

THE COURT:  SO THE CHART THAT I MADE FOR MYSELF, I'M HOLDING UP THIS PIECE OF PAPER, WHICH IS YOUR EXHIBIT, BUT JUST PRETEND IT'S A MANILA FOLDER AND THEN I'VE NOW DIVIDED IT INTO 36, 6 BY 6.

MR. LOKER:  RIGHT.

THE COURT:  AND SO I'M JUST MOVING, YOU KNOW, SO I'LL HAVE -- THESE ARE NUMBERED 1, 2, 3, 4, 5, 6 JUST SO I CAN KEEP TRACK, BUT MY JUROR NUMBERS, WHICH WE'RE USING THE SAME JUROR NUMBERS.  SO JUROR NUMBER 4 WILL BE IN JUROR NUMBER 3'S -- THE SEAT MARKED 3.  SO YOU --

MR. NARITA:  AND SO I GUESS SOMEBODY WILL TAKE CARE OF JUST TELLING THE JURORS WHERE TO SIT SO THAT THEY ACTUALLY SIT IN THE ORDER THAT THE COURT WANTS THEM TO BE IN.  IS THAT -- I DON'T KNOW HOW TO MECHANICALLY HANDLE THAT BUT --

THE CLERK:  YES.

MR. NARITA:  I WORRY ABOUT IT TOO MUCH, BUT I JUST KEPT THINKING ABOUT IT.  ANYWAY.  I JUST -- I DON'T WANT TO HAVE A SITUATION WHERE THEY'RE ALL OUT OF ORDER.

THE COURT:  THINK OF A SOUTHWEST LINE.  THEY WILL

STAND IN THEIR SOUTHWEST LINE AND THEY WILL GO INTO THEIR ROWS FILLING SIX SEATS AT A TIME.

MR. NARITA:  THAT'S ENOUGH.  YOU PROBABLY JUST SAVED ME A HALF AN HOUR OF SLEEP, YOUR HONOR, OR SLEEPLESSNESS.

THE COURT:  WELL, YOU WILL DO ME THE SAME IN THE NEXT COUPLE OF DAYS AND NO MORE MIDNIGHT FILINGS.

MR. NARITA:  THANK YOU, YOUR HONOR.

MR. LOKER:  UNDERSTOOD, YOUR HONOR.  AND THE ONLY OTHER THING I HAD IN MIND WAS A COMMENT FROM EARLIER, WE ASKED ABOUT RESERVATIONS FOR REBUTTAL, AND I DON'T KNOW IF THAT WAS FOR TODAY OR THURSDAY.

THE COURT:  IF THAT'S HELPFUL, FIVE MINUTES.

MR. LOKER:  FIVE MINUTES, PLEASE.  THANK YOU, YOUR HONOR.

MR. NARITA:  THAT'S FINE.

THE COURT:  IT'S JUST HELPFUL.  I WILL SAY, COUNSEL, YOU KNOW, YOU'VE GOT FIVE MINUTES OR SOMETHING.  JUST -- I FIND PEOPLE NORMALLY HELP.  I APPRECIATED IT AS AN ATTORNEY.  SO I WILL DO THE SAME.

MR. LOKER:  THANK YOU, YOUR HONOR.

MR. NARITA:  OKAY.

THE COURT:  OKAY.  WELL, WITH THAT, WE HAVE OUR JURY COMING IN THURSDAY.  IT'S EXCITING.

MR. LOKER:  YES, IT IS.

THE COURT:  ALL RIGHT.  WELL, THANK YOU.  CONTINUE

TO MEET AND CONFER.  THANK YOU FOR YOUR HARD WORK THIS AFTERNOON.  OUR LOUNGE CONTINUES TO BE OPEN TO YOU, AND I WILL SEE YOU ON THURSDAY MORNING.

MR. LOKER:  THANK YOU, YOUR HONOR.  I APPRECIATE IT.

THE COURT:  AND THANK YOU TO THE COURT STAFF.  WE ARE NOW ADJOURNED.

(COURT CONCLUDED AT 3:52 P.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____

IRENE RODRIGUEZ, CSR, RMR, CRR
CERTIFICATE NUMBER 8074

DATED:  OCTOBER 30, 2025