UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

OLEKSANDR PANCHENKO,                )
                                    )  CV-23-04975 EKL
                    PLAINTIFF,      )
                                    )  SAN JOSE, CALIFORNIA
          VS.                       )
                                    )  OCTOBER 30, 2025
COMENITY CAPITAL BANK,              )
                                    )  VOLUME 1
                    DEFENDANT.      )
_____    )  PAGES 1 - 100

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EUMI K. LEE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:      LOKER LAW, APC
                        BY: MATTHEW M. LOKER
                            CHARLES B. CUMMINS
                        132 BRIDGE STREET
                        ARROYO GRANDE, CALIFORNIA 93420

                        RAMOS LAW
                        BY: MATTHEW R. OSBORNE
                        10190 BANNOCK STREET, SUITE 200
                        NORTHGLENN, COLORADO 80260

          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

OFFICIAL COURT REPORTER:
                        IRENE L. RODRIGUEZ, CSR, RMR, CRR
                        CERTIFICATE NUMBER 8074

          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

A P P E A R A N C E S: (CONT'D)


FOR DEFENDANT COMENITY: WOMBLE BOND DICKINSON U.S., LLP
                              BY: TOMIO B. NARITA
                                  ALISA A. GIVENTAL
                                  KRISTINA HOVSEPYAN
                                  NATHAN A. SEARLES
                              50 CALIFORNIA STREET, SUITE 2750
                              SAN FRANCISCO, CALIFORNIA 94111

ALSO PRESENT:           COMENITY CAPITAL BANK
                        MIKE GALEANO, IN HOUSE COUNSEL

SAN JOSE, CALIFORNIA                    OCTOBER 30, 2025

P R O C E E D I N G S

(COURT CONVENED AT 8:54 A.M.)

THE COURT:  GO AHEAD AND BE SEATED.  I'M ASKING YOU ALL TO COME IN A LITTLE BIT BEFOREHAND, AND I JUST WANTED TO DO A LITTLE HOUSEKEEPING FOR US.

FIRST OF ALL, GOOD MORNING.  I SEE THAT WE HAVE CLIENT REPRESENTATIVES HERE ON BOTH SIDES, AND SO I LOOK FORWARD TO MEETING YOU ALL.

AND WE ARE MISSING MR. LOKER.

MR. LOKER:  I'M HERE.

THE COURT:  OH, THERE YOU ARE.

MR. LOKER:  I'M SORRY.

THE COURT:  I'M USED TO YOU SITTING ON THAT SEAT.

MR. LOKER:  KEEP IT INTERESTING.  MY APOLOGIES.

THE COURT:  IT IS ALL GOOD.  IT MAKES SENSE IN TERMS OF WHERE THE JURY WILL BE.

SO WE ARE ON THE RECORD.  MY GOAL IS JUST TO GO THROUGH A FEW ADMINISTRATIVE HOUSEKEEPING THINGS.  OUR JURY IS ASSEMBLING DOWNSTAIRS.  AND WE ARE STILL -- RIGHT NOW WE'RE STILL A COUPLE JURORS SHORT.

THE CLERK:  WOULD YOU LIKE THE UPDATE?  SHOULD I ANNOUNCE THE UPDATE?

THE COURT:  SO WE'LL GET THE UPDATE FROM LAURA.

THE CLERK:  CURRENTLY JURORS NUMBER 2, 8, 14, 26

HAVE NOT APPEARED.

I'LL SAY THAT AGAIN.  2, 8, 14, 26.

THE COURT:  JUST SO OUR RECORD IS CLEAR, WHY DON'T WE JUST GO AHEAD AND HAVE LEAD TRIAL COUNSEL INTRODUCE EVERYBODY AT THEIR TABLE.

MR. LOKER:  GOOD MORNING, YOUR HONOR.

I'M MATT LOKER ON BEHALF OF THE PLAINTIFF.

MR. OLEKSANDR PANCHENKO IS HERE.

WE ALSO HAVE CHARLES CUMMINS FROM MY OFFICE AND MATTHEW OSBORNE, OUR COCOUNSEL IN THIS MATTER IS HERE.

THE COURT:  GOOD MORNING TO YOU ALL.

MR. NARITA:  GOOD MORNING, YOUR HONOR.

TOMIO NARITA FOR THE DEFENDANT.

OUR NEW CASE IS MICHAEL GALEANO.  HE CAME OUT FROM COLUMBUS.  HE'S IN-HOUSE COUNSEL FOR COMENITY CAPITAL BANK.

AND I THINK YOU KNOW THE OTHER MEMBERS OF THE TEAM, GIVENTAL, NATHAN SEARLES, AND KRISTINA HOVESPYAN.

THE COURT:  GOOD MORNING TO EVERYBODY.  IT'S NICE TO MEET BOTH OF THE CLIENTS.

THANK YOU FOR THE UPDATE, MADAM CLERK.

THERE WAS QUITE A BIT OF TRAFFIC.  I EXPECT THAT A COUPLE OF OTHER PEOPLE MAY APPEAR MORNING.

SO SOME HOUSEKEEPING.  STIPULATIONS OF FACT.  I HAVE NOT RECEIVED THEM AS OF LAST NIGHT WHEN I CHECKED BEFORE I LEFT.

AM I CORRECT THAT THEY STILL HAVE NOT BEEN FILED?

MR. NARITA:  YOUR HONOR, WE'VE ACTUALLY MADE INCREDIBLE PROGRESS ON THE STIPULATIONS OF FACT, FAR GREATER THAN I WOULD HAVE ANTICIPATED.

I DON'T KNOW THE EXACT STATUS OF THE FINALIZING OF IT.  MS. GIVENTAL AND MR. LOKER HAVE BEEN WORKING HARD AT IT.

MR. LOKER:  YOUR HONOR, LIKE MR. NARITA SAID, WE MADE A LOT OF PROGRESS AND WE HAVE A LOT MORE STIPULATIONS COMING YOUR WAY.  I THINK IF WE HAVE SOME TIME AFTER TO FINALIZE SOME EDITS BECAUSE WHEN WE WERE GOING THROUGH THE FLOW WAS A LITTLE -- IT WASN'T IN CHRONOLOGICAL ORDER, AND SO WE ARE TRYING TO RESTRUCTURE TO HAVE IT MAKE SENSE WHEN GOING THROUGH AND LOOKING AT THE FACTS.  BUT THERE WERE QUITE A FEW.  I FORGET THE NUMBER WE ARE AT RIGHT NOW.

MS. GIVENTAL:  AND WE ALSO HAVE A FEW MORE THAT I THINK WE'RE TRYING TO NEGOTIATE AND MAYBE WE'LL GET TO QUICKLY.

THE COURT:  OKAY.  ALL RIGHT.  SO PROVIDE ME UPDATES IF YOU'RE GOING TO BE LATE ON SOMETHING.

MR. LOKER:  UNDERSTOOD, YOUR HONOR.

THE COURT:  SO 6:00 P.M. TODAY IS ABSOLUTE DROP DEAD.

MS. GIVENTAL:  YES, YOUR HONOR.

MR. LOKER:  THANK YOU, YOUR HONOR.

MR. NARITA:  AND ON THAT POINT, YOUR HONOR, ANOTHER HOUSEKEEPING MATTER.  AND I HAVEN'T TALKED TO MR. LOKER ABOUT THIS, BUT I HAD EXPRESSED SOME RESERVATIONS TO YOUR HONOR ABOUT

WHETHER OR NOT THE STIPULATIONS THAT WE WERE WORKING WITH SHOULD BE PUT IN WRITING OR GIVEN TO THE JURY.

MY THINKING HAS EVOLVED NOW THAT WE HAVE GOT SO MANY OF THEM.  IT MAY BE THAT THERE'S SO MANY THAT WE MIGHT WANT TO GENERATE A LIST OF THEM THAT WE COULD PRESENT IT TO THEM ORALLY AND THEN MAYBE GIVE IT TO THEM.

I MEAN, WE HAVE MADE QUITE A BIT OF PROGRESS, AND I THINK IT'S GOING TO SHORTEN THE TRIAL TOO AND BE BENEFICIAL FOR EVERYBODY.

THE COURT:  MR. LOKER, LET ME HEAR FROM YOU.

MR. LOKER:  I BELIEVE THE COURT'S OBJECTION ON THAT FACT IS WHAT MAKES SENSE.  SO IN TERMS OF THE JURY INSTRUCTIONS, AS YOU NOTED AT THE LAST HEARING OR ONE OF THE PRIOR HEARINGS, THERE'S A SECTION THAT TALKS ABOUT THE STIPULATIONS.

SO FROM THE PLAINTIFF'S PERSPECTIVE, WHAT WE ENVISIONED IS THAT THE STIPULATIONS THAT WE HAVE AGREED TO WOULD BE PLACED WITHIN THAT JURY INSTRUCTION, AND THEN WE CAN WORK WITH THE COURT ABOUT WHEN EXACTLY DURING TRIAL THOSE WOULD BE READ TO THE JURY, AND THEN, OF COURSE, THEY WOULD GO BACK TO THE JURY SINCE THEY'RE INSTRUCTIONS.

THE COURT:  THAT IS WHAT I HAD PROPOSED.

MR. LOKER:  YES.

THE COURT:  OKAY.  MR. NARITA.

MR. NARITA:  AND I THINK THAT'S ACCEPTABLE TO THE

DEFENDANT, YOUR HONOR.

THE COURT:  OKAY.  I'LL HAVE A BETTER SENSE WHEN I SEE THEM.  SO WHETHER OR NOT THEY'RE AN ATTACHMENT TO, YOU KNOW, A STIPULATION THAT THEN SAYS ATTACHED AS EXHIBIT A OR HOW I'M GOING TO DEAL WITH THEM, BUT I'LL LET YOU KNOW ONCE I SEE THEM.

MR. LOKER:  THANK YOU, YOUR HONOR.

MR. NARITA:  THANK YOU.

THE COURT:  THANK YOU.  SO CONTINUING -- DON'T GO AWAY.

DEPO DESIGNATIONS.  I STILL HAVEN'T RECEIVED A TIME ESTIMATE.

MR. LOKER:  SO ON OUR END FOR THE DESIGNATIONS OF THE 30(B)(1)'S, EACH OF THE VIDEOS IS ABOUT 40 MINUTES TOTAL, AND THE SPLIT FOR MOST OF THEM ARE ABOUT 50/50 IN TERMS OF THE PLAINTIFF'S DESIGNATIONS AND COMENITY'S DESIGNATIONS.

SOME OF THE VIDEOS, LIKE, FOR EXAMPLE, WE ONLY HAVE 5 MINUTES DESIGNATED ON OUR END, BUT COMENITY HAS ABOUT 20 MINUTES.

I DO BELIEVE -- AND MR. SEARLES MAY WANT TO COME UP AND TALK ABOUT THIS -- COMENITY HAS WITHDRAWN SOME OF THEIR COUNTERDESIGNATIONS.  SO WHEN I SAY 40 MINUTES, THAT WAS THE BIGGER ONE.  I HAVEN'T YET TAKEN OUT WHAT THEY HAVE WITHDRAWN, SO IT'S GOING TO COME DOWN FROM THAT FOR EACH OF THE VIDEOS.

MR. SEARLES:  GOOD MORNING, YOUR HONOR,

NATHAN SEARLES.

THAT IS CORRECT, AND WE EXPECT A LOT FEWER MINUTES FOR COMENITY IN THAT REGARD. I WOULD SAY ABOUT HALF OF THE TIME WE ALLOCATED PREVIOUSLY.

AFTER THE GUIDANCE FROM YOUR HONOR ON TUESDAY, WE REMOVED MANY OF THE COUNTERDESIGNATIONS.

THE COURT: OKAY. GREAT.

MR. NARITA: YOUR HONOR, IF I MAY, IN WORKING TOGETHER TO IRON OUT A LOT OF THE STIPULATIONS, WE'VE ALSO REMOVED A LOT OF THE OBJECTIONS THAT YOUR HONOR WOULD HAVE TO RULE ON. SO WE'RE TRYING TO ELIMINATE THEM ALMOST ENTIRELY SO THAT THE COURT'S WORK IS MINIMIZED.

THE COURT: OKAY. YOU HAVE TO GIVE ME A HEADS UP BECAUSE WE ACTUALLY WORKED ON THAT FROM 7:00 TO 8:00 O'CLOCK LAST NIGHT GOING THROUGH THE OBJECTIONS.

BETTER COMMUNICATION. YOU'RE CREATING NIGHT WORK FOR ME AND MY STAFF. WE WERE HERE LAST NIGHT PROBABLY ABOUT AS LATE AS YOU ALL WERE UP LAST NIGHT OR AT LEAST YOUR FIRST HALF BEFORE BURNING THE MIDNIGHT OIL.

MR. NARITA: I APOLOGIZE.

MR. LOKER: I APOLOGIZE.

THE COURT: IT'S A VERY SHORT TRIAL. IT'S A STRAIGHTFORWARD TRIAL.

MR. LOKER: YES.

THE COURT: WHEN ARE THE DEPOSITION DESIGNATIONS

GOING TO BE COMPLETE?

MR. LOKER:  I BELIEVE THEY'RE IN FINAL FORM.  WE'RE WAITING FOR EQUIFAX.

HOW MUCH DO YOU THINK, LIKE, AN HOUR MORE?

MS. GIVENTAL:  IN TERMS OF TIME?

MR. LOKER:  CORRECT.

MS. GIVENTAL:  I THINK A TOTAL HOUR, YES.

MR. LOKER:  AN HOUR WORKING TOGETHER, YOUR HONOR, AND WE SHOULD BE ABLE TO FINALIZE AND SUBMIT.

THE COURT:  BECAUSE WHAT I WAS GOING TO PROPOSE AT THIS TIME IS IF WE -- IF THERE WERE STILL -- IT SOUNDS AS THOUGH THE ISSUES HAVE BEEN RESOLVED, BECAUSE WHAT I WAS GOING TO PROPOSE WAS THE COUNTERDESIGNATIONS AND TAKING A LOOK AT THEM AND DOING A ROUGH CUT IN TERMS OF TIME ALLOTMENT BASED ON IF THERE'S ANY PORTION OF THAT WHICH SHOULD HAVE BEEN CREDITED SO TO SPEAK TO PLAINTIFF.

BUT GIVEN WHERE YOU ALL ARE AT NOW, IT DOESN'T SOUND THAT IS GOING TO BE NECESSARY.

MR. LOKER:  AGREED FOR THE PLAINTIFF, YOUR HONOR.

MR. NARITA:  AGREED FOR THE DEFENDANT, YOUR HONOR. WE ARE ALMOST GETTING TO THE POINT WHERE WE'RE GOING TO IRON ALL OF THIS OUT.

AND MS. GIVENTAL CAN CORRECT ME, BUT I THINK WE'RE ALSO GOING TO BE WITHDRAWING A LOT OF OUR DESIGNATIONS IF WE SUCCESSFULLY WORK THINGS OUT WITH MR. LOKER, WHICH WE'RE

OPTIMISTIC ABOUT, FOR OUR AFFIRMATIVE DEPOSITIONS IN OUR DEFENSE CASE-IN-CHIEF.  SO THAT'S GOING TO GET SHORTER, TOO.

THE COURT:  WELL, THAT ACTUALLY PICKS UP ON, MR. LOKER, YOU DID NOT OBEY THE COURT'S INSTRUCTIONS REGARDING LINE-BY-LINE OBJECTIONS TO COMENITY'S DESIGNATIONS.  IT SOUNDS LIKE YOU ARE TRYING TO WORK THAT OUT WITH COMENITY?

MR. LOKER:  CORRECT.  AND WE STIPULATED TO A LOT OF THEIR DESIGNATIONS.  SO -- AND I APOLOGIZE.  I THOUGHT IF I SUBMITTED NEW OBJECTIONS LINE BY LINE, IT WOULD HAVE CREATED MORE WORK, BUT WE DIDN'T NARROW THE SCOPE OF A LOT OF THE DESIGNATIONS, AND THOSE WOULD BECOME PART OF THE STIPULATED FACTS THAT WE PROPOSED TO THE COURT.

THE COURT:  KEEP ME INFORMED.

MR. LOKER:  YES, YOUR HONOR.

THE COURT:  SO WHEN YOU'RE GOING THROUGH THOSE DESIGNATIONS, THINGS TO KEEP AN EYE OUT FOR.  THIS GETS MORE SPECIFIC, SO GRAB A PAPER AND PEN.

PANCHENKO'S DESIGNATION OF GOPINATH, G-O-P-I-N-A-T-H, INCLUDES A PAGE AND LINE REFERENCE, OR DID.  PAGE 57, LINE 8 THROUGH PAGE 59, LINE 22 IN THE INDEX.

THE HIGHLIGHTED EXCERPT OF THE TRANSCRIPT ONLY INDICATES THAT PANCHENKO IS DESIGNATING THROUGH PAGE 58 RATHER THAN 59.  CHECK THE TYPO.

MR. LOKER:  THANK YOU, YOUR HONOR.

THE COURT:  PANCHENKO DESIGNATED KADARESH,

K-A-D-A-R-E-S-H, AT 49 -- PAGE 49, LINE 16 THROUGH PAGE 52, LINE 23.

COMENITY OBJECTED ON THE GROUNDS OF PAGE 52 DESIGNATIONS, THAT IT RISKED CONFUSION OR MISLEADING THE JURY INTO BELIEVING THERE WAS ANOTHER PERSON'S NAME ON THE PLAINTIFF'S APPLICATION WHEN THERE WAS NOT.

PANCHENKO SHOULD BE PREPARED TO ADDRESS THIS.  AND IF THERE ARE EXHIBITS WHICH ARE BEING REFERENCED AND YOU'RE ASKING THE COURT TO MAKE A DETERMINATION, I OBVIOUSLY NEED TO KNOW THE EXHIBIT NUMBER.  SO I'D LIKE TO KNOW WHAT THAT EXHIBIT NUMBER IS IF YOU WILL BE STILL ASSERTING THAT OBJECTION.

MR. SEARLES:  AGAIN, MR. SEARLES.  YES, YOUR HONOR, WE MAINTAIN THE OBJECTION.  IF IT'S STATED LAST EVENING THAT THE OBJECTION IS STILL THERE AS I SUBMITTED IT, THEN WE ARE BECAUSE THERE WAS NO FOUNDATION FOR THAT PARTICULAR DOCUMENT.

THE COURT:  OKAY.  SO I NEED TO KNOW WHAT THE DOCUMENT IS AND WHAT IT IS.  SO WHEN YOU'RE GOING THROUGH THESE AND YOU'RE FILING THESE TODAY AT THE END OF THE DAY -- OR WHEN ARE YOU -- TODAY AT THE END OF THE DAY, I NEED TO KNOW, OTHERWISE I CAN'T RULE ON YOUR OBJECTIONS.

MR. LOKER:  UNDERSTOOD.

THE COURT:  AND WITH THAT ONE, BECAUSE IT STRUCK OUR ATTENTION, PLEASE INFORM ME AT THE END OF THE DAY, BEFORE YOU LEAVE.  SO AT THE END OF JURY SELECTION, LET ME KNOW.

MR. LOKER:  UNDERSTOOD.

MR. SEARLES:  THANK YOU, YOUR HONOR.  WILL DO.

THE COURT:  AND IF WORSE COMES TO WORST, IF YOU ALL FORGET, JUST PASS A NOTE TO ZACH.

A COUPLE OF OTHER THINGS FOR YOU TO KEEP IN MIND BECAUSE WE NEED TO TURN TO OUR JURY SOON, A COUPLE PLACES INDICATED IN THE JURY INSTRUCTIONS THAT YOU PROVIDED THE COURT THAT THE JURY INSTRUCTION HAD BEEN MODIFIED.

I WASN'T SURE WHAT THE MODIFICATION WAS IN SOME OF THE PLACES, AND ALSO I WANT TO MAKE SURE THAT THERE ARE NO OTHER MODIFICATIONS BECAUSE I DON'T WANT TO DO A LINE BY LINE IN TERMS OF DISTINCTIONS FROM THE MODEL INSTRUCTIONS.

SO WHEN WE MEET EITHER AT THE END OF -- SO I NEED YOU TO PROVIDE ME A LIST AT ONE OF OUR BREAKS OR IF WE MEET SHORTLY THIS AFTERNOON.

MR. NARITA:  OKAY.

MR. LOKER:  YES, YOUR HONOR.

THE COURT:  BUT I PREFER IT EARLIER BECAUSE I WAS THINKING ABOUT CANCELLING OUR AFTERNOON CONFERENCE.  WE'LL SEE.

MR. LOKER:  YES, YOUR HONOR.

THE COURT:  SO MEET AND CONFER, JOINT LIST.

SO I HAD DISCUSSED POSSIBLY DOING OUR FOR CAUSE -- MOVING ON TO JURY SELECTION.

I'M SORRY, LET ME GO BACK AGAIN TO DEPO DESIGNATIONS.  AND JUST A REMINDER, AND IT'S A GOOD REMINDER FOR ME, 101, WHEN YOU'RE LOOKING THROUGH OBJECTION, DOUBLE CHECK THEM ON

DEPOSITIONS.  SO SORT OF PRINCIPLES UNDER RULE 32.

SO IF THERE WAS NO OBJECTION MADE DURING THE DEPOSITION AS TO FORM, THAT OBJECTION IS WAIVED.  SO THERE WAS SOME PLACES WHERE THERE WAS CALLS FOR SPECULATION AND SO FORTH IN THE OBJECTION LIST, BUT IT WASN'T ASKED IN DEPOSITION.  IT'S WAIVED.  DON'T RAISE IT.

SO DOUBLE CHECK WHEN YOU'RE GOING THROUGH IT BECAUSE WE STARTED DOUBLE CHECKING LAST NIGHT.  NOT MY JOB.  SO DOUBLE CHECK IT.

I DON'T WANT TO HAVE TO DOUBLE CHECK EVERY SINGLE ONE TO MAKE SURE YOU DIDN'T WAIVE YOUR OBJECTION.

MR. NARITA:  WE'LL MAKE THAT PART OF OUR AFTERNOON.

THE COURT:  OKAY.  THREE DIFFERENT HOUSEKEEPING THINGS ABOUT THE JURY SELECTION.  BEGINNING WITH THE INTRODUCTIONS, WHEN I DO INTRODUCTIONS I'M GOING TO JUST ASK LEAD COUNSEL TO INTRODUCE EVERYBODY AT THEIR TABLE AND THEIR CLIENTS, JUST SO YOU KNOW.  THERE'S SOMETIMES THAT AWKWARD MOMENT WHERE EACH PERSON IS LIKE SHOULD I STAND UP OR SHOULD I NOT STAND UP?  BUT IT WILL BE LEAD COUNSEL WHO WILL BE DOING THE INTRODUCTIONS OF EVERYBODY.

SECOND, WHEN WE DISCUSS THE FOR CAUSE CHALLENGES, I WENT BACK AND FORTH WHEN WE SPOKE THE OTHER DAY.  I SAID I WOULD DO IT EITHER IN THE COURTROOM OR BACK IN THE JURY ROOM.  I'M GOING TO BRING YOU ALL BACK, JUST GIVEN WE HAD A COUPLE OF TECHNOLOGICAL GLITCHES YESTERDAY DURING CALENDAR, AND I'M A

LITTLE BIT SPOOKED.

SO JUST SO WE DOUBLE CHECK TO MAKE SURE THAT EVERYTHING IS READY FOR SIDE-BAR, I'M JUST GOING TO BRING YOU ALL BACK FOR THE FOR CAUSE.  WE'LL DISCUSS IT BACK THERE.  WE'LL COME BACK. I'LL PUT THEM ON THE RECORD, GIVE YOU AN OPPORTUNITY -- LIKE, I WILL SUMMARIZE YOUR ARGUMENTS AND ASK IF THERE IS ANYTHING THAT I MISSED, AND YOU CAN ADD ANYTHING I MISSED FOR THE RECORD, BUT JUST TRY TO KEEP IT MOVING BECAUSE OUR JURY WILL BE WAITING.

