Tomio B. Narita (SBN 156576)
Tomio.Narita@wbd-us.com
Jeffrey A. Topor (SBN 195545)
Jeff.Topor@wbd-us.com
Nathan A. Searles (SBN 234315)
Nathan.Searles@wbd-us.com
Alisa A. Givental (SBN 273551)
Alisa.Givental@wbd-us.com
Kristina B. Hovsepyan (SBN 340674)
Kristina.Hovsepyan@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, California 94111
Telephone:  (415) 433-1900
Facsimile:  (415) 433-5530

Attorneys for Defendant
Comenity Capital Bank

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEKSANDR PANCHENKO,<br><br>Plaintiff,<br><br>vs.<br><br>COMENITY CAPITAL BANK,<br><br>Defendants. | CASE NO.: 5:23-cv-04965-EKL<br><br>**COMENITY CAPITAL BANK'S OMNIBUS POST-TRIAL MOTION**<br><br>Date: February 25, 2026<br>Time: TBD<br>Courtroom: 7, 4th Fl.<br><br>The Honorable Eumi K. Lee |

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ....................................................................................................1

II.  LEGAL STANDARDS ........................................................................................3

III.  ARGUMENT ......................................................................................................5

    A.  The Court Lacks Subject Matter Jurisdiction Because Plaintiff Failed to Offer Evidence Sufficient to Show A Specific Injury Traceable to Comenity......................................................................................................5

        1.  Plaintiff failed to show that despite common actions by other defendants causing common damages, Comenity committed a unique act causing a unique injury.........................................................5

        2.  Plaintiff's Three Attempts to Meet His Burden Missed the Mark.........6

            a.  The *"They Told Me They Stopped Investigating" Explanation* ...............................................................................7

            b.  The *"Comenity as the 'Gateway Account'" Explanation*..........8

            c.  The *"They Didn't Review My Documents" Explanation* ..........9

        3.  Plaintiff Exclusively, and Extensively, Presented Evidence on Commonly Caused Damages................................................................10

            a.  *Plaintiff's Claimed Emotional Distress from CRA Reports Reflecting Multiple Defendants' Feedback*............................10

            b.  *Plaintiff Admitted the Apple Card Rejection was Not Tied Exclusively to Comenity*........................................................11

            c.  *Plaintiff Viewed All Accounts as Equally Fraudulent* .............12

            d.  *The Bulk of Plaintiff's Case Was That of a Singular Issue Of Identity Theft That Dominated his Life* ...............................12

            e.  *In Sum, Plaintiff Did Not Meet His Burden to Prove Standing* ..................................................................................13

    B.  Under The "One Satisfaction" Rule, Any Award of Actual Damages Must Be Offset by The Amount of the Settlements Plaintiff Recovered from The Other Defendants For the Same Harm............................................................14

        1.  Plaintiff Already Recovered More than his Actual Damages.............15

        2.  The One-Satisfaction Rule Presumptively Applies ............................15

3.  The Cases Refusing to Apply the One-Satisfaction Rule Confuse Contribution with One-Satisfaction ....................................................16

4.  The District Court Cases Rejecting One Satisfaction Do So In Dicta and Uniformly Rely on a Misreading of *Nelson v. Equifax* .......18

C.  The Punitive Damage Award Is Contrary to Law, Not Supported by Evidence, and Unconstitutional ....................................................19

1.  Comenity's Conduct Was Not Reprehensible ....................................20

2.  The Maximum Punitive Damages Allowed Is a Low Single-Digit Multiplier Over Compensatory Damages ............................................22

IV.  CONCLUSION..................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*02 Micro Int'l Ltd v. Monolithic Power Sys.*,
 420 F. Supp. 2d 1070 (N.D. Cal. 2006) ........................................................... 4

*Anheuser-Busch, Inc. v. Natural Bev. Distribs.*,
 69 F.3d 337 (9th Cir. 1995) ........................................................................... 4

*Armstrong v. Nan, Inc.*,
 2015 WL 12746714 (D. Haw. 2015) ............................................................. 18

*Bains LLC v. Arco Prods. Co.*,
 405 F.3d 764 (9th Cir. 2003) ........................................................................ 23

*Bennett v. American Med. Response*,
 226 Fed. Appx. 725 (9th Cir. Mar. 27, 2007) ............................................... 22

*Boatner v. Choicepoint Workplace Sols., Inc.*,
 2010 WL 1838727 (D. Or. 2010) .................................................................. 16

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
 517 F.3d 1271 (11th Cir. 2008) ......................................................... 16, 17, 18

*Bultemeyer v. CenturyLink Inc.*,
 2025 WL 671760 (D. Ariz. 2025) ................................................... 20, 21, 23, 24

*Burgess v. Premier Corp.*,
 727 F.2d 826 (9th Cir. 1984) ........................................................................ 18

*Chaudhry v. City of Los Angeles*,
 2014 WL 12558777 (C.D. Cal. 2014) ........................................................... 18

*Cheetham v. Specialized Loan Servicing LLC*,
 2021 WL 2137823 (W.D. Wash. 2021) ......................................................... 18

*Cherokee Nation v. U.S. Dep't of the Interior*,
 643 F. Supp. 3d 90 (D.D.C. 2022) ............................................................ 6, 14

*Contreras v. Kohl's Dep't Stores, Inc.*,
 2017 WL 6372646 (C.D. Cal. 2017) ............................................................. 18

*Corder v. Brown*,
 25 F.3d 833 (9th Cir. 1994) .......................................................................... 16

*Del Monte Dunes v. City of Monterey,*
  95 F.3d 1422 (9th Cir. 1996) .................................................................................. 4

*Delta Constr. Co. v. EPA,*
  783 F.3d 1291 (D.C. Cir. 2015) ......................................................................... 6, 14

*Disability Rts. S.C. v. McMaster,*
  24 F.4th 893 (4th Cir. 2022) .................................................................................. 6

*Doherty v. MicroBilt Corp.,*
  2024 WL 4003921 (C.D. Cal. 2024) ...................................................................... 18

*Drew v. Equifax Info. Servs., LLC,*
  2010 WL 5022466 (N.D. Cal. 2010) ...................................................................... 20

*Duarte v. Bardales,*
  526 F.3d 563 (9th Cir. 2008) .................................................................................. 4

*Enwere v. Terman Assocs., L.P.,*
  2008 WL 5146617 (N.D. Cal. Dec. 4, 2008) ........................................................ 10

*Estate of Hill by and through Grube v. NaphCare, Inc.,*
  2025 WL 1588738 (9th Cir. 2025) ........................................................................ 24

*Flintkote, Co. v. Lysfjord,*
  246 F.2d 368 (9th Cir. 1957) .......................................................................... 17, 18

*Freeland v Nippon Steel Corp., et al.,*
  2025 U.S.Dist.LEXIS 117994 (N.D. Cal. June 20, 2025) ........................................ 5

*Gonzalez v. Harris Farms, Inc.,*
  2014 WL 6981429 (E.D. Cal. 2014) ...................................................................... 17

*Great W. Cap., LLC v. Payne,*
  2025 WL 2463216 (D. Or. 2025) .......................................................................... 19

*Hardeman v. Monsanto Co.,*
  997 F.3d 941 (9th Cir. 2021) .......................................................................... 23, 24

*Hoa v. Riley,*
  78 F. Supp. 3d 1138 (N.D. Cal. 2015) .................................................................. 16

*Husky Refining Co. v. Barnes,*
  119 F.2d 715 (9th Cir. 1941) ................................................................................ 15

*In Re E. I. Du Pont De Nemours & Co. C-8 Personal Injury Litig.*,
  87 F.4th 315 (6th Cir. 2023) ................................................................. 13

*In re Moon*,
  2023 WL 1779643 (D. Nev. 2023) ................................................. 23, 24

*In re Palmdale Hills Prop., LLC*,
  654 F.3d 868 (9th Cir. 2011) ................................................................ 5

*Knussman v. Maryland*,
  272 F.3d 625 (4th Cir. 2001) ............................................................... 10

*Landes Const. Co. v. Royal Bank of Canada*,
  833 F.2d 1365 (9th Cir. 1987) .............................................................. 4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................. 5, 9, 14

