**LOKER LAW, APC**
Matthew M. Loker (279939)
matt.loker@loker.law
Telephone: (805) 994-0177
Charles B. Cummins (354861)
charles.cummins@loker.law
Telephone: (805) 468-8141
132 Bridge Street
Arroyo Grande, CA 93420

*Attorneys for Plaintiff,*
Oleksandr Panchenko

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OLEKSANDR PANCHENKO,** | **Case No.:** 23-cv-04965-EKL |
| Plaintiff, | **PLAINTIFF OLEKSANDR PANCHENKO'S OPPOSITION TO DEFENDANT COMENITY BANK'S OMNIBUS POST-TRIAL MOTION** |
| v. | |
| **COMENITY CAPITAL BANK,** | **DATE:** February 25, 2026 |
| Defendants. | **TIME:** 10:00 a.m. |
| | **COURTROOM:** 7 |
| | **HON. EUMI K. LEE** |

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ......................................................................................... 2

    A. COMENITY'S OMNIBUS MOTION SHOULD BE DENIED BECAUSE THE JURY FOUND PANCHENKO EXPERIENCED SPECIFIC INJURY TRACEABLE TO COMENITY ONLY .............................................................................. 2

        1. Panchenko has Article III Standing because Comenity's inaccurate credit reporting caused, in part, credit denials ........ 3

        2. The jury awarded Panchenko $100,000 in actual damages based upon Comenity's violations of the FCRA .................... 5

            i. *The jury did not award damages for the direct disputes nor did Panchenko seek damages associated with the dispute process* .............................................................................. 6

    B. COMENITY'S OMNIBUS MOTION SHOULD BE DENIED BECAUSE THE ONE SATISFACTION RULE IS INAPPLICABLE TO THE VERDICT PANCHENKO OBTAINED ............................................................................................ 7

        1. The One Satisfaction Rule bears no relevance here since Panchenko did not seek recovery for damages caused by any other defendant ....................................................................... 8

        2. Comenity failed to elicit any testimony establishing Panchenko sought to recover damages caused by any other defendant ..... 9

        3. Comenity failed to establish any other defendant purportedly paid Panchenko for harm caused by Comenity ....................... 9

            i. Gao *is distinguishable* .................................................... 12

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

C. COMENITY'S OMNIBUS MOTION SHOULD BE DENIED BECAUSE THE JURY PROPERLY AWARDED PUNITIVE DAMAGES .................................. 13

   1. The jury's punitive damages award should not be reduced because reduction of the award will not satisfy the purposes of punitive damages .................................................................... 14

      i.  *Previous reductions of punitive damages have allowed this type of conduct to occur* .................................................. 17

   2. The *Gore* facts favor adoption of the jury's punitive damages award ...................................................................................... 18

      i.  *The degree of reprehensibility of Comenity's misconduct favors adoption of the award* ........................................ 19

         Physical Harm ...................................................... 19

         Reckless Disregard & Deceit .............................. 20

         Financial Vulnerability ....................................... 21

         Repeated Conduct ............................................... 22

      ii.  *The disparity between actual or potential harm suffered by Panchenko and the punitive damages award* ................ 23

      iii.  *The difference between punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases* ......................................................... 24

III.  CONCLUSION ................................................................................ 24

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

# TABLE OF AUTHORITIES

CASES                                                                      PAGE(S)

*Abner v. Kan. City S.R.R.*,
    513 F.3d 154 (5th Cir. 2008)..................................................................15

*American Legion v. American Humanist Assn.*,
    139 S. Ct. 2067 (2019) .......................................................................3

*Am. Fire & Cas. Co. v. Davis*,
    146 So. 2d 615 (Fla. 1st DCA 1962) ..................................................20

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996) ...................................................................14, 17

*Brim v. Midland Cred. Mgmt.*,
    795 F. Supp. 2d 1255 (N.D. Ala. 2011) .............................................18

*Chisholm v. UHP Projects, Inc.*,
    205 F.3d 731 (4th Cir. 2000)............................................................11

*Cortez v. Trans Union, LLC*,
    2007 U.S. Dist. LEXIS 68074 (E.D. Pa. Sept. 13, 2007)..............................16

*Daugherty v. Ocwen Loan Servicing, LLC*,
    701 F. App'x 246 (4th Cir. 2017) .....................................................17

*EEOC v. Fed. Express Corp.*,
    513 F.3d 360 (4th Cir. 2008)............................................................16

*Fredrickson v. Cannon Fed. Credit Union*,
    2017 U.S. Dist. LEXIS 210942 (D.N.M. Dec. 22, 2017) ...........................20

*FTC v. Gill*,
    265 F.3d 944 (9th Cir. 2001)............................................................20

*Holcroft v. MO/KS/TX R. Co.*,
    607 S.W.2d 158 (Mo. Ct. App. 1980)............................................17

*Johansen v. Combustion Eng'g, Inc.*,
    170 F.3d 1320 (11th Cir. 1999)........................................................16

*Kemp v. AT&T*,
393 F.3d 1354 (11th Cir. 2004)..................................................................15

*Lee v. Edwards*,
101 F.3d 805 (2d Cir. 1996)......................................................................15

*Liveperson, Inc. v. 247., Inc.*,
2022 U.S. Dist. LEXIS 158253 (N.D. Cal. July 28, 2022)..........................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................................3

*Mathias v. Accor Econ. Lodging, Inc.*,
347 F.3d 672 (7th Cir. 2003)......................................................................15

*Miller v. Equifax Info. Servs., LLC*,
2014 U.S. Dist. LEXIS 69450 (D. Or. May 20, 2014)...............................17

*Muzi Gao v. Campus 150 Venture II*,
2021 U.S. Dist. LEXIS 246093 (C.D. Cal. Oct. 29, 2021).........................12

*Neal v. Farmers Insurance Exchange*,
21 Cal. 3d 910 (1978)................................................................................13

*Panchenko v. Bank of Am., N.A.*,
2025 U.S. Dist. LEXIS 80606 (N.D. Cal. April 28, 2025).......................7, 8

*Panchenko v. Comenity Capital Bank*,
2025 U.S. Dist. LEXIS 200601 (N.D. Cal. Oct. 9, 2025).........................7, 9

*Pennington v. Midland Credit Mgmt.*,
2010 U.S. Dist. LEXIS 80534 (E.D. Va. Aug. 9, 2010).............................9