MR. LOKER:  YES, YOUR HONOR.

MR. NARITA:  YES.

THE COURT:  AND THEN WE'LL COME IN AND TRY THE LITTLE PAPER PASSING TECHNIQUE.

MADAM CLERK WAS KIND ENOUGH, I KNOW, TO PASS OUT TO YOU ALL.  WE TRIED TO SIMPLIFY THAT LIST A LITTLE BIT SO IT'S VERY CLEAR.

AND I JUST REMIND YOU, YOU WILL BE PASSING TWO PASSES IN A ROW.  SO YOU CAN PASS; AND IF MR. NARITA PASSES; MR. LOKER STRIKES; THEN MR. NARITA SAYS, WELL, NOW I WANT TO GO AHEAD AND STRIKE, HE CAN THEN DO A PEREMPTORY AGAIN.  RIGHT?

MR. LOKER:  RIGHT.

THE COURT:  AND WE STOP WHEN THERE ARE TWO PASSES.

MR. LOKER:  UNDERSTOOD.

THE COURT:  OKAY.  SO PASS, PASS, PASS, PASS PASS, RIGHT?

YOU ALL WILL MEET AND CONFER AND MAKE SURE YOU HAVE YOUR

EIGHT.  LIKE, WE'LL GO BACK AND WE WILL MAKE SURE YOU HAVE YOUR EIGHT, ALL IN AGREEMENT.  WE'RE JUST GOING TO DO IT RIGHT HERE IN THE HALL.

WE'RE GOING TO COME BACK SO THEY'RE NOT WAITING MUCH LONGER FOR US.  I WILL ASK THEM TO STAND.  MADAM CLERK WILL SWEAR THEM IN.

MR. NARITA:  ONE POINT OF CLARIFICATION, YOUR HONOR.  THE PASS LIST THAT MADAM CLERK HANDED OUT WAS ON MY TABLE.  IS THIS THE ONE THAT IS GOING TO BE PASSED BACK AND FORTH?  AND IF IT IS, SHOULD I GIVE IT TO MR. LOKER, BECAUSE I'M ASSUMING HE'S GOING TO DO HIS STRIKE FIRST.

MR. LOKER:  YEAH, WE HAVE ONE, TOO, YOUR HONOR.

MR. NARITA:  OH.

THE COURT:  IT WAS JUST FOR YOU TO SEE.

MR. LOKER:  EXACTLY.

THE COURT:  OKAY.  SO I THINK THAT WAS ALL THE THINGS WHICH I HAD TO RAISE WITH YOU ALL THIS MORNING.

MR. LOKER:  OKAY.

THE COURT:  SO, MADAM CLERK, DO WE HAVE ANY UPDATES FROM JURY SERVICES?

THE CLERK:  THEY'RE READY TO GO.  LET ME JUST CONFIRM.

MR. LOKER:  MAY I CLARIFY WHILE WE'RE WAITING, YOUR HONOR?

IN TERMS OF THE EXHIBIT NUMBER FOR THE REFERENCE OBJECTION

IN MS. KADARESH'S DEPO, WOULD YOU LIKE ME TO WRITE DOWN THE EXHIBIT NUMBER AND PASS IT TO ZACH?

THE COURT:  IF YOU KNOW THAT RIGHT NOW.

MR. LOKER:  YEAH, WE CAN GET THAT FOR YOU.

THE COURT:  OKAY.

THE CLERK:  SO THEY'RE CONFIRMED THAT THOSE FOUR DID NOT SHOW UP.  WE HAVE 30 JURORS DOWNSTAIRS, OR PROSPECTIVE JURORS TO BE PART OF THE PANEL.

THE COURT:  OKAY.

MR. NARITA:  SO NO JUROR NUMBER 2, NUMBER 8, NUMBER 14, OR NUMBER 26?

THE CLERK:  CORRECT.

THE COURT:  CORRECT.  OKAY.  SO WHAT IS GOING TO HAPPEN IS THAT WE ARE GOING TO GO INTO RECESS.  MADAM CLERK WILL BE HANDLING GETTING OUR JURY ASSEMBLED.  YOU'RE WELCOME TO STAY IN THE COURTROOM.  WE'LL BE OFF THE RECORD.

ANYTHING ELSE FOR MY STAFF OR ANYTHING ELSE FURTHER?

THE CLERK:  NO.  BUT, YOUR HONOR, ONCE -- DO YOU WANT ME TO SWEAR THEM IN BEFORE YOU COME BACK OR DO YOU WANT -- YOU'LL JUST TELL ME TO SWEAR IN THE WHOLE?

THE COURT:  YEAH, I'LL SAY GOOD MORNING AND YOU'LL SWEAR THEM IN.

THE CLERK:  OKAY.

THE COURT:  ALL RIGHT.

MR. LOKER:  THANK YOU, YOUR HONOR.

MR. NARITA:  THANK YOU, YOUR HONOR.

(RECESS FROM 9:13 A.M. UNTIL 9:30 A.M.)

(PROSPECTIVE JURY PANEL IN AT 9:30 A.M.)

THE CLERK:  WE'RE CALLING CASE NUMBER 5:23-CV-04965 EKL, PANCHENKO VERSUS COMENITY CAPITAL BANK.

ON TODAY FOR JURY SELECTION.

THE COURT:  GOOD MORNING.  WHY DON'T LEAD TRIAL COUNSEL -- I WON'T HAVE YOU INTRODUCE YOUR WHOLE TABLE.  JUST DO YOUR APPEARANCES QUICKLY.

MR. LOKER:  THANK YOU, YOUR HONOR.

MATT LOKER ON BEHALF OF THE PLAINTIFF.

MR. NARITA:  GOOD MORNING, YOUR HONOR.

TOMIO NARITA FOR THE DEFENDANT.

THE COURT:  GOOD MORNING TO YOU BOTH.

LET ME FIRST BEGIN BY ADDRESSING THE JURY.  AS MADAM CLERK NOTED, TODAY IS THE DAY SET FOR JURY SELECTION IN THIS MATTER, AND I WANTED TO START BY WISHING YOU ALL GOOD MORNING AND WELCOME.

AS I STATED, MY NAME IS EUMI LEE.  I'M A DISTRICT JUDGE HERE IN THE NORTHERN DISTRICT OF CALIFORNIA.  ON BEHALF OF THE COURT I WANTED TO WELCOME YOU AND THANK YOU.

SO I KNOW YOU ALREADY FILLED OUT YOUR JURY QUESTIONNAIRES.  YOU CAME HERE THIS MORNING.  I KNOW THE TRAFFIC WAS HORRIBLE BECAUSE I EXPERIENCED IT MYSELF, AND I WANT TO THANK YOU FOR TRAVELLING THAT DISTANCE TO GET HERE TO JOIN US TODAY.

I'LL GO AHEAD AND BEGIN BY HAVING MADAM CLERK HAVE YOU STAND UP ONE MORE TIME TO HAVE YOU SWORN IN.

MADAM CLERK.

THE CLERK:  PROSPECTIVE JURORS, PLEASE RISE IF YOU'RE ABLE.

(PROSPECTIVE JURORS WERE GIVEN THE OATH.)

PROSPECTIVE JURORS:  YES.

THE CLERK:  THANK YOU.

THE COURT:  YOU MAY BE SEATED.

SO A FEW INTRODUCTIONS IN THE COURTROOM SO YOU KNOW EVERYBODY, AND THERE ARE A LOT OF PEOPLE WHO ARE IN THIS COURTROOM RIGHT NOW.

YOU HAVE ALREADY MET LAURA THOMPSON.  SHE'S THE COURTROOM DEPUTY.  SHE MAKES THE CLOCKS RUN ON TIME AND THAT THE WHEELS STAY ON.  SHE'S IN CHARGE OF MANY THINGS.  YOU'LL BE INTERACTING WITH HER PLENTY.

SHE'LL BE SWEARING IN WITNESSES, TRACKING EXHIBITS.  SHE WILL BE ONE OF YOUR PRIMARY POINTS OF CONTACT THROUGHOUT THE TRIAL.

TO HER RIGHT ARE THE LAW CLERKS.  SO ZACH TSICHIDA AND SHELBY TEETER WILL BE JOINING THROUGHOUT, AND THEY'RE PART OF MY STAFF, AND THROUGHOUT THE TRIAL.

NEXT, IN ADDITION, WE HAVE NICK BERGARA AND ENDER MCDUFF WHO WILL BE JOINING FOR PARTS OF THE PROCEEDING.

AND THE PERSON DIRECTLY IN FRONT OF ME TO MY LEFT IS

IRENE RODRIGUEZ.  SHE'S OUR COURT REPORTER.  SHE WILL BE TRANSCRIBING THE PROCEEDINGS.  AND WE'LL TALKING A LITTLE BIT LATER ABOUT HOW TO MAKE HER LIFE EASIER DURING VOIR DIRE.

SO NOW I WILL TAKE A MOMENT TO ALLOW THE PARTIES TO INTRODUCE THEMSELVES BRIEFLY.

MR. LOKER.

MR. LOKER:  THANK YOU, YOUR HONOR.

MY NAME IS MATT LOKER AS YOU'VE ALL HEARD JUST A COUPLE MINUTES AGO.

OUR CLIENT RIGHT HERE IS MR. OLEKSANDR PANCHENKO.  HE'S THE PLAINTIFF IN THIS ACTION.

IN THE GREY STUDENT IS A FORMER STUDENT OF MINE, CURRENT ATTORNEY WITH MY OFFICE, HIS NAME IS CHARLES CUMMINS.

AND HERE WE HAVE ANOTHER MATT YOU'LL BE HEARING FROM, AND HIS NAME IS MATT OSBORNE, AND HE'S ANOTHER ATTORNEY ON BEHALF OF MR. PANCHENKO.

THANK YOU ALL FOR BEING HERE.

THE COURT:  AND IF I CAN TURN TO MR. NARITA, IF YOU COULD INTRODUCE YOUR CLIENT AND YOUR TEAM.

MR. NARITA:  THANK YOU, YOUR HONOR.  GOOD MORNING EVERYONE.

AGAIN, I'M TOMIO NARITA.  I'M THE LEAD TRIAL COUNSEL FOR THE DEFENDANT COMENITY CAPITAL BANK.  IT'S NICE TO SEE YOU ALL TODAY.

MY CLIENT HERE, MY CLIENT REPRESENTATIVE IS

MICHAEL GALEANO.  HE JOINS US FROM OHIO.  HE'S AN ATTORNEY WITHIN THE BANK.

AND THEN THE REST OF THE FOLKS JOINING ME AT THE TABLE ARE MEMBERS OF MY TEAM:  SO ALISA GIVENTAL IS HERE, NATHAN SEARLES IS HERE, AND KRISTINA HOVESPYAN.  THEY'RE ALL LAWYERS FROM MY OFFICE THAT HAVE BEEN HELPING US WITH THIS CASE.

GOOD MORNING TO YOU ALL.

THE COURT:  SO I'M GOING TO TALK A LITTLE BIT ABOUT OUR PLAN TODAY, AND THEN I'LL TALK MORE ABOUT OUR SCHEDULE GENERALLY.

SO OUR PLAN TODAY IS JURY SELECTION.  THAT'S ALL WE'RE GOING TO DO THIS MORNING.  I EXPECT TO BE COMPLETED, MY GOAL IS THIS MORNING, AT THE LATEST EARLY AFTERNOON, AND YOU'LL BE EXCUSED FOR THE REST OF THE DAY.

SO WE HOPE TO IMPANEL, WHICH MEANS SWEARING IN OUR ACTUAL JURORS, TODAY.  SO THE REST OF YOU WILL NOT HAVE TO COME BACK.

LET'S TURN TO THE TIMING OF THIS TRIAL.

SO OUR PROJECTED SCHEDULE, GOOD NEWS, THIS TRIAL STARTS ON MONDAY.  IT'S ONLY ESTIMATED TO GO THROUGH THE 7TH.  SO NOVEMBER 3RD THROUGH THE 7TH.  THIS IS ONE WEEK.  I HAVE PRESIDED OVER -- THERE ARE MANY TRIALS WHICH GO MULTIPLE WEEKS.  SO THIS IS A NICE SHORT TRIAL.

THIS ONE WEEK TRIAL THAT WE'RE ESTIMATING WOULD INCLUDE TIME FOR JURY DELIBERATION.

WE HOPE TO GET THE CASE IN YOUR HANDS BY THURSDAY MORNING.

THINGS CAN HAPPEN DURING TRIAL.  THINGS CAN HAPPEN DURING DELIBERATIONS.  ONCE IT'S IN YOUR HANDS AS JURORS, I DON'T CONTROL THAT.  YOU CONTROL THE LENGTH OF THE DELIBERATIONS.

SO THERE'S A POSSIBILITY THAT IT COULD GO BEYOND A WEEK, BUT WE'RE REALLY TRYING OUR BEST FOR IT NOT TO.

LET'S SEE IF THERE'S ANYTHING ELSE.

OH, OTHER THINGS.  SEE, IT'S GOOD TO HAVE THIS POWERPOINT TO REMIND MYSELF AS WELL.  TRIAL WILL RUN FROM 9:00 A.M. TO 4:30 P.M.  WE ASK THAT YOU ARRIVE SOME TIME BETWEEN 8:15 AND 8:45.  THERE WILL BE BREAKFAST AVAILABLE.

LUNCH BREAK WILL BE ABOUT 40 TO 45 MINUTES STARTING SOMEWHERE AROUND 12:15.

IN ADDITION, THERE WILL BE TWO BREAKS IN THE MORNING AND THE AFTERNOON.

AND THEN ONCE WE GO INTO DELIBERATIONS, THE TIME WE SUGGEST IS 9:00 TO 4:00, BUT SOMETIMES JURORS LIKE TO GO LONGER AND SO FORTH.  AND SO WE'LL TOUCH BASE, AND YOU ALL CAN HELP SORT OUT THE SCHEDULE THEN.

ALL RIGHT.  SO I'VE SAID THIS TO COUNSEL SEVERAL TIMES, AND WE ALL AGREE ABOUT HOW IMPORTANT -- HOW MUCH WE RESPECT YOUR TIME.

SO ACROSS THE BOARD WE'RE GOING TO BE RUNNING A TIGHT SHIP ON SCHEDULE, AND WE -- THEY WILL BE WORKING AND MEETING WITH ME MORE THAN I WOULD BE SEEING ANY OF THE JURORS.  WE'LL BE MEETING BEFORE, POSSIBLY DURING YOUR BREAKS, AND AFTER YOU ALL

LEAVE FOR THE DAY. SO WE WILL DO OUR BEST TO TRY TO RESPECT AND THE BEST TO RESPECT YOUR SCHEDULE AS MUCH AS POSSIBLE.

SO LET'S TALK NOW ABOUT THE JURY SELECTION PROCESS. SO WE TALKED ABOUT THE FIRST STEP. YOU'VE ALREADY COMPLETED THE QUESTIONNAIRES. THAT'S GREAT BECAUSE IT WILL SHORTEN THE TIME THAT WE NEED FOR JURY SELECTION.

AFTER THAT -- THE LAWYERS HAVE ALREADY REVIEWED THEM, AND SO TODAY WE'RE JUST GOING TO FOCUS ON SPECIFIC QUESTIONS THAT THEY WANT TO ASK OF YOU AND FOLLOW UP WITH YOU, OR QUESTIONS THAT WEREN'T RAISED IN THE QUESTIONNAIRE.

EACH COUNSEL WILL HAVE THE OPPORTUNITY TO ASK QUESTIONS. I'LL HAVE SOME FOLLOW-UP QUESTIONS REGARDING BOTH THINGS I SAW WITHIN YOUR QUESTIONNAIRE AND OTHERWISE.

AND AS MENTIONED, WE EXPECT TO BE COMPLETED TODAY.

SO BEFORE I GO TOO MUCH FURTHER, I WANT TO TALK A LITTLE BIT ABOUT THE ELEPHANT IN THE ROOM. CAN I GET EXCUSED FROM JURY SERVICE? PLEASE TRY NOT TO. SO YOU ALREADY SAW THE VIDEOTAPE DOWNSTAIRS ABOUT WHY JURY SERVICE IS SO IMPORTANT. YOU KNOW, IT'S THE HEART OF OUR DEMOCRACY. IT'S THE CORNERSTONE OF OUR DEMOCRACY. IT'S REFLECTED IN OUR CONSTITUTION. IT'S GUARANTEED TO EACH OF US.

I USED TO DO A CRIMINAL CALENDAR. I MEAN, THE IMPORTANCE OF HAVING A JURY OF YOUR PEERS, BUT EQUALLY HERE IN THE CIVIL CASE, THE IMPORTANCE EACH OF US HAS IN THAT RIGHT TO HAVE A JURY OF OUR PEERS JUDGE US, AND YOU ARE THAT JURY. YOU ARE THE

PEERS.

SO I RECOGNIZE THAT THE PROSPECT OF SERVING ON A JURY MAKE PEOPLE THINK OF MANY REASONS OF WHY THEY DON'T, GOING BACK TO THAT EXCUSE LIST YOU SAW A MOMENT AGO.  I KNOW THERE IS NEVER A GOOD TIME TO SERVE.  I KNOW THAT THIS IS DISRUPTIVE OF YOUR LIVES AND THE LIVES OF YOUR FAMILY, AND I KNOW THAT ALL OF THOSE HIGHWAYS, THE 880, 280, 101, 680, 17, 1, 85, 87, MAKE OUR COURTHOUSE SOMETIMES CHALLENGING TO GET TO, BUT I'M IMPLORING YOU TO RECOGNIZE THE IMPORTANCE OF THIS SERVICE.

SO -- AND I THINK WE HAVE -- YOU SAW BRIEFLY THE SLIDE OF EVERYBODY SERVES.  I SERVE AS A JUDGE.  I GET CALLED TO JURY SERVICE, AND WHEN I GET CALLED TO JURY SERVICE, I SERVE AS A ROLE OF THE JURY, NOT THE JUDGE.  THE JUDGE AND THE JURY -- AND WE'RE TALK MORE ABOUT THIS -- HAVE VERY DIFFERENT ROLES.

CHIEF JUSTICE ROBERTS FROM THE SUPREME COURT ALSO SERVES AND GETS CALLED TO JURY DUTY.

MORE IMPORTANT, TAYLOR SWIFT GETS CALLED TO JURY DUTY.

SO I THANK YOU EACH FOR BEING HERE TODAY BECAUSE WE CAN'T HAVE JURY TRIALS WITHOUT A JURY AND WITHOUT JURORS WHO ARE WILLING TO SERVE.

AND JURORS MAKE THE DECISIONS THAT NOT ONLY ARE IMPORTANT TO THOSE WHO IMPACT US, TO THE PARTIES WHO ARE IMPACTED, BUT ALSO TO OUR DEMOCRACY ITSELF.

ALL RIGHT.  AND THE LAST THING WHICH I WANT TO TALK A LITTLE BIT ABOUT IN TERMS OF WHY JURORS MATTER AND THE

IMPORTANCE OF JURY SERVICE IS WHAT I SEE ON A PERSONAL LEVEL. EVERY TIME I HAVE PRESIDED OVER A JURY, I'M INSPIRED.  I'M INSPIRED BY THE JURORS IN THE ROOM.

THERE ARE JURORS WHO SIT HERE EVERY DAY LIKE YOU ARE. THEY LISTEN TO THE EVIDENCE WITH AN OPEN MIND, CONSIDER WHAT EACH SIDE HAS TO SAY, CONSIDER THE LAW WHICH I GIVE YOU, AND THEN THEY GO BACK TO THE JURY ROOM.

AND I KNOW THEY DON'T ALL AGREE IMMEDIATELY BECAUSE THEY DON'T COME BACK IMMEDIATELY.  THEY SIT THERE.  THEY LISTEN TO EACH OTHER, DISCUSS WITH COURTESY AND RESPECT, THEY HEAR ONE ANOTHER'S VIEWS, AND EVENTUALLY THEY COME BACK WITH A VERDICT.

NOW, EVERY TIME THAT HAPPENS, I'VE GOT TO SAY, IT FEELS LIKE A TINY LITTLE MIRACLE THAT IS HAPPENING IN THE BACK OF MY COURTROOM BECAUSE, YOU KNOW, TO GET EIGHT PEOPLE TO AGREE ON SOMETHING AND TO DO IT THROUGH A WELL REASONED PROCESS, IT'S A MIRACULOUS THING, AND IT'S ONE OF THE BEST PARTS OF MY JOB.  TO SIT AND WATCH YOU ALL IN ACTION AND TO WATCH WHAT I WOULD SAY IS TO WATCH THE CONSTITUTION IN ACTION, FRANKLY.

SO I HOPE REGARDLESS OF WHATEVER HAPPENS WITH THIS JURY SELECTION PROCESS TODAY, THAT YOU ALL HAVE THE OPPORTUNITY TO PARTICIPATE AND THAT YOU HAVE THE OPPORTUNITY TO PARTICIPATE TODAY IN OUR DEMOCRACY.

SO TALKING A LITTLE BIT -- WE'VE FINISHED TALKING A LITTLE BIT ABOUT ITS IMPORTANCE.  LET ME TURN TO WHAT THE GOALS OF JURY SELECTION ARE.

SO MY GOAL AND THE GOAL OF JURY SELECTION IS TO GET A CROSS-SECTION OF THE COMMUNITY, PEOPLE FROM ALL DIFFERENT WALKS OF LIFE. I DON'T WANT YOU ALL THINKING EXACTLY THE SAME. THAT'S NOT A JURY OF OUR PEERS.

OUR GOAL IS TO HAVE THAT CROSS-SECTION OF THE COMMUNITY SO THAT THERE ARE DIFFERENT VIEWS. YOU ALL WILL HAVE DIFFERENT VIEWS AND OPINIONS, AND THAT IS OKAY. THAT IS VALUED IN THE COURTROOM.

WHAT WE ARE LOOKING FOR IS A GROUP WHO CAN LISTEN TO THE EVIDENCE WITH AN OPEN MIND AND WHO CAN BE FAIR AND IMPARTIAL.

SO WHEN WE'RE ASKING QUESTIONS TODAY, RECOGNIZE THAT THERE'S NO RIGHT OR WRONG ANSWER. THERE'S ONLY AN HONEST ANSWER. WE WANT TO HEAR WHAT YOU THINK.

SO DURING THE COURSE OF QUESTIONS THERE'S A MENTION ON THIS SLIDE ABOUT SEMI PRIVATE OPTIONS. IF FOR SOME REASON SOMETHING COMES UP THAT YOU FEEL UNCOMFORTABLE -- A QUESTION THAT COMES UP THAT YOU ARE UNCOMFORTABLE ADDRESSING IN OPEN COURT, I CAN OFFER A SEMI PRIVATE OPTION. THIS WOULD BE DURING A BREAK BECAUSE IT WOULD BE WITHOUT THE OTHER JURORS, BUT PEOPLE AT THE TABLES AND MY COURT STAFF WOULD NEED TO BE HERE STILL. SO THAT'S THE REASON I'M DESCRIBING IT AS A SEMI PRIVATE OPTION.

SO IF THERE'S A QUESTION -- THIS CAUSES A LITTLE BIT OF A DELAY BECAUSE WE'RE TAKING A BREAK FROM THE REST OF THE JURY, BUT IF IT'S SOMETHING THAT YOU FEEL UNCOMFORTABLE WITH AND YOU

WOULD REALLY LIKE THAT PRIVACY, JUST LET ME KNOW WHEN THE QUESTION IS ASKED.