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012) .................................................................... 6

*Masimo Corp. v. Tyco Health Care Group, L.P.*,
  2006 U.S. Dist. LEXIS 29977 (C.D. Cal. 2006) ................................... 4

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .............................................................. 6

*McLish v. Harris Farms, Inc.*,
  507 F. Supp. 1075 (E.D. Cal. 1980) .................................................... 18

*Murthy v. Missouri*,
  603 U.S. 43 (2024) .......................................................................... 5, 6

*Nelson v. Chase Manhattan Mortg. Co.*,
  282 F.3d 1057 (9th Cir. 2002) .............................................................. 7

*Nelson v. Equifax Info. Servs., LLC*,
  522 F. Supp. 2d 1222 (C.D. Cal. 2007) .............................................. 19

*Nikko Materials USA, Inc. v. R.E. Serv. Co.*,
  2006 LEXIS 15775 (N.D. Cal. 2006) .................................................... 4

*Northwest. Airlines, Inc. v. Transportation Workers Union of Am., AFL-CIO*,
  451 U.S. 77 (1981). .............................................................................. 17

*Osterneck v. Ernst & Whinney*,
  489 U.S. 169 (1989) ................................................................................................ 4

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) ......................................................... 20, 22, 23, 24

*Seymour v. Summa Vista Cinema, Inc.*,
  809 F.2d 1385 (9th Cir. 1987) ......................................................... 15, 17, 18, 19

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
  506 F.3d 832 (9th Cir. 2007) ................................................................................ 9

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S 408 (2003).. .......................................................................... 20, 22, 24

*Thompson v. Equifax Info. Servs., LLC*,
  441 F. Supp. 3d 533 (E.D. Mich. 2020) ............................................................ 13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................................................... 5, 15

*Tu v. Experian Info. Sols., Inc.*,
  2025 WL 1134612 (S.D. Cal. 2025) .................................................................. 18

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
  793 F.2d 1034 (9th Cir. 1986) ........................................................................... 18

*Uthe Tech. Corp. v. Aetrium, Inc.*,
  808 F.3d 755 (9th Cir. 2015) ............................................................ 15, 17, 18, 19

*Watson v. City of San Jose*,
  800 F.3d 1135 (9th Cir. 2015) ............................................................................. 4

*William v. Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Reservation*,
  329 F.R.D. 247 (S.D. Cal. 2018) ......................................................................... 3

*Williams v. LVNV Funding LLC*,
  2017 WL 1331014 (N.D. Ala. 2017) .................................................................. 18

*Williams v. Pentagon Fed. Credit Union*,
  2025 U.S. Dist. LEXIS 126783 (S.D. Tex. 2025) ................................................ 8

*Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*,
  399 F.3d 224 (3d Cir. 2005) .............................................................................. 21

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
   401 U.S. 321 (1971) ........................................................................................................ 18

*Zook v. Equifax Info. Servs., LLC*,
   2018 WL 10604347 (D. Or. 2018) ................................................................................. 16

**Statutes**

15 U.S.C. § 1681n(a)(2) ........................................................................................................ 19

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 3
Fed. R. Civ. P. 12(h)(1) .......................................................................................................... 3
Fed. R. Civ. P. 12(h)(3) ............................................................................................... 5, 14, 25
Fed. R. Civ. P. 59 ......................................................................................................... 14, 25
Fed. R. Civ. P. 59(a) ................................................................................................... 3, 4, 20
Fed. R. Civ. P. 59(e) ......................................................................................................... 4, 5

**Other Authorities**

Restatement (Second) of Torts § 885(3) (1979) ................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. <u>INTRODUCTION</u>

This Court expressly reserved several legal issues for post-trial motion practice. But before the Court can address those reserved issues, the Plaintiff's trial strategy has forced an even more urgent analysis: does this Court have Article III subject matter jurisdiction at all? The answer is "No." Plaintiff avoided entry of summary judgment against him by promising the Court he could establish injury traceable to Comenity with causation evidence that he would present at trial. But he did not do so. Because Plaintiff failed to meet his burden of tracing injury from his section 1681s-2(b) claim to Comenity, he has not established Article III standing, and the Court must vacate the judgment, set aside the verdict, and dismiss this case.

This result is as surprising to Comenity as it likely is to the Court. But it flows directly from Plaintiff's chosen trial strategy. Rather than directly linking his injury to Comenity, Plaintiff attempted to establish standing in gross—asking the jury to blame Comenity for the collective conduct of the settling defendants—and seeking to recover twice for the same injury even though he had been over-compensated by the settlements with the other defendants before trial. Plaintiff's failure to trace any damages to Comenity—or to show that he suffered a distinct additional injury because Comenity was involved—is fatal to his case and this Court's jurisdiction. Because standing is a fundamental issue, the Court must first address whether it has jurisdiction at all, before addressing any of the other post-trial issues.

If the Court concludes it has jurisdiction, it must then turn to the anticipated questions and decide whether to apply the "one satisfaction" rule and offset the actual damages award by the amount of the settlements Plaintiff recovered from the other defendants. Because Plaintiff did not prove a divisible injury attributable only to Comenity, and considering the size of those settlements, the Court should reduce the actual damage award to zero.

If, after offsetting those settlements, the Court concludes Plaintiff remains entitled to any award of actual damages, the Court must address the elephant in the room and decide whether to award *any* punitive damages. The Court should vacate or reduce the jury's award for the following reasons:

**First**, the Court lacks jurisdiction because Plaintiff presented no evidence at trial tracing his section 1681s-2(b) claim to Comenity's conduct—i.e., establishing that Comenity caused him injury. In his summary judgment brief, Plaintiff acknowledged Comenity was "entitled to challenge causation at trial," but he maintained that "raising such arguments at the summary judgment stage is premature" because causation was a quintessential jury question.[1] The Court agreed, concluding there was "a genuine dispute of fact for the jury to decide" at trial whether Plaintiff "suffered adverse credit consequences due to Comenity's reporting."[2] Plaintiff thus knew he needed to prove at trial that Comenity's conduct caused him injury. He bears the burden of establishing standing through trial, with the burden increasing at each phase of the case. By the time Plaintiff gets to trial, he must come forward with evidence to prove he suffered a concrete, particularized injury, that is fairly traceable to the challenged action, and that a favorable ruling would redress. Plaintiff failed to tie any of Comenity's conduct to his injury. As a result, the Court lacks Article III jurisdiction and Plaintiff is therefore entitled to no relief whatsoever. No actual damages. No punitive damages.

**Second**, in granting Plaintiff's motion in limine to exclude evidence of his settlements with the other defendants, the Court "conclude[d] that it would be premature to decide, *at this stage*, whether the one satisfaction rule applies to this case.[3] The Court noted that "the nature and extent of Plaintiff's harm, and the cause(s) of such harm, have not yet been established," and that it was an open question whether "Plaintiff seeks recovery for a single, indivisible harm."[4] Beyond that, the Court "also conclude[d] that the applicability of the one satisfaction rule, and the offset of any damages award against Comenity, is an issue for the *for the Court to decide on a post-trial motion – it is not a matter for the jury.* . . . [T]he issue of offset will be addressed

---

[1] Dkt. No. 139 at 25:6-8.

[2] Dkt. No. 148 at 13:7-10.

[3] Dkt. No. 179 at 3:8-9 (italics added).

[4] *Id.* at 3:13-14 & n.1.

post-trial, to the extent necessary."[5]  Plaintiff failed to present evidence that he suffered a divisible harm, attributable to and caused only by Comenity's conduct.  The jury awarded him damages, yet he already recovered an amount that far exceeds those damages.  Given the amount other Defendants have already paid Plaintiff in settlement, Comenity's obligation is zero or certainly close to zero.  It is now necessary to decide the issue of offset.

**Third**, if Plaintiff clears those hurdles, the Court must address punitive damages.  Under the Fair Credit Reporting Act ("FCRA"), the Court should have decided whether to assess punitive damages, not the jury.  Beyond that, though, the jury's punitive damage award is patently unconstitutional.  Assuming that punitive damages were appropriate and assuming that Plaintiff is entitled to an award of actual damages after offsetting the significant settlement amounts he recovered, the Court must reduce the punitive damages award to no more than the amount of actual damages.  Anything greater would contradict clear Constitutional, Supreme Court, and Ninth Circuit requirements.