*Rowe v. Hornblower Fleet*,
2012 U.S. Dist. LEXIS 164402 (N.D. Cal. Nov. 16, 2012).........................3

*Protectus Alpha Navigation Co. v. N. Pac Grain Growers, Inc.*,
767 F.2d 1379, 1385 (9th Cir. 1985)..........................................................14

*Riley v. Volkswagen Grp. of Am., Inc.*,
51 F.4th 896 (9th Cir. 2022)......................................................................19

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*Rufo v. Simpson*,
    86 Cal. App. 4th 573 (2001)...................................................................13

*Saunders v. Branch Banking & Tr. Co.*,
    526 F.3d 142 (4th Cir. 2008).........................................................14, 15

*Scudder v. Sofi Lending Corp.*,
    2024 U.S. Dist. LEXIS 165961 (M.D. Fla. Sep. 16, 2024) ...................10, 11

*Seaman v. Am. Express Nat'l Bank*,
    2024 U.S. Dist. LEXIS 104706 (C.D. Cal. June 12, 2024)...........................8

*Sloane v. Equifax Info. Servs.*,
    510 F.3d 495 (4th Cir. 2007).........................................................................8

*Soto v. BorgWarner Morse TEC Inc.*,
    239 Cal. App. 4th 165 (2015)......................................................................13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .....................................................................................2

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ...................................................................................19

*Todd v. AT&T Corp.*,
    2017 U.S. Dist. LEXIS 60000 (N.D. Cal. Apr. 19, 2017) ..........................22

*Townsend Farms v. Goknur Gida Maddeleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*,
    2017 U.S. Dist. LEXIS 231773 (C.D. Cal. Dec. 19, 2017) ..................13, 18

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).............................................................................passim

*Tu v. Experian Info. Sols., Inc.*,
    2025 U.S. Dist. LEXIS 72727 (S.D. Cal. Apr. 15, 2025) .............................8

*TXO Prod. Corp. v. Alliance Res. Corp.*,
    509 U.S. 443 (1993) ...................................................................................16

*Uthe Tech. Corp. v. Aetrium, Inc.*,
    808 F.3d 755 (9th Cir. 2015).........................................................................7

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*Wang v. Hsu*,
    1991 U.S. Dist. LEXIS 4398 (N.D. Cal. Mar. 1, 1991) ................................14

*Ward v. Nat'l Credit Sys.*,
    2025 U.S. Dist. LEXIS 18926 (D. Colo. Feb. 3, 2025) ................................11

*Yohay v. City of Alexandria Employees Credi Union, Inc.*,
    827 F.2d 967 (4th Cir. 1987)...........................................................14

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    <u>INTRODUCTION</u>

Comenity's Omnibus Motion is a transparent attempt to unwind what a fully instructed jury already did after hearing the evidence and applying the law: hold Comenity accountable for a willful Fair Credit Reporting Act violation that caused concrete, traceable harm to Panchenko. The motion repackages three theories, none supported by the trial record: a manufactured Article III argument that ignores this Court's limiting instructions and the jury's compensatory award, a one satisfaction theory that collapses because Panchenko sought damages attributable to Comenity alone, and a due process attack that asks the Court to second guess the jury's punitive verdict despite overwhelming proof of institutional misconduct.

Standing is not a close call. Comenity furnished an inaccurate charge off exceeding $5,000, that tradeline was disseminated to third parties, and it was relied upon in an actual credit denial. That is the paradigmatic real-world injury the Supreme Court recognized as concrete in *Ramirez*, and the jury independently confirmed injury by awarding $100,000 in emotional distress damages based on Comenity's conduct. Comenity's post-verdict effort to relabel that record as speculative is not a legal argument, it is an effort to rewrite trial testimony and nullify the jury's findings.

The rest of the motion fares no better. The one satisfaction rule does not apply because Panchenko did not seek, and the jury did not award, damages for anyone else's wrongdoing, and Comenity offered no evidence of overlap or double recovery. And the punitive damages award is not constitutionally excessive, it is constitutionally appropriate: the evidence showed an institutional practice that prioritized speed over accuracy, bypassed the review the FCRA demands, and falsely certified to consumer reporting agencies that disputes were reviewed when employees admitted they were not, a system Comenity incentivized and then

**PLAINTIFF OLEKSANDR PANCHENKO'S OPPOSITION TO DEFENDANT COMENITY BANK'S OMNIBUS POST-TRIAL MOTION**

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ratified. Under *Gore* and controlling authority, the reprehensibility and the actual and potential harm support the jury's verdict, and this Court should promptly deny the motion in its entirety.

## II.     ARGUMENT

Comenity's Motion should be denied because (A) the jury found Panchenko experienced specific injury traceable to Comenity only; (B) the One Satisfaction Rule is inapplicable to the verdict Panchenko obtained; and, (C) the *Gore* factors favor adoption of the punitive damages award.

### A. COMENITY'S OMNIBUS MOTION SHOULD BE DENIED BECAUSE THE JURY FOUND PANCHENKO EXPERIENCED SPECIFIC INJURY TRACEABLE TO COMENITY ONLY.

Comenity's Article III standing argument inexplicitly misconstrues unambiguous testimony throughout trial and ignores the numerous limiting instructions offered by this Court simply in an effort to avoid answering for its reckless violation of the FCRA. For the reasons discussed herein, however, Comenity's argument should be disregarded since the jury awarded $100,000 to Panchenko for the harm Comenity caused him.

As the United States Supreme Court recently explained, "[t]o have Article III Standing to sue in federal court, plaintiffs must demonstrate, among other things, that they have suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *Id*. citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-341 (2016). Quite simply, Panchenko has established a concrete violation because (1) Comenity's inaccurate credit reporting

**PLAINTIFF OLEKSANDR PANCHENKO'S OPPOSITION TO DEFENDANT COMENITY BANK'S OMNIBUS POST-TRIAL MOTION**

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

caused, in part, credit denials; and, (2) $100,000 in emotional distress.

### 1. Panchenko has Article III Standing because Comenity's inaccurate credit reporting caused, in part, credit denials.

In *Ramirez*, the United States Supreme Court explained "to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Ramirez*, 594 U.S. at 423 citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). "[U]nder Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *Ramirez*, 594 U.S. at 424 citing *American Legion v. American Humanist Assn.*, 139 S. Ct. 2067 (2019).