SO IN TERMS OF THE SEMI PRIVATE OPTION, I WOULD SAY IT TYPICALLY GOES TO PERSONAL QUESTIONS OR EMBARRASSING QUESTIONS OR THINGS FOR WHATEVER REASON YOU FEEL LIKE YOU NEED PRIVACY ABOUT.

THE LAST BULLET POINT, NEVER TOO LATE TO RAISE AN ISSUE. SOMETIMES SOMEONE ELSE SAYS SOMETHING WHICH MAKES YOU THINK OF SOMETHING.  IT'S NEVER TOO LATE IF YOU THINK, OH, I FORGOT TO MENTION THIS WHEN COUNSEL ASKED ME.  THAT'S ALL RIGHT.  JUST RAISE YOUR HAND, AND LET US KNOW SO WE CAN COME BACK TO YOU SO THAT YOU CAN ADD ADDITIONAL INFORMATION TO YOUR ANSWER.

ALL RIGHT.  A FEW GROUND RULES.  SO I TALKED ABOUT THE COURT REPORTER.  AND IRENE IS SITTING THERE.  BELIEVE IT OR NOT, IT'S AMAZING.  SHE IS RECORDING EVERYTHING THAT I SAY AND WILL BE RECORDING EVERYTHING THAT YOU SAY AS WELL.  SO FOR THOSE REASONS, IT'S IMPORTANT THAT YOU GIVE A VERBAL RESPONSE. SHE CAN'T PICK UP HEAD NODS OR HEAD SHAKES.

ALSO, WAIT UNTIL THE END OF THE QUESTION BEFORE YOU BEGIN RESPONDING, EVEN IF YOU THINK YOU KNOW THE ANSWER, BECAUSE SHE CAN'T CAPTURE TWO PEOPLE TALKING AT ONCE.

AND I WOULD ASK THAT YOU TRY TO SPEAK UP A LITTLE, PARTICULARLY IF YOU'RE IN THE GALLERY, IN THE BACK, AND YOU'RE BEING ASKED QUESTIONS.  I KNOW DIFFERENT PEOPLE HAVE DIFFERENT COMFORT LEVELS WITH SPEAKING.  I'M HOPING THAT AS WE START

TALKING TO EACH OTHER IT WILL FEEL MORE COMFORTABLE.

SO IF I PROMPT YOU, IT'S JUST TO MAKE SURE THAT IRENE CAN RECORD EVERY SINGLE THING WHICH IS SAID.

SO BREAKS.  I'LL SAY THIS THROUGHOUT.  SO WHEN WE HAVE A PANELLED JURY, LIKE, WE CAN'T START UNTIL -- EVERYONE OF YOU IS SO IMPORTANT THAT WE CAN'T START UNLESS YOU ALL ARE HERE.

SO -- AND FOR THOSE REASONS, YOU'RE NOT FREE TO LEAVE IN AND OUT UNLESS WE'RE ALL TAKING A BREAK.

IF AN EMERGENCY COMES UP OR YOU NEED ME TO TAKE A BREAK, LET US KNOW, AND WE'LL TAKE THE BREAK.

IF YOU'RE EXPERIENCING, SUCH AS I DO, BACK PAIN OR OTHER PAIN ISSUES, FEEL FREE TO STAND UP AND STRETCH AT ANY POINT EVEN IF WE'RE TALKING.  THAT'S FINE.  THAT'S ABSOLUTELY FINE. I JUST ASK THAT YOU TRY NOT TO BLOCK THE PERSON BEHIND YOU. THAT'S ONE OF THE REASONS WE SPACED FOLKS APART.  BUT IF YOU NEED TO STAND UP AND STRETCH, THAT'S OKAY.

AND THEN WHEN WE'RE TAKING A BREAK, WE JUST ASK THAT WHEN YOU COME BACK, AND I'LL REMIND OF YOU THIS, THAT YOU COME BACK AT THE TIME THAT WE ASKED, BECAUSE, AGAIN, WE CAN'T START UNTIL EVERYONE IS BACK IN THE COURTROOM.

LAST REMINDER, BASIC REMINDER, TURN OFF YOUR CELL PHONES JUST OUT OF RESPECT FOR EVERYONE IN THE COURTROOM.

SO I'M GOING TO TURN -- BEFORE WE BEGIN THE QUESTIONS THEMSELVES, I'M GOING TO GIVE YOU A LITTLE MORE INFORMATION ABOUT THE CASE THAT YOU ARE HERE TO HEAR ABOUT TODAY OR FOR

JURY SELECTION TODAY.

SO THE PARTIES HAVE AGREED ON THE FOLLOWING STATEMENT OF THE CASE, AND I'M GOING TO READ IT -- I BETTER READ THIS COPY BECAUSE I CANNOT READ THAT FAR INTO THE SCREEN.

SO THIS -- THE FOLLOWING STATEMENT IS A SUMMARY OF THE CASE:

OLEKSANDR PANCHENKO, THE PLAINTIFF, HAS BROUGHT THIS LAWSUIT AGAINST COMENITY CAPITAL BANK.  THE CASE CONCERNS ALLEGATIONS THAT COMENITY VIOLATED THE FAIR CREDIT REPORTING ACT, WHICH IS ALSO CALLED THE FCRA.

PANCHENKO CLAIMS COMENITY INACCURATELY REPORTED INFORMATION ABOUT AN ACCOUNT THAT WAS NOT HIS ACCOUNT TO CONSUMER REPORTING AGENCIES.

PANCHENKO ASSERTS THAT HE NOTIFIED THE CONSUMER REPORTING AGENCIES ABOUT HIS DISPUTE AND THAT COMENITY FAILED TO CONDUCT A REASONABLE INVESTIGATION AFTER BEING NOTIFIED BY THE CONSUMER REPORTING AGENCIES.

PANCHENKO ARGUES THAT THIS LED TO CONTINUED ERRONEOUS REPORTING, AND THAT COMENITY'S CONDUCT VIOLATED THE FCRA.

COMENITY DENIES THESE ALLEGATIONS AND MAINTAINS THAT IT ADHERED TO ALL LEGAL REQUIREMENTS CONCERNING THE REPORTING AND THE INVESTIGATION.  COMENITY ALSO DENIES THAT ITS CONDUCT WAS THE CAUSE OF ANY DAMAGE TO PANCHENKO.

THE JURY WILL BE ASKED TO DETERMINE WHETHER PANCHENKO HAS PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT COMENITY

VIOLATED THE FCRA, AND, IF SO, THE EXTENT OF ANY DAMAGES PANCHENKO MAY HAVE SUFFERED AS A RESULT.

ALSO, I'LL BE ASKING YOU WHETHER OR NOT YOU KNOW ANY -- WHETHER OR NOT YOU HAVE MIGHT HAVE A CONFLICT, IN PARTICULAR, WHETHER OR NOT YOU KNOW ANY OF THE INDIVIDUALS WHO MIGHT BE INVOLVED IN THIS CASE.

SO YOU EACH HAVE BEEN PROVIDED A LIST.  YOU HAVE A NUMBER ON ONE SIDE, THAT'S YOUR JUROR NUMBER.  WE'LL BE REFERRING TO YOU WITH THAT NUMBER FOR RIGHT NOW DURING VOIR DIRE.

ON THE BACK IS A LIST OF INDIVIDUALS.  AND MR. SEARLES WAS KIND ENOUGH TO AGREE TO READ THAT LIST BECAUSE I KNOW FOR ME -- SOME PEOPLE ARE AUDITORY AND SOME PEOPLE ARE VISUAL LEARNERS. HE WILL READ IT WHILE YOU GUYS ARE REVIEWING THAT LIST.

AT THE END OF THAT LIST, AT THE END OF THAT LIST, I WILL ASK WHETHER OR NOT YOU KNOW ANYBODY.  AND THESE ARE ATTORNEYS, PARTIES, AND POSSIBLE WITNESSES.

MR. SEARLES.

MR. SEARLES:  GOOD MORNING AND GOOD MORNING TO THE MEN AND WOMEN OF THE JURY.

WE HAVE THE OLEKSANDR PANCHENKO;

ALLA ODEIANENKO;

PAVLO BILASHCHUK;

SIERRA FORD;

ARSHIYA BANU;

PRAGHATHI GOPINATH;

POOJITHA KADARESH;

J. ELIZABETH RANI;

PAVITHRA S.;

RAMYA SHASHIDHAR;

SHANMUGAM ARUL;

JOHN ULZHEIMER;

DOUGH HOLLON;

OFFICER JASON POIRIER;

FABIAN OCHOA-GARCIA;

JORDAN LUND;

KAREN DENISE COBB.

AND YOU'VE ALREADY BEEN INTRODUCED TO COUNSEL, MATTHEW M. LOKER, MATTHEW OSBORNE, CHARLES CUMMINS, TOMIO B. NARITA, MYSELF, ALISA GIVENTAL, AND KRISTINA HOVESPYAN.

THE COURT:  ALL RIGHT.  THANK YOU.

IF YOU KNOW ONE OF THE WITNESSES LISTED, CAN YOU RAISE YOUR HAND, PLEASE.

OKAY.  LET THE RECORD REFLECT THAT NO JUROR HAS RAISED THEIR HAND.

OKAY.  IT'S NOW TIME TO BEGIN THE JURY SELECTION PROCESS.

SO AS MENTIONED, I WOULD NORMALLY HAVE EACH OF YOU STAND UP AND GIVE YOUR NAME AND OCCUPATION AND SO FORTH, BUT WE DON'T NEED TO DO THAT TODAY BECAUSE WE ACTUALLY HAVE ALL OF THE INFORMATION.

RATHER, WE'RE JUST GOING TO BEGIN NOW WITH QUESTIONS FROM

MR. LOKER.  IT'S APPROXIMATELY 20 MINUTES OR SO PER SIDE IS WHAT THEY'RE GOING TO BEGIN WITH AND SEE, AND THEY'LL GO BACK WITH MR. LOKER, AND THEN MR. NARITA WILL FOLLOW UP WITH A LITTLE BIT OF FOLLOW-UP FROM EACH.

MR. LOKER:  THANK YOU, YOUR HONOR.  AND MR. OSBORNE IS GOING TO HANDLE THIS ASPECT ON BEHALF OF THE PLAINTIFF.

THE COURT:  WONDERFUL.  GOOD MORNING, MR. OSBORNE.

MR. OSBORNE:  GOOD MORNING, YOUR HONOR.

GOOD MORNING EVERYBODY.  MATT OSBORNE AGAIN.

SO WE'RE LOOKING FOR A JURY THAT CAN BE COMPLETELY FAIR TO BOTH SIDES, AND REALLY THE ONLY WAY THAT WE CAN DO IS IF YOU BE BRUTALLY HONEST WHEN YOU ANSWER OUR QUESTIONS.  DON'T WORRY ABOUT OFFENDING ME.  A LOT OF THIS STUFF IS YOUR OPINIONS. THERE'S NO RIGHT OR WRONG ANSWERS.

SO ONE OF THE THINGS -- YOU KNOW, BROADLY SPEAKING, THIS IS A CASE WHERE MR. PANCHENKO CLAIMS TO BE AN IDENTITY THEFT VICTIM.  AND WHAT SCARES ME ABOUT THIS CASE IS, TO BE BRUTALLY HONEST, IS THAT EVERYBODY AGREES THAT PAYMENTS WERE MADE ON THIS ACCOUNT.

SO DOES ANYBODY BELIEVE THAT IF PAYMENTS WERE MADE, THERE CANNOT BE FRAUD?  THERE CANNOT BE IDENTITY THEFT?

AGAIN, A SHOW OF HANDS.  DOES ANYBODY AGREE WITH THAT STATEMENT?

THE COURT:  LET ME JUST BE CLEAR, THAT ANYONE ACROSS THE 30, THESE FIRST TWO ROWS AND THEN WE HAVE JURORS WHO ARE --

THANK YOU ALL -- WHO ARE IN THE NEXT THREE ROWS BACK.  SO ANYONE FROM ANY OF THE 30 OF YOU?

MR. OSBORNE:  OKAY.  THANK YOU, YOUR HONOR.

SO DOES ANYBODY BELIEVE THAT TO BE THE CASE?  ALL RIGHT.

I DID HAVE SOME FOLLOW-UP QUESTIONS TO SOME OF YOUR QUESTIONNAIRES THAT YOU FILLED OUT.

MR. MARTIN, HOW ARE YOU?  I'M SORRY TO PUT YOU ON THE HOT SPOT HERE.

PROSPECTIVE JUROR:  HI.

MR. OSBORNE:  I THINK YOU INDICATED THAT YOU BELIEVE THAT PART OF TORT LAW HAS BECOME PERVERTED IN SOME RESPECTS, AND I THINK YOU'VE HAD SOME PERSONAL EXPERIENCE WITH SOMEBODY FABRICATING DAMAGES AGAINST A FAMILY MEMBER; IS THAT RIGHT?

PROSPECTIVE JUROR:  SURE.  YES, THAT'S CORRECT.

MR. OSBORNE:  HOW DOES THAT IMPACT YOUR ABILITY IN THIS CASE, LIKE, FOR EXAMPLE -- YEAH, GO AHEAD.

PROSPECTIVE JUROR:  I THINK I CAN BE FAIR AND IMPARTIAL, BUT IT IS SOMETHING IN MY BACKGROUND.  SO I'LL KEEP THAT IN MY BACKGROUND AND MAKE SURE THAT I LOOK AT THE EVIDENCE AS IT'S PRESENTED.

MR. OSBORNE:  OKAY.  SO LET'S ASSUME HYPOTHETICALLY I'M ABLE TO PROVE OUR CASE, RIGHT?  WE PROVE HE'S A VICTIM OF FRAUD, WE PROVED VIOLATIONS, AND WE PROVE DAMAGES.

AS YOU'RE SITTING THERE, YOU KNOW, PART OF YOU FEELS THE SYSTEM OR TORT LAW HAS BEEN PERVERTED AND MAYBE THINGS ARE

FABRICATED. I MEAN, WOULD YOU STILL BE ABLE TO AWARD DAMAGES IN THIS CASE IF WE PROVE OUR CASE?

PROSPECTIVE JUROR: I MEAN, I THINK HISTORICALLY TORT LAW HAS BEEN EFFECTIVELY USED. I'M NOT SAYING ALL TORT LAW IS BAD. I'M JUST SAYING THERE'S A PREPONDERANCE OF -- I COULDN'T EVEN TELL YOU THE PREPONDERANCE OF TORT LAW THAT IS MISUSED I GUESS.

MR. OSBORNE: CAN YOU GIVE ME --

PROSPECTIVE JUROR: I COULDN'T GIVE YOU A PERCENTAGE. JUST AN IMPRESSION.

MR. OSBORNE: WHAT ABOUT LIKE AN EXAMPLE OF THE CASE THAT YOU FEEL IS, YOU KNOW, BEING MISUSED.

PROSPECTIVE JUROR: I THINK I GAVE AN EXAMPLE IN MY QUESTIONNAIRE OF A FAMILY MEMBER WHERE THIS PERSON THOUGHT THAT THE DOG HAD BITTEN THEM, AND AT LEAST WHAT I WAS TOLD WAS THAT HE HADN'T EVEN BROKEN SKIN. SO, YES, THIS PERSON IS CONSIDERING GETTING DAMAGES FOR THAT.

MR. OSBORNE: OKAY. SO THE PERSON IS BASICALLY FABRICATING THAT THEY WERE EVEN BITTEN AT ALL?

PROSPECTIVE JUROR: CORRECT.

MR. OSBORNE: ALL RIGHT. WHAT ABOUT THE BURDEN OF PROOF IN A CIVIL CASE IS PREPONDERANCE OF THE EVIDENCE. SO A LITTLE BIT DIFFERENT THAN CRIMINAL, BEYOND A REASONABLE DOUBT. I THINK YOU'LL PROBABLY HEAR AN INSTRUCTION MORE LIKELY TRUE THAN NOT, OR 51 PERCENT TRUE.

SO LET'S ASSUME, FOR EXAMPLE, IF YOU BELIEVE THAT WE'VE PROVED OUR CASE 51 PERCENT AND YOU HAVE 49 PERCENT DOUBT, WOULD YOU BE ABLE TO VOTE FOR MR. PANCHENKO IN THAT CASE?

PROSPECTIVE JUROR:  IF THAT'S THE INSTRUCTION, YEAH, ABSOLUTELY.

MR. OSBORNE:  OKAY.  ALL RIGHT.  THANK YOU.  I APPRECIATE THAT.

MR. RODRIGUEZ, HOW ARE YOU --

PROSPECTIVE JUROR:  GOOD.

THE COURT:  MR. OSBORNE, I'M GOING TO ASK THAT YOU REFERENCE THE JURORS BY THEIR NUMBERS.

MR. OSBORNE:  YES, YOUR HONOR.  SORRY.

MR. RODRIGUEZ, I BELIEVE YOU'RE JUROR NUMBER 3; IS THAT CORRECT?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  OKAY.  GOOD MORNING.

PROSPECTIVE JUROR:  GOOD MORNING.

MR. OSBORNE:  AND I'M SORRY TO PUT YOU ON THE SPOT BUT --

THE COURT:  MR. OSBORNE, LET ME INTERRUPT FOR ONE MORE SECOND, AND THIS WILL NOT COUNT AGAINST YOUR TIME.

MR. RODRIGUEZ, I KNOW YOU'RE TRYING THE MIC AND LET'S SEE IF IT WORKS.

PROSPECTIVE JUROR:  I DON'T KNOW.

THE COURT:  ALL RIGHT.

THE CLERK:  KEEP TRYING.  ONE MORE TIME.

PROSPECTIVE JUROR:  TESTING, TESTING.

THE COURT:  WE JOKED THAT THIS COURTROOM HAS GREMLINS, TECHNICAL GREMLINS, LIKE THE LITTLE 1980S MOVIE.  SO OUR GREMLINS ARE GETTING THE BETTER OF US THIS MORNING WITH TECHNOLOGY.

LET'S GO OFF THE RECORD FOR A MOMENT.

(PAUSE IN PROCEEDINGS.)

THE COURT:  THERE WE GO.  WE WILL TRY THIS AGAIN.  GOING BACK ON THE RECORD.

MR. OSBORNE:  THANK YOU, YOUR HONOR.

SIR, I BELIEVE YOU HAVE INDICATED ON YOUR QUESTIONNAIRE THAT PART OF YOU HAS STRONG FEELINGS ABOUT AWARDING DAMAGES IN A CIVIL CASE BECAUSE IT ALMOST SEEMS LIKE A BUSINESS TRANSACTION AND MORE ABOUT MONETARY GAIN THAN, SAY, JUSTICE.

IS THAT FAIR?

PROSPECTIVE JUROR:  THAT'S CORRECT.

MR. OSBORNE:  HOW DOES THAT APPLY TO THIS CASE?  LIKE, FOR EXAMPLE, A SIMILAR QUESTION IS THAT IF I PROVED MY CASE AND YOU'RE GOING TO FIGURE OUT THE DAMAGES, ARE YOU GOING TO BE ABLE TO AWARD DAMAGES?

PROSPECTIVE JUROR:  YEAH, I THINK SO.  I JUST THINK THAT THE BIGGER PARTY HAS MORE MONEY.  THEY OBVIOUSLY HAVE LIKE AN ADVANTAGE OR SOMETHING.

MR. OSBORNE:  OKAY.  SO YOU BELIEVE THAT THE PARTY

THAT MAY HAVE MORE MONEY MAY HAVE AN ADVANTAGE OVER THE OTHER ONE?

PROSPECTIVE JUROR:  YEAH.

MR. OSBORNE:  ALL RIGHT.  DO YOU THINK THAT YOU COULD BASE YOUR VERDICT SOLELY ON THE EVIDENCE AS YOU HEAR IT IN THE COURT'S INSTRUCTIONS?

PROSPECTIVE JUROR:  YEAH, I DO.

MR. OSBORNE:  ALL RIGHT.  WOULD THERE BE ANY PART OF YOU THAT DOES NOT WANT TO AWARD DAMAGES BASED ON YOUR OWN PHILOSOPHICAL VIEWS OR ANYTHING?

PROSPECTIVE JUROR:  NO.  I MEAN, YEAH.  YEAH.

MR. OSBORNE:  JUST TO BE CLEAR -- AND I'M SORRY TO BE LAWYERLY, BUT YOU HESITATED A LITTLE BIT.  ARE YOU SAYING I'M GOING TO DO MY BEST OR ARE YOU SAYING THAT I THINK I CAN BUT I'M JUST NOT TOTALLY SURE?

PROSPECTIVE JUROR:  IT'S MORE LIKE I'M NOT REALLY SURE.

MR. OSBORNE:  OKAY.  SO YOU'RE NOT SURE IF YOU COULD AWARD DAMAGES, IS THAT WHAT YOU MEAN?

PROSPECTIVE JUROR:  NO.  I WOULD, I WOULD.

MR. OSBORNE:  YOU COULD?

PROSPECTIVE JUROR:  YEAH.

MR. OSBORNE:  DO YOU HAVE -- HAVE YOU EVER HEARD OF PUNITIVE DAMAGES?

PROSPECTIVE JUROR:  NO.

MR. OSBORNE:  ALL RIGHT.  IF I TOLD YOU KIND OF BROADLY SPEAKING THERE ARE DAMAGES TO PUNISH SOMEBODY OR SOMETHING THAT THEY HAVE DONE, DO YOU HAVE ANY THOUGHTS OR OPINIONS ABOUT THOSE DAMAGES SPECIFICALLY?

PROSPECTIVE JUROR:  IT JUST DEPENDS WHAT IT IS. WHAT DO YOU MEAN?  WHAT IS THE DAMAGE FOR?

THE COURT:  MR. RODRIGUEZ, CAN YOU BRING IT A LITTLE CLOSER TO YOU WHEN YOU'RE SPEAKING.

PROSPECTIVE JUROR:  I DON'T THINK -- OKAY.  I'M SORRY.

MR. OSBORNE:  RIGHT.  I THINK YOU SAID IT DEPENDS WHAT THE DAMAGES ARE FOR.

PROSPECTIVE JUROR:  YEAH, UH-HUH.

MR. OSBORNE:  BUT DO YOU HAVE ENOUGH PROBLEMS WITH PUNITIVE DAMAGES SPECIFICALLY?

PROSPECTIVE JUROR:  NO.

MR. OSBORNE:  LET ME OPEN THAT UP.  DOES ANYBODY HAVE ANY PROBLEMS WITH PUNITIVE DAMAGES?

PROSPECTIVE JUROR:  WHAT DOES THAT MEAN?

MR. OSBORNE:  OKAY.  THE JUDGE WILL GIVE YOU AN INSTRUCTION ON WHAT IT MEANS, WE ANTICIPATE, BUT BROADLY SPEAKING, IT MEANS MONEY THAT IS DESIGNED TO PUNISH AND DETER SOMEBODY, NOT TO COMPENSATE BUT TO PUNISH SOMEBODY FOR SOMETHING THAT THEY'VE DONE.

DOES THAT HELP?

PROSPECTIVE JUROR:  YEAH.

MR. OSBORNE:  YES AND NO.  IT'S KIND OF A LAWYERLY ANSWER, SORRY.  HAVE YOU EVER HEARD OF THAT IN THE NEWS OR ANYTHING?

PROSPECTIVE JUROR:  NO.

MR. OSBORNE:  ANYBODY ELSE HAVE ANY THOUGHTS?

THE COURT:  I'M GOING TO INTERCEDE FOR ONE OTHER MOMENT.

MR. OSBORNE:  YES, YOUR HONOR.