## II.  <u>LEGAL STANDARDS</u>

A party may move to dismiss for "lack of subject-matter jurisdiction" under Rule 12(b)(1).  Fed. R. Civ. P. 12(b)(1).  Such a motion cannot be waived.  *See* Fed. R. Civ. P. 12(h)(1) (noting when defenses listed in Rules 12(b)(2)-(5) are waived), (3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.).  It is well settled that a party can "raise the defense of lack of subject-matter jurisdiction at any time, . . . even after trial and the entry of judgment," and that "the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction."  *See William v. Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Reservation*, 329 F.R.D. 247, 253 (S.D. Cal. 2018) (internal quotation marks and quoted citations omitted).

Post-trial relief is available under Rules 59(a) and (e) of the Federal Rules of Civil Procedure.  Under Rule 59(a), the Court may grant a new trial "for any reason for which a new

---

[5] *Id.* at 3:15-17, 4:12 (italics added).

trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).  A

new trial is warranted where the verdict was against the clear weight of the evidence and the

judge is "left with the definite and firm conviction that a mistake has been committed" by the

jury.  *02 Micro Int'l Ltd v. Monolithic Power Sys.*, 420 F. Supp. 2d 1070, 1075 (N.D. Cal. 2006)

(quoting *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987)).

A new trial is also proper "to prevent, in the sound discretion of the trial court, a miscarriage of

justice."  *Masimo Corp. v. Tyco Health Care Group, L.P.*, 2006 U.S. Dist. LEXIS 29977, *7

(C.D. Cal. 2006).

The Court may grant a new trial based on errors of law that occurred during trial,

including erroneous jury instructions.  *See Watson v. City of San Jose*, 800 F.3d 1135, 1140-41

(9th Cir. 2015) (new trial warranted because instructions may have permitted jury to improperly

award damages).  If the Court determines that a jury's verdict is the product of passion or

prejudice and a damages award is excessive or inadequate, the Court may set aside the verdict

and grant a complete new trial or a partial new trial on the issue of damages.  *See Anheuser-*

*Busch, Inc. v. Natural Bev. Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995) (affirming grant of new

trial where verdict influenced by passion and prejudice based on counsel's misconduct in

presenting prejudicial testimony and argument regarding inadmissible subjects).  And the Court

can grant a new trial if the jury awarded "grossly excessive or monstrous" damages, which were

"clearly not supported by the evidence or based only on speculation or guesswork."  *Del Monte*

*Dunes v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

Rule 59(e), meanwhile, empowers the Court to "alter or amend" a judgment.  *See* Fed. R.

Civ. P. 59(e).  Rule 59(e) allows for a substantive alteration of the judgment, because of

"manifest errors of law or fact upon which the judgment is based" or "to prevent manifest

injustice."  *Nikko Materials USA, Inc. v. R.E. Serv. Co.*, 2006 LEXIS 15775, *6-7 (N.D. Cal.

2006)).  The power to "alter or amend" includes the power to vacate or set aside the judgment.

*See Duarte v. Bardales*, 526 F.3d 563, 565 (9th Cir. 2008) (reversing lower court's denial of

plaintiff's motion to vacate under Rule 59(e)); *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174

(1989) ("a postjudgment motion will be considered a Rule 59(e) motion where it involves reconsideration of matters properly encompassed in a decision on the merits").

### III. ARGUMENT

#### A. The Court Lacks Subject Matter Jurisdiction Because Plaintiff Failed to Offer Evidence Sufficient to Show A Specific Injury Traceable to Comenity

##### 1. Plaintiff failed to show that despite common actions by other defendants causing common damages, Comenity committed a unique act causing a unique injury

Plaintiff's burden at trial was to prove he suffered harm specifically traceable to his sole remaining claim, *i.e.*, Comenity's alleged failure to reasonably investigate his "indirect disputes" (those submitted to a consumer reporting agency ("CRA") rather than directly to Comenity) in violation of section 1681s-2(b) of the FCRA. By failing to meet that burden, he not only failed to prove the elements of his claim, he also deprived the Court of subject matter jurisdiction. "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). Plaintiff needed to prove he suffered "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 44 (2024).

Plaintiff's burden to prove each element of standing *increases* at each stage of the litigation. "Therefore, in a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence at trial.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). If the Court determines "at any time" there is no standing, it "must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Freeland v Nippon Steel Corp., et al.*, 2025 U.S.Dist.LEXIS 117994, *8 (N.D. Cal. June 20, 2025) ("However, even though Plaintiffs allege a particularized injury, that does not end the standing inquiry. Article III standing also requires Plaintiffs to allege – and later, to prove – that their injury is "fairly traceable" to the Defendants' conduct.").

"Because standing is not dispensed in gross, plaintiffs must demonstrate standing for

each claim that they press against *each defendant*, and for each form of relief that they seek." *Murthy*, 603 U.S. at 44 (emphasis added); *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ("In cases where a chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a "significant effect" on plaintiffs' injuries, the Supreme Court and this court have found the causal chain too weak to support standing at the pleading stage.) (quoted citations omitted). This requires evidence that "a particular defendant" committed a particular act causing a particular injury. *Murthy*, 603 U.S. at 45; *see also Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) (must demonstrate standing "separately as to each defendant"). Injury linked to some defendants has no "bearing on [Plaintiff's] Article III standing to sue other defendants." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012).

This means there is no traceability where the same injury (emotional distress based on the outcome of all creditors' investigations as to all accounts) would have occurred regardless of the presence of the Comenity account: "[I]f the injury would occur regardless of the challenged action—say, because some separate action would independently cause it in full—then the fair-traceability test is not met." *Cherokee Nation v. U.S. Dep't of the Interior*, 643 F. Supp. 3d 90, 106 (D.D.C. 2022) (citing *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015)). This issue is not disputed. Plaintiff's counsel recognized this evidentiary burden and attempted to solicit testimony and evidence to overcome it. As shown below, he could not show harm caused by Comenity stemming from any failure by Comenity to conduct a reasonable investigation of his indirect disputes.

### 2.    Plaintiff's Three Attempts to Meet His Burden Missed the Mark

In attempting to show traceability, Plaintiff's counsel asked him "[h]ow can you distinguish between the harm caused by Comenity as opposed to the harm caused by the other banks?" *See* Narita Decl. ¶ 2, Ex. A, 261:12-13. Plaintiff gave three explanations, addressed below, but none establishes an injury traceable to Comenity's alleged failure to reasonably investigate any indirect credit dispute.

### a. *The "They Told Me They Stopped Investigating" Explanation*

Plaintiff testified: "I can distinguish based on my instructions [sic] *with Comenity*. So, first, Comenity was the only one out of all of those banks that not just remained the account and reported it back, but refused to continue any investigations. So it was the only bank that was actually saying, like, we're not going to do anything, this is it." Narita Decl. ¶ 2, Ex. A, 261:14-19. Plaintiff supported this claim by recounting his feelings after a phone call with Comenity, which was played for the jury[6]:

> [T]his was the only call that I had that I remember. I actually was told there's nothing we can do. You're going to stay with this. This is the end basically. And facing this wall is not fun. It's not a good experience obviously. So probably this was the first time I started thinking about, like, getting some help, like attorney help to fight this because I see it doesn't make sense. I'm sending all these documents, I'm complying with all these requirements that they ask me for, and I'm just getting stuck because they say, like, there is nothing that we can do. We're not even going to try to investigate, try to delete, just that's it.

*Id*. at 226:16-227:4.