*Ramirez* was a class action filed pursuant to the Fair Credit Reporting Act in the Northern District of California before the Honorable Jacqueline Scott Corley. In 2002, Trans Union "introduced an add-on product called OFAC Name Screen Alert." *Ramirez*, 594 U.S. at 419. "OFAC is the U.S. Treasury Department's Office of Foreign Assets Control…[which] maintains a list of 'specially designated nationals' who threaten America's national security…[such as] terrorists, drug traffickers, or other serious criminals." *Id.*

Plaintiff Sergio Ramirez represented a class of individuals who were erroneously included on the OFAC list as a result of inadequate procedures maintained by Trans Union. *Id.* "Before trial, the parties stipulated that the class contained 8,185 members…[of which] only 1,853 members of the class (including Ramirez) had their credit reports disseminated by Trans Union to potential creditors [during the class period]." *Id.* at 421.

Ramirez asserted "Trans Union failed to 'follow reasonable procedures to assure maximum possible accuracy' of the plaintiffs' credit files maintained by

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

Trans Union.'" *Id*., at 431. "Start[ing] with the 1,853 class member (including the named plaintiff Ramirez) whose reports were disseminated to third-party businesses…[t]he plaintiffs argue that the public to a third party of a credit report bearing a misleading OFAC alert injures the subject of the report." *Id*., at 432. "The plaintiffs contend that this injury bears a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts – namely, the reputational harm associated with the tort of defamation." *Id*. citing *Robins*, 578 U.S. at 341.

The Supreme Court readily agreed with the plaintiffs that "Trans Union provided third parties with credit reports containing OFAC alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals." *Id*. Thus, the Supreme Court had "no trouble concluding that the 1,853 class members suffered a concrete harm that qualifies as an injury in fact." *Id*., at 432.

The same conclusion follows here, with facts that fit squarely within the standing framework approved in *Ramirez*. Comenity reported an inaccurate tradeline reflecting a charged off balance exceeding $5,000 on Panchenko's credit reports. That inaccurate information did not remain confined to Comenity's internal systems. It was disseminated to third parties and was relied upon in actual credit decisions.

Exhibit 54, admitted into evidence on the first day of trial, is an email from Goldman Sachs dated August 16, 2023, informing Panchenko that his application for an Apple Card was denied. One of the stated reasons for the denial was serious delinquency appearing on his TransUnion credit report. Panchenko's TransUnion report shows that this serious delinquency was attributable to Comenity's reported charge off. Exhibit 30. In addition, Panchenko's Experian credit report containing the same derogatory Comenity tradeline was transmitted to multiple third parties,

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

**PLAINTIFF OLEKSANDR PANCHENKO'S OPPOSITION TO DEFENDANT COMENITY BANK'S OMNIBUS POST-TRIAL MOTION**

including Credit One Bank, Pacific Gas and Electric, and the Social Security Administration. [Exhibit 32].

Panchenko testified at trial regarding this denial, the fact that it was based on derogatory credit information, and the concrete impact it had on him. [Tr. Day 1, 258:18–260:25]. This is not a speculative or abstract injury. It is an actual credit denial, based on third party dissemination of inaccurate credit information, precisely the type of real-world harm the Supreme Court recognized as sufficient in *Ramirez*.

The causal chain is equally straightforward. Comenity conducted an unreasonable investigation of Panchenko's disputes, failed to correct inaccurate information, reported a charge off that did not belong on his credit file, and furnished that misinformation to consumer reporting agencies. Those agencies disseminated the inaccurate tradeline to Goldman Sachs, amongst others, which expressly relied upon it in denying Panchenko's application. The injury is therefore fairly traceable to Comenity's conduct and would be redressed by judicial relief.

Under *Ramirez*, that is all Article III requires. Because Comenity's inaccurate reporting was disseminated to third parties and resulted in an actual credit denial, Panchenko has established a concrete, particularized injury in fact. Accordingly, Comenity's Article III standing challenge should be rejected.

## 2. The jury awarded Panchenko $100,000 in actual damages based upon Comenity's violations of the FCRA.

While Comenity attempted to deflect responsibility by pointing to other furnishers that submitted inaccurate information to the Consumer Reporting Agencies, Panchenko testified that his focus remained squarely on Comenity because it was the first fraudulent account opened and because Comenity affirmatively informed him that it would no longer investigate his disputes. [Tr.,

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

Day 1, 261:1-262:1]. Comenity mischaracterizes this testimony as an admission that Panchenko's harms were attributable to other furnishers. It was not. The testimony was offered solely to explain why Comenity stood apart in Panchenko's mind from the other furnishers. Consistent with that explanation, Panchenko expressly testified that he did not seek damages at trial for harm caused by any other furnisher. [Tr., Day 1, 261:2-262:1].

Panchenko further testified that, as a direct result of Comenity's fraudulent reporting, he was forced to burn through his personal savings. [Id., 263:4-24]. He also testified that Comenity's repeated rejection of his disputes left him feeling depressed, yet unable to afford therapy to address that depression. [Id., 263:25-265:2]. In addition, Panchenko testified that the stress and anxiety caused by Comenity's conduct affected his ability to eat, producing persistent nausea. [Id., 265:3-15]. Alla and Pavlo corroborated the impact Comenity's rejection of Panchenko's disputes had on him. [Tr., Day 2, 448:8-16; 481:3-22; 482:2-10; 482:23-483:8]. Based on this evidence, the jury awarded Panchenko $100,000 in emotional distress damages. [Dkt. Nos. 228; and, 245].

Accordingly, Comenity's Article III argument fails. The record establishes that Comenity reported inaccurate information that was relied upon in the rejection of Panchenko's Apple Card application, and the jury expressly found that Comenity's unreasonable investigation of Panchenko's disputes caused $100,000 in compensable damages.

### i. *The jury did not award damages for the direct disputes nor did Panchenko seek damages associated with the dispute process.*

Comenity claims Panchenko's testimony regarding the dispute process was "fatal admission" to his standing claim. [Moving Papers, 20:11-21:15]. First, this assertion ignores repeated instructions from this Court that direct disputes were not

relevant to Panchenko's claim against Comenity. [*See, e.g.*, Tr., Day 1, 186:23-187:15]. Not only did Comenity's counsel assist with drafting this limiting instruction, Mr. Narita also noted during his closing that it was "really clear" evidence of direct damages was irrelevant to Panchenko's claims. [Tr., Day 3, 779:17-780:12]. What Comenity now calls a "fatal admission" was simply a part of Panchenko's chronological story building to the damages he sought solely based upon Comenity's reckless rejections of his indirect disputes. Panchenko did not seek damages for the dispute process and the limiting instruction was "really clear" to the jury that such conduct was not to be factored into the verdict. Thus, Panchenko requests this Court disregard Comenity's argument to the contrary in ruling upon Article III Standing.