THE COURT:  SO -- AND THIS IS SOMETHING THAT YOU'LL BE INSTRUCTED PERHAPS ABOUT -- YOU WOULD BE INSTRUCTED ABOUT LATER.  BUT THE PURPOSE OF PUNITIVE DAMAGES IS THAT IT'S A MONETARY AMOUNT TO PUNISH A DEFENDANT AND TO DETER SIMILAR ACTS IN THE FUTURE.

PUNITIVE DAMAGES MAY NOT BE AWARDED TO COMPENSATE A PLAINTIFF.

YOU MAY CONTINUE, MR. OSBORNE.

MR. OSBORNE:  THANK YOU, YOUR HONOR.

SO WITH THAT DEFINITION, DOES THAT CHANGE ANYBODY'S ANSWERS?

MR. JOHNSON.  DO YOU HAVE ANY THOUGHTS ABOUT PUNITIVE DAMAGES?

PROSPECTIVE JUROR:  YEAH.  I'M AWARE OF PUNITIVE DAMAGES.  I DON'T THINK I HAVE ANY OPPOSITION TO THEM ESSENTIALLY.

IS MY VOICE OKAY?

YEAH.  SO I'M AWARE OF PUNITIVE DAMAGES, AND I FEEL THAT IT MAKES SENSE AS PART OF THE LEGAL SYSTEM.

MR. OSBORNE:  THANK YOU.  I APPRECIATE THAT.

MR. RAMIREZ, I BELIEVE YOU'RE JUROR NUMBER 10; IS THAT RIGHT?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  DO YOU HAVE ANY THOUGHTS ABOUT PUNITIVE DAMAGES?

PROSPECTIVE JUROR:  REPEAT THAT AGAIN.

MR. OSBORNE:  SURE.  DO YOU HAVE ANY THOUGHTS ABOUT PUNITIVE DAMAGES ONE WAY OR THE OTHER?

PROSPECTIVE JUROR:  WHAT IS PUNITIVE DAMAGES SPECIFICALLY?  JUST SO I CAN GET AN IDEA.

MR. OSBORNE:  YEAH.  SO ESSENTIALLY DAMAGES TO PUNISH, NOT TO COMPENSATE, BUT TO PUNISH.

DO YOU HAVE ANY THOUGHTS OR BELIEFS ABOUT THAT?

PROSPECTIVE JUROR:  NO.

MR. OSBORNE:  OKAY.  THANK YOU, SIR.

WHAT ABOUT INDUSTRY STANDARDS, FOR EXAMPLE?  SO THIS IS A CASE AGAINST THE BANK, AND IF YOU HEARD EVIDENCE THAT ALL BANKS DO SOMETHING A CERTAIN WAY, DOES THAT MEAN IT'S AUTOMATICALLY REASONABLE?

PROSPECTIVE JUROR:  IT DEPENDS ON THE CASE.

THERE ARE SOME THINGS THAT ARE A LITTLE IFFY HERE AND

THERE.

MR. OSBORNE:  OKAY.  SO YOU WOULD HAVE TO HEAR ALL OF THE EVIDENCE?

PROSPECTIVE JUROR:  EXACTLY.

MR. OSBORNE:  MR. NASSAU, DID I GET THAT RIGHT?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  THANK YOU.  AND YOU'RE JUROR NUMBER 16?

PROSPECTIVE JUROR:  16.

MR. OSBORNE:  OKAY.  HOW DO YOU FEEL ABOUT THIS TOPIC OF INDUSTRY STANDARDS AS FAR AS, YOU KNOW, IF AN ENTIRE INDUSTRY DOES SOMETHING A CERTAIN WAY, DOES THAT MEAN IT'S AUTOMATICALLY REASONABLE?

PROSPECTIVE JUROR:  NOT NECESSARILY.

MR. OSBORNE:  AND CAN YOU EXPLAIN WHY?

PROSPECTIVE JUROR:  I FEEL THAT IF EVERY INSTITUTION DOES SOMETHING IN A CERTAIN WAY, THEN IT'S PROBABLY CUSTOMARY BUT NOT NECESSARILY OKAY.

MR. OSBORNE:  OKAY.  SO IS IT POSSIBLE THAT AN ENTIRE INDUSTRY CAN BE OUT OF COMPLIANCE?

PROSPECTIVE JUROR:  IS IT POSSIBLE?  YES.
IS IT --

MR. OSBORNE:  IS IT LIKELY?

PROSPECTIVE JUROR:  IS IT LIKELY?  NO.

MR. OSBORNE:  OKAY.  WHAT MAKES YOU SAY THAT?

PROSPECTIVE JUROR:  I NEVER BELIEVE IN THINGS THAT ARE ALL ENCOMPASSING OR ALWAYS TRUE OR ALWAYS FALSE.

MR. OSBORNE:  RIGHT.  SO YOU DON'T LIKE ALWAYS OR NEVER STATEMENTS BECAUSE THERE'S A LOT OF GREY IN THE WORLD, AND YOU HAVE TO TAKE THE FACTS AS YOU FIND THEM?

PROSPECTIVE JUROR:  THAT IS CORRECT.

MR. OSBORNE:  OKAY.  AND WILL YOU BE ABLE TO DO THAT IN THIS CASE?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  DO YOU HAVE ANY THOUGHTS ABOUT PUNITIVE DAMAGES?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  AND WHAT ARE THOSE THOUGHTS?

PROSPECTIVE JUROR:  I THINK THEY PLAY AN IMPORTANT ROLE IN CHANGING METHODS AND BEHAVIORS OF INSTITUTIONS.

MR. OSBORNE:  OKAY.  SO YOU THINK THEY CAN BE A POSITIVE WAY TO CHANGE BEHAVIOR UNDER APPROPRIATE CIRCUMSTANCES?

PROSPECTIVE JUROR:  CORRECT.

MR. OSBORNE:  AND DO YOU BELIEVE YOU COULD BASE YOUR VERDICT SOLELY ON THE EVIDENCE AND THE COURT'S INSTRUCTIONS AS YOU HEAR THEM?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  THANK YOU, SIR.

DOES ANYBODY HAVE ANY STRONG THOUGHTS ABOUT, YOU KNOW, IS

THERE TOO MANY LAWSUITS IN THE WORLD TODAY?  ANYBODY?

MS. CHANG, IS THAT RIGHT?  YOU ARE JUROR NUMBER 18?

PROSPECTIVE JUROR:  18.

MR. OSBORNE:  HOW ARE YOU THIS MORNING?

PROSPECTIVE JUROR:  I'M DOING FINE.  THANK YOU.

MR. OSBORNE:  GOOD.  HOW DO YOU FEEL ABOUT THE TOPICS THAT WE HAVE DISCUSSED SO FAR?

PROSPECTIVE JUROR:  INTERESTING.

MR. OSBORNE:  WHY DO YOU SAY THAT?

PROSPECTIVE JUROR:  I HAVE NEVER SERVED AS A JUROR BEFORE.  OH, I HAVE NEVER SERVED AS A JUROR BEFORE.

MR. OSBORNE:  WHAT DO YOU THINK ABOUT THE PROCESS SO FAR?

PROSPECTIVE JUROR:  IT'S, LIKE I SAID, IT'S INTERESTING.

MR. OSBORNE:  YEAH.

HOW DO YOU FEEL ABOUT PUNITIVE DAMAGES?

PROSPECTIVE JUROR:  LIKE SOME OTHER JURORS SAID, BECAUSE SERVE AS A GOOD EXAMPLE, I GUESS TO MAKE SURE -- I MEAN, EVERYONE WILL DO, YOU KNOW -- WILL DO SOMETHING THAT IS AGAINST THE LAW.

MR. OSBORNE:  YEAH.  SO YOU FEEL IT'S AN IMPORTANT TOOL THAT CAN CHANGE BEHAVIOR IN APPROPRIATE CIRCUMSTANCES?

PROSPECTIVE JUROR:  RIGHT.

MR. OSBORNE:  ALL RIGHT.  LET ME PLAY DEVIL'S

ADVOCATE FOR YOU A LITTLE BIT.  SO IF I WERE TO SAY THAT PUNITIVE DAMAGES WOULD NEVER REALLY DO ANY GOOD, WHAT WOULD YOU SAY?

PROSPECTIVE JUROR:  I GUESS I WOULD HAVE TO EXPERIENCE IT FOR MYSELF IN ORDER TO REALLY KNOW, YOU KNOW, THE IMPACT OF IT.

MR. OSBORNE:  OKAY.  BUT AT LEAST YOUR IMPRESSIONS ARE THAT IF THE CIRCUMSTANCES JUSTIFY IT, IT COULD CHANGE BEHAVIOR?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  ALL RIGHT.  THANK YOU, MA'AM.

AND I'LL OPEN THAT QUESTION UP TO EVERYBODY, BUT DOES EVERYBODY BELIEVE THAT UNDER APPROPRIATE CIRCUMSTANCES PUNITIVE DAMAGES COULD CHANGE BEHAVIOR?

DOES ANYBODY FUNDAMENTALLY DISAGREE WITH PUNITIVE DAMAGES JUST FROM A PHILOSOPHICAL POINT JUST SAYING, YOU KNOW, I JUST DON'T THINK IT DOES ANY GOOD?  ANYBODY FEEL LIKE THAT?

THE COURT:  AND, AGAIN, THIS INCLUDES ANYBODY IN THE COURTROOM AND WITHIN THE JURY, INCLUDING THE ROWS IN THE BACK.

MR. OSBORNE:  YOU CAN SEE A SHOW OF HANDS WHO FEEL LIKE THAT.

PROSPECTIVE JUROR:  MAYBE INSTEAD OF PUNITIVE DAMAGES YOU SHOULD GO TO JAIL.

MR. OSBORNE:  FAIR ENOUGH.  SO IT SOUNDS LIKE YOU DO BELIEVE IN SOME TYPE OF PUNISHMENT?

PROSPECTIVE JUROR:  YES, ABSOLUTELY.

THE COURT:  AND, SIR, COULD YOU STATE YOUR JURY NUMBER?

PROSPECTIVE JUROR:  38.

THE COURT:  AND JUST TO CLARIFY.

MR. OSBORNE:  YES, YOUR HONOR.  THANK YOU.

THIS IS A CIVIL CASE, SO YOU WILL NOT HAVE THE ABILITY TO THROW ANYBODY IN JAIL, YOU WILL NOT HAVE THE ABILITY TO ORDER ANYBODY TO CHANGE THEIR POLICIES.

THE ONLY THING I'M ALLOWED TO ASK YOU FOR IS MONEY.

SO HOW DOES THAT MAKE YOU FEEL?  DOES ANYBODY THINK THAT THAT'S NOT A GOOD SYSTEM?  OR DO YOU THINK IT'S THE SYSTEM THAT WE HAVE AND IT'S THE BEST THAT WE CAN DO?

HOW DO YOU FEEL, MR. NASSAU?

PROSPECTIVE JUROR:  MAY I ASK A QUESTION FIRST?

MR. OSBORNE:  YES, SIR.

PROSPECTIVE JUROR:  A STATEMENT WAS MADE THAT PUNITIVE DAMAGES DOES NOT COMPENSATE -- PUNITIVE DAMAGES -- I'LL SPEAK LOUDLY.  PUNITIVE DAMAGES DOES NOT COMPENSATE THE PLAINTIFF.

DID I GET THAT CORRECTLY?

MR. OSBORNE:  THE PURPOSE IS NOT TO COMPENSATE THE PLAINTIFF, THAT'S CORRECT.

PROSPECTIVE JUROR:  BUT DO THE PUNITIVE DAMAGES GO TO THE PLAINTIFF AND HIS ATTORNEY?

MR. OSBORNE:  GENERALLY SPEAKING, YES, BUT THERE'S A PROCESS.  SO THERE'S -- IF YOU DO A VERDICT, IT'S NOT LIKE A CHECK JUST COMES THE NEXT DAY.  THERE'S LIKE -- IT HAS TO BECOME A JUDGMENT AND THERE'S A POSSIBILITY, MAYBE, TO CHALLENGE IN THE FUTURE.  BUT GENERALLY SPEAKING, YES.

PROSPECTIVE JUROR:  SO THE PLAINTIFF DOES BENEFIT FROM A PUNITIVE DAMAGES OR MAY?

MR. OSBORNE:  YES, SIR, RIGHT.

SO HOW DOES THAT MAKE YOU FEEL?

PROSPECTIVE JUROR:  THE SAME AS BEFORE, I THINK IT'S A REASONABLE SYSTEM TO ELICIT CHANGES IN POLICY AND BEHAVIOR OF THE DEFENDANT.

MR. OSBORNE:  OKAY.  THANK YOU.  WHAT ABOUT THE FAIR CREDIT REPORTING ACT?  IS IT A GOOD THING THAT WE HAVE THAT OR SHOULD WE JUST LET BANKS DO WHATEVER THEY WANT?

IS IT MS. BAO, JUROR NUMBER 1?

PROSPECTIVE JUROR:  YEAH.  I THINK IT IS A GOOD SYSTEM EVEN THOUGH IT'S NOT A PERFECT SYSTEM.  I THINK IT'S A GOOD SYSTEM.

MR. OSBORNE:  IT HAS FLAWS, RIGHT?

PROSPECTIVE JUROR:  BUT AS WITH EVERY SYSTEM, YOU KNOW, THERE'S THE SAYING IT'S NOT PERFECT, BUT I THINK IT'S BETTER THAT WE HAVE A SYSTEM THAN WE DON'T.

MR. OSBORNE:  YEAH.  DO YOU THINK IT'S IMPORTANT THAT PEOPLE BE HELD ACCOUNTABLE IF THEY VIOLATE THE LAW?

PROSPECTIVE JUROR: I THINK SO.

MR. OSBORNE: WHAT WOULD HAPPEN IF PEOPLE ARE NOT HELD ACCOUNTABLE AND THEY DID BREAK THE LAW?

PROSPECTIVE JUROR: I THINK I DID HAVE SOME PERSONAL EXPERIENCE. FOR EXAMPLE, I HAD A CREDIT CARD, I APPLIED, AND I PAY CASH, BUT I WANT THE CREDIT. AND THEN IT'S ELECTRONIC DELIVERY OF THE STATEMENT. I DON'T RECEIVE IT.

THEN THEY HAVE THE BANK CALL ME AND SAY, HEY, YOU DID NOT PAY SOMETHING THE MONTH BEFORE BECAUSE I ALWAYS PAY EVERY STATEMENT ON TIME.

AND THEN THEY SHOW UP WITH A CREDIT REPORT THAT SAYS I HAVE THIS HISTORY, AND I'M DEFRAUD SOMETHING.

AND I CALL THE BANK, RIGHT? AND THEN I PAY RIGHT AWAY, BUT SOMEHOW IT GETS NOT REMOVED.

IT DRAMATICALLY REDUCED MY CREDIT RATING. I DON'T MIND BECAUSE I DON'T BORROW MONEY, AND I DON'T EVEN MORTGAGE ANYTHING. I'M COMFORTABLE. BUT I'M THINKING IF I DO NEED IT AND THEY DON'T REMOVE IT, I'M STUCK FOREVER, RIGHT?

THAT'S WHY I SAID IT'S NOT A PERFECT SYSTEM, BUT I DO WANT A SYSTEM.

IF I'M A LANDLORD, I DO WANT A CREDIT REPORT.

MR. OSBORNE: RIGHT. SO YOU THINK A CREDIT REPORT SHOULD BE ACCURATE AND TRUE?

PROSPECTIVE JUROR: EXACTLY.

THE COURT: AND DO YOU UNDERSTAND THAT YOUR OWN

PERSONAL EXPERIENCE WITH THE FRAUD, YOU CAN'T BASE YOUR VERDICT ON THAT?

PROSPECTIVE JUROR:  EVEN THOUGH I UNDERSTAND, BUT I THINK IT CAN BE VERY LIKELY, BE VERY BIASSED WITHOUT MYSELF NOTICING IT.

MR. OSBORNE:  WELL, LET ME ASK YOU THIS BECAUSE WE WANT PEOPLE TO GO TO BE TOTALLY FAIR.

SO I HAVE THE BURDEN OF PROOF AS THE PLAINTIFF, AND WE HAVE TO PROVE OUR CASE.  SO IF YOU HAD TO VOTE RIGHT NOW, YOU WOULD HAVE TO VOTE FOR THE BANK BECAUSE WE HAVE NOT PROVEN ANYTHING TO YOU.

DO YOU FOLLOW ME SO FAR?

PROSPECTIVE JUROR:  I THINK WITHOUT HEARING ANYTHING, I PROBABLY WILL RESIDE -- IF I HAVE TO MAKE -- VOTE FOR SOMETHING, I PROBABLY AM BIASSED LIKE FOR THE PARTY THAT GETS DAMAGED BECAUSE OF THIS, WHATEVER THE THING IS.  SO I DON'T KNOW.  WHEN I HAVE THE DETAILS, PROBABLY I THINK I WILL HAVE A BIAS.  I MY MYSELF MIGHT NOT REALIZE.  MEANING WHOEVER GETS DAMAGED MOST NEEDS TO BE COMPENSATE -- I DON'T KNOW -- NEEDS TO HAVE THE FAVORABLE VOTE.

MR. OSBORNE:  OKAY.  LET ME JUST CLARIFY A FEW THINGS ON THAT.  SO IF I DON'T PROVE MY CASE, LIKE LET'S ASSUME THAT EVERYTHING WE TELL YOU IN OPENING STATEMENTS, THERE'S NO EVIDENCE OF THAT, COULD YOU VOTE FOR THE BANK IF I DON'T PROVE MY CASE?  LIKE, COULD YOU FOLLOW THE JUDGE'S INSTRUCTIONS AND

THE LAW?

PROSPECTIVE JUROR:  YES, OF COURSE.  WITHOUT EVIDENCE, HOW CAN I VOTE FOR ANYTHING?

MR. OSBORNE:  RIGHT.  SO, IN OTHER WORDS, YOU WOULD HAVE TO WAIT AND SEE ALL OF THE EVIDENCE BEFORE YOU COULD DECIDE YES OR NO FOR ANYBODY?

PROSPECTIVE JUROR:  THAT'S TRUE, YEAH.

MR. OSBORNE:  AND COULD YOU FOLLOW THE JUDGE'S INSTRUCTIONS ON WHAT THE LAW IS?

PROSPECTIVE JUROR:  I WILL TRY MY BEST.

MR. OSBORNE:  OKAY.  AND DO YOU UNDERSTAND YOU HAVE TO BASE YOUR VERDICT ON THE EVIDENCE AND THE INSTRUCTIONS AND NOT YOUR OWN PERSONAL VIEWS?

PROSPECTIVE JUROR:  THAT'S TRUE.  BUT WHAT I'M SAYING IS I MIGHT BE BIASSED ALREADY WITHOUT MYSELF KNOWING IT WITH HOW I INTERPRET THE EVIDENCE BECAUSE MY PERSONAL EXPERIENCE MIGHT GET IN THE WAY.

MR. OSBORNE:  OKAY.

THE COURT:  I'M SORRY.  IT'S BEEN MORE THAN 20 MINUTES.

MR. OSBORNE:  OKAY.  THANK YOU, YOUR HONOR.

THANK YOU, MA'AM.

I THINK THAT'S ACTUALLY ALL I HAVE, YOUR HONOR.  THANK YOU.

THE COURT:  OKAY.  MR. NARITA.

MR. NARITA:  YES.  THANK YOU, YOUR HONOR.

GOOD MORNING EVERYONE.

AND GOOD MORNING EVERYONE IN THE BACK.  WE WANT TO ACKNOWLEDGE YOU AS WELL.  YOU HAVEN'T GOTTEN AS MUCH ATTENTION, BUT YOU STILL HAD TO DRIVE HERE LIKE EVERYBODY ELSE, AND WE APPRECIATE YOUR SACRIFICE.

AGAIN, MY NAME IS TOMIO NARITA.  I'M THE ATTORNEY FOR THE BANK.

THE CASE DOES INVOLVE IDENTITY THEFT.  MS.  BAO, I'LL WANT TO CHAT WITH YOU MAYBE A LITTLE BIT MORE ABOUT YOUR EXPERIENCE.

BUT I SAW IN MORE THAN ONE QUESTIONNAIRE ACTUALLY THAT WAS SUBMITTED, THAT ONE OF THE QUESTIONS WAS HAVE YOU OR ANYONE CLOSE TO YOU OR SOMEONE IN YOUR FAMILY BEEN THE VICTIM OF IDENTITY THEFT AND MORE THAN ONE OF YOU SAID YES.

SO I WANT TO EXPLORE THAT WITH EVERYBODY AS A GROUP.

JUST BY A SHOW OF HANDS, DOES ANYBODY -- WE'VE TALKED WITH MS. BAO, AND I'M NOT GOING TO PICK ON YOU, MS. BAO.  YOU'VE ALREADY TOLD US A LOT, AND I'LL CHAT WITH YOU SOME MORE.

BUT OTHER THAN MS. BAO, DOES ANYBODY HAVE WHAT THEY FEEL IS A PRETTY POWERFUL MEMORABLE EXPERIENCE EITHER WITH THEMSELVES OR A FAMILY MEMBER OR SOMEONE THEY KNOW WELL THAT RELATES TO IDENTITY THEFT?

JUST ANYBODY AT ALL?

I SEE A COUPLE OF HANDS GOING UP IN THE BACK.

MS. WANG, IS IT?

OKAY.  I'LL GET -- I'LL START WITH YOU IN ONE MOMENT.

BUT SINCE WE HAVEN'T SPOKEN TO THE FOLKS.

MA'AM, I'M SORRY.  THANK YOU SO MUCH.  JUROR NUMBER 30 -- I'M SORRY, LET'S GET YOUR NUMBER.

MS. JOHNSON?

PROSPECTIVE JUROR:  YES.  SO I DON'T KNOW IF IT'S ACTUAL IDENTITY THEFT PER SE, BUT --

THE COURT:  ONE MOMENT, MA'AM.  WE'RE GOING TO TRY TO TURN DOWN THE FEEDBACK A LITTLE BIT.  LET'S SEE IF THAT HELPS.  ALL RIGHT.

PROSPECTIVE JUROR:  SO I HAVE BEEN A VICTIM OF CREDIT REPORTING, BUT I DON'T KNOW IF IT'S IDENTITY THEFT BECAUSE THE COMPANY REPORTED ME AS HAVING A LATE PAYMENT WHEN I ACTUALLY HAD PREVIOUSLY CLOSED THE ACCOUNT.

SO I JUST WANTED TO SAY THERE'S NO WAY THAT I COULD BE IMPARTIAL BECAUSE IT DOES HAPPEN TO BE WITH THIS PARTICULAR BANK.  SO I JUST WANTED TO LET YOU KNOW.

MR. NARITA:  I'VE GOT IT.

AND WOULD YOU BE ABLE TO SHARE WITH US, IF YOU REMEMBER, THE NAME OF THE BANK THAT YOU HAD THE ISSUE WITH?

PROSPECTIVE JUROR:  YEAH, COMENITY.

MR. NARITA:  OH, IT'S WITH COMENITY.  HOW LONG AGO WAS THAT, MA'AM?

PROSPECTIVE JUROR:  IT'S BEEN NINE YEARS.  I'VE CALLED -- IT WAS FOR A RETAIL ACCOUNT THAT I HAD OPENED UP

YEARS AGO, AND THEN I CLOSED IT SHORTLY AFTER THAT, AND THEY REPORTED IT AS A LATE PAYMENT ON MY CREDIT.  IT'S THE ONLY LATE PAYMENT I HAVE.