But this testimony was irrelevant to Plaintiff's remaining claim at trial, i.e., the claim based on Comenity's alleged failure to conduct a reasonable investigation of an **indirect dispute**. Everything Comenity said on that phone call, and therefore everything Plaintiff felt about it, was tied exclusively to his **direct dispute** (for which there is no private right of action). This point is bolstered by limiting instruction the Court gave after the call recording was played for the jury, where it directed the jury to consider "the testimony only to the extent that [they] believe the

---

[6] The jury heard two related recordings of a single phone call Plaintiff placed ***directly*** to Comenity on August 7, 2023. Dkt. No. 246, Admt. Exs. 52 & 53. Prior to trial, Comenity moved to exclude this direct-dispute evidence because Plaintiff has no private right of action for challenging the adequacy of handling that dispute. *Nelson v. Chase Manhattan Mortg. Co*., 282 F.3d 1057, 1060 (9th Cir. 2002). The Court denied the motion. Dkt. No. 179 at 9:4-10. Comenity renewed its objections at trial, but the Court overruled them. Narita Decl. ¶ 2, Ex. A, 223:23-224:24, 225:17-24. During the second recording, a Comenity representative informed Plaintiff that because his dispute had already been investigated twice, no further investigation would be performed. Dkt. No. 246, Admt. Ex. 53.

information plaintiff provided Comenity as part of the direct dispute was relevant to Comenity's investigation of a later indirect dispute." Narita Decl. ¶ 2, Ex. A, 227:8-17. The Court also made clear in the final jury instructions that Plaintiff could *not* collect damages for his direct disputes. *Id.* at 734:8-12 ("Any damages associated with Panchenko's direct disputes are not recoverable"); *see also id.* at 728:1-15. In other words, the jury was ***prohibited*** from considering the call recording or Plaintiff's testimony about his reaction to the call as evidence of injury Plaintiff suffered because of Comenity's investigation of his ***indirect*** disputes. Thus, the call recording and Plaintiff's reaction to the call are not evidence of any concrete injury traceable to Comenity's alleged violation of section 1681s-2(b). As such, Plaintiff's first attempt to "distinguish between the harm caused by Comenity as opposed to the harm caused by the other banks" has no evidentiary support in the record.

### b. *The "Comenity as the 'Gateway Account'" Explanation*

Plaintiff's second attempt to distinguish the harm caused by Comenity was based on his speculation that in December 2015, Comenity somehow "opened the gates" to the creation of other fraudulent accounts, because the Comenity account was "one of the smallest" and "one of the first" accounts. Specifically, he testified: "Another one, the Comenity account was one of the smallest amount compared to other banks, and was either first or one of the first that this person opened. So I see this account as being, like, a—opening the gates basically for any other accounts that come after it where maybe this account was even leveraged to open these other accounts with other banks." Narita Decl. ¶ 2, Ex. A, 261:20-262:1.

But this speculative testimony is irrelevant and fails to trace Comenity's conduct to any claimed injury arising from a failed indirect dispute investigation—the only claim at issue. This "evidence" has no bearing on the indirect dispute investigation claim that was tried to the jury. *Williams v. Pentagon Fed. Credit Union*, 2025 U.S. Dist. LEXIS 126783, **15-16 (S.D. Tex. 2025) ("PenFed cannot legally be held responsible for damages arising from credit denials that occurred *prior* to Plaintiffs initiating a dispute [with a CRA].") Although Plaintiff may have been upset to learn that, in December **2015**, Comenity had been the third of several banks to be duped into opening a credit card account in his name, this is ***not*** evidence of any injury traceable to Comenity's investigation of his disputes in **2023**. It still fails to show the injury—emotional

distress tied to receiving the unchanged response to his indirect credit disputes —would not have occurred but for Comenity's conduct. As a matter of logic, the "gateway" theory fails.

And factually, Plaintiff's gateway theory also fails. First, the Comenity account was **_not_** the first, or even the second, fraudulent account opened. Trial Exhibit 203 reflects a "Syncb/home" account was opened in Plaintiff's name six months before Comenity's, in June 2015, and then a US Bank account was opened in his name five months before Comenity's, in July 2015. Second, the Comenity account was not "one of the lowest" credit limits upon opening. The Syncb/home account opening credit limit was $3,500 (one-fourth that of Comenity's $15,000 limit), the US Bank account opening credit limit was $9,000 (three-fifth's that of Comenity's) and the first JPMorgan Chase account's opening credit limit was $10,000 (two-thirds of Comenity's). Dkt. No. 246, Admt. Ex. 203 (EXP_PANCHENKO_0061). Finally, the JPMorgan Chase account opened after the Comenity account but it had a lower credit limit, thereby refuting the notion that the credit lines were gradually increasing. Simply put, evidence at trial refutes Plaintiff's gateway theory. Thus, his second attempt to "distinguish between the harm caused by Comenity as opposed to the harm caused by the other banks" has no evidentiary support in the record.

### c. The "They Didn't Review My Documents" Explanation

Plaintiff's third attempt to "distinguish between the harm caused by Comenity as opposed to the harm caused by the other banks" came from this testimony: "So based on this, plus what we know from the discovery where I learned that all of these documents that I send them, they didn't even look at those documents, so this is clearly for me differentiating Comenity from others. And, like, in a really clear way, like showing that their negligence is much higher than other banks." Narita Decl. ¶ 2, Ex. A, 262:2-7.

Because jurisdiction and standing are based on facts existing **_when Plaintiff filed his Complaint,_** Plaintiff's testimony that he "learned during discovery" that Comenity "didn't even look at all those documents" he sent is not evidence of harm traceable to a violation of section 1681s-2(b) by Comenity. Post-filing litigation conduct does not create standing, _Lujan_, 504 U.S. at 570 n.4, because "standing turns on the facts as they existed at the time the plaintiff filed the complaint." _Skaff v. Meridien N. Am. Beverly Hills, LLC_, 506 F.3d 832, 838 (9th Cir. 2007).

When Plaintiff filed his Complaint, he did not know whether any Comenity investigator had or had not reviewed the documents.  Any frustration Plaintiff experienced later during this litigation, based on information produced to him during discovery, is not an injury traceable to Comenity's investigations of his indirect disputes between May 2023 and August 2023, and could not have given rise to standing for Plaintiff to file this case.  *See Enwere v. Terman Assocs., L.P.*, 2008 WL 5146617, *4 (N.D. Cal. Dec. 4, 2008) (citing *Knussman v. Maryland*, 272 F.3d 625, 642 (4th Cir. 2001) ("Generally speaking, litigation-induced emotional distress is never a compensable element of damages")).

In sum, none of the three explanations Plaintiff offered for distinguishing the harm caused by Comenity from the harm allegedly caused by other defendants is supported in the record or supportable by law.  In other words, he failed to offer evidence of harm traceable to Comenity's handling of his indirect disputes.

### 3.    Plaintiff Exclusively, and Extensively, Presented Evidence on Commonly Caused Damages

#### a.    *Plaintiff's Claimed Emotional Distress from CRA Reports Reflecting Multiple Defendants' Feedback*

Rather than offering evidence of harm traceable to Comenity's handling of his indirect disputes, Plaintiff's trial testimony focused on the overall fallout he experienced from addressing the identity theft, through both his direct and indirect disputes to all the bank and CRA defendants.  But he identified no injury independently attributable to Comenity and took pains to deny any potential basis for differentiating Comenity from the other accounts based on their balance or whether they were reporting as "potentially positive" or "potentially negative."

Plaintiff initially discovered the existence of all fraudulent accounts at the same time in May 2023.  Narita Decl. ¶ 2, Ex. A, 165:10-16 ("Q. So May of 2023. Was Comenity the only account on your report?  A. No.  Q. Who else was on there?  A. There was about, like, ten different accounts to about maybe nine banks or something like that.  So a lot of different banks and different accounts.").  Plaintiff disputed all the accounts with Experian, Equifax, and Trans

Union, not only the Comenity account.  *See* Dkt., 246, Admt. Exs. 2,3 and 4.

The evidence reflected Plaintiff was notified about the outcomes of these disputes on four occasions.  Dkt. No. 246, Admt. Exs. 24, 26, 30, 192.  Three of four times, he learned that multiple defendants (including, but not only, Comenity) had confirmed the accuracy of the reporting.  *See id.* Admt. Exs. 24, 26, 30.  As late as August 2023, when Plaintiff submitted his last set of indirect disputes, Plaintiff's letters to the CRAs disputed *all* the bank Defendants' accounts, not just Comenity's.  *See id.*, Admt. Exs. 2, 3 and 4.  On the fourth time he was notified of the outcome of his indirect disputes, by Equifax on August 21, 2023, the Comenity account had been <u>deleted,</u> and the JPMorgan Chase card with the $33,377 balance was the only remaining account.  *See id*. Admt. Ex. 192.