**B. COMENITY'S OMNIBUS MOTION SHOULD BE DENIED BECAUSE THE ONE SATISFACTION RULE IS INAPPLICABLE TO THE VERDICT PANCHENKO OBTAINED.**

Comenity acknowledged this Court's Order on Panchenko's Motion in Limine No. 1 precluding evidence of, or reference to, Panchenko's resolutions with Experian and the other defendants herein. *Panchenko v. Comenity Capital Bank*, No. 23-cv-4965-EKL, 2025 U.S. Dist. LEXIS 200601, at *6 (N.D. Cal. Oct. 9, 2025). Therein the Court explained "[t]he one satisfaction rule reflects the equitable principle that a plaintiff who has received full satisfaction of its claim from one tortfeasor generally cannot sue to recover additional damages corresponding to the same injury from the remaining tortfeasors.'" *Id*. citing *Uthe Tech. Corp. v. Aetrium, Inc.*, 808 F.3d 755, 760 (9th Cir. 2015). *See also Panchenko v. Bank of Am., N.A.*, No. 23-cv-04965-EKL, 2025 U.S. Dist. LEXIS 80606, at *7 (N.D. Cal. Apr. 28, 2025) (same). "'[T]he animating purpose of the one satisfaction rule is to prevent double recovery and unjust enrichment.'" *Id*. "Additionally, for the rule to

apply, the plaintiff must seek recovery for a single, indivisible harm 'that has already been redressed by other parties." *Id*. citing *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 500-01 (4th Cir. 2007).  Furthermore, this Court explained "Comenity may present evidence that, for example, [Panchenko's] credit reports contained other adverse records furnished by others" to address causation of Panchenko's harm. *Id*.

Here, Comenity's efforts to reduce its exposure in this matter through reliance upon the one satisfaction rule fails because (1) Panchenko did not seek damages associated with any conduct other than Comenity's; (2) Comenity did elicit any testimony establishing Panchenko sought to recover damages from Comenity caused by another defendant; (3) Comenity failed to establish which portion of the settlement amounts from the other defendants went to Panchenko's FCRA damages as opposed to damages Panchenko sought pursuant to other sections of the FCRA not applicable to Comenity; the California Identity Theft Act; or the California Consumer Reporting Agencies Act.

### 1. The One Satisfaction Rule bears no relevance here since Panchenko did not seek recovery for damages caused by any other defendant.

Courts have routinely rejected application of the One Satisfaction Rule in FCRA matters "because the injuries are discrete and independent to those caused by other credit reporting agencies or the credit furnisher." *See, e.g., Seaman v. Am. Express Nat'l Bank*, No. 8:23-cv-02472-HDV (ADSx), 2024 U.S. Dist. LEXIS 104706, at *8 (C.D. Cal. June 12, 2024).

Here, Comenity would only be entitled to an offset if Panchenko sought an award of damages by the jury for harm caused by any of the other defendants. *See, e.g.*, *Tu v. Experian Info. Sols., Inc.*, No. 24-cv-1221-WQH-MSB, 2025 U.S. Dist. LEXIS 72727, at *31 (S.D. Cal. Apr. 15, 2025) (noting the one satisfaction

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

precludes plaintiffs from recovering damages twice from separate parties). Panchenko, however, solely asked the jury to award him damages associated with Comenity's conduct.    [Tr., Day 1, 261:1-11].    To the contrary, Panchenko disavowed any such damages caused by entities other than Comenity.    [*Id.*].    Thus, the One Satisfaction Rule bears no relation here and should not be utilized to reduce the verdict.

### 2. Comenity failed to elicit any testimony establishing Panchenko sought to recover damages caused by any other defendant.

As noted above, this Court put Comenity on notice it was permitted to challenge causation of Panchenko's damages at trial. *Panchenko*, 2025 U.S. Dist. LEXIS 200601, at *6. Comenity, however, chose to focus its time on other issues like unrelated text messages and Alla's time working for Equifax. Thus, Comenity's Omnibus Motion offers nothing to substantiate its position Panchenko is seeking recovery more than once for a single recovery belying its reliance upon the One Satisfaction Rule.

### 3. Comenity failed to establish any other defendant purportedly paid Panchenko for harm caused by Comenity.

Comenity assumes the other defendants, sophisticated entities in their own rights, for some reason paid compensation to Panchenko for harm not caused by their own conduct but instead was caused by Comenity.    Neither the Settlement Agreements themselves nor any testimony Comenity obtained at trial support such a conclusion. As such, the following from *Pennington v. Midland Credit Mgmt.*, No. 1:10cv112, 2010 U.S. Dist. LEXIS 80534, *3-4 (E.D. Va. Aug. 9, 2010) rings true herein as well: "Counsel for Pennington has represented that the settlement agreements contain broad dollar amounts with no itemization for particular types of damages.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

'There are net settlement amounts in each agreement to compensate the plaintiff for her actual damages, punitive damages, legal fees and expenses. It would be impossible to look at those lump sum settlement amounts and determine what amount was attributable to actual damages as opposed to legal fees, costs and potential claims for punitive damages.

'At oral argument, counsel confirmed these representations and noted that the settlement agreements contain no admissions of liability, no breakdown of damages, and no reference to any specific statutory violations. As such, the one satisfaction rule, even assuming its applicability, does not support a conclusion that the agreements are relevant or would lead to the discovery of relevant material." *Id*.

The same is true here. Comenity assumes much about Panchenko's resolutions with the other defendants without any basis in fact. It further ignores that the resolutions occurred when additional causes of action were at issue and said resolutions also contained amounts for Panchenko's attorneys' fees and costs. Comenity has failed to elicit any such evidence about what portion of the other resolutions related to separate violations of the Fair Credit Reporting Act; or California Identity Theft Act; or the California Consumer Reporting Agencies Act; any statutory damages under these statutes; punitive damages; or fees; costs. Such speculation does not warrant any reduction of Panchenko's damages awarded by the jury.