I CALLED THE BANK.  IT'S STILL ON MY CREDIT REPORT TO THIS DATE.  AND I JUST, I DON'T HAVE TIME NOR DO I HAVE MONEY TO HIRE A LAWYER AND, YOU KNOW, SO I JUST -- HOPEFULLY IT WILL COME OFF NEXT YEAR, AND I HAVE TO LIVE WITH IT.  BUT I DON'T THINK I COULD BE IMPARTIAL.

MR. NARITA:  THAT SOUNDS LIKE A VERY FRUSTRATING EXPERIENCE.

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  SO IF I HEARD YOU CORRECTLY, IT'S BEEN ON -- IT'S BEEN REPORTED ON YOUR CREDIT REPORT FOR YEARS?

PROSPECTIVE JUROR:  SEVERAL YEARS.

MR. NARITA:  SEVERAL YEARS.

PROSPECTIVE JUROR:  PROBABLY NINE MAYBE.

MR. NARITA:  AND YOU REACHED OUT TO MY CLIENT AND TRIED TO WORK IT OUT DIRECTLY WITH THEM AND YOU COULDN'T GET ANYWHERE?

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  I'M SORRY ABOUT THAT.  THAT HAD TO BE VERY FRUSTRATING FOR YOU.

IT'S BEEN A WHILE, BUT DO YOU REMEMBER ANY OTHER STEPS THAT YOU TOOK TO TRY TO ADDRESS THE SITUATION EITHER WITH THE CREDIT REPORTING AGENCIES OR ANYONE ELSE?

PROSPECTIVE JUROR:  I THINK AT ONE POINT I TRIED TO CONTACT THE CREDIT REPORTING AGENCY, BUT I DIDN'T GET ANYWHERE WITH IT, AND SO I JUST -- YOU KNOW, I'M BUSY AND I DON'T, YOU KNOW.

BUT AS THE JUROR 1 HAD STATED, YOU KNOW, IF I EVER NEED -- I MEAN, MY CREDIT REPORT IS GOOD IN -- WITHOUT -- OOPS, EVEN WITH THAT ONE LATE PAYMENT ON THERE, BUT IT IS FRUSTRATING THAT I TRIED TO REACH OUT AND CONTACT.

IN FACT, THEY STILL SEND ME, THEY STILL SEND ME NOTIFICATIONS AS IF I WAS STILL -- ALTHOUGH I DON'T HAVE A CARD.  IT'S -- YEAH.  IT DOESN'T MAKE SENSE.

MR. NARITA:  AGAIN, I APOLOGIZE THAT THAT HAPPENED TO YOU.

LET ME ASK YOU THIS, IF -- YOU UNDERSTAND THAT YOUR SITUATION IS GOING TO BE DIFFERENT THAN OTHER SITUATIONS AND CARD HOLDERS AT COMENITY; CORRECT?

PROSPECTIVE JUROR:  UH-HUH.

MR. NARITA:  SO IF YOU WERE ASKED TO SERVE ON A JURY AND IF YOU JOINED US AND YOU'RE ONE OF THE EIGHT FOLKS THAT WERE IN THE BOX WITH US TODAY AND FOR THE REST OF THE TRIAL, DO YOU THINK YOU COULD, DO YOU THINK YOU COULD BE PATIENT WITH BOTH PARTIES, TAKING ALL OF THE EVIDENCE THAT BOTH SIDES PRESENTED WITH AN OPEN MIND, AND THEN WAIT UNTIL YOU GOT TOGETHER WITH YOUR CO-JURORS IN THE DELIBERATION ROOM AFTERWARDS UNTIL AFTER HER HONOR GAVE YOU ALL OF THE FULL

INSTRUCTIONS ABOUT THE LAW THAT RELATES TO THIS CASE, AND THEN TRIED TO KEEP AN OPEN MIND WHILE YOU DISCUSSED THINGS WITH YOUR OTHER JURORS?

DO YOU THINK YOU WOULD BE ABLE TO DO THAT?

PROSPECTIVE JUROR:  I THINK SO.  I WOULD DO MY VERY BEST TO KEEP AN OPEN MIND AND BE IMPARTIAL AS I COULD.

HOWEVER, I DO KNOW I HAVE THAT BIAS, SO, YOU KNOW, I CAN'T BE 100 PERCENT, BECAUSE, YOU KNOW, I AM -- I'M ANGRY ABOUT IT.

MR. NARITA:  UNDERSTOOD.

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  AND I WILL SAY THAT WE, WE REALLY APPRECIATE YOUR BEING CANDID AND OPEN WITH US, BECAUSE IT'S KIND OF A STRANGE SITUATION BEING HERE IN A COURTROOM WITH FOLKS THAT YOU DON'T KNOW AND TALKING ABOUT SOMETHING PERSONAL THAT HAPPENED TO YOU.  SO THANK YOU VERY MUCH FOR SHARING WITH US.

PROSPECTIVE JUROR:  THANK YOU.

THE COURT:  IF THE JURORS COULD PASS THE MIC SLOWLY FORWARD.

AND EITHER ENDER OR NICK WANT TO HELP IN TERMS OF THE MIC.

MR. NARITA:  AND IT'S MS. WANG.  AM I PRONOUNCING IT CORRECTLY?

PROSPECTIVE JUROR:  IN CHINESE IT'S WANG AND THEN --

MR. NARITA:  I'M SO SORRY, WE DON'T HAVE THE MICROPHONE YET.

PROSPECTIVE JUROR:  CAN YOU HEAR ME?

MR. NARITA:  YES.  I JUST WANTED TO MAKE SURE THAT I WAS ADDRESSING YOU BY THE CORRECT PRONUNCIATION.

IS IT MS. WANG?

PROSPECTIVE JUROR:  YOU CAN CALL ME MS. WANG, YEAH.

MR. NARITA:  MS. WANG.

PROSPECTIVE JUROR:  THANKS FOR ASKING.

MR. NARITA:  THAT'S OKAY.  SO I SAW, I BELIEVE I SAW YOU RAISE YOUR HAND EARLIER WITH SOME ISSUES THAT YOU'VE HAD IN YOUR PAST THAT MIGHT RELATE TO EITHER FRAUD OR IDENTITY THEFT, AND I WONDER IF YOU WOULD BE ABLE TO, YOU KNOW, JUST SORT OF SHARE A LITTLE BIT OF THAT EXPERIENCE WITH US?

PROSPECTIVE JUROR:  YEAH.  MY EXPERIENCE WITH IDENTITY THEFT WAS WITH AN OLD EMPLOYER AND THE VENDOR THEY USED FOR THE HEALTH SAVINGS ACCOUNT, YEAH, HAD AN IDENTITY OR BREACH INFORMATION FOR PARTICIPANTS IN THAT PROGRAM.  AND SO, YEAH, I WAS ONE OF THOSE.

THERE WAS A CREDIT CARD THAT WAS OPENED IN MY NAME WITHOUT MY KNOWLEDGE.  AND, YEAH, I HAVE MY CREDIT -- I CONTACTED THE CREDIT BUREAU AGENCIES, AND MY CREDIT ACCOUNT HAS BEEN FROZEN SINCE.

MR. NARITA:  SO IT SOUNDS LIKE THERE WAS A DATA BREACH OR SOME SORT OF LEAK OF INFORMATION, WHICH IS ACTUALLY, UNFORTUNATELY, INCREDIBLY A COMMON EXPERIENCE THESE DAYS; RIGHT?

I SAW, JUST TALKING GENERALLY TO EVERYONE HERE, WE GOT ALL OF YOUR QUESTIONNAIRES.  AND THANK YOU FOR TAKING THE TIME TO FILL THOSE OUT.  WE ASKED YOU A LOT OF QUESTIONS.

BUT A VERY LARGE, LARGE PERCENTAGE OF YOU ANSWERED THAT YOU HAD BEEN NOTIFIED ONE, OR MAYBE SEVERAL TIMES, THAT YOU HAD BEEN IDENTIFIED AS SOMEONE WHO MIGHT HAVE BEEN IN THE DATA BREACH.

AND SO, YOU KNOW, YOU'RE IN, I DON'T KNOW IF WE CALL IT GOOD COMPANY, BUT YOU'RE IN THE COMPANY OF FOLKS WHO HAVE HAD EXPOSURE, BUT IT SOUNDS LIKE IT WENT FURTHER WITH YOU AND SOMEBODY ACTUALLY OPENED AN ACCOUNT; CORRECT?

PROSPECTIVE JUROR:  YES.

MR. NARITA:  AND ABOUT WHEN WAS THAT, MA'AM?

PROSPECTIVE JUROR:  ABOUT TWO YEARS AGO.

MR. NARITA:  OKAY.  AND DO YOU HAVE ANY MEMORY OF THAT NAME OF THE BANK THAT THIS FRAUDSTER WENT AND OPENED THE ACCOUNT WITH?

PROSPECTIVE JUROR:  NO, I DON'T KNOW THE BANK TIED TO IT, YEAH.

MR. NARITA:  BUT IT WAS SOME SORT OF A CREDIT CARD THAT WAS OPENED; RIGHT?

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  AND YOU MAY HAVE TOLD ME, BUT, AGAIN, I'VE FORGOTTEN, HOW DID YOU LEARN ABOUT IT?  HOW DID YOU FIRST FIND OUT THAT HOLY SMOKES, THERE'S A CREDIT CARD WITH MY NAME

ON IT?

PROSPECTIVE JUROR:  THE BANK NOTIFIED ME AND CLOSED THE ACCOUNT.

MR. NARITA:  OKAY.  SO THEY TOLD YOU -- THEY JUST PROACTIVELY REACHED OUT TO YOU AND SAID THAT THEY WERE CLOSING IT, OR HOW DID IT WORK?

PROSPECTIVE JUROR:  YEAH.  THERE WAS SOMETHING IN THE MAIL TO NOTIFY.

AND ALSO THERE WAS A CLASS ACTION LAWSUIT THAT WAS INITIATED.

MR. NARITA:  RIGHT.  SO THERE'S A LOT OF THOSE, TOO, BECAUSE SO MANY PEOPLE ARE HAVING TROUBLE WITH DATA BREACHES AS WELL.  SO I KNOW THERE'S A LOT OF LITIGATION AROUND IT.

SO THIS HAPPENED A COUPLE YEARS AGO.  DID ANYTHING, YOU KNOW, BAD HAPPEN TO YOU?  DID YOU, YOU KNOW, DID YOU GET DENIED CREDIT OR ANYTHING OR HAVE SOME SORT OF -- HAVE ANY KIND OF FINANCIAL IMPACT ON YOU?

PROSPECTIVE JUROR:  NO.  THANKFULLY THE BANK CAUGHT IT IN TIME, BUT, YEAH, I HAVEN'T OPENED ANYTHING SINCE OR FELT THE NEED TO UNFREEZE MY CREDIT BECAUSE OF THAT.

MR. NARITA:  OKAY.  SO YOU TOOK SOME PROACTIVE STEPS TO FREEZE YOUR CREDIT WHEN THAT HAPPENED?

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  OKAY.  AND DO YOU REMEMBER THE PROCESS FOR DOING THAT?  IS IT PHONE CALLS OR SOMETHING ONLINE?

PROSPECTIVE JUROR:  YEAH, JUST CONTACTING ONE OF THE CREDIT BUREAU AGENCIES.

MR. NARITA:  OKAY.  GREAT.

SO DO YOU THINK THAT YOUR EXPERIENCE IN BEING THE ACTUAL VICTIM OF IDENTITY THEFT, DO YOU THINK THAT THAT WOULD IMPACT YOUR ABILITY TO TAKE IN THE EVIDENCE IN THIS CASE?

PROSPECTIVE JUROR:  NO.  I THINK -- YEAH, I CAN REMAIN IMPARTIAL.

MR. NARITA:  BECAUSE YOU'VE HAD A VERY UNFORTUNATE EXPERIENCE, BUT THE PLAINTIFF'S EXPERIENCE IS OBVIOUSLY GOING TO BE DIFFERENT.  THERE WILL BE A LOT OF EVIDENCE THAT BOTH SIDES WILL PUT IN.

AND SO DO YOU THINK YOU COULD WAIT UNTIL THE END IN ORDER TO TAKE ALL OF THAT IN AND FOLLOW HER HONOR'S INSTRUCTIONS ON THE MATTER?

PROSPECTIVE JUROR:  YES.

MR. NARITA:  OKAY.  GREAT.  I APPRECIATE THAT.

MS. BAO, I DON'T WANT TO FORGET TO SWING BACK AND TALK TO YOU A LITTLE BIT ABOUT YOUR EXPERIENCE.

I WROTE DOWN SOME NOTES, BUT HALF THE TIME I CAN'T READ MY OWN WRITING.

I THINK THERE WAS SOME KIND OF ACCOUNT OPENED OF SOME SORT BUT NOBODY MAILED YOU ANY STATEMENTS, SO YOU DIDN'T KNOW ABOUT IT FOR SOME TIME.

DID I HEAR THAT RIGHT?

PROSPECTIVE JUROR:  YEAH.  THERE WAS A CREDIT CARD I HAD MUST HAVE APPLIED ONLINE TO GET A NEW CREDIT CARD OPENED, AND I THINK IT MUST BE I CHOSE ELECTRONIC STATEMENT, AND IT WENT TO MY EMAIL AND PROBABLY GOT SPAMMED OUT, SO I DON'T HAVE THE PHYSICAL STATEMENT.  I DON'T RECEIVE THE EMAIL.  SO I TOTALLY FORGET ABOUT IT.

LATER ON I DID GET CALLS FROM THE BANK.  IT'S BARCLAYS.  I GET CALLED FROM THE BANK, AND I SEE I GET CALLS ALL FROM EVERYWHERE, AND I DON'T PAY ATTENTION.  AND EVENTUALLY IT SHOW UP ON MY CREDIT.  IT'S A U.S. BANK.  MY PRIVATE BANK SENT ME A STATEMENT SAYING THEY'RE AGREEING TO LOWER THE RATE FOR MY CREDIT CARD BECAUSE MY CREDIT LIMIT DROPPED.  AND I SAID, WHAT HAPPENED THAT MY CREDIT LIMIT DROPPED?  AND THAT'S WHEN I GO TO EXPERIAN AND CHECKED, AND I SEE THAT BANK.  AND NOW REALIZE, OH, THIS BANK IS CALLING ME, SO I CALLED THEM, AND, OF COURSE, I PAY THE BALANCE AND WHATEVER.

I SAY, OKAY, JUST REMOVE IT.  BUT I DON'T THINK IT'S EVER BEEN REMOVED.  AND MY CREDIT RATING DID DROP.  I WAS UPSET ABOUT THAT.  JUST AS WITH THE OTHER LADY, I DON'T HAVE THE TIME TO CALL AGAIN AND AGAIN, AND I DON'T HAVE TO APPLY FOR GOOD CREDIT, BUT I'M PERFECTLY FINE.  BUT IT'S FRUSTRATING TO ME WHY IT TOOK SO LONG.

MR. NARITA:  SO IF I CAN UNPACK YOUR ANSWER A LITTLE.  IT SOUNDS LIKE YOU REMEMBER APPLYING FOR A BARCLAYS CREDIT CARD, BUT YOU DIDN'T REMEMBER THE STATEMENTS WERE GOING

TO YOUR EMAIL?

PROSPECTIVE JUROR: THAT'S RIGHT.

MR. NARITA: EMAILS ARE THE BANE OF MY EXISTENCE. I GET SO MANY EMAILS, SO I SYMPATHIZE WITH YOU.

PROSPECTIVE JUROR: I MAKE THE PAYMENT ON TIME, BUT WHAT FRUSTRATES ME WAS THAT THE BANK -- THE RECORDS STILL SAY THAT SOMEHOW IT WAS -- YOU KNOW, I DON'T KNOW, PROBABLY JUST -- I DON'T KNOW, BUT I WAS UPSET.

MR. NARITA: SO THERE WAS SOME SORT OF CHARGE THAT HAD BEEN PUT.

PROSPECTIVE JUROR: ONE CHARGE.

MR. NARITA: ONE CHARGE. AND THEY PROBABLY WERE EMAILING YOU STATEMENTS.

PROSPECTIVE JUROR: IT WENT TO MY EMAILS.

MR. NARITA: AND THAT WOUND UP ON YOUR CREDIT REPORT. YOU DIDN'T FIND OUT ABOUT THAT --

PROSPECTIVE JUROR: -- UNTIL THE OTHER BANK LOWERED MY CREDIT AND I SAY WHAT HAPPENED.

THE COURT: MR. NARITA, FIVE MINUTES.

MR. NARITA: THANK YOU VERY MUCH.

THAT SOUNDS VERY FRUSTRATING. I THINK YOU'VE ALREADY ANSWERED THIS, SO I WON'T BELABOR IT. BUT EVEN THOUGH YOU'VE HAD THIS EXPERIENCE THAT WAS SO FRUSTRATING FOR YOU, DO YOU THINK YOU COULD BE PATIENT WITH BOTH PARTIES IN THIS CASE AND WAIT FOR ALL OF THE EVIDENCE TO COME IN?

PROSPECTIVE JUROR:  I'M A VERY IMPATIENT PERSON.

MR. NARITA:  IMPATIENT.  OKAY.

BUT DO YOU THINK YOU WOULD BE ABLE TO, YOU KNOW, TREAT COMENITY AS FAIRLY AS YOU WOULD TREAT THE PLAINTIFF IN THIS CASE UNTIL YOU GOT TOGETHER WITH YOUR JURORS AND THE OTHER CO-JURORS AND TALKED ABOUT THE EVIDENCE?

PROSPECTIVE JUROR:  I DON'T KNOW.  I THINK I MIGHT HAVE EXPECTATION -- I THINK I ALWAYS EXPECT ALL OF THESE BUSINESS WILL BE ABLE TO TAKE -- YOU KNOW, NOT CAUSING ME TROUBLE.  SO I'M SORRY ABOUT THIS, BUT I'M A VERY IMPATIENT PERSON.  I HAVE TOO HEAVY EXPECTATION.  I KNOW THAT.

MR. NARITA:  NO.  BUT THANK YOU VERY MUCH FOR YOUR HONESTY AND YOUR CANDIDNESS.

ANYONE ELSE HERE IN THE FRONT HAVE ANY EXPERIENCE EITHER PERSONALLY OR SOMEONE THAT THEY KNOW PRETTY WELL WITH IDENTITY THEFT?

MR. MARTIN.

PROSPECTIVE JUROR:  YEAH.  MY BROTHER HAD TO FREEZE HIS CREDIT HISTORY BECAUSE OF -- MY BROTHER HAD TO FREEZE HIS CREDIT HISTORY BECAUSE OF IDENTITY THEFT.

MR. NARITA:  DID THAT HAPPEN RECENTLY?

PROSPECTIVE JUROR:  A LONG TIME AGO.  I HASTEN -- PROBABLY 15, 20 YEARS AGO I WANT TO SAY.

MR. NARITA:  OKAY.  SO HE WAS VICTIMIZED, AND THEN I GUESS HE DID SOMETHING TO FREEZE HIS CREDIT WHILE HE TRIED TO

WORK THROUGH THAT?

PROSPECTIVE JUROR:  EXACTLY.

MR. NARITA:  OKAY.  AND DO YOU HAVE ANY MEMORY -- I KNOW IT WAS A LONG TIME, BUT DO YOU HAVE ANY MEMORY OF HOW YOUR BROTHER WAS ABLE TO WORK THROUGH THAT AND RESOLVE IT?

PROSPECTIVE JUROR:  YEAH.  HE HAD TO GO THROUGH VARIOUS CREDIT AGENCIES AND FREEZE THEM ALL TO MAKE SURE THAT NO ONE COULD OPEN UP ANOTHER ACCOUNT.

MR. NARITA:  RIGHT.  BECAUSE APPARENTLY SOMEONE HAD ACCESS TO HIS PERSONAL INFORMATION --

PROSPECTIVE JUROR:  CORRECT.

MR. NARITA:  -- AND HE WANTED TO MAKE SURE HE WAS BEING DILIGENT STOPPING IT.

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  AND AS FAR AS YOU KNOW HE WAS ABLE TO GET IT UNDER CONTROL?

PROSPECTIVE JUROR:  IT'S CLOSED NOW, SO I ASSUME SO.

MR. NARITA:  FANTASTIC.  WOULD THAT SKEW YOU ONE WAY OR ANOTHER IN THIS CASE WHICH IS --

PROSPECTIVE JUROR:  I DON'T THINK SO, BUT I -- IT'S A CAUTIONARY TALE, DEFINITELY.

MR. NARITA:  IT'S A HUGE PROBLEM FOR A LOT OF FOLKS, AND I KNOW IT MIGHT HAVE BEEN YOU.  I MAY NOT HAVE REMEMBERED. BUT I KNOW A LOT OF THE FOLKS IN THE COURTROOM DID SAY THAT EITHER THEY OR SOMEBODY HAD BEEN A VICTIM.

SO THANK YOU FOR SHARING YOUR BROTHER'S EXPERIENCE.

ANYBODY ELSE THAT CAN REMEMBER NOW AND THINKING ABOUT IT ANY KIND OF POWERFUL EXPERIENCES WITH IDENTITY THEFT HERE?

YES, MA'AM.

WOULD YOU TELL US YOUR NUMBER, MA'AM?  I'M SORRY.

PROSPECTIVE JUROR:  24.

MR. NARITA:  JUROR NUMBER 24.  LET ME -- MS. MA.

PROSPECTIVE JUROR:  YES.  GOOD MORNING.

MR. NARITA:  GOOD MORNING.  HOW ARE YOU?

PROSPECTIVE JUROR:  I HAVE MY WHOLE FAMILY.

MR. NARITA:  YOUR WHOLE FAMILY?

PROSPECTIVE JUROR:  YEAH, I LIVE WITH MY MOTHER AND DAUGHTER.  AND I DON'T KNOW I SAY, BUT A LONG STORY SHORT, THEY MOVE OUT.  AND I THINK -- I DON'T KNOW HOW TO SAY THIS.  THEY USED THE CREDIT CARD TO THE BANK AND TO ANOTHER BANK AND TO ANOTHER BANK TO GRAB THE MONEY AND GO BACK TO THE HOME TOWN.

AFTER I FIND OUT SOMETHING, I CALL THE POLICE.  THE POLICE COME HERE TO REPORT.  I CALL EVERY BANK I RECEIVED THE LETTER, AND I SAY YOU DON'T GIVE THE MONEY, AND I CALL THE HOME TOWN.

LATER THEY CUT OFF MY WHOLE FAMILY'S CREDIT.  I SEND 20 LETTERS.  I SEND IT TO THE CREDIT CARD COMPANY.  I CALL THE CEO IN THE EMAIL, BUT THEY CANNOT DO ANYTHING FOR ME AND MY FAMILY AND MY SON AND MY HUSBAND AND MY NEPHEW AND MY COUSIN.  I THINK EIGHT PEOPLE CLOSED THE BANK, WHOLE FAMILY.

MR. NARITA:  WOW.

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  YOU ACTUALLY WENT TO THE POLICE AND FILED A POLICE REPORT?

PROSPECTIVE JUROR:  YEAH.  BUT POLICE DON'T KNOW YOUR NAME AND THEY CAN'T DO ANYTHING.

MR. NARITA:  THEY CAN'T DO ANYTHING?

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  WAS THAT -- DID THAT OCCUR HERE IN THE SAN FRANCISCO BAY AREA OR SOMEWHERE ELSE?

PROSPECTIVE JUROR:  YEAH, IT WAS SANTA CLARA.  IT WAS END OF JULY.  THEY MOVE OUT AFTER I REPORT EVERYTHING TO THE BANK, THEY CLOSED MY WHOLE FAMILY.

I THINK IF YOU REPORT SOMETHING, DON'T REPORT YOUR ADDRESS, REPORT THE PERSON.  YOUR ADDRESS, THEY CLOSE EVERYBODY.  THAT'S AWFUL.