Plaintiff conceded his emotional distress was globally attributable to the banks (and presumably CRAs) that rejected his claims.  For instance, he said "*I was just frustrated with all of them appearing on my credit report, obviously, yes.*"  Narita Decl., ¶ 2, Ex. A, 401:2-24 (italics added).  Consistent with that was this exchange with his counsel:  "Q. Let's talk about your emotional distress.  Same question.  So there are multiple banks that rejected you're your disputes; is that correct?  A. Correct."  *Id*. at 261:1-4.  Plaintiff never isolated any emotional distress that he attributed solely to Comenity and its handling of his indirect disputes.

### b.  *Plaintiff Admitted the Apple Card Rejection was Not Tied Exclusively to Comenity*

During these events, Plaintiff applied for one credit card (an Apple Card, issued by Goldman Sachs Bank), on August 16, 2023.  He was denied and he conceded the other fraudulent accounts that appeared on his credit report "would have played a role in that denial." *Id*. at 259:1-260:24.[7]  Plaintiff presented no evidence tying the denial to Comenity.

---

[7] The reasons given for the denial for the Apple card were "serious delinquency, proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high; and too few accounts currently paid as agreed." Dkt. No. 246, Admt. Ex. 54. Plaintiff did not present evidence or expert testimony regarding which specific credit report Goldman Sachs reviewed,

### c. Plaintiff Viewed All Accounts as Equally Fraudulent

Plaintiff assigned an equal weight to each fraudulent account (as a cause of his harm) despite obvious differences among them. One difference was that the Comenity account was reporting as a *potentially positive* account on his Experian report. Another difference was that the account was reporting a $0 balance as opposed to large unpaid balances being reported by the others. Despite this, Plaintiff believed no distinction should be made for any reason, because all the accounts were "fraudulent," and he therefore viewed the Comenity account as equally negative as the others. *Id*. at 194:12-195:19, 350:21-353:4, 356:2-10, 361:12-362:1, 364:18-24.

### d. The Bulk of Plaintiff's Case Was That of a Singular Issue Of Identity Theft That Dominated his Life

Plaintiff (and his wife) testified at length that cleaning up his credit report was an all-consuming, full-time job, necessitating extensive communications with banks, CRAs, the FTC, and the Mountain View Police Department. Narita Decl. ¶ 2, Ex. A, 401:2-402:11, 410:16-411:4, 478:1-479:11. Even if accepted as true, Plaintiff made no effort to establish how much of this "full time job" was traceable to Comenity specifically. In fact, in an admission fatal to standing, he conceded he could *not* differentiate any injury traceable solely to Comenity. And he made clear that, to a great extent, he was complaining about time he spent on his *direct disputes against multiple defendants*, not any indirect Comenity dispute:

> Q.   But you feel like you spent some time disputing all of your accounts with the credit reporting agencies; right?
>
> A.   I spent a lot of time, yeah, disputing that.
>
> Q.   How much of that time related to the Comenity account?
>
> A.   Like, all of the time. I was disputing all of the fraudulent activities in my credit reports, and, Comenity, as of September for Trans Union, for example, they were still on my credit report. So all of the time I disputed with Trans Union, I was disputing Comenity as well.

whether Comenity was on that report, what balance was being reported, or whether the Comenity tradeline would have impacted the denial. Over Comenity's objection in motion in limine No. 3, Dkt. No. 159, Plaintiff was allowed to testify about his opinion that the denial is in part attributable to Comenity's tradeline.

Q.   Okay. But how much of the time that you spent either going online or assembling your letters or writing your letters, how much of that time related to the Comenity account specifically as opposed to the Chase account or the Bank of America account or the Cavalry account or the U.S. Bank account, all of those others?

A. All of the time, right? ***I wasn't disputing one account one by one, right? I was combining all of the evidence, put in all of the fraudulent accounts, addresses and all of the information there. So all of the time was related to Comenity and the other banks***.

Q. Okay. ***So you didn't distinguish between the time that you were spending working on the Comenity account versus the time you were spending on all of these accounts*** that you thought were fraudulent; right?

A. ***Yes. I was frustrated with all of them appearing on my credit report obviously, yes.***

Q. And then all of the time that you spent dealing with the consumer reporting agencies was sort of ***to collectively dispute all of the fraudulent accounts***; right?

A. ***Yes***, and calling the banks, yeah. I was trying to do it, like, as much as possible, disputing with credit agencies ***and with the banks directly***.

*Id.* at 400:16-401:24 (emphasis added); *see also: id.* at 410:16-411:4.[8]

This collective, undifferentiated evidence dominated the trial, with nothing specific (except for the three inadequate "explanations" discussed above) tying Comenity's specific actions to Plaintiff's harm suffered.

### e.   *In Sum, Plaintiff Did Not Meet His Burden to Prove Standing*

It is reversible error to "treat the defendants as a collective" entity rather than to require evidence tracing any injury to "each defendant," because "standing is not dispensed in gross." *In Re E. I. Du Pont De Nemours & Co. C-8 Personal Injury Litig.*, 87 F.4th 315, 320 (6th Cir. 2023) (citations omitted) (reversing for lack of traceability); *Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 544 (E.D. Mich. 2020) (no standing under FCRA where testimony fails to show that "emotional distress is fairly traceable to [the creditor's] allegedly inadequate

---

[8] Only a small fraction of that time related specifically to Comenity, and most of that was time spent on his direct disputes.  Indeed, despite his insistence that he called and wrote to Comenity numerous times, the documentary evidence shows that between May 2023 and September 2023, Plaintiff called Comenity only three times and wrote Comenity only one letter.  Dkt. No. 246, Admt. Exs. 1, 49-53.; *see also:* Narita Decl. ¶ 2, Ex. A, 625:1-23; 629:1–630:18.  The total running time of the call recordings for the three calls he placed to Comenity was 32:36.  *See* Dkt. No. 246, Admt. Exs. 49-53.

investigation or the 'inaccurately' reported [] monthly payment—as opposed to being traceable to" other facts or parties).

There is no traceability where the same injury—emotional distress from receiving unchanged credit reports from the CRAs after their investigations, as to all accounts with all creditors—would have occurred regardless of whether Comenity's account were included. "But if the injury would occur regardless of the challenged action—say, because some separate action would independently cause it in full—then the fair-traceability test is not met." *Cherokee Nation*, 643 F. Supp. 3d at 106 (citing *Delta Constr. Co.* 783 F.3d at 1297). By indiscriminately lumping the conduct of Defendants together at trial and trying to recover solely from Comenity, Plaintiff failed to meet his burden of showing that his harm was "fairly traceable to the challenged action of [Comenity], and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61.

To be fair, any reasonable person would be distressed if a criminal actor stole and misused his identity, forcing him to engage in a time-consuming remediation process. But, in a trial solely against Comenity, it was Plaintiff's burden to provide evidence showing how his emotional distress was traceable to Comenity's independent conduct in its investigation of the indirect disputes. Given both his arguments in opposition to summary judgment and the Court's summary judgment ruling, he knew he needed to prove this. He failed to do so. Because Plaintiff did not prove any harm traceable to Comenity's alleged violation of section 1681s-2(b), the Court must vacate the judgment and dismiss this case for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

### B. Under The "One Satisfaction" Rule, Any Award of Actual Damages Must Be Offset by The Amount of the Settlements Plaintiff Recovered from The Other Defendants For the Same Harm

Even assuming Plaintiff offered evidence showing harm as a result of Comenity's investigation of his indirect disputes, the Court should substantially reduce the jury's actual damages award, or eliminate it entirely, under the "one satisfaction" rule given the amount of the settlements Plaintiff reached with the other defendants. *See* Fed. R. Civ. P. 59.