These very issues have caused multiple courts to refuse application of the One Satisfaction Rule to reduce FCRA verdicts. In *Scudder v. Sofi Lending Corp.*, No. 3:21-cv-741-TJC-SJH, 2024 U.S. Dist. LEXIS 165961, at *4-5 (M.D. Fla. Sep. 16, 2024), the Court held that it "need not decide whether the rule applies to FCRA cases…[because] Scudder's settlement agreements with the credit bureaus include lump-sum payments." *Id*. Besides actual damages, the credit bureaus' risk exposure

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

included attorneys' fees, costs, statutory damages, and punitive damages." *Id*. citing 15 U.S.C. §§ 1681n(a), 1681o(a).   The Court further noted "[a]lthough SoFi persuasively argues that Scudder suffered only one injury – and the settlement payments total more than the jury award against SoFi – the Court cannot say what portion of each payment accounts for actual damages.  Without that information – or a substantial enough gap between the total settlement amounts and the jury award to alleviate any doubt that Scudder has been fully compensated for his actual damages – the Court cannot reduce the award under the one-satisfaction rule." *Id*.

*Ward* relied upon *Scudder* to reach the same result.  *Ward v. Nat'l Credit Sys.*, Civil Action No. 21-cv-02597-NYW-JPO, 2025 U.S. Dist. LEXIS 18926, at *56-57 (D. Colo. Feb. 3, 2025).   "Plaintiff's counsel represents that the settlement agreements with the CRAs were for lump-sum payments with no apportionment for emotional distress damages and contains no admissions of liability." *Id*.  It would not be possible to determine the portion of the settlement amounts that is properly attributable to emotional distress damages.  Accordingly the Court declines to apply the one-satisfaction rule here and will not amend the judgment to reduce the jury's award." *Id.*

Most troubling though is that Comenity ignores the basic principles of the one satisfaction rule which "is that the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm." *Id*. citing *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000).  Panchenko testified extensively about the damages caused by Comenity alone and at no point has Comenity submitted any evidence showing these were the same damages caused by any other defendant.  Additionally, the Settlement Agreements Panchenko entered into with the other defendants was also based upon lump-sum payments with no delineation for whether those damages were to remedy which

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

aspects of the various statutes or to provide compensation for Panchenko's attorneys' fees or costs.  Thus, Comenity's Motion should be denied in its entirety just as in *Ward* and *Scudder*.

### i.    **Gao *is distinguishable.***

Comenity's current speculation that other defendants somehow paid for damages caused by Comenity is just that; speculation. Notably, Comenity fails to cite a single case where a court in an FCRA matter actually did reduce a judgment after application of the One Satisfaction Rule; instead it conceals the existence of both *Ward* and *Scudder*.

The only case Comenity invokes that bears even minimal connection to this matter is *Muzi Gao v. Campus 150 Venture II*, No. 8:20-cv-01355 DDP (ADSx), 2021 U.S. Dist. LEXIS 246093 (C.D. Cal. Oct. 29, 2021) yet even *Gao* is readily distinguishable. While *Gao* involved pretrial discovery rather than a post-trial motion, it also featured materially different evidence regarding one satisfaction. In *Gao*, the court applied the one-satisfaction rule because the plaintiff failed to differentiate the damages attributable to each defendant. *Id*. at *9–10. The following testimony occurred, in part, at Gao's deposition:

> Q: But is it your contention that all of the defendants, Equifax, .
> . ., BYL and [Campus] all contributed to your damages in some
> fashion?
> A: Yes.

*Id*.

Comenity, as the moving party, has failed to present any evidence whatsoever demonstrating an overlap in damages. Although it had a full and fair opportunity to do so at trial, Comenity instead chose to focus on Panchenko's direct dispute efforts, conduct that was expressly excluded from his claims by agreement of the Parties

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

and reaffirmed by this Court through its limiting instructions. [Motion, 12:15–13:15]. By contrast, Panchenko testified unequivocally that his harm was caused by Comenity alone and that he did not seek damages arising from the conduct of any other defendant. He further explained that he intentionally isolated Comenity from the other furnishers because of Comenity's distinct and particularly troubling treatment of him during the dispute process. Those communications, and Comenity's repeated rejections of his indirect disputes, stood in stark relief and had a unique and pronounced impact on him, while the other furnishers were simply part of the background of the dispute. In light of this record, Comenity's reliance on *Gao* is misplaced, and its Motion should be denied.

### C. COMENITY'S OMNIBUS MOTION SHOULD BE DENIED BECAUSE THE JURY PROPERLY AWARDED PUNITIVE DAMAGES.

"The purposes of punitive damages are to punish the defendant for the conduct that harmed the plaintiff and to deter the commission of future wrongful acts." *Townsend Farms v. Goknur Gida Maddeleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, No. CV 15-0837-DOC (JCGx), 2017 U.S. Dist. LEXIS 231773, at *38-39 (C.D. Cal. Dec. 19, 2017) citing *Soto v. BorgWarner Morse TEC Inc.*, 239 Cal. App. 4th 165, 194-95 (2015); *Neal v. Farmers Insurance Exchange*, 21 Cal. 3d 910, 928 fn. 13 (1978). "'It follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objectives.'" *Id.* "Indeed, the 'proper level of punitive damages is an amount not so low that the defendant can absorb it with little or no discomfort, nor so high that it destroys, annihilates, or cripples the defendant.'" *Id.* citing *Rufo v. Simpson*, 86 Cal. App. 4th 573, 621-633 (2001).

Here, the jury's punitive damages award should not be reduced because (1) reduction of the award will not satisfy the purpose of punitive damages; and, (2) the

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

*Gore* factors favor approval of the amount.

### 1. The jury's punitive damages award should not be reduced because reduction of the award will not satisfy the purposes of punitive damages.

"The Supreme Court has held that punitive damages can be imposed to further 'legitimate interests in punishing unlawful conduct and deterring its repetition.'" *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 152 (4th Cir. 2008) citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). "Hence, '[t]he award of punitive damages in the absence of any actual damages…comports with the underlying deterrent purpose of the FCRA.'" *Id.* citing *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987).