MR. NARITA:  WELL, IT SOUNDS LIKE A REALLY TROUBLING SITUATION.

PROSPECTIVE JUROR:  WELL, I SEND THE EMAIL AND THEY SAY THIS CASE, GIVE ME ANOTHER EMAIL, BUT I HEARD SOMEONE SAY THAT THEY'RE NOT READY.  THEY'RE NOT READY.

I DON'T KNOW HOW LONG TO WAIT FOR THE CREDIT.  MY HUSBAND AND I, I THINK, ARE OKAY.

MY SON, AND HE'S YOUNG AND HE NEED CREDIT.  I DON'T NEED THE CREDIT RIGHT NOW.

MR. NARITA:  RIGHT.  DO YOU THINK YOUR SON THEN

STILL HAS SOME ONGOING EFFECTS?

PROSPECTIVE JUROR:  YEAH.  HE'S 21 YEARS OLD.  THE CREDIT IS CLOSED.  THEY CANNOT OPEN.

MR. NARITA:  OKAY.  DO YOU REMEMBER ANY OF THE BANKS THAT WERE INVOLVED?  WERE SOME ACCOUNTS OPENED AT DIFFERENT BANKS?

PROSPECTIVE JUROR:  YOU CANNOT OPEN BECAUSE IT'S CREDIT CLOSED.  I TRIED TO OPEN ANOTHER ONE, AND THE CREDIT CARD IS CREDIT CLOSED.  THEY SAY YOU CANNOT OPEN.

MR. NARITA:  OKAY.  UNDERSTOOD.  BUT DO YOU -- DID THE, DID THE PERSON WHO VICTIMIZED YOU, DID THEY UP ANY ACCOUNTS WITH ANY BANKS THAT YOU CAN REMEMBER?

PROSPECTIVE JUROR:  YEAH.  THE PERSON THAT OPENED THE BANK LOAN IN CITIBANK.  CITIBANK, THEY, I THINK, HAVE 67 SOMETHING THOUSAND THEY TAKE AWAY.

THE COURT:  MR. NARITA.

PROSPECTIVE JUROR:  AND THEY BUY A CAR OR SIX CARS, NEW CARS.

MR. NARITA:  WOW.

PROSPECTIVE JUROR:  BUT THEY SEND IT TO ME TO MY ADDRESS.  I DON'T KNOW WHERE I CAN REPORT.

MR. NARITA:  WOW.

PROSPECTIVE JUROR:  THE MAIL, I CLOSE EVERYTHING AND GAVE IT TO THE POST OFFICE AND THEY STILL DO IT.

MR. NARITA:  WELL, MS. MA, HER HONOR IS SIGNALLING

MAYBE THAT I'M OUT OF TIME, BUT I DO WANT TO SAY THAT I'M VERY SORRY FOR THE SITUATION THAT YOU'VE BEEN THROUGH AND THAT I HOPE THAT IF YOU DO JOIN US ON THE JURY, YOU'LL BE ABLE TO DO YOUR BEST, YOU KNOW, TO BE FAIR AND IMPARTIAL TO BOTH SIDES.

THANK YOU VERY MUCH FOR SHARING THAT, TOO, IN FRONT OF A ROOM OF FOLKS THAT YOU DON'T KNOW.

THE COURT:  ALL RIGHT.

MR. NARITA:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.

SO WE'RE GOING TO ALLOW SOME BRIEF FOLLOW-UP, FIVE MINUTES TO EACH SIDE.

LET ME JUST SAY, I HAD MENTIONED THIS EARLIER.  WE ALL COME IN WITH OUR OWN EXPERIENCES, AND WITH OUR OWN -- AND WE DON'T EXPECT YOU TO BE ROBOTS.  SO I APPRECIATE YOU SHARING EVERYTHING THAT YOU'RE SHARING.

AND THE QUESTION, WHICH COUNSEL'S QUESTIONS ARE TRYING TO GET AT, IS, OKAY, BUT GIVEN MY EXPERIENCES, AND WE WANT PEOPLE WHO HAVE HAD A VARIETY OF EXPERIENCES, CAN I SET ASIDE MY EXPERIENCES RECOGNIZING I HAVE THOSE OPINIONS AND SO FORTH, BUT EVEN IF I HAVE THOSE CONCERNS, AM I ABLE TO VIEW THE EVIDENCE WITH AN OPEN MIND, FOLLOW THE JUDGE'S INSTRUCTIONS, AND APPLY THE LAW?

SO THAT'S SORT OF WHAT THESE QUESTIONS ARE ATTEMPTING TO GET AT.  SO LET'S DO A BRIEF FOLLOW-UP FROM EACH SIDE, FIVE MINUTES, AND THEN WE'LL MOVE FORWARD.

MR. OSBORNE:  THANK YOU, YOUR HONOR.  AND I'M SORRY.  I PROBABLY WON'T GET TO TALK TO ALL OF YOU, BUT, MS. BAO, I'M SORRY TO FOLLOW UP WITH YOU AGAIN, BUT I JUST WANTED TO TRY TO CLARIFY.

LET ME ASK YOU POINT-BLANK, WOULD YOU BREAK THE LAW TO VOTE FOR MR. PANCHENKO?

PROSPECTIVE JUROR:  NO.

MR. OSBORNE:  SO YOU WOULD BE ABLE TO FOLLOW THE JUDGE'S INSTRUCTIONS, WHICH ARE THE LAW?

PROSPECTIVE JUROR:  THAT'S TRUE.

MR. OSBORNE:  AND WOULD YOU AGREE THAT YOU WILL BASE YOUR VERDICT SOLELY ON THE EVIDENCE AND THE LAW THAT THE JUDGE GIVES YOU?

PROSPECTIVE JUROR:  THAT'S TRUE, BUT I CANNOT GUARANTEE THAT I DON'T HAVE ANY BIAS, THAT'S WHAT I'M SAYING.

I HAVE TO ASK SOMETHING.  I'M ONLY AVAILABLE FOR THE NEXT FIVE DAYS.  AFTERWARDS I HAVE TO TRAVEL INTERNATIONALLY, AND MY FATHER IS PRETTY SICK IN CHINA, AND THE SIBLINGS ARE GOING BACK AND HAVING A BIG EVENT.  SO I'M LEAVING SAN FRANCISCO ON THE 10TH, MONDAY, THE 10TH.

THE COURT:  MONDAY THE 10TH?

PROSPECTIVE JUROR:  YEAH.

THE COURT:  THANK YOU.

PROSPECTIVE JUROR:  IT'S ALL SCHEDULED FOR MY DAD.  HE'S --

THE COURT:  I UNDERSTAND, A PREBOOKED VACATION?

PROSPECTIVE JUROR:  YES.

THE COURT:  OR A TRIP?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  MS. NGUYEN, DID I GET THAT RIGHT?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  HOW ARE YOU?

PROSPECTIVE JUROR:  GOOD.

MR. OSBORNE:  DO YOU BELIEVE YOU'LL BE ABLE TO BASE YOUR DECISION ON THE JUDGE'S INSTRUCTIONS AND WHAT YOU HEAR?

PROSPECTIVE JUROR:  I'LL TRY MY BEST.

MR. OSBORNE:  OKAY.  THANK YOU.

AND MS. WONG -- I'M SORRY, I BELIEVE WE HAVE TWO.

JUROR NUMBER 6, HOW ARE YOU, MA'AM?

PROSPECTIVE JUROR:  YEAH, I'M FINE.

MR. OSBORNE:  DID I GET YOUR NAME RIGHT?

PROSPECTIVE JUROR:  YEAH, MS. WANG.

MR. OSBORNE:  OKAY.  WILL YOU BE ABLE TO BASE YOUR VERDICT SOLELY ON THE EVIDENCE AND THE COURT'S INSTRUCTIONS?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  AND DO YOU HAVE ANY -- ARE YOU AGAINST PUNITIVE DAMAGES IN ANY WAY?

PROSPECTIVE JUROR:  SORRY.

MR. OSBORNE:  LET ME ASK THAT A DIFFERENT WAY.

YOU HEARD -- WE DISCUSSED PUNITIVE DAMAGES A LITTLE BIT.

DO YOU HAVE ANY STRONG FEELINGS ONE WAY OR THE OTHER ABOUT THAT?

PROSPECTIVE JUROR:  NO.

MR. OSBORNE:  SO YOU'LL KEEP AN OPEN MIND AND LISTEN TO ALL OF THE EVIDENCE?

PROSPECTIVE JUROR:  YEAH.

MR. OSBORNE:  ALL RIGHT.  THANK YOU.

MR. DUMALAG, JUROR NUMBER 17.  DID I GET YOUR NAME RIGHT?

PROSPECTIVE JUROR:  YES.

MR. OSBORNE:  HOW ARE YOU DOING TODAY?

PROSPECTIVE JUROR:  I'M OKAY, SIR.

MR. OSBORNE:  GOOD.  HOW DO YOU FEEL ABOUT ANY OF THE TOPICS THAT WE'VE JUST DISCUSSED?

PROSPECTIVE JUROR:  SAY AGAIN.

MR. OSBORNE:  DO YOU HAVE ANY STRONG FEELINGS ABOUT ANY OF THE TOPICS THAT WE'VE DISCUSSED SO FAR?

PROSPECTIVE JUROR:  I HAVE SOME KNOWLEDGE -- I GET SOME KNOWLEDGE.  AND, YOU KNOW, THIS IS MY FIRST TIME, SO I FEEL SO NERVOUS --

MR. OSBORNE:  SURE.  I CAN IMAGINE.

PROSPECTIVE JUROR:  -- TO BE IN COURT.

MR. OSBORNE:  RIGHT.  AND THEN YOU HAVE TO TALK IN FRONT OF EVERYBODY.

PROSPECTIVE JUROR:  I KNOW.  I KNOW.

MR. OSBORNE:  BUT WILL YOU KEEP AN OPEN MIND AND

HEAR ALL OF THE EVIDENCE?

PROSPECTIVE JUROR: OF COURSE.

MR. OSBORNE: DO YOU HAVE ANY ISSUES WITH PUNITIVE DAMAGES OR --

PROSPECTIVE JUROR: NO, SIR.

MR. OSBORNE: DO YOU THINK THERE'S TOO MANY LAWSUITS TODAY?

PROSPECTIVE JUROR: I THINK SO, SIR.

MR. OSBORNE: WHAT KIND OF CASES DO YOU NOT LIKE?

PROSPECTIVE JUROR: IT'S LIKE USING THOSE CREDIT CARDS WITHOUT PERMISSION.

MR. OSBORNE: OH, YEAH.

PROSPECTIVE JUROR: IDENTITY THEFT.

MR. OSBORNE: YEAH. BUT THERE'S TOO MANY CASES OF IDENTITY THEFT?

PROSPECTIVE JUROR: YES, SIR.

MR. OSBORNE: AND YOU UNDERSTAND THAT COMENITY BANK, THEY'RE -- YOU CAN'T HOLD THEM RESPONSIBLE FOR ANY OTHER BANKING INSTITUTIONS.

CAN YOU DO THAT?

PROSPECTIVE JUROR: I DON'T THINK SO, SIR. I CANNOT DECIDE RIGHT NOW MY ANSWER.

MR. OSBORNE: OKAY. SO YOU WOULD HAVE TO WAIT UNTIL YOU HEAR ALL OF THE EVIDENCE?

PROSPECTIVE JUROR: YES, SIR.

MR. OSBORNE: OKAY. AND YOU COULD BE FAIR TO BOTH SIDES?

PROSPECTIVE JUROR: OF COURSE, SIR.

MR. OSBORNE: OKAY. THANK YOU, YOUR HONOR.

THE COURT: THANK YOU. MR. NARITA.

MR. NARITA: ONE MOMENT, YOUR HONOR.

(PAUSE IN PROCEEDINGS.)

MR. NARITA: JUST A FEW QUESTIONS, YOUR HONOR.

MR. RODRIGUEZ, THANK YOU FOR SHARING YOUR EARLIER -- YOU SHARED A LOT OF INFORMATION WITH US WHEN MR. OSBORNE ASKED YOU SOME QUESTIONS, AND THEN I DIDN'T GET A CHANCE TO TALK TO YOU BEFORE. AND I WAS, OF COURSE, SCRIBBLING MY NOTES FURIOUSLY, SO SOME OF MY NOTES MAY NOT BE RELIABLE.

BUT I RECALL SOMETHING ALONG THE LINES OF A COMMENT YOU MADE ABOUT BIGGER PARTIES WITH MORE MONEY HAVING AN ADVANTAGE.

AND I DON'T KNOW IF I WROTE THAT DOWN RIGHT OR I DON'T KNOW IF I CAPTURED YOUR COMMENT RIGHT. SO I WANTED YOU TO TALK ABOUT THAT.

PROSPECTIVE JUROR: NO. YEAH, I JUST FEEL LIKE BIGGER PARTIES, OR, LIKE, BANKS, THEY'RE ALWAYS GOING TO BE ABLE TO HIRE THE BEST PERSONNEL OR LAWYERS FOR THE CASE, AND I FEEL LIKE EVEN IF THE OTHER -- THE PLAINTIFF, EVEN IF THEY'RE RIGHT, THE OTHER PARTY WILL END UP WINNING BECAUSE OF THE MONEY.

MR. NARITA: OKAY. WOULD YOU GIVE MR. OSBORNE AND

MR. LOKER A FAIR CHANCE TO PROVE THEIR CASE ON BEHALF OF THEIR CLIENT? THEY'RE HERE AND READY TO GO. WOULD YOU BELIEVE THAT THEY WOULD HAVE A FAIR SHAKE HERE?

PROSPECTIVE JUROR: YEAH, I WOULD.

MR. NARITA: IT WOULD DEPEND, WOULD IT NOT, ON WHATEVER KIND OF EVIDENCE THAT YOU SAW CAME INTO THE COURT; RIGHT?

PROSPECTIVE JUROR: CAN YOU REPEAT THAT.

MR. NARITA: YEAH. I MEAN, WOULD YOUR, WOULD YOUR -- I GUESS IT SOUNDS LIKE YOU HAVE A LITTLE BIT OF A PREDISPOSITION THAT THE PARTY THAT HAS MORE MONEY MAYBE GETS BETTER REPRESENTATION IN A LAWSUIT.

IS THAT A FAIR WAY TO CAST IT?

PROSPECTIVE JUROR: YEAH, YEAH.

MR. NARITA: OKAY. AND THAT'S A FAIR FEELING TO HAVE. I MEAN, EVERYBODY SHOULD HAVE THEIR OWN FEELINGS ABOUT LAWYERS OR PARTIES AND NONE OF THIS IS TRYING TO CONVINCE YOU TO THINK OTHERWISE. THAT'S NOT WHAT WE WANT TO DO HERE.

THAT'S REALLY THE BEAUTY OF THE JURY PROCESS IS, FRANKLY, EVERYBODY BRINGS THEIR OWN EXPERIENCES INTO THE JURY ROOM AND THE JURY PROCESS. AND IT'S THE BEAUTY -- AS HER HONOR SAID, IT'S THE MIRACLE OF ALL OF YOU COMING TOGETHER AND COLLABORATING IN THE JURY ROOM THAT MAKES IT ALL SYNC.

SO I GUESS THE QUESTION IS THAT YOU HAVE A VERY REASONABLE BELIEF ABOUT THE ADVANTAGES THAT PARTIES MIGHT HAVE.

DO YOU THINK THAT THAT'S GOING TO HINDER YOUR ABILITY TO TAKE IN ALL OF THE EVIDENCE AND PARTICIPATE WITH YOUR OTHER JURORS AT THE END OF THE CASE?

PROSPECTIVE JUROR:  I DON'T THINK IT WOULDN'T.  I DON'T KNOW.  I FEEL LIKE I WOULD JUST BE -- I WOULD SIDE WITH -- WHAT IS IT? -- I DON'T KNOW.  I GUESS I WOULD MORE SIDE WITH THE PLAINTIFF THAN, YOU KNOW, THE OTHER PARTY OBVIOUSLY. YEAH.

MR. NARITA:  IS THAT -- DO YOU THINK THAT'S A REFLECTION, A LITTLE BIT, OF YOUR NATURAL BELIEF THAT THE DEFENDANT HAS KIND OF A MORE ADVANTAGE OVER THE PLAINTIFF ANYWAY?

PROSPECTIVE JUROR:  YEAH, I WOULD THINK SO.

MR. NARITA:  AND, AGAIN, IT'S OKAY.  EVERYONE SHOULD COME INTO THE JURY ROOM WITH THEIR OWN IDEAS, THEIR OWN PERSONALITIES, THEIR OWN DEEP FEELINGS ABOUT THINGS.

BUT WHAT WOULD MATTER IN THIS CASE, IF YOU WERE TO SERVE, WOULD BE WHAT EVIDENCE CAME BEFORE YOU AND WHAT YOU, WHAT YOU THOUGHT ABOUT THAT EVIDENCE, AND THEN HOW YOU AND YOUR OTHER JURORS WORKED TOGETHER TO EVALUATE IT.

DO YOU THINK YOU WOULD BE ABLE TO BE, YOU KNOW, A GOOD, VIGOROUS PARTICIPANT IN THAT PROCESS AND THEN FOLLOW THE COURT'S INSTRUCTIONS THAT SHE GIVES YOU ON WHAT THE LAW IS?

PROSPECTIVE JUROR:  YEAH, IF ALL OF THE EVIDENCE IS PRESENTED AND, YOU KNOW, EVERYTHING WAS REVIEWED EARLY, THEN I

THINK I WOULD BE ABLE TO DO IT.

MR. NARITA:  OKAY.  AND IF THAT ALL HAPPENS, DO YOU THINK YOU WOULD BE FAIR IN DECIDING, BASED ON THAT EVIDENCE, WHETHER EITHER THE PLAINTIFF OR THE DEFENDANT SHOULD BE THE PREVAILING PARTY?

PROSPECTIVE JUROR:  YEAH, I THINK SO.

MR. NARITA:  AGAIN, THANK YOU.  IT'S AN UNCOMFORTABLE PROCESS FOR EVERYBODY TO HAVE TO TRY TO PUT PEOPLE ON THE SPOT, BUT WE DO WANT TO, YOU KNOW, HEAR FROM YOU AND THANK YOU FOR SHARING CANDIDLY THE WAY YOU FEEL.

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  I THINK I JUST HAVE ONE MORE, YOUR HONOR, IF I HAVE THE TIME.  I'M GETTING A FEELING THAT PERHAPS I DON'T HAVE THE TIME.

THE COURT:  YOU DON'T, BUT I'LL ALLOW A LITTLE LEAVE.  VERY SHORT, MR. NARITA.

MR. NARITA:  I'LL MAKE IT VERY SHORT.

MS. WANG, JUROR NUMBER 7.  MS. WANG, WE SPOKE EARLIER A LITTLE BIT.

ONE OF THE THINGS I DIDN'T HAVE A CHANCE TO ASK YOU ABOUT FROM YOUR QUESTIONNAIRE IS YOUR OBSERVATION THAT YOU MADE ABOUT WELLS FARGO BANK AND THEM OPENING UP AN ACCOUNT, OPENING UP ACCOUNTS IN A WAY THAT I GUESS YOU THOUGHT WAS INAPPROPRIATE.

WOULD YOU MIND ELABORATING ON THAT A LITTLE BIT FOR US?

PROSPECTIVE JUROR:  YEAH.  I THINK IT WAS JUST

NOTING SOME MISTRUST OF LARGER BANKS AND SOME PRACTICES THAT THEY MAY HAVE DONE IN THE PAST TO I GUESS INFLUENCE WHAT THEIR PERFORMANCE LOOKED LIKE.

MR. NARITA:  YEAH.  SO YOU REMEMBER READING THINGS IN THE NEWS ABOUT THAT.

WERE YOU A WELLS FARGO ACCOUNT HOLDER?  DID ANYTHING PERSONALLY HAPPEN TO YOU ABOUT THAT, OR IS THIS JUST SOMETHING THAT YOU TOOK IN FROM YOUR KNOWLEDGE OF WHAT YOU SEE IN THE NEW SYSTEM?

PROSPECTIVE JUROR:  YEAH, I WAS AN ACCOUNT HOLDER.

MR. NARITA:  YOU WERE?

PROSPECTIVE JUROR:  YEAH.

MR. NARITA:  OKAY.  SO DID THAT IMPACT THE WAY YOU FELT ABOUT WELLS FARGO OR YOUR RELATIONSHIP WITH WELLS FARGO IN ANY SIGNIFICANT WAY?

PROSPECTIVE JUROR:  YES, IN -- YEAH, LOTS OF MISTRUST OF LARGER INSTITUTIONS.

MR. NARITA:  WELL, AND IT'S UNDERSTANDABLE IF YOU'VE HAD A BAD EXPERIENCE WITH WELLS FARGO.

THE COURT:  MR. NARITA.

MR. NARITA:  DO YOU THINK, EVEN THOUGH YOU'VE HAD WHAT SOUNDS LIKE A BAD EXPERIENCE WITH WELLS FARGO, THAT YOU WOULD BE ABLE TO WAIT FOR ALL OF THE EVIDENCE TO COME IN IN THIS CASE WITH THIS BANK AND THIS PLAINTIFF TO -- BEFORE YOU SORT OF MAKE UP YOUR MIND ABOUT WHAT THE EVIDENCE WILL SHOW?

PROSPECTIVE JUROR:  YEAH, I'LL DO MY BEST EFFORT.

MR. NARITA:  OKAY.  WELL, THANK YOU VERY MUCH FOR THAT.

THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  NICK, YOU CAN PASS IT DOWN TO JUROR NUMBER 3, MR. RODRIGUEZ.

SO I HAD A COUPLE OF FOLLOW-UP QUESTIONS IN PART FROM YOUR FOR, AND SO I'M GOING TO REFER TO YOU BY YOUR NUMBER AND TO RESPECT YOUR PRIVACY THAT WAY.

BUT YOU INDICATED THAT IN YOUR FORM THAT SERVING FOR THE JURY MIGHT BE A FINANCIAL HARDSHIP.  I JUST WANTED TO CONFIRM, GIVEN THE FACT THAT THIS TRIAL IS ONLY A WEEK, WHETHER OR NOT THERE ARE ANY CONCERNS?

PROSPECTIVE JUROR:  YEAH.  JUST BECAUSE MY JOB, LIKE, THEY WOULDN'T PAY ME FOR -- EVEN IF I WERE TO SERVE LIKE THE WHOLE WEEK, THEY WOULDN'T PAY ME FOR COMING HERE.

THE COURT:  AND WHAT WOULD THE IMPACT OF THAT BE?

PROSPECTIVE JUROR:  JUST NOT BEING -- BECAUSE I HAVE TO PAY RENT, YOU KNOW, UTILITIES, FOOD, AND I'M KIND OF COUNTING ON THAT MONEY.

THE COURT:  OKAY.  IF IT WAS A CHOICE, WOULD YOU RATHER DEFER YOUR JURY SERVICE THEN?

PROSPECTIVE JUROR:  YES.

THE COURT:  MS. BAO, LET ME ASK YOU JUST QUICKLY, WHAT DAY WAS THAT TRIP?  IT WAS MONDAY; CORRECT?

PROSPECTIVE JUROR:  I'M DEPARTING SAN FRANCISCO ON MONDAY.

THE COURT:  OKAY.  THANK YOU.  AND THAT'S TO CHINA?

PROSPECTIVE JUROR:  YES.

THE COURT:  ALL RIGHT.  AND JUROR NUMBER 21, LET ME ASK -- HI.  I HAVEN'T HEARD FROM YOU AT ALL.  GOOD MORNING.

PROSPECTIVE JUROR:  GOOD MORNING.

THE COURT:  SO YOU -- HOW ARE YOU DOING?