### 1.     Plaintiff Already Recovered More than his Actual Damages.

The jury awarded Plaintiff $100,000 in actual damages.  The confidential settlement agreements produced by Plaintiff and filed under seal, Dkt. No. 254, show he has already recovered the sum of $**[REDACTED]** from the settling Defendants before trial.  *Id*. at Searles Decl. ¶¶ 7-12, Exs. A-G.[9]

### 2.     The One-Satisfaction Rule Presumptively Applies.

Plaintiff has already been (more than) compensated for the undifferentiated harm he claims he suffered because of the collective conduct of the settling Defendants and Comenity. The Court therefore must reduce Plaintiff's actual damages award to zero, or at a bare minimum must substantially reduce the actual damages award, because a "payment made by a joint tortfeasor diminishes the claim against the remaining tortfeasors." *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389 (9th Cir. 1987).  This "fundamental principle," *id.*, embodied in the one-satisfaction rule, "prevent[s] double recovery and unjust enrichment" where a plaintiff seeks recovery for a single, indivisible harm. *Uthe Tech. Corp. v. Aetrium, Inc.*, 808 F.3d 755, 760 (9th Cir. 2015); *Seymour*, 809 F.2d at 1389 (reducing jury verdict by value of prior settlement); *Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir. 1941) (same).  These tort principles apply here because a FCRA claim is akin to the tort of defamation. *See Transunion LLC v. Ramirez*, 594 U.S. 413, 432 (2021).[10]

Before trial, the Court acknowledged the one-satisfaction rule but deferred ruling on the issue because "the nature and extent of Plaintiff's harm, and the cause(s) of such harm, ha[d] not yet been established."  Dkt. 179 at 3.  At trial (as discussed above), Plaintiff offered no evidence

---

[9] Comenity has filed a motion to seal the confidential settlement agreements and it is lodging concurrently herewith an unredacted copy of this brief listing the total amount of the settlement payments.

[10] *See also* Restatement (Second) of Torts § 885(3) (1979) ("A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.").

that the Comenity account or Comenity's investigations into his indirect disputes caused any different injury than that caused by the settling defendants. Any alleged injury suffered by Plaintiff was one indivisible harm not attributable solely to Comenity, as he admitted at trial. Narita Decl. ¶ 2, Ex. A, 401:2-24.

On similar facts, the court in *Gao v. Campus 150 Venture II, LLC* concluded the one-satisfaction rule applied to a FCRA claim against a furnisher and compelled production of plaintiff's settlement agreement with a reporting agency. 2021 WL 6103537, *3 (C.D. Cal. 2021). As here, the *Gao* plaintiff "d[id] not identify any distinct injury caused by Equifax or BYL" and "c[ould ]not separately describe the percentage of her damages that [were] attributable to any specific defendant." *Id.*[11]

### 3. The Cases Refusing to Apply the One-Satisfaction Rule Confuse Contribution with One-Satisfaction

The cases holding that the one-satisfaction rule *per se* does not apply to the FCRA because the Act "does not contain . . . an implied or express right of *contribution*[ or] *indemnification*" are poorly-reasoned and the Court should not follow them. *See, e.g.*, *Zook v. Equifax Info. Servs., LLC*, 2018 WL 10604347, *2 (D. Or. 2018) (citing *Boatner v. Choicepoint Workplace Sols., Inc.*, 2010 WL 1838727, *2 (D. Or. 2010)). These cases confuse the "one-satisfaction rule" with the materially different right of contribution or indemnification,[12] which are *remedies* available to joint tortfeasors to recover *from one another*. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1277 (11th Cir. 2008). "A right of 'contribution' allows a

---

[11] Because the one-satisfaction rule applies **by default** (and to FCRA recoveries), and because it applies under the facts here, the burden shifts to Plaintiff to establish that the actual damages awarded here do not violate the rule. *See Corder v. Brown*, 25 F.3d 833, 840 (9th Cir. 1994) (district court abused discretion by refusing to apply one-satisfaction rule to offset attorneys' fees in § 1983 case). *Corder* cited approvingly to a Tenth Circuit case that rejected plaintiffs' attempt to avoid the one-satisfaction rule by arguing the prior settlements were "ambiguous as to what injuries and claims were covered." *Id. Corder* noted the Tenth Circuit "reason[ed] that the burden was properly shifted to the plaintiffs and settling defendant to disclose the terms of the agreement" so that they did not "benefit by the non-settling defendant's lack of participation in the agreement." *Id.*

[12] "[I]ndemnity and contribution are closely related; in a sense, 'indemnity is only an extreme form of contribution.'" *Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145 (N.D. Cal. 2015).

---

defendant 'to demand that another who is jointly responsible for a third party's injury supply part of what is required to compensate the third party.'" *Id.* (citation omitted)); *see Gonzalez v. Harris Farms, Inc.*, 2014 WL 6981429, *5 (E.D. Cal. 2014) (defendant brought cross-claim for contribution under FCRA). By contrast, the one satisfaction rule simply prevents the plaintiff from receiving a windfall or double recovery. *Uthe Tech.*, 808 F.3d at 760.

An analogy helps illustrate the point. Imagine Plaintiff owned a restaurant and five defendants (including Comenity) decide to order $50 worth of food for delivery, and Comenity places the order. When the food arrives, Comenity must pay the full amount and cannot refuse to do so simply because it has not yet received a proportionate share from the other defendants— *i.e.*, it cannot refuse to pay based on a theory of contribution. But if the other four defendants were separately invoiced by Plaintiff and each Defendant had already paid Plaintiff the full $50 owed, then Comenity owes nothing at delivery. Plaintiff does not get to recover a windfall of $250 for supplying $50 of food. That is what the one-satisfaction rule mandates: "[A]ssuring the tort victim one complete satisfaction of his claim, neither more nor less." *Seymour*, 809 F.2d at 1389.

Here, Plaintiff wants to recover more than his $100,000 in actual damages. The one-satisfaction rule bars such a windfall, and it has nothing to do with contribution. "Irrespective of the nature of the cause of action, a plaintiff is entitled to one full satisfaction of his claim in an action against joint defendants." *Flintkote, Co. v. Lysfjord*, 246 F.2d 368, 398 (9th Cir. 1957). None of the cases Plaintiff has previously cited on this issue allows Plaintiff to recover actual damages in an amount <u>greater</u> than he was actually damaged. *See* Dkt. No. 155 at 1, 3.

Plaintiff's cases also mistakenly assume that if defendants have no right to contribution, then Plaintiff is not subject to the one-satisfaction rule. Not so. A defendant must establish a separate right of contribution, whereas the one satisfaction rule applies by default. A defendant can invoke the right to contribution only if Congress grants the right because "[a]t common law there was no right to contribution among joint tortfeasors." *Northwest. Airlines, Inc. v. Transportation Workers Union of Am., AFL-CIO*, 451 U.S. 77, 86–87 (1981). But "the one

satisfaction rule . . . has its roots in elementary principles of tort law," so it applies regardless Congressional intent. *BUC*, 517 F.3d at 1277 (one-satisfaction rule applied to recoveries under the Copyright Act even though that Act did not allow for contribution). This comports with Supreme Court and Ninth Circuit pronouncements that the one-satisfaction rule is a fundamental principle applicable *by default* to tort-like recoveries. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 348 (1971); *Seymour*, 809 F.2d at1389; *Uthe Tech.*, 808 F.3d at 759–60. As such, regardless whether the FCRA provides a right to contribution, the one-satisfaction rule applies to FCRA recoveries for actual damages where a plaintiff already recovered.[13] *Williams v. LVNV Funding LLC*, 2017 WL 1331014, *1 (N.D. Ala. 2017) ("FCRA does not contain a right to offset or contribution, [but] the one satisfaction rule still applies, and the settlement terms would be relevant to determining whether any judgment against the Defendants should be subject to a credit").

### 4. The District Court Cases Rejecting One Satisfaction Do So In Dicta and Uniformly Rely on a Misreading of *Nelson v. Equifax*

The discovery orders where courts have *assumed* the one satisfaction rule is *per se* inapplicable to FCRA claims are not persuasive for two reasons. First, they did not actually decide that FCRA recoveries are exempt from the one-satisfaction rule. *See, e.g.*, *Contreras v. Kohl's Dep't Stores, Inc.*, 2017 WL 6372646, *3 (C.D. Cal. 2017) (denying motion to compel production of settlement agreements in FCRA case, but declining to rule on whether one satisfaction rule applied); *Doherty v. MicroBilt Corp.*, 2024 WL 4003921, *4 (C.D. Cal. 2024) (same); *Cheetham v. Specialized Loan Servicing LLC*, 2021 WL 2137823, *2 & n.3 (W.D. Wash. 2021) (same); *see also Tu v. Experian Info. Sols., Inc.*, 2025 WL 1134612, *13 (S.D. Cal.