Despite this, Comenity asks this Court to either eliminate the punitive damages in their entirety or reduce them to $100,000. [Motion, 25:2-3]. Such a reduction is not warranted by what came out at trial nor would such a reduction serve the purposes of punitive damages. *Rowe v. Hornblower Fleet*, No. C-11-4979 JCS, 2012 U.S. Dist. LEXIS 164402, at *31 (N.D. Cal. Nov. 16, 2012) citing *Protectus Alpha Navigation Co., Ltd.,* 767 F.2d at 1385 ("Punitive damages serve the purpose 'of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example."). Such a reduction would allow Comenity to "absorb it with little or no discomfort" and not cause a change in Comenity's conduct nor punish it for how it processed Panchenko's disputes. *Wang v. Hsu*, No. C-87-2981-TEH (JSB), 1991 U.S. Dist. LEXIS 4398, at *120 (N.D. Cal. Mar. 1, 1991) ("'The function of deterrence…will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort.").

Constitutional challenges to punitive damages awards in FCRA matters are not uncommon given the potential for low damages amounts as compared to the

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

staggering net worth of the banks, debt collectors, and consumer reporting agencies subject to this law.  While "[p]unitive damages awards that exceed a single digit ratio when compared to compensatory damages generally do present constitutional problems…[t]he Supreme Court has long recognized that greater ratios may comport with due process, however, when reprehensible conduct results 'in only a small amount of economic damages.'" *Saunders*, 526 F.3d at 154 citing *State Farm*, 538 U.S. at 425; and, *Gore*, 517 U.S. at 582.  The Fourth Circuit acknowledged various circuits "agree that when a jury only awards nominal damages or a small amount of compensatory damages, a punitive damages award may exceed the normal single digit ratio because a smaller amount 'would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter.'" *Id*. citing *Kemp v. AT&T*, 393 F.3d 1354, 1364-65 (11th Cir. 2004) (allowing punitive damages award of $250,000 accompanying compensatory damages of $115.05); *Abner v. Kan. City S.R.R.*, 513 F.3d 154, 165 (5th Cir. 2008) (affirming punitive damages award of $125,000 accompanying nominal damages of $1); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 674-78 (7th Cir. 2003) (affirming $186,000 punitive damages award accompanying compensatory damages of $5,000); and, *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996) (rejecting ratio because 'the compensatory award here was nominal, [so] any appreciable exemplary award would produce a ratio that would appear excessive by this measure.').

 *Saunders* then noted it "must still determine that the punitive damages award [was] not constitutionally excessive." *Id*.  It did "this by comparing the award to other cases involving similar claims and assessing whether a lesser amount would 'serve as a meaningful deterrent.'" *Saunders*, 526 F.3d at 154 citing *Lee*, 101 F.3d at 812-13; and, *Kemp*, 393 F.3d at 1365.

*Saunders* found an award of $80,000 in punitive damages was not grossly excessive or arbitrary.  *Id*. citing *Bach*, 486 F.3d 150 (remanding for remittitur of punitive damages award of $2,228,600 to $400,000); *Cortez v. Trans Union, LLC*, No. 05-cv-05684-JF, 2007 U.S. Dist. LEXIS 68074, at *2 (E.D. Pa. Sept. 13, 2007) (remanding for remittitur of punitive damages award of $750,000 to $100,000); *Boris v. Choicepoint Servs., Inc.*, 249 F. Supp. 2d 851, 863 (W.D. Ky. 2003) (denying remittitur of a punitive damages award that was as low as $80,000); *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 378 (4th Cir. 2008) (affirming $100,000 punitive damages award accompanying compensatory damages of $8,000).

*Saunders* concluded "that a smaller amount would not 'serve as a meaningful deterrent' to BB&T."  *Id*. citing *Kemp*, 393 F.3d at 1365.  "As the court noted in *Bach*, 'a punitive damage award must remain of sufficient size to achieve the twin purposes of punishment and deterrence.'"  *Id*.  Reducing the award, like Comenity is requesting here, "would leave little deterrent or punitive effect, particularly given BB&T's net worth of $3.2 billion.  *Id*. citing *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n.28 (1993); and, *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1338-39 (11th Cir. 1999) (allowing $4.35 million punitive damages award despite '100:1 ratio of the punitive to the actual damages,' because compensatory damages 'are quite small' and 'a bigger award is needed to attract the attention of a large corporation.'").

The same principles apply here. Any reduction of the punitive damages award would embolden Comenity to continue practices that excuse its employees from meaningfully reviewing consumer disputes, and would fail to punish Comenity for the concrete harm inflicted on Panchenko. Punitive damages serve a critical and indispensable function. They are not only intended to punish outrageous conduct, they are designed to deter its recurrence. *See, e.g., TXO Production Corp.*,

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

509 U.S. at 460. A punitive damages award should "reflect the enormity of the offense." *Gore*, 517 U.S. at 559 (internal citations omitted). As courts have long recognized, "[t]he award of punitive damages is peculiarly a function of the jury." *Holcroft v. MO/KS/TX R. Co.*, 607 S.W.2d 158, 163–164 (Mo. Ct. App. 1980). It is therefore of no consequence that other awards have not reached the same amount. Id. The Supreme Court has further explained that the intentional infliction of economic injury, particularly through affirmative misconduct or when directed at a financially vulnerable individual, may warrant a substantial penalty. *Gore*, 517 U.S. at 576.

Here, the jury deliberately set punitive damages at $20,000,000 to send a clear and unmistakable message to Comenity that its conduct was unacceptable and must change. Reducing that amount would reward Comenity's misconduct and signal to similarly situated furnishers that disregarding consumer disputes is a tolerable business decision. This is especially troubling given that few consumers are even aware of their rights, and fewer still possess the resources or resolve to pursue those rights through a federal jury trial. The punitive damages award must therefore stand in order to fulfill its essential purposes of punishment and deterrence.

     *i.*     *Previous reductions of punitive damages have allowed this type of conduct to occur.*

As recognized in *Saunders*, multiple FCRA defendants have repeatedly received judicial reductions of punitive damages that juries expressly imposed to punish and deter misconduct. *See also Miller v. Equifax Info. Servs., LLC*, No. 3:11-CV-01231-BR, 2014 U.S. Dist. LEXIS 69450, at *1 (D. Or. May 20, 2014) (reducing an $18,400,000 punitive damages award to $1,620,000); and, *Daughtery*, 701 F. App'x at 260 (4th Cir. 2017) (remitting $2.5 million punitive damages award

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

to $600,000 when compensatory damages were $6,128). These prior discounts do not justify a reduction here. To the contrary, they provide compelling evidence that reduced punitive awards fail to punish wrongdoing and fail to deter the credit reporting industry. Instead, they signal that it is economically rational to conduct minimal or no investigation, based on the expectation that courts will ultimately shield furnishers from meaningful accountability.