PROSPECTIVE JUROR:  I'M DOING OKAY.

THE COURT:  ALL RIGHT.  YOU MENTIONED JUST POSSIBLY HAVING A LITTLE BIT OF A MEDICAL ISSUE OR SO FORTH WHICH MIGHT IMPACT YOUR ABILITY TO PARTICIPATE.

HOW ARE YOU FEELING AND WHAT DO YOU THINK?

PROSPECTIVE JUROR:  SO I MENTIONED THAT I HAD MIGRAINES.  I GET MIGRAINES.  THEY MIGHT BE MILD, THEY MIGHT BE INTENSE.  IT MIGHT BE INFREQUENT AS ONCE A MONTH TO MAYBE A FEW TIMES A WEEK, AND IT JUST COMES.  IT KIND OF IS UNPREDICTABLE AT ALL TIMES.  SO THAT'S -- I JUST MENTIONED THAT.

THE COURT:  OKAY.  DO YOU BELIEVE THAT'S A RISK IN TERMS OF SERVING ON THIS JURY FOR A WEEK?

PROSPECTIVE JUROR:  I MEAN, IF I DON'T HAVE MIGRAINES, THAT'S FINE.

BUT, I MEAN, IF I DID HAVE ONE, IT'S LIKE A MILD ONE, MAYBE I CAN BE ATTENTIVE.

BUT, LIKE, IF IT'S INTENSE, LIKE, I WOULD BE CLOSING MY

EYES BECAUSE THE LIGHTS WOULD BE REALLY BOTHERING ME.

THE COURT: OKAY. ALL RIGHT.

THANK YOU. LET ME JUST DOUBLE CHECK MY NOTES REGARDING A COUPLE OF ADDITIONAL THINGS.

SO PARTICULARLY FOR THOSE OF YOU WHO ARE SEATED IN WHAT I'M GOING TO DESCRIBE AS THE JURY BOX -- WE'RE GOING TO TAKE A BREAK SHORTLY, AND I'LL GIVE YOU SOME INSTRUCTIONS REGARDING THAT -- BUT IS THERE ANYTHING ELSE THAT HEARING THE QUESTIONS THAT YOU'VE HEARD, YOU FELT LIKE YOU DIDN'T HAVE THE OPPORTUNITY TO SAY? SO IN PARTICULAR I WOULD SAY THESE TWO ROWS AND THEN THE FIRST ROW THERE.

YES, MS. WANG. I'M SORRY, JUROR NUMBER 7, YES.

PROSPECTIVE JUROR: YEAH, I JUST WANTED TO SAY THAT I SAW THE DATES OF THE TRIAL AND THE LAST DATE WAS ON NOVEMBER 7TH, POTENTIALLY.

I THINK -- I DIDN'T NOTE THIS IN THE QUESTIONNAIRE BECAUSE I THINK THE ON CALL PERIOD WAS PRIOR TO THAT FOR ME, BUT I ALSO HAVE A PREPLANNED TRIP TO VISIT MY PARENTS ABROAD, AND I'M LEAVING ON THE 6TH. SO I JUST WANTED TO MENTION THAT.

THE COURT: OKAY. IF ANYBODY ELSE HAS ANY PREPLANNED, PREBOOKED PURCHASED TICKETS, CAN YOU RAISE YOUR HAND BY LETTING US KNOW NOW.

YES.

PROSPECTIVE JUROR: WELL, MY NOVEMBER 7TH, THAT IS ACTUALLY THE DAY THAT I'M GOING OUT OF TOWN. MY FAMILY HAS

BOOKED A TRIP FOR, LIKE, MY BIRTHDAY PARTY COMING UP, AND I DON'T KNOW IF I WILL BE HERE ON THAT PARTICULAR DAY BECAUSE THE COURT -- THE QUESTIONNAIRE SAID AROUND LIKE NOVEMBER 5TH.  I THOUGHT IT WAS LIKE -- BECAUSE THAT'S WHAT IT JUST SAID ON PAPER, RIGHT?

THE COURT:  UH-HUH.

PROSPECTIVE JUROR:  AND --

THE COURT:  SO WHERE IS THE TRIP TO?

PROSPECTIVE JUROR:  A CASINO, I BELIEVE.

THE COURT:  IS IT LOCAL?

PROSPECTIVE JUROR:  YEP.

THE COURT:  OKAY.  IS IT DURING THE DAYTIME?

PROSPECTIVE JUROR:  THAT'S WHEN WE'RE GOING TO TAKE OFF DURING THE DAY, YEAH.

THE COURT:  WHERE IS IT?

PROSPECTIVE JUROR:  BLACK OAK CASINO.  HAS ANYONE EVER BEEN THERE?

THE COURT:  AND WHERE IS BLACK OAK?

PROSPECTIVE JUROR:  I THINK IT'S JUST LIKE A TWO OR THREE HOUR DRIVE FROM HERE.

THE COURT:  OKAY.  AND YOU'RE TALKING ABOUT FRIDAY THE 7TH; CORRECT?

PROSPECTIVE JUROR:  YEP.

THE COURT:  ALL RIGHT.  AND HOW LONG IS THE TRIP FOR?

PROSPECTIVE JUROR:  LIKE TWO, THREE DAYS, I BELIEVE.

THE COURT:  OKAY.  SO IF WE COMPLETED -- IF WE FINISHED ON FRIDAY, WOULD YOU BE ABLE TO STILL PARTICIPATE AND THEN BE A LITTLE BIT DELAYED?

PROSPECTIVE JUROR:  I'LL HAVE TO ASK ABOUT THAT. I'LL SEE.  I'M NOT A MIRACLE WORKER.  I'LL ASK AROUND.

THE COURT:  NEITHER AM I EVEN IF I TRY MY BEST.

BUT IN TERMS OF ASKING AROUND, IS THERE ANYONE YOU WOULD NEED TO CALL DURING THE BREAK OR OTHERWISE?

PROSPECTIVE JUROR:  I CAN JUST CALL MY FAMILY MEMBERS AND LET THEM KNOW ABOUT THE SITUATION AND THINGS AND IF I HAVE TO.  WOULD I BE FORCED TO BE HERE ON THE 7TH FOR LIKE --

THE COURT:  IF THE TRIAL WAS HAPPENING, WE WOULD ASK THAT YOU CONTINUE TO SERVE THROUGH THE 7TH.

PROSPECTIVE JUROR:  ALL RIGHT.

THE COURT:  AND SO IF THE COURT WERE TO DEFER YOU AND YOU WOULD HAVE TO COME BACK INTO THE POOL FOR -- WITHIN THE NEXT 12 MONTHS, WOULD YOU PREFER TO DO THAT INSTEAD?

PROSPECTIVE JUROR:  WE'LL SEE.  WE'LL SEE.  I'M NEW TO THIS, SO I REALLY DON'T KNOW WHAT I'M DOING HALF THE TIME.

THE COURT:  I ALSO RELATE TO THAT FEELING SOMETIMES. SO -- BUT IN TERMS OF -- BECAUSE YOUR OPTION WOULD BE TO BE DEFERRED AND BE RECALLED DURING THE NEXT 12 MONTHS OR TO DELAY. SO WHICH -- OH, OR TO BE DELAYED FOR THIS JURY POOL.

PROSPECTIVE JUROR:  I'M GOING TO MAKE A PHONE CALL

AT THE BREAK.

THE COURT:  OKAY.  I'LL HAVE YOU UPDATE MADAM CLERK OR ONE OF THE STAFF MEMBERS AFTERWARDS.  OKAY?

PROSPECTIVE JUROR:  THANK YOU.

THE COURT:  ANYONE ELSE IN THE FIRST TWO ROWS, THESE TWO FIRST ROWS IN THE BOX OR THE FIRST ROW IN THE BACK?

PROSPECTIVE JUROR:  HI.  I'M JUROR 27.  I DON'T HAVE ANY VACATION PLANS.  I AM CURRENTLY WAITING TO SEE SOME TEST RESULTS, IF MY SON HAS CANCER.

THE COURT:  I'M SO SORRY.

PROSPECTIVE JUROR:  SO I -- THAT'S -- I HAVE TO HAVE MY PHONE OFF, AND I KNOW THAT'S WHAT I'LL BE THINKING ABOUT. SO NO PLANS, BUT HOPEFULLY EVERYBODY HAS POSITIVE THOUGHTS.

THE COURT:  I'M SENDING VERY POSITIVE THOUGHTS.  I'M SO SORRY.

AND WHEN ARE YOU EXPECTING THOSE RESULTS?

PROSPECTIVE JUROR:  LAST FRIDAY.  IT'S THROUGH KAISER.  SO IF ANYBODY HAS KAISER, YOU KNOW, YOU JUST WAIT.

THE COURT:  SO I WILL SAY ACROSS THE BOARD I ASK YOU TO TURN OFF YOUR PHONES IN TERMS OF THIS FIRST SESSION, BUT IF THERE'S AN EMERGENCY AND SO FORTH, WE HAVE A PHONE NUMBER RIGHT HERE IN THE COURTROOM, AND YOU ARE MORE THAN WELCOME, IF THERE'S AN EMERGENCY OR YOU NEED TO FORWARD SOMETHING LIKE THAT TO THAT NUMBER, PLEASE FEEL FREE.  YOU CAN COORDINATE THAT WITH MY STAFF.  SO I'M SO SORRY.

ALL RIGHT.  ANYONE FURTHER?  YES.

JUROR NUMBER 5.

PROSPECTIVE JUROR:  SO FOR NEXT WEEK I NOTICE THAT THE HOURS FOR THE COURT IS 9:00 TO 4:00.  HOWEVER, I HAVE TO PICK UP MY COUSIN FROM HIGH SCHOOL AT AROUND 2:30 TO 3:00 BECAUSE HER PARENTS ARE GOING TO BE ON VACATION FOR THAT WEEK.

THE COURT:  IS THERE ANYBODY ELSE WHO CAN PICK UP? CAN YOU COORDINATE THAT?  IT'S ONE OF THE REASONS WHY I ASKED YOU ALL TO COME EARLIER, WAS TO MAKE SURE THAT WE CAN MAKE -- SO YOU COULD MAKE YOUR ARRANGEMENTS AND SUCH IF YOU'RE SELECTED.

PROSPECTIVE JUROR:  UNFORTUNATELY, IT'S ME.

THE COURT:  DO YOU THINK YOU MIGHT BE ABLE TO MAKE ARRANGEMENTS WITH SOME OTHER PEOPLE?

PROSPECTIVE JUROR:  I CAN TRY, BUT I'M THE ONLY ONE WITH A CAR.

THE COURT:  OKAY.  AND THEN IN TERMS OF DEFERRING IF YOUR CHOICE WAS TO DEFER AND BE RECALLED WITHIN THE NEXT 12 MONTHS, WOULD YOU PREFER TO DO THAT?

PROSPECTIVE JUROR:  YEAH, FINE.

THE COURT:  OKAY.  ALL RIGHT.

LET'S GO AHEAD AND PASS IT TO MS. MA.

PROSPECTIVE JUROR:  I LEAVE IN DECEMBER FOR SIX MONTHS.

THE COURT:  YOU LEAVE IN DECEMBER?

PROSPECTIVE JUROR:  YEAH.  SO BEFORE IS FINE.

THE COURT:  OKAY.  THANK YOU FOR LETTING ME KNOW. WE ARE JUST TALKING ABOUT TRIAL FOR NEXT WEEK.  SO I APPRECIATE YOU LETTING ME KNOW.

LAST BUT NOT LEAST, YES, JUROR NUMBER 17.

PROSPECTIVE JUROR:  YES, GOOD MORNING.  I HAVE A DOCTOR APPOINTMENT ON NOVEMBER 3RD, BUT I DON'T KNOW THE NEXT DATE FOR THE NEXT ONE BECAUSE I HAVE AN INJURY TO MY RIGHT SHOULDER, SO I NEED TO GO TO THE SPECIALIST.  SO I NEED TO, LIKE, WAIT FOR THE CALL BY THE DOCTOR.  SO I DON'T KNOW IF I COME ON THAT DAY.

THE COURT:  SO YOU'RE WAITING FOR YOUR DOCTOR FOR A CALL?

PROSPECTIVE JUROR:  YES, I HAVE A DOCTOR APPOINTMENT CALL FOR NOVEMBER 3RD.

THE COURT:  UH-HUH.

PROSPECTIVE JUROR:  AND SHE SAID THAT JUST WAIT LIKE THREE OR FOUR DAYS AND YOU'RE GOING TO GO TO THE DOCTOR SPECIALIST, BUT I DON'T KNOW WHAT IS THE DATE, MA'AM.  I DON'T KNOW THE DATE.  I HAVE TO WAIT FOR THAT.

THE COURT:  OKAY.  SO YOU DON'T HAVE THE APPOINTMENT SCHEDULED AT THIS POINT?

PROSPECTIVE JUROR:  YES, MA'AM, NOT RIGHT NOW.  BUT I DON'T KNOW IF THEY HAVE AN APPOINTMENT ON THE 7TH, THEN I NEED TO GO, MA'AM.

THE COURT:  SO IF YOU'RE SELECTED FOR THE JURY, I WOULD ASK WHEN THEY CALL THAT YOU TRY TO SCHEDULE FOR THE FOLLOWING WEEK?

PROSPECTIVE JUROR:  THAT'S NOT A PERSONAL CALL, MA'AM.  THAT'S GOING TO THE DOCTOR.  THE PHONE CALL IS ON NOVEMBER 3RD.

THE COURT:  UH-HUH.

PROSPECTIVE JUROR:  AND THEN THEY SAID THAT YOU'RE GOING TO WAIT FOR THREE TO FOUR DAYS, AND THEN YOU'RE GOING TO GO TO THE DOCTOR TO SEE PERSON.

THE COURT:  OKAY.  SO CAN SOMEONE IN YOUR FAMILY TAKE THAT CALL?

PROSPECTIVE JUROR:  NO, I HAVE A DAUGHTER WORKING, AND I HAVE ANOTHER SON WORKING IN ANOTHER STATE.  NO ONE CAN HELP ME, MA'AM.

THE COURT:  SO IF YOU'RE CALLED FOR THE JURY IN THE NEXT 12 MONTHS, YOU WOULD PREFER THAT?

PROSPECTIVE JUROR:  I WOULD DO MY BEST, MA'AM.

THE COURT:  TO COME?

PROSPECTIVE JUROR:  TO COME AND ATTEND AND THE NEXT TWO MONTHS YOU SAID, MA'AM?

THE COURT:  I'M SAYING THAT IF YOU CHOOSE TO DEFER YOUR JURY SELECTION OR YOUR JURY DUTY, THEN YOU COULD BE RECALLED BY THE COURT ANYWHERE FROM A MONTH OR 2 FROM NOW TO WITHIN THE NEXT 10 OR 11 MONTHS.

BECAUSE OTHERWISE WHAT HAPPENS GENERALLY IS THAT ONCE YOU'VE SERVED AND YOU'VE GONE THROUGH THE WHOLE JURY SELECTION PROCESS, YOU ARE CLEAR FOR A YEAR FROM EITHER STATE COURT SERVICE OR FEDERAL COURT SERVICE.  SO YOU WOULDN'T BE RECALLED AGAIN.  SO ALL OF THOSE WHO ARE PATIENTLY IN THE BACK AND YOU ARE GONE, YOU WILL BE EXCUSED FROM JURY SERVICE IN THE NEXT YEAR BECAUSE YOU WILL HAVE COMPLETED YOUR JURY SERVICE.

SO FAR I'M ASKING IF YOU ARE ASKING TO BE DEFERRED, THEN YOU'LL BE CALLED IN LESS THAN 12 MONTHS.

PROSPECTIVE JUROR:  YES, MA'AM.

THE COURT:  OKAY.  THANK YOU.

PROSPECTIVE JUROR:  YOU'RE WELCOME.

THE COURT:  SO WITH THAT WE ARE GOING TO BE TAKING OUR FIRST BREAK SHORTLY.  THIS IS GOING TO BE A LONGER BREAK BECAUSE COUNSEL AND I ARE GOING TO GET TO WORK.  SO WE ARE GOING TO TAKE INTO ACCOUNT WHAT YOU SAID, YOUR ANSWERS AND YOUR ANSWERS TO THE QUESTIONS AND YOUR QUESTIONNAIRES AND EVERYTHING ELSE, AND MAKE SOME CHOICES AND DISCUSS WHAT THE NEXT PLANS, THE NEXT STEPS FROM THERE.

PROSPECTIVE JUROR:  DID I MENTION I HAVE A MIDTERM THAT IS DUE ON MONDAY?

THE COURT:  SO I'M GOING TO ASK THAT YOU -- WE'RE GOING TO DO THIS.  I'M GOING TO FINISH GIVING THESE INSTRUCTIONS, AND THEN WE CAN CONTINUE ANSWERING ANY OTHER QUESTIONS OR QUESTIONS THAT YOU HAVE.  AND I MAY ASK THAT YOU

CALL YOUR FAMILY MEMBERS IF YOU NEED TO IN THE INTERIM.

SO WE'RE GOING TO TAKE ABOUT 45 MINUTES TO DO THIS, JUST BEING REALISTIC.  SO YOU'LL HAVE A 45 MINUTE BREAK TO MAKE THE PHONE CALLS THAT YOU NEED TO.

I'M JUST LOOKING AT THE TIME.  I'LL MAKE IT A LITTLE BIT SHORTER THAN THAT.

SO I'M GOING TO HAVE YOU ALL COME BACK AT 11:50.  A COUPLE MINUTES BEFORE WOULD BE PREFERRED BECAUSE MADAM CLERK IS GOING TO MEET YOU OUTSIDE OF THE DOOR.  WE'LL HAVE YOU COME IN.

AND THEN WE EXPECT TO BE READY TO DO A FEW OTHER THINGS AND THEN SELECT A JURY.

SO IT WILL BE -- IT'S BASICALLY TO GET YOU OUT SHORTLY AFTER NOON OR AT THE LATEST BY 12:30.

LET ME GIVE YOU SOME SPECIFIC INSTRUCTIONS, WHICH I NEED TO GIVE YOU.  THESE -- I'M GOING TO BE READING DOWN BECAUSE THESE ARE PART OF THE INSTRUCTIONS THAT EVERY COURT HAS TO GIVE IN TERMS OF BREAKS AND SO FORTH.

SO IN TERMS OF THIS BREAK, SOME INSTRUCTIONS THAT I MUST GIVE, AS I MENTIONED.  SO I'VE ORDERED THE PARTIES IN THIS CASE NOT TO SPEAK TO YOU ALL.  SO IF YOU SEE THEM IN THE HALLWAY, IT'S NOT BECAUSE THEY'RE BEING RUDE.

IF YOU SAY GOOD MORNING TO THEM AND THEY DON'T RESPOND, IT'S NOT BECAUSE THEY'RE TRYING TO BE RUDE.  IT'S MERELY BECAUSE YOU'RE POTENTIAL JURORS, AND IT'S IMPORTANT THAT YOU'RE THE DECISION -- THE DECISIONS YOU'VE MADE WHICH HAVE BEEN

REPEATEDLY STATED IN THE COURTROOM ARE FROM THE FACT AND THE INTERACTIONS THAT YOU'RE HAVING IN THE COURTROOM AND NOT FROM ANYTHING THAT HAPPENS OUTSIDE OF THE COURTROOM.

SO I'VE ORDERED COUNSEL AND THE PARTIES NOT TO SPEAK TO YOU.

IN ADDITION, IN TERMS OF YOUR CONDUCT GENERALLY, LET ME TALK TO YOU ABOUT THE INSTRUCTION WHICH EVERY JUROR HEARS HERE IN THE NORTHERN DISTRICT.

FIRST, IT'S IMPERATIVE THAT YOU KEEP AN OPEN MIND THROUGHOUT THE TRIAL AND DO NOT DECIDE WHAT THE VERDICT SHOULD BE UNTIL YOU AND YOUR FELLOW JURORS HAVE COMPLETED YOUR DELIBERATIONS AT THE END OF THE CASE.

SECOND, BECAUSE YOU MUST DECIDE THIS CASE BASED ONLY ON THE EVIDENCE RECEIVED IN THE CASE AND ON MY INSTRUCTIONS AS TO THE LAW THAT APPLIES, YOU MUST NOT BE EXPOSED TO ANY OTHER INFORMATION ABOUT THE CASE OR TO THE ISSUES IT INVOLVES DURING THE COURSE OF YOUR JURY DUTY.

THUS, UNTIL THE END OF THE CASE OR UNLESS I TELL YOU OTHERWISE, I MUST INSTRUCT AS FOLLOWS:

DO NOT COMMUNICATE WITH ANYONE IN ANY WAY AND DO NOT LET ANYONE ELSE COMMUNICATE WITH YOU IN ANY WAY ABOUT THE MERITS OF THE CASE OR ANYTHING TO DO WITH IT.

THIS INCLUDES DISCUSSING THE CASE IN PERSON, IN WRITING, BY PHONE, TABLET, COMPUTER, OR ANY OTHER ELECTRONIC MEANS, VIA EMAIL, TEXT MESSAGING, OR ANY INTERNET CHATROOM, BLOG, WEBSITE,

OR APPLICATION INCLUDING BUT NOT LIMITED TO FACEBOOK, YOUTUBE, THE PLATFORM X FORMERLY KNOWN AS TWITTER, INSTAGRAM, LINKEDIN, SNAPCHAT, TIKTOK OR ANY OTHER FORMS OF SOCIAL MEDIA.  THIS APPLIES TO YOU COMMUNICATING WITH YOUR FELLOW JURORS UNTIL I GIVE YOU THE CASE FOR DELIBERATION, AND IT APPLIES TO COMMUNICATING WITH EVERYONE ELSE, INCLUDING YOUR FAMILY MEMBERS, YOUR EMPLOYER, THE MEDIA, OR PRESS AND THE PEOPLE INVOLVED IN THE TRIAL, ALTHOUGH YOU MAY NOTIFY YOUR FAMILY AND YOUR EMPLOYER THAT YOU HAVE BEEN SEATED AS A JUROR IN THE CASE AND HOW LONG YOU EXPECT THE TRIAL TO LAST.

BUT IF YOU ARE ASKED OR APPROACHED IN ANY WAY ABOUT YOUR JURY SERVICE OR ANYTHING ABOUT THIS CASE, YOU MUST RESPOND THAT YOU HAVE BEEN ORDERED NOT TO DISCUSS THE MATTER AND REPORT THE CONTACT TO THE COURT.

BECAUSE YOU WILL RECEIVE ALL OF THE EVIDENCE AND LEGAL INSTRUCTIONS THAT YOU PROPERLY MAY CONSIDER TO RETURN A VERDICT, DO NOT READ, WATCH OR LISTEN TO ANY NEWS OR MEDIA ACCOUNTS OR COMMENTARY ABOUT THE CASE OR ANYTHING TO DO WITH IT.

DO NOT DO ANY RESEARCH SUCH AS CONSULTING DICTIONARIES, SEARCHING THE INTERNET OR USING ANY REFERENCE MATERIALS AND DO NOT MAKE ANY INVESTIGATION OR IN ANY OTHER WAY TRY TO LEARN ABOUT THE CASE ON YOUR OWN.

DO NOT VISIT OR VIEW ANY PLACE DISCUSSED IN THIS CASE, AND DO NOT USE THE INTERNET OR ANY OTHER RESEARCH TO SEARCH FOR OR

VIEW ANY PLACE DISCUSSED DURING THE TRIAL.

ALSO, DO NOT DO ANY RESEARCH ABOUT THIS CASE, THE LAW, OR THE PEOPLE INVOLVED, INCLUDING THE PARTIES, THE WITNESS, OR THE LAWYERS UNTIL YOU'VE BEEN EXCUSED AS JURORS.