---

[13] Courts apply the one-satisfaction rule under many, diverse federal statutes without considering whether those statutes expressly or implicitly provide for it (or for contribution). *See, e.g.*, *Flintkote*, 246 F.2d at 398 (Clayton Act); *McLish v. Harris Farms, Inc.*, 507 F. Supp. 1075, 1088 (E.D. Cal. 1980) (Securities Act of 1933); *Burgess v. Premier Corp.*, 727 F.2d 826, 837 (9th Cir. 1984) (Securities Act of 1934); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1037 (9th Cir. 1986) (Lanham Act); *BUC*, 517 F.3d at 1277 (Copyright Act); *Chaudhry v. City of Los Angeles*, 2014 WL 12558777, *3 (C.D. Cal. 2014) (Section 1983); *Uthe Tech.*, 808 F.3d at 759–60 (RICO); *Armstrong v. Nan, Inc.*, 2015 WL 12746714, *3 (D. Haw. 2015) (AEDA), *aff'd*, 679 F. App'x 582 (9th Cir. 2017).

---

2025) (declining to decide issue).  Second, *all* these cases derive this purported ruling from *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. 2007), or from cases citing to *Nelson*.  But *Nelson* did *not* hold a FCRA recovery is exempt from the one-satisfaction rule.

Instead, *Nelson* declined to offset an *FDCPA award* by the amount he recovered under a "*distinct cause of action*" under FCRA.  *Id.* at 1239.  This uncontroversial ruling—that a recovery for a violation of a duty under one statute cannot offset a recovery for a violation of a different duty under a different statute—cannot mean that FCRA claims are exempt from "fundamental principle[s]" of tort law.  *Seymour*, 809 F.2d at 1389.  The echo chamber of cases assuming the one satisfaction rule is inapplicable to FCRA claims are simply repeating a misreading of *Nelson*.

In any event, even if FCRA recoveries were exempt from the one satisfaction rule, the Court should still offset the actual damages award to respect the fundamental principle that a plaintiff should not double recover.  *See Uthe Tech.*, 808 F.3d at 762 (ordering damages be "offset for the sums paid" by other defendants even though one satisfaction rule did not apply).

### C.  The Punitive Damage Award Is Contrary to Law, Not Supported by Evidence, and Unconstitutional

Comenity does not concede that Plaintiff proved a violation of section 1681s-2(b) of the FCRA, or that he met his burden of proof to show a willful violation.  *See* 15 U.S.C. § 1681n(a)(2).  Even if he could overcome that hurdle of proving a willful violation, the jury violated Comenity's due process rights by awarding $20 million in punitive damages, a ***200:1 ratio*** over compensatory damages.  The Court now has a "mandatory duty to correct an unconstitutionally excessive verdict."  *Great W. Cap., LLC v. Payne*, 2025 WL 2463216, *6 n.5 (D. Or. 2025); *see also* 15 U.S.C. § 1681n(a)(2) (FCRA permits punitive damages in an amount "as the court may allow").[14]

---

[14] Comenity further contends that the Court erred in allowing the jury to decide punitive damages, which under the FCRA are up to the Court to decide, and by imposing a preponderance

To make this determination, the Court must "consider [two] guideposts: (1) the degree of reprehensibility of the defendant's misconduct; [and] (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award."[15]  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538, U.S. 408, 419 (2003).  According to the Ninth Circuit, a "ratio of 4 to 1 is the **most** the Constitution permits" in a case like this one.  *TransUnion*, 951 F.3d at 1037 (emphasis added).  Because Comenity's conduct was (at most) minimally reprehensible, punitive damages should not exceed a 1:1 ratio.[16]

### 1.    Comenity's Conduct Was Not Reprehensible.

The "reprehensibility of [Comenity's] conduct is the most important guidepost" for assessing the constitutionality of punitive damages.  *Id.* at 1036.  The Court "must consider whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident."  *Id.*

***First***, Plaintiff suffered "no physical harm and [Comenity's] conduct did not evince an indifference to health or safety."  *TransUnion*, 951 F.3d at 1036 (physical harm and health/safety

---

of the evidence instead of a clear and convincing evidence standard.  *See* Dkt. No. 198, pp. 7-9, 13-15 (Comenity's objections to Plaintiff's Proposed Jury Instruction Nos. 37, 44). This is reversible error that renders a new trial appropriate.  *See* Fed. R. Civ. P. 59(a).

[15]  A third guidepost—the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases, *State Farm*, 538 U.S. at 419—does not apply in FCRA cases.  *See Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1037 (9th Cir. 2020), *rev'd on other grounds*, 594 U.S. 413 (2021) ("*TransUnion*").

[16]  A $20 million punitive damages award is otherwise unprecedented in FCRA litigation. Comenity located only one six-figure single-plaintiff punitive damage award in this District— $700,000 in *Drew v. Equifax Info. Servs., LLC*, 2010 WL 5022466, *8-9 (N.D. Cal. 2010).  But the award in *Drew* was a mere 2:1 ratio over compensatory damages, *id.*, and the facts were worse than those in this case.  The plaintiff was a uniquely vulnerable cancer patient, injured as the "result of a policy chosen after careful cost benefit analysis, with full knowledge of the risks to those seeking credit."  *Id.* at *8.  Other recent FCRA cases in the Ninth Circuit award only *de minimis* punitive damages.  *See, e.g.*, *TransUnion*, 951 F.3d at 1037 ($3,936.88); *Bultemeyer v. CenturyLink Inc.*, 2025 WL 671760, *9-10 (D. Ariz. 2025) ($2,000).

---

elements not met in routine FCRA case); *see, e.g.*, *Bultemeyer*, 2025 WL 671760, at *9 (same). Plaintiff offered no evidence at trial from any medical or mental health provider. These two factors favor Comenity.

*Second*, the evidence shows Plaintiff's alleged harm resulted from accident, not from Comenity's intentional malice, trickery, or deceit. Plaintiff offered evidence that Ms. Banu failed to review the attachments that were transmitted with the one ACDV that she investigated on August 21, 2023. Dkt. No. 250-2, pp. 33-34. But as of that date, Comenity had a ***written policy*** requiring its investigators to review images attached to ACDVs. Dkt. No. 246, Admt. Ex. 244. In fact, Comenity always required its investigators to do so. Narita Decl. ¶ 2, Ex. A, 659:12-17 ("It was always a part of the process that images should be reviewed as part of the dispute."). When it learned in mid-2023 (before this case was filed) that some investigators were not always adhering to this longstanding requirement, it revised its written guidance and retrained investigators. *Id.*; Dkt. No 246. Admt. Exs. 243-244. Ms. Banu's failure to follow the training and policies provided by Comenity is not evidence of intentionally malicious, deceptive, or dishonest conduct. Rather, it is at best evidence of one employee not following policy. Narita Decl. ¶ 2, Ex. A, 635:12-19. Moreover, even if she had reviewed those images, the evidence shows that the limited information contained in the images would not have changed Comenity's determination. *See* § III(D)(3-4), *infra*. This factor favors Comenity.

*Third*, there is no evidence Comenity engaged in repeated misconduct as to other consumers. *See, e.g.*, *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 232 (3d Cir. 2005) ("Repeated conduct" for purposes of reprehensibility "is not merely a pattern of contemptible conduct within one extended transaction . . . but rather specific instances of similar conduct by the defendant in relation to other parties."). Plaintiff did not (and could not) offer evidence of ***a single*** other instance where Comenity failed to reasonably investigate an indirect dispute. This factor also favors Comenity.