Courts have recognized, "[t]he threat of punitive damages under the FCRA is the primary factor deterring erroneous reporting by the credit reporting industry." *Miller*, 2014 U.S. Dist. LEXIS 69450, at *25, citing *Brim v. Midland Cred. Mgmt.*, 795 F. Supp. 2d 1255, 1265 (N.D. Ala. 2011) (upholding $623,180 in punitive damages on a $100,000 compensatory award). The *Brim* court reasoned that any reduction of a jury award rendered by a fully instructed jury, one that considered both the egregiousness of the conduct and the defendant's substantial net worth, while acknowledging the legitimate punitive and deterrent purpose of the award, would be purely arbitrary. *Id*.

Continued judicial reductions have permitted misconduct to persist, fostering an environment in which actors in the credit industry test how far their conduct can fall without consequence. Punitive damages must do more than register disapproval, they must meaningfully alter behavior. Upholding the jury's award here does precisely that. Accordingly, there is more than sufficient evidence to sustain the jury's punitive damages verdict. *Townsend Farms*, 2017 U.S. Dist. LEXIS 231773, at *43–44, citing *Escriba*, 743 F.3d at 1242 (holding that a jury verdict "must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible").

### 2. The *Gore* factors favor adoption of the jury's punitive damage award.

The Supreme Court provided three criteria to determine the constitutionality

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

of a punitive damages award: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Liveperson, Inc. v. 247., Inc.*, No. 17-cv-01268-JST, 2022 U.S. Dist. LEXIS 158253, at \*9 (N.D. Cal. July 28, 2022) citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) citing *Gore*, U.S. at 575.

Panchenko discusses each guidepost in turn below.

### i. *The degree of reprehensibility of Comenity's misconduct*

Without substantial punitive damages, parties to the credit reporting system will continue to employ illegal practices because the profit will always exceed the costs of jury's verdict.   Regarding the guideposts, the Supreme Court has observed that the most important factor is the degree of reprehensibility of the defendant's conduct. *Ramirez*, 951 F.3d at 1036.

The Parties agree that to assess reprehensibility, [the Court should] consider whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 900 (9th Cir. 2022). This factor favors adoption of the jury's punitive damages award.

**Physical Harm:** First, Comenity's misconduct manifested in concrete physical harm through severe emotional distress, harm the jury reasonably valued at $100,000, although the consequences could have been far more devastating. As courts have long recognized, "a poor credit history is the 'Scarlet Letter' of 20th

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

century America." *FTC v. Gill*, 265 F.3d 944, 947 n.1 (9th Cir. 2001) (citing 136 Cong. Rec. H5325-02 (daily ed. July 23, 1990) (statement of Rep. Annunzio)). Put differently, "[a] man's credit in this day and age is one of his most valuable assets," and without it, countless Americans are effectively barred from the basic necessities of modern life. *Am. Fire & Cas. Co. v. Davis*, 146 So. 2d 615, 619 (Fla. 1st DCA 1962).

Here, Panchenko was fortunate that Comenity's reckless conduct resulted in only a single credit denial. That outcome, however, reflects luck rather than restraint. The same conduct easily could have deprived him of employment, transportation, or housing, decisions that are routinely driven by creditworthiness. See *Fredrickson v. Cannon Fed. Credit Union*, No. CV 16-01012 RB-CG, 2017 U.S. Dist. LEXIS 210942, at *1 (D.N.M. Dec. 22, 2017) ("A good reputation is worth more than silver or gold. In today's world, a good reputation for creditworthiness can mean the difference between being employed and searching for work, between feeling secure and enduring anxiety, and between owning a home and not.").

**Reckless Disregard & Deceit:** Second, this conduct was not an "accident," as Comenity attempted to portray it. It was an intentional corporate policy designed for speed and efficiency, implemented at the expense of, and in knowing disregard for, consumers' rights under the FCRA. Comenity deceived both consumers and the Consumer Reporting Agencies each time it submitted an Automated Consumer Dispute Verification without reviewing or accessing any underlying images. Each submission required Comenity to certify the following: "By submitting this ACDV, you certify that you have reviewed and considered all associated images, you have verified the accuracy of the data in compliance with all legal requirements, and your computer and or manual records will be adjusted to reflect any changes noted."

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

[*Id*.]. Comenity knowingly and intentionally made this certification while failing to do what it expressly promised, rendering each submission materially false and deceitful.

This reckless disregard was not confined to a single employee. Multiple witnesses testified that, at the time Panchenko's disputes were processed, corporate policy did not require employees to review images at all. Instead, employees were instructed to simply affirm that images had been reviewed so they could advance to the next step of processing the ACDV. Compounding this misconduct, employees also described an internal rewards program that publicly recognized "top performers" and incentivized speed over accuracy by awarding vouchers redeemable for items of the employee's choosing.

Even more troubling, Comenity ratified this conduct by failing to discipline or terminate any employee who admitted to disregarding its own written policies. The jury was visibly disturbed by this systemic indifference, particularly when one of Comenity's fraud investigators, Ms. Gopinath, admitted that she did not even know what a police report was. This was not a momentary lapse or isolated mistake. It was institutional recklessness, and it squarely warrants adoption of the jury's punitive damages award.  Thus, this factor weights in Panchenko's favor.

**Financial Vulnerability:** Third, Panchenko's financial vulnerability was neither speculative nor unexpected. As the Ninth Circuit has explained, "[t]he class members were also financially vulnerable in the sense that their ability to obtain credit depended on the care that Trans Union, a billion-dollar company, took in gathering data about them." *Ramirez*, 951 F.3d at 1036. The same is true here. Panchenko was wholly dependent on Comenity to properly investigate and correct the fraud that had been committed against him.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

He did everything the law and common sense require. He obtained a police report confirming he was the victim of identity theft, completed a Fraud Affidavit with the Federal Trade Commission, produced travel records demonstrating he was not even in the country when the account was opened, and then relied on Comenity to do its job and absolve him of responsibility for the fraudulent account. Comenity's rejection of that evidence did not occur in a vacuum. It placed Panchenko's career on hold, resulted in the denial of credit, and inflicted six figures in emotional harm.