IF YOU HAPPEN TO READ OR HEAR ANYTHING TOUCHING ON THIS CASE IN THE MEDIA, TURN AWAY AND REPORT IT TO ME AS SOON AS POSSIBLE.

THESE RULES PROTECT EACH PARTY'S RIGHT TO HAVE THIS CASE DECIDED ONLY ON THE EVIDENCE PRESENTED HERE IN COURT. WITNESSES HERE IN COURT TAKE AN OATH TO TELL THE TRUTH AND THE ACCURACY OF THEIR TESTIMONY IS TESTED THROUGH THE TRIAL PROCESS.

IF YOU DO ANY RESEARCH OR INVESTIGATION OUTSIDE OF THE COURTROOM, OR GAIN ANY INFORMATION THROUGH IMPROPER COMMUNICATIONS, THEN YOUR VERDICT MAY BE INFLUENCED BY INACCURATE, INCOMPLETE, OR MISLEADING INFORMATION THAT HAS NOT BEEN TESTED BY THE TRIAL PROCESS.

EACH OF THE PARTIES IS ENTITLED TO A FAIR TRIAL BY AN IMPARTIAL JURY, AND IF YOU DECIDE THE CASE BASED ON THE INFORMATION NOT PRESENTED IN THE COURT, YOU WILL HAVE DENIED THE PARTIES A FAIR TRIAL.

REMEMBER, YOU HAVE TAKEN AN OATH TO FOLLOW THE RULES, AND IT'S VERY IMPORTANT THAT YOU FOLLOW THESE RULES.

A JUROR WHO VIOLATES THESE RESTRICTIONS JEOPARDIZES THE FAIRNESS OF THIS PROCEEDING AND A MISTRIAL COULD RESULT

REQUIRING THE ENTIRE TRIAL PROCESS TO START OVER.

IF ANY JUROR IS EXPOSED TO ANY OUTSIDE INFORMATION, PLEASE NOTIFY THE COURT IMMEDIATELY THROUGH MY COURTROOM DEPUTY.

ALL RIGHT.  THAT WAS A MOUTHFUL AND JUST THE INSTRUCTIONS THAT I'M REQUIRED TO GIVE YOU, BUT THEY'RE IMPORTANT INSTRUCTIONS.

SO IF YOU HAVE ANY QUESTIONS -- I'LL REPEAT A SHORTER VERSION OF THAT GENERALLY, BUT IF YOU HAVE ANY QUESTIONS, PLEASE LET US KNOW.

SO WE ARE GOING TO TAKE A BREAK UNTIL ABOUT 11:50.  I ASK THAT YOU LINE UP, AND LAURA CAN GIVE YOU ANY ADDITIONAL INSTRUCTIONS SHE NEEDS TO GIVE YOU, BUT I ASK THAT YOU LINE UP OR SIT OUTSIDE IN THE HALLWAY BEFORE THEN.

IN THE MEANTIME, YOU CAN GO DOWN TO THE JURY ASSEMBLY ROOM OR WHATEVER YOU NEED TO DO.  THANK YOU.

(PROSPECTIVE JURY PANEL OUT AT 11:14 A.M.)

THE COURT:  COUNSEL, YOU MAY BE SEATED FOR A MOMENT.

SO WE'RE NOW IN THE COURTROOM OUTSIDE OF THE PRESENCE OF THE JURY.

SO HERE'S WHAT I'D SUGGEST.  I KNOW YOU WANT TO TALK TO YOUR TEAMS FIRST.  HOW LONG DO YOU THINK YOU NEED TO TALK TO YOUR TEAMS BEFORE WE GO BACK TO THE JURY ROOM?

MR. LOKER:  FIVE MINUTES, YOUR HONOR.

MR. NARITA:  I WAS GOING TO SAY FIVE MINUTES.

THE COURT:  GREAT.  SO LET'S DO THIS.  I'M GOING TO

GO BACK WITH MY OWN TEAM, AND ONE OF THE LAW CLERKS WILL COME GET YOU AND ESCORT YOU BACK TO OUR JURY ROOM, WHICH YOU WILL GET TO SEE ANYWAY FOR THE FIRST TIME, SO THAT WILL BE GOOD.

MR. LOKER:  THANK YOU, YOUR HONOR.

THE COURT:  OKAY.  THANK YOU.  I'LL SEE YOU SHORTLY. WE'RE NOW IN RECESS.

(RECESS FROM 11:16 A.M. UNTIL 12:06 P.M.)

(PROSPECTIVE JURY PANEL IN AT 12:06 P.M.)

THE COURT:  YOU MAY BE SEATED.

SO COUNSEL AND I HAVE BEEN AT HARD WORK DURING THIS BREAK. I APPRECIATE YOUR PATIENCE.  I'M SORRY THAT WE RAN A COUPLE MINUTES OVER.

I WANT TO EXPLAIN WHAT IS GOING TO BE HAPPENING NEXT. BEFORE I BEGIN DISCUSSING THE JURORS, YOU ALL THUS FOR, AND CHALLENGES FOR WHAT IS CALLED CAUSE.

SO THERE ARE TWO TYPES OF CHALLENGES.  ONE IS FOR CAUSE BASED ON EACH SIDE HAVING AN OPPORTUNITY TO BASICALLY STATE REASONS OR WHY YOU MAY NOT BE THE RIGHT JUROR FOR THIS CASE. NOT THE RIGHT JUROR GENERALLY, BECAUSE IT REALLY IS TRYING TO FIND A FIT FOR THIS CASE.

THE SECOND IS A PEREMPTORY CHALLENGE, WHICH THEY DON'T HAVE TO STATE THE REASON FOR CAUSE.

WHAT IS GOING TO HAPPEN NOW IS COUNSEL IS GOING TO BE EXERCISING THEIR RIGHT FOR A PEREMPTORY CHALLENGE.  THEY'RE GOING TO BE PASSING A PIECE OF PAPER BACK AND FORTH IN TERMS OF

DOING THAT.

AND WE'RE JUST GOING TO WATCH THEM.  THEY'RE GOING TO BE NERVOUS.  WE'RE GOING TO WATCH THEM.  THEY WILL FINISH DOING THAT.

THIS IS THE LAST PART OF THE SELECTION PROCESS.  IT WILL JUST TAKE A COUPLE MINUTES.

WHEN THEY'RE DONE, WE'RE GOING TO CONFER VERY BRIEFLY OUTSIDE IN THE HALLWAY.

WE'RE GOING TO COME BACK IN, AND THEN WE'RE JUST GOING TO HAVE EIGHT OF YOU STAND UP AND SWEAR YOU IN AS JURORS.

SO I WILL THEN GIVE YOU FINAL INSTRUCTIONS FOR THE DAY, EXCUSE EVERYBODY ELSE, AND THEN WE WILL BE COMPLETED FOR TODAY.

SO WITH THAT, MR. LOKER, IF YOU WILL BEGIN.

(PAUSE IN PROCEEDINGS.)

MR. LOKER:  WE'RE AT TWO PASSES, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO WITH THAT I'LL ASK COUNSEL TO MEET ME IN THE HALLWAY.

YOU CAN TAKE A BRIEF STANDING STRETCHING, AND WE'LL BE BACK IN TWO SECONDS.

(PAUSE IN PROCEEDINGS.)

THE COURT:  PLEASE REMAIN SEATED.

SO I AM GOING TO ASK THE FOLLOWING JURORS TO STAND AND BE SWORN IN FOR THIS CASE:

JUROR NUMBER 3, RODRIGUEZ;

JUROR NUMBER 5, NGUYEN;

JUROR NUMBER 6, WANG;

JUROR NUMBER 10, RAMIREZ;

JUROR NUMBER 13, GUSMAN-LOPEZ;

JUROR NUMBER 15, MARTIN;

JUROR NUMBER 16, NASSAU;

JUROR NUMBER 17, DUMALAG.

MADAM CLERK, IF YOU COULD SWEAR THE JURORS IN AND ADMINISTER THE OATH.

THE CLERK:  YES.  MEMBERS OF THE JURY, PLEASE RAISE YOUR RIGHT HAND.

(SELECTED JURORS WERE GIVEN THE OATH.)

JURORS:  YES.

THE COURT:  THANK YOU.  YOU MAY BE SEATED.

SO FOR THOSE OF YOU WHO WERE NOT SWORN IN, THANK YOU FOR FILLING OUT THE QUESTIONNAIRES AND FOR COMING BACK TODAY, AND YOU'LL BE EXCUSED FROM JURY SERVICE AT THE END OF THIS SESSION.

AND, LAURA, DOES IT MAKE SENSE FOR THEM TO GO DOWN TO JURY SERVICES IMMEDIATELY AFTER?

THE CLERK:  IF YOU NEED AN ATTENDANCE SHEET OR A PARKING, YOU COULD CHECK BACK CHECK OUT WITH CLARISSA.

THE COURT:  THE OKAY.  AND FOR THOSE WHO ARE NOT JURORS IN THIS, YOU ARE NOW RELIEVED FROM THE ADMONITION THAT YOU ARE NOT TO TALK ABOUT THIS CASE.

AS I SAID, THIS EXCUSES YOU FROM JURY SERVICE IN THE NEXT YEAR, WHETHER IN STATE OR FEDERAL COURT, SO KEEP YOUR SUMMONS

OR KEEP PROOF OF YOUR JURY SERVICE SO IF A COUNTY REACHES OUT TO YOU, YOU CAN PRESENT THAT.

THANK YOU FOR YOUR SERVICE.

FOR THOSE WHO ARE PART OF OUR JURY, WELCOME AND THANK YOU.

MADAM CLERK IS GOING TO HAVE MORE INSTRUCTIONS FOR YOU AND TOUCH BASE ABOUT A COUPLE OF THINGS, BUT LET ME JUST REMIND YOU ABOUT GENERAL INSTRUCTIONS.

SO WE ASK THAT YOU ARRIVE BETWEEN 8:15 AND 9:15.  WE'LL HAVE BREAKFAST.  THERE WILL BE FOOD, AND THAT'S PART OF WHAT LAURA IS GOING TO TALK TO YOU ABOUT.

WE'LL BEGIN PROPERLY AT 9:00 A.M.

IN ADDITION, I JUST WANT TO GIVE YOU THE SAME ADMONITION, A MUCH SHORTER VERSION NOW, WHICH IS BASICALLY WHILE THE TRIAL IS ONGOING AND OVER THIS WEEKEND, IT'S REALLY TEMPTING TO TALK TO YOUR FAMILIES ABOUT WHAT IS GOING ON.  DO NOT DO ANY RESEARCH AND TALK TO YOUR FAMILIES ABOUT THE NATURE OF THE CASE BEYOND JUST STATING THAT YOU'VE BEEN SELECTED FOR A JURY, THIS IS THE TYPE, YOU CAN SAY THE NAME OF THE CASE BECAUSE IT'S PART OF A PUBLIC RECORD.  DON'T DO ANYTHING FURTHER OR DON'T DO ANY INDEPENDENT RESEARCH.  DON'T DISCUSS THE LEGAL ISSUES IN THIS CASE SO THAT INDIVIDUALS -- WELL, LET ME START FROM THE TOP BECAUSE I DO NEED TO REPEAT -- ONCE AGAIN, I HAVE SPECIFIC INSTRUCTIONS I NEED TO REPEAT.

AS I INDICATED BEFORE THIS TRIAL STARTED, YOU AS JURORS WILL DECIDE THIS CASE BASED SOLELY ON THE EVIDENCE PRESENTED IN

THIS COURTROOM.

THIS MEANS THAT AFTER YOU LEAVE HERE FOR THE NIGHT OR THE AFTERNOON IN THIS CASE, YOU MUST NOT CONDUCT ANY INDEPENDENT RESEARCH ABOUT THIS CASE, THE MATTERS IN THIS CASE, THE LEGAL ISSUES IN THE CASE, OR THE INDIVIDUALS OR ENTITIES INVOLVED IN THE CASE.

THIS IS IMPORTANT FOR THE SAME REASONS THAT JURORS HAVE LONG BEEN INSTRUCTED TO LIMIT THEIR EXPOSURE TO TRADITIONAL FORMS OF MEDIA INFORMATION SUCH AS TELEVISION AND NEWSPAPERS.

YOU ALSO MUST NOT COMMUNICATE WITH ANYONE IN ANY WAY ABOUT THIS CASE.  AND YOU MUST IGNORE ANY INFORMATION ABOUT THE CASE YOU MIGHT SEE WHILE BROWSING THE INTERNET OR YOUR SOCIAL MEDIA FEEDS.

SO THIS IS PARTICULARLY TRUE BECAUSE I'M NOT GOING TO SEE YOU UNTIL MONDAY, BUT I DO LOOK FORWARD TO SEEING YOU AGAIN ON MONDAY.  THANK YOU FOR YOUR SERVICE.

WITH THAT, THE JURORS ARE NOW EXCUSED.

COUNSEL, I'M GOING TO HAVE YOU TOUCH BASE WITH ME BRIEFLY AFTERWARDS.  I'LL TAKE A SHORT RECESS, BUT I'LL LET MADAM CLERK WRAP UP WITH THE JURORS.

THE CLERK:  OKAY.

(JURY OUT AT 12:24 P.M.)

THE COURT:  WE'RE GOING TO GO ON THE RECORD WITHOUT MADAM CLERK JUST TO PUT ON THE RECORD THE JURY -- GOING BACK ON THE RECORD IN PANCHENKO VERSUS COMENITY CAPITAL BANK.

THE PARTIES ARE PRESENT.  COUNSEL ARE PRESENT.

I'M MERELY GOING BACK ON THE RECORD TO LIST AND TO LIST WHAT HAD HAPPENED DURING OUR OFF-THE-RECORD CONFERENCE IN TERMS OF JURY SELECTION.

SO COUNSEL AND I MET IN TERMS OF THE FOR CAUSE CHALLENGES AS WELL AS SOME OF THE ADDITIONAL HARDSHIP CHALLENGES THAT WE FACED DURING THE LAST PART OF VOIR DIRE, AND SO JUST TO RECOUNT, MR. LOKER ON BEHALF OF PLAINTIFF HAD NO OBJECTIONS FOR CAUSE TO ANY OF THE JURORS.

MR. NARITA HAD THE FOLLOWING OBJECTIONS AS TO THE JURORS: HE OBJECTED TO -- WELL, HE CHALLENGED FOR CAUSE JURORS NUMBER 1, 3, 17, 24, 27, AND 30.

IN GOING THROUGH THEM, THE COURT GRANTED JUROR -- THE CHALLENGE AS TO JUROR NUMBER 1.  PLAINTIFFS OBJECTED. PLAINTIFFS ARGUED THAT IN RESPONSE, THAT THEY HAD APPROPRIATELY REHABILITATED HER.

THE COURT FOUND THAT GIVEN SEVERAL OF THE STATEMENTS SHE HAD MADE, SHE HAD NOT BEEN FULLY REHABILITATED AND EXPRESSED CONCERN REGARDING BIAS.

MOVING ON TO JUROR NUMBER 3.  THERE WAS SOME CONCERN RAISED REGARDING HIS ABILITY TO UNDERSTAND FULLY THE NATURE -- NO.  THIS IS THE ONE REGARDING THE MONETARY AMOUNTS.

MR. LOKER:  CORRECT.

THE COURT:  THE COURT FOUND THAT PLAINTIFF HAD FULLY REHABILITATED MR. RODRIGUEZ AND DENIED THAT CHALLENGE.

GOING TO JUROR NUMBER 17, MR. DUMALAG, THE COURT FOUND THAT -- HAD DENIED THIS CHALLENGE.  THIS IS WHERE INITIALLY THERE'S CONCERN BY MR. NARITA THAT THERE WAS A LANGUAGE BARRIER, A POSSIBLE LANGUAGE BARRIER.

MR. LOKER INDICATED THAT IT MAY HAVE BEEN MORE NERVES, AND THE COURT TENDED TO AGREE AND DENIED THAT CHALLENGE.

MOVING ON TO JUROR NUMBER 24, MS. MA.  THE COURT GRANTED THIS FINDING THAT THERE WAS A CAUSE CHALLENGE.  THERE'S NO -- MR. LOKER DID NOT SAY ANYTHING IN RESPONSE TO OR MADE NO ARGUMENT AS TO NUMBER 24.

SAME AS TO NUMBER 27, MS. YNZUNZA, Y-N-Z-U-N-Z-A, REGARDING HER DISTRACTION DUE TO HER CHILD AND CIRCUMSTANCES WITH HER CHILD.

MOVING ON TO JUROR NUMBER 30, THIS IS -- THE COURT FOUND CAUSE, AND NOTHING WAS ARGUED BY PLAINTIFF.

IN ADDITION, THE COURT EXCUSED JUROR NUMBER 7 BECAUSE OF HARDSHIP, MS. WANG, BASED OFF OF HER PRE BOUGHT PURCHASED TICKET;

JUROR NUMBER 21, DUE TO HIS MIGRAINES AND POSSIBLE INABILITY TO FOCUS; AND,

THEN JUROR NUMBER 27 I REALIZE WAS MORE OF A HARDSHIP CHALLENGE VERSUS A CAUSE, BUT JUST DUE TO THE FACT OF THE CIRCUMSTANCES WITH HER CHILD.

SO WOULD ANYONE LIKE TO ADD ANYTHING FOR THE RECORD FOR PURPOSES OF REGARDING THE JURY SELECTION?

MR. LOKER:  NO ADDITIONS, YOUR HONOR, AND I AGREE WITH YOUR STATEMENTS.

MR. NARITA:  JUST ONE ADDITIONAL PIECE OF INFORMATION, YOUR HONOR.  I THINK JUROR NUMBER 30, WHICH WAS MS. JOHNSON, SHE DESCRIBED WHAT SHE BELIEVED WAS AN ONGOING CREDIT REPORTING PROBLEM WITH COMENITY CAPITAL BACK THAT SHE THOUGHT SHE STILL HAD, AND THAT WAS PART OF THE BASIS OF OUR FOR CAUSE CHALLENGE.

THE COURT:  UNDERSTOOD, AND THE COURT AGREED.

SO WITH THAT, IS THERE ANYTHING ELSE THAT WE NEED TO PLACE ON THE RECORD?

MR. LOKER:  NO, NOT FOR THE PLAINTIFF, YOUR HONOR.

MR. NARITA:  NOT FOR THE DEFENDANT.

THE COURT:  ALL RIGHT.  THANK YOU TO YOU BOTH.

WE'LL BE IN TOUCH IN THE NEXT DAY OR TWO.  WE'LL CONTACT YOU IF WE NEED ANYTHING FURTHER, AND OTHERWISE I'LL JUST SEE THE FILINGS AS THEY COME IN.

IF YOU NEED TO REACH OUT TO GIVE US THE UPDATED COPIES OF YOUR EXHIBIT BINDERS AND SO FORTH, YOU CAN JUST REACH OUT TO LAURA.

MR. LOKER:  YES.  ALL RIGHT.

THE COURT:  ALL RIGHT.  THANK YOU SO MUCH.

MR. NARITA:  THANK YOU, YOUR HONOR.

MR. LOKER:  THANK YOU, YOUR HONOR.  THANK YOU, YOUR HONOR.

THE COURT:  I WILL SEE YOU MONDAY AT 8:30.

MR. LOKER:  YES.

MR. NARITA:  OH, OKAY.  ONE LAST REMINDER, HOUSEKEEPING THING.

SO I THINK THE COURT INDICATED WHEN WE WERE LAST HERE THAT WE WERE GOING TO -- MR. LOKER IN THIS CASE AND ME, WHEN WE DO OUR CASE, THAT WE WOULD INDICATE IN ADVANCE WHO WE ARE GOING TO CALL AND THEN EXHIBITS THAT WE'RE GOING TO OFFER JUST TO MAKE SURE THAT THERE WEREN'T GOING TO BE ANY EVIDENTIARY -- LINGERING EVIDENTIARY ISSUES THAT WE WANTED TO BRING UP OR CONCERNS THAT WE WANTED TO BRING UP WITH YOUR HONOR BEFORE COURT.

IS THAT STILL YOUR HONOR'S INTENTION?

THE COURT:  THAT IS TRUE.  SO, FOR EXAMPLE, IN TERMS OF MONDAY -- AND THANK YOU, MR. NARITA.  I FORGOT TO MENTION THIS.  BUT IT'S PART OF THE STANDING ORDER GENERALLY ABOUT DEMONSTRATIVES, IF THERE ARE ANY DEMONSTRATIVES OR POWERPOINT THAT THE PARTIES ARE PLANNING TO USE IN THEIR OPENING STATEMENTS, YOU HAVE TO EXCHANGE THEM.

MR. LOKER:  UNDERSTOOD.

THE COURT:  AND YOU SHOULD BE SENDING THEM TO THE COURT ON FRIDAY.

MR. NARITA:  SO THE DEADLINE WOULD BE FRIDAY OF THIS WEEK, TOMORROW.  IS THAT --

MR. LOKER:  YEAH.

MR. NARITA:  OKAY.

THE COURT:  IF THERE ARE NO OBJECTIONS, IT COULD BE LATER.

MR. NARITA:  WELL, I -- AT THIS POINT I DON'T PLAN TO USE ANY DEMONSTRATIVES IN MY OPENING STATEMENTS, SO I WOULD DEFER TO MR. LOKER.

MR. LOKER:  YES.

THE COURT:  ALL RIGHT.  AND THEN IN TERMS OF WITNESSES, YOU ALL SHOULD BE TELLING EACH OTHER ON FRIDAY.  I APPRECIATE IT IF YOU WOULD TELL THE COURT IF YOU'RE AWARE OF WHAT IS HAPPENING.

MR. LOKER:  YES.  AND WILL MS. THOMSON BE BACK?  WE HAVE OUR TRIAL BINDERS WITH THE REDACTIONS APPLIED.  AND EARLIER WE GAVE THE TRIAL BINDERS JUST TO THE COURT WITH NO REDACTIONS, BUT FOR THE WITNESSES WE REDACTED PURSUANT TO 5.2, SO I DON'T KNOW IF SHE WANTED THOSE.

THE COURT:  OKAY.  I'M GOING TO ASK -- SHELBY, CAN YOU GO CHECK WITH LAURA AND WHAT TIME SHE'LL BE IN THE COURTROOM THIS AFTERNOON.  PERHAPS IT JUST MAKES SENSE FOR HER TO BE ACCESSIBLE.  SO WE'LL DOUBLE CHECK THAT.

MR. LOKER:  OKAY.

THE COURT:  AND THEN ANYTHING ELSE IN TERMS OF THE RECORD?

MR. LOKER:  NOT FOR THE RECORD, YOUR HONOR, NO.

MR. NARITA:  NO, YOUR HONOR.

THE COURT:  OKAY.  WELL, I'M LOOKING FORWARD TO IT. THANK YOU FOR YOUR CONTINUED -- WELL, YOUR DILIGENCE IN GETTING THE REST OF THE THINGS TO -- ACROSS THE FINISH LINE IN TERMS OF STIPULATIONS, DEPOSITIONS, DEPOSITION EXCERPTS, AND AS WELL AS YOUR EXHIBITS.

I FELT LIKE I MISSED ONE THERE.  BUT -- AND I WILL SEE YOU ON MONDAY.

MR. LOKER:  YES, YOUR HONOR.

MR. NARITA:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.  WE ARE NOW ADJOURNED.

(COURT ADJOURNED AT 12:32 P.M.)

CERTIFICATE OF REPORTER


          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

HEREBY CERTIFY:

          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

ABOVE-ENTITLED MATTER.

_____
          IRENE RODRIGUEZ, CSR, RMR, CRR
          CERTIFICATE NUMBER 8074


          DATED:  OCTOBER 30, 2025