*Fourth*, the only factor that had the theoretical potential to favor Plaintiff is financial vulnerability, to the extent he could prove that his "ability to obtain credit depended on the care

that" Comenity paid to his dispute. *TransUnion*, 951 F.3d at 1036. But Plaintiff presented no evidence that Comenity's reporting had any impact on his one credit denial (the Apple card) or that it otherwise caused him any financial harm. *See* § III(A) (comprehensively addressing lack of evidence of harm traceable to Comenity); *id.* at III(A)(3)(b) (specifically addressing Apple card denial).

In sum, Plaintiff failed to prove Comenity's conduct was reprehensible. There was no basis to award punitive damages.

### 2.    The Maximum Punitive Damages Allowed Is a Low Single-Digit Multiplier Over Compensatory Damages.

Even where a defendant's conduct is reprehensible (which is not the case here), "punitive 'awards exceeding a single-digit ratio' will rarely satisfy due process, and punitive awards exceeding four times the amount of compensatory damages 'might be close to the line of constitutional impropriety.' . . . '[W]hen compensatory damages are substantial,' a ratio lower than 4 to 1 may be the limit." *TransUnion*, 951 F.3d at 1037 (quoting *State Farm*, 538 U.S. at 425). This is especially true where compensatory damages are based, even in part, on emotional distress. *See State Farm*, 538 U.S. at 426. As the Supreme Court explained, "[t]he compensatory damages for the [emotional distress] injury suffered here," were likely "based on a component which was duplicated in the punitive award" and "[m]uch of the distress was caused by the outrage and humiliation the Campbells suffered at the actions of [defendant]; and it is a major role of punitive damages to condemn such conduct. Compensatory damages, however, already contain this punitive element." *Id.; see also Bennett v. American Med. Response*, 226 Fed. Appx. 725, 728-29 (9th Cir. Mar. 27, 2007) (reversing and remanding as "excessive" $649,000 punitive damages award, in case involving $100,000 in compensatory damages, "for consideration of a punitive damages award not exceeding a 4:1 ratio").

The jury awarded Mr. Panchenko $100,000 in emotional distress damages. Dkt. 228 at 2. Assuming that award stands, compared to amount recovered in other Ninth Circuit cases, it was undoubtedly "substantial" actual damages. It is 100 times more than the $984 each class member recovered in *TransUnion*, 951 F.3d at 1034, 1037. It is twice as much as the $50,000

recovered in *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 776 (9th Cir. 2003).  In *In re Moon*, 2023 WL 1779643, *12 (D. Nev. 2023), the court noted that "tens of thousands of dollars . . . is a substantial actual damages award."  For the reasons discussed, though, the award should be eliminated entirely or substantially reduced.  Punitive damages cannot constitutionally exceed four times the amount of actual damages, and a 1:1 ratio is most appropriate in this case of substantial actual damages, particularly where emotional distress is involved.  Any more than that would be duplicative.  A review of prior FCRA cases where courts applied a 4:1 ratio leaves no doubt that a lower ratio is appropriate in this case.

First, Comenity's actions in this case pale in comparison to the indefensible credit reporting actions of the defendant in *TransUnion.*  There, a consumer reporting agency was "aware that its practice was unlawful" when it erroneously "placed terrorist alerts on the front page of the consumers' credit reports and subsequently sent the consumers confusing and incomplete information about the alerts and how to get them removed."  951 F.3d at 1016.  The Ninth Circuit held that "a ratio of 4 to 1 is the most the Constitution permits," even though the defendant's "conduct was repeated and willful."  *Id.* at 1036-37 (reducing 6.45:1 ratio).  Unlike *TransUnion*, Comenity reported that Plaintiff opened, paid on, and eventually failed to fully pay off an account.  There was no allegation (and certainly no proof) that Comenity was aware of any accidentally unlawful action of some of its front-line associates.

In *Bultemeyer*, 2025 WL 671760, at *9-10, a 4:1 ratio was applied where "the conduct involved repeated [FCRA violations] on a grand scale," and the defendant was aware of the unlawful practice).  Again, there was no evidence of Comenity's awareness of frontline mistakes.  And there was no evidence that any mistakes were repeated, let alone on a grand scale.  Plaintiff only introduced evidence about his one account.

Non-FCRA cases following *TransUnion* are in accord.  In *Hardeman v. Monsanto Co.*, 997 F.3d 941, 975 (9th Cir. 2021), the defendant "intentionally downplayed and ignored calls to test [its product's] carcinogenic risks, and the jury determined" the product caused the plaintiff's cancer.  The Ninth Circuit nevertheless reduced punitive damages from a 14.2:1 ratio to a 3.8:1

ratio, reasoning that "[c]oupled with the physical damage—cancer—these factors suggest a damages ratio up to 4 to 1 'serves as a good proxy for the limits of constitutionality.'"  *Id.* at 974-76 (quoting *State Farm*, 538 U.S. at 425).  The Ninth Circuit "emphasize[d] that the award is 'close to the line of constitutional impropriety.'"  *Id.* at 976 (quoting *State Farm*, 538 U.S. at 425).  Also relevant is *Estate of Hill by and through Grube v. NaphCare, Inc.*, 2025 WL 1588738, *4 (9th Cir. 2025).  In that case, an 8.7:1 ratio was deemed unconstitutional even where defendant's "conduct caused physical—and deadly—harm in reckless disregard of [decedent's] safety"); *see also In re Moon*, 2023 WL 1779643, at *12-13 (reducing "rarely constitutionally appropriate" 7:1 ratio and holding "a 1.5 multiplier appropriately serves the twin goals of punishment and deterrence" where debt collector repeatedly violated automatic bankruptcy stay as to "financially vulnerable" debtor).

   The Court should reduce punitive damages to no more than a 1:1 ratio because of the substantial compensatory damages award and the low reprehensibility of Comenity's conduct compared to the 4:1 cases discussed above.  Unlike *TransUnion* and *Bultemeyer*, there is no evidence that Comenity's conduct was widespread (it was not) or that it was aware its practices were unlawful (it was not).  Comenity's conduct was far less egregious than *TransUnion*, where the CRA published credit reports falsely linking the plaintiffs to a terrorist watchlist, and a federal appellate court had already found this exact conduct unlawful years earlier.

   The evidence instead shows a Comenity employee failed to view images attached to a single ACDV, in accidental violation of a written policy, and those images would not have altered Comenity's determination.  Even where misconduct resulted in serious disease and death—*Hardeman* and *NaphCare*, respectively—the Ninth Circuit found ratios above 4:1 unconstitutional.  And if 4:1 is "the line of constitutional impropriety" in a case where a chemical manufacturer marketed a potentially dangerous product with intentional indifference to public health, and the product caused the plaintiff's cancer—*Hardeman*, 997 F.3d at 976—the limit must be materially lower for Comenity's far less serious conduct.  This is especially true in that there is no need to incentivize deterrence in this case because Comenity voluntarily

tightened its ACDV review practices before Plaintiff filed this litigation.  Narita Decl. Ex. A, 659:12-17, Dkt. No 246. Admt. Exs. 243-244, 661:12-17.  Comenity suggests that if the punitive damages are not eliminated entirely, then a ratio of no more than 1 to 1 is appropriate.

## IV. **CONCLUSION**

Plaintiff did not prove any harm traceable to Comenity's alleged violation of section 1681s-2(b), and therefore the Court must vacate the judgment, set aside the verdict, and dismiss this case for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).

In the alternative, the Court should substantially reduce the jury's actual damages award, or eliminate it entirely, under the "one satisfaction" rule given the amount of the settlements Plaintiff reached with the other defendants.  *See* Fed. R. Civ. P. 59.

Finally, because punitive damages were unwarranted and because the jury's award was unconstitutional and grossly excessive under controlling authority, if any punitive damages are to be allowed by the Court, they should not exceed a 1:1 ratio with any actual damages.


DATED: December 23, 2025        WOMBLE BOND DICKINSON (US) LLP
                                TOMIO B. NARITA
                                JEFFREY A. TOPOR
                                NATHAN A. SEARLES
                                ALISA A. GIVENTAL
                                KRISTINA B. HOVSEPYAN


                        By:    */s/Tomio B. Narita*
                                Tomio B. Narita
                                Attorneys for Comenity Capital Bank