This is precisely the type of financial vulnerability recognized by the Ninth Circuit, where a consumer's livelihood and future depend on the care exercised by a powerful financial institution. Accordingly, this factor weighs strongly in Panchenko's favor.

**Repeated Conduct.** Fourth, Comenity curiously claims there is no evidence it engaged in repeated misconduct affecting other consumers. [Motion, 21:19–25]. Panchenko did not focus his presentation on harm to others because the Manual of Model Civil Instructions expressly directs juries "not to set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case." *Todd v. AT&T Corp.*, No. 16-cv-03357-HSG (MEJ), 2017 U.S. Dist. LEXIS 60000, at *6 (N.D. Cal. Apr. 19, 2017). See also Instruction No. 44 re Punitive Damages, Dkt. No. 226.

Consistent with that instruction, Panchenko elected not to quantify at trial the number of other consumers whose disputes were never read. That decision does not mean the evidence was absent. To the contrary, the data necessary to perform the arithmetic was squarely established at trial. Comenity set a production target of 36 disputes per day, seven days a week, twenty-four hours a day, with approximately 21 employees on each team. That equates to 756 disputes per day; 5,292 per week;

21,168 per month; and, 254,016 disputes per year that were processed without being read.

The Ninth Circuit's analysis in *Ramirez* is instructive. There, the court emphasized that "most importantly, Trans Union's misconduct was repeated and willful," where Trans Union used name-only OFAC searches for more than a decade, resulting in thousands of false positives and not a single known actual match. *Ramirez*, 951 F.3d at 1036. The court concluded that "Trans Union's conduct demonstrated a disregard for the gravity of an OFAC match and what a false positive would mean, emotionally and practically, for each consumer." *Id*.

The same conclusion follows here. Comenity financially incentivized its employees to ignore images and falsely certify compliance to the Consumer Reporting Agencies when completing ACDVs. This was not an isolated lapse but a high-volume, institutional practice embedded in daily operations. It was repeated, knowing, and willful, and it was precisely the type of systemic misconduct the jury was entitled to punish. Accordingly, this factor weighs decisively in Panchenko's favor.

### ii.    *The disparity between actual or potential harm suffered by Panchenko and the punitive damages award*

"[T]he proper inquiry is 'whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct, as well as the harm that actually has occurred.'" *Gore*, 517 U.S. at 581 quoting *TXO Production Corp.*, 509 U.S. at 460. As explained above, the six-figure harm Panchenko suffered represents only a fraction of the damage that Comenity's conduct was capable of inflicting.

Absent this litigation, Panchenko would have been burdened with severe and wholly undeserved derogatory information on his credit report for more than seven

**PLAINTIFF OLEKSANDR PANCHENKO'S OPPOSITION TO DEFENDANT COMENITY BANK'S OMNIBUS POST-TRIAL MOTION**

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

years. Those inaccuracies would have followed him into nearly every corner of his life, affecting employment opportunities, housing, transportation, and access to credit, and compounding the emotional and financial toll with each passing year. The harm was not speculative, it was imminent, durable, and potentially life-altering.

Against that backdrop, the jury reasonably concluded that a substantial punitive damages award was necessary. Comenity made a conscious and utterly repugnant corporate decision to prioritize speed and efficiency over accuracy, choosing not to read disputes at all while falsely certifying compliance in direct violation of the Fair Credit Reporting Act. The magnitude of the punitive award reflects the enormity of that misconduct and bears a rational and proportional relationship to both the harm suffered and the far greater harm Comenity's practices threatened to impose.

### iii.     *The difference between punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.*

Comenity agrees this third guidepost does not apply in FCRA matters. [Motion, fn 15, 20:22-23]. *Ramirez*, 951 F.3d at 1037 citing *Saunders*, 526 F.3d at 152; and, *Bach*, 486 F.3d at 154 ("We agree with our sister circuits that consideration of civil penalties is not useful in the FCRA context because there is no 'truly comparable' civil penalty to an FCRA punitive-damages award. Therefore, we do not consider this factor."). Thus, the *Gore* factors favor adoption of the punitive damages award.

### III.    <u>CONCLUSION</u>

Comenity has had its day in court. It cross examined witnesses, presented its defenses, proposed and agreed to limiting instructions, and asked the jury to decide the facts. The jury did exactly that. It found that Comenity violated the Fair Credit

Reporting Act, that its misconduct caused concrete harm to Panchenko, and that $100,000 in actual damages and $20,000,000 in punitive damages were warranted to punish and deter that conduct. What Comenity now seeks is not clarification of the law or correction of error, but a judicial do over because it disagrees with the outcome.

Nothing in the record supports that request. The evidence established Article III standing through third party dissemination of inaccurate credit reporting and an actual credit denial, confirmed by a jury award of compensatory damages. The one satisfaction rule has no application where Panchenko sought damages only for Comenity's misconduct and Comenity failed to prove any overlap or double recovery. And the punitive damages award comfortably satisfies due process, reflecting the gravity of Comenity's institutional, willful, and repeated disregard for consumers' rights under the FCRA, conduct the jury was entitled to condemn.

This Court should not disturb a verdict grounded in substantial evidence and rendered by a properly instructed jury. To do so would reward Comenity's misconduct, undermine the deterrent purpose of the FCRA, and signal to furnishers that systemic noncompliance is a tolerable cost of doing business. The law does not compel that result, and justice does not permit it. Comenity's Motion should be denied in its entirety.

Date: January 20, 2026                                      **LOKER LAW, APC**


                                                   By:    /s/ Matthew M. Loker
                                                          MATTHEW M. LOKER, ESQ.
                                                          ATTORNEY FOR PLAINTIFF

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

## CERTIFICATE OF SERVICE

A copy of the foregoing *Plaintiff Oleksandr Panchenko's Opposition to Defendant Comenity Bank's Omnibus Post-Trial Motion* has been filed via CM/ECF on January 20, 2026.

_____/s/ Matthew M. Loker_____
MATTHEW M LOKER, ESQ

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.: 23-cv-4965 EKL          26 OF 26     *Panchenko v. Comenity Capital Bank, et al.*
PLAINTIFF OLEKSANDR PANCHENKO'S OPPOSITION TO DEFENDANT COMENITY BANK'S
OMNIBUS POST-TRIAL MOTION