TOMIO B. NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
JEFFREY A. TOPOR (SBN 195545)
Jeff.Topor@wbd-us.com
NATHAN A. SEARLES (SBN 234315)
Nathan.Searles@wbd-us.com
ALISA A. GIVENTAL (SBN 273551)
Alisa.Givental@wbd-us.com
KRISTINA B. HOVSEPYAN (SBN 340674)
Kristina.Hovsepyan@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, California 94111
Telephone:  (415) 433-1900
Facsimile:  (415) 433-5530

Attorneys for Defendant
Comenity Capital Bank

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEKSANDR PANCHENKO, | CASE NO.: 5:23-cv-04965-EKL |
| Plaintiff, | **COMENITY CAPITAL BANK'S REPLY IN SUPPORT OF OMNIBUS POST-TRIAL MOTION** |
| vs. | |
| COMENITY CAPITAL BANK, | Date: February 25, 2026 |
| Defendants. | Time: TBD<br>Courtroom: 7, 4th Fl. |
| | The Honorable Eumi K. Lee |

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ..................................................................................................1

II.  ARGUMENT ......................................................................................................1

   A.  The Court Lacks Subject Matter Jurisdiction Because Plaintiff Failed To
       Provide Evidence Sufficient To Show A Specific Injury Traceable
       To Comenity ...............................................................................................1

       1.  The "They Told Me They Stopped Investigating" Theory .........................2

       2.  The "Comenity As The 'Gateway' Account" Theory ................................2

       3.  The "They Didn't Review My Documents" Theory...................................3

       4.  The Claimed Credit Denials Do Not Support Standing.............................3

          a.  Plaintiff Concedes The Damages Awarded By The Jury Were
             For Emotional Distress Not Credit Denials ..........................................3

          b.  Plaintiff Establishes No Credit Denial Traceable To Comenity...........4

          c.  Plaintiff's Claim About Dissemination Of A Derogatory
             Experian Credit Report Is Specious ......................................................5

       5.  The Jury Award For Emotional Distress Does Not Establish Standing ......6

   B.  Under The "One Satisfaction" Rule, The Court Must Offset Actual Damages By
       The Amount Of The Settlements Plaintiff Recovered From Other Defendants......9

   C.  The Punitive Damage Award Is Contrary To Law, Not Supported By
       Evidence, And Unconstitutional ................................................................13

       1.  The Maximum Punitive Damages Allowed Is A Low Single-Digit
          Multiplier Over Compensatory Damages ..................................................13

       2.  The Court Should Remit Punitive Damages To $100,000 Or Less...........15

          a.  Comenity's Conduct Was Not Reprehensible ......................................15

          b.  A $100,000 Award (Or Less) Is Sufficient ..........................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abner v. Kan. City S. R.R.*,
513 F.3d 154 (5th Cir. 2008) ...................................................................................14

*Bach v. First Union Nat. Bank*,
486 F.3d 150 (6th Cir. 2007) ...................................................................................14

*Bains LLC v. Arco Prods. Co.*,
405 F.3d 764 (9th Cir. 2005) ...................................................................................17

*Bennett v. Am. Med. Response, Inc.*,
226 Fed. Appx. 725 (9th Cir. 2007) .........................................................................15

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) .............................................................................13, 14, 17

*Boris v. Choicepoint Services, Inc.*,
249 F. Supp. 2d 851 (W.D. Ky. 2003) .....................................................................14

*Brim v. Midland Credit Mgmt., Inc.*,
795 F. Supp. 2d 1255 (N.D. Ala. 2011) ...................................................................14

*Bultemeyer v. CenturyLink Inc.*,
2025 WL 671760 (D. Ariz. Mar. 3, 2025) ...........................................................13, 15

*Cherokee Nation v. U.S. Dep't of the Interior*,
643 F. Supp. 3d 90 (D.D.C. 2022) .............................................................................1

*Corder v. Brown*,
25 F.3d 833 (9th Cir. 1994) .....................................................................................11

*Cortez v. TransUnion, LLC*,
2007 U.S. Dist. LEXIS 68074 (E.D. Pa. Sept. 13, 2007) .........................................14

*Daugherty v. Ocwen Loan Serv., LLC*,
701 Fed. Appx. 246 (4th Cir. 2017) .........................................................................14

*Delta Constr. Co. v. EPA*,
783 F.3d 1291 (D.C. Cir. 2015).................................................................................1

*E.E.O.C. v. Federal Express Corp.*,
513 F.3d 360 (4th Cir. 2008) ...................................................................................14

*Estate of Hill by and through Grube v. NaphCare, Inc.*,
   2025 WL 1588738 (9th Cir. June 5, 2025)................................................................13

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ..................................................................................13

*In re Moon*,
   2023 WL 1779643 (D. Nev. Feb. 6, 2023)...............................................................13

*Johansen v. Combustion Eng'g Inc.*,
   170 F.3d 1320 (11th Cir. 1999) ..............................................................................14

*Kemp v. Am. Tel. & Tel. Co.*,
   393 F.3d 1354 (11th Cir. 2004) ..............................................................................14

*Lee v. Edwards*,
   101 F.3d 805 (2d Cir. 1996) ....................................................................................14

*Mathias v. Accor Econ. Lodging, Inc.*,
   347 F.3d 672 (7th Cir. 2003) ..................................................................................14

*Miller v. Equifax Info. Servs. LLC*,
   2014 WL 2123560 (D. Or. May 20, 2014)...............................................................14

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ..........................................................................................1, 4, 6

*Namisnak v. Uber Techs., Inc.*,
   444 F. Supp. 3d 1136 (N.D. Cal. 2020)...................................................................13

*Nelson v. Equifax Info. Servs., LLC*,
   522 F. Supp. 2d 1222 (C.D. Cal. 2007) ..................................................................11

*Pennington v. Midland Credit Mgmt., Inc.*,
   2010 WL 3187955, at *2 (E.D. Va. Aug 9, 2010)....................................................12

*Ramirez v. TransUnion LLC*,
   951 F.3d 1008 (9th Cir. 2020) ..............................................................13, 14, 15, 16

*Saunders v. Branch Banking and Trust Co. of VA*,
   526 F.3d 142 (4th Cir. 2008) ..................................................................................14

*Scudder v. SoFi Lending Corp.*,
   2024 WL 4443204 (M.D. Fla. Sept. 16, 2024)........................................................12

*Seaman v. Am. Express Nat'l Bank*,
  2024 WL 4745472 n.6 (C.D. Cal. June 12, 2024) .................................................. 11

*Seymour v. Summa Vista Cinema, Inc.*,
  809 F.2d 1385 (9th Cir. 1987) ........................................................................... 9

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
  506 F.3d 832 (9th Cir. 2007) ............................................................................. 3

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538, U.S. 408, 419 (2003)) .............................................................................. 15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ......................................................................................... 3

*Tu v. Experian Info. Sols., Inc.*,
  2025 WL 1134612 (S.D. Cal. Apr. 15, 2025) ..................................................... 11

*TXO Prod. Corp. v. Alliance Resources Corp.*,
  509 U.S. 443 (1993) ....................................................................................... 14

*Ward v. Nat'l Credit Sys., Inc.*,
  2025 WL 370373 (D. Colo. Feb. 3, 2025) .......................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

Plaintiff avoided summary judgment by promising to offer evidence tracing his emotional distress injuries to Comenity's conduct when investigating his indirect disputes.  He broke that promise.  Instead, his trial strategy was to paint himself as a victim of a collective harm who was forced to "take on the banking industry."[1]  By doing so, Plaintiff failed to meet his burden to show harm traceable directly to Comenity.  And because his generalized emotional distress evidence applied to all settling Defendants (and he recovered in settlements vastly more than the $100,000 the jury found was the extent of his injury), the one-satisfaction rule bars further recovery.  Plaintiff's strategic decision to blame Comenity for everything is precisely why he now gets nothing further: he is entitled to one recovery, and he received it already.

Plaintiff obtained his punitive damages verdict by encouraging the jury to punish Comenity for the collective harm he says he suffered.  RT 751:8-9 ("But if you punish [Comenity], other banks will take notice. That's how the industry works.").  He does not dispute the award is unconstitutional, relying instead on stale and out-of-circuit authority contrary to binding precedent.  The punitive damages award must be set aside or drastically reduced.

## II.  ARGUMENT

### A.  The Court Lacks Subject Matter Jurisdiction Because Plaintiff Failed To Provide Evidence Sufficient To Show A Specific Injury Traceable To Comenity

To have Article III standing, Plaintiff was required to offer evidence showing injury "fairly traceable" to Comenity.  *See Murthy v. Missouri*, 603 U.S. 43, 44 (2024).  "Because standing is not dispensed in gross, plaintiffs must demonstrate standing for ***each claim*** they press against ***each defendant***, and for ***each form of relief*** they seek."  *Id.*  "[I]f the injury would occur regardless of the challenged action—say, because some separate action would independently cause it in full—then the fair-traceability test is not met."  *Cherokee Nation v. U.S. Dep't of the Interior*, 643 F. Supp. 3d 90, 106 (D.D.C. 2022) (citing *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015)).  Plaintiff's three attempts to show harm traceable to Comenity failed.  *See* ECF 255 at 6-10.[2]  His opposition here is a deafening silence. *See* ECF 257

---

[1] *See* Narita Declaration, Ex. A (hereafter "RT") p. 794:9-11.
[2] Citations to page numbers are to those appearing at the bottom of the referenced document.

### 1.    The "They Told Me They Stopped Investigating" Theory

Again, Plaintiff survived summary judgment by promising to supply evidence linking his alleged harm to Comenity's failure to investigate his indirect disputes, but he did not deliver. ECF 139 at 19; ECF 148 at 13.  This is well-illustrated by Plaintiff's first theory that Comenity was "the only bank" that "refused to continue any investigations."  ECF 255 at 7-8.  But that claim was based solely on a phone call he had with Comenity during his direct dispute, not anything he learned about an indirect dispute.  *Id.*  Because Plaintiff presented no evidence at trial tracing any emotional distress to Comenity's indirect-dispute actions, he failed to clear the Article III threshold necessary for his claim to reach a jury.

Plaintiff admits he cannot obtain damages for direct disputes.  ECF 257 at 6-7.  And he concedes through silence that he cannot establish standing based on something Comenity told him in direct communication.  It does not matter if his "focus remained squarely" on Comenity. *See id.* at 5.  What matters is whether Plaintiff suffered emotional distress traceable to Comenity's conduct as to his indirect dispute.  He proved nothing here.

### 2.    The "Comenity As The 'Gateway' Account" Theory

Plaintiff painted Comenity as a "gateway account" that facilitated creation of other fraudulent accounts, because it was "one of the smallest" and "one of the first" accounts.  ECF 255 at 8-9.  As Comenity explained, however, one reason this theory fails is because, even if the fraudster leveraged a Comenity account to perpetrate additional identity theft between 2015 and 2018, such evidence says nothing about whether Plaintiff suffered emotional distress caused by Comenity's failure to investigate an indirect dispute in 2023.  *Id.*  Said differently, the "gateway account" theory cannot be entertained unless the Court is prepared to find the Bank somehow violated section 1681s-2(b) in 2023 because it was duped by a fraudster in 2015.  Plaintiff cites nothing to support this.

Regardless, this theory is not supported by facts—any supposed "gateway" was already open.  As noted in Comenity's opening brief, the fraudster opened multiple accounts before the Comenity account, and one of the accounts opened after Comenity's had a lower opening credit line.  The evidence undermined both elements of Plaintiff's theory, so Comenity could not have

been the "gateway" to anything.  *Id.*  Plaintiff ***does not respond*** to these arguments, thus conceding them.  He merely reiterates his false, speculative trial testimony that Comenity "was the first fraudulent account," ECF 257 at 5, never addressing the contrary evidence.

### 3.      The "They Didn't Review My Documents" Theory

Plaintiff's third theory was he "learned" during "discovery" that Comenity did not review documents attached to his ACDV.  ECF 255 at 9-10.  He does not dispute this evidence is legally irrelevant to standing because "standing turns on the facts as they existed at the time the plaintiff filed the complaint."  *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).  He cannot manufacture standing based on his emotional reaction to post-filing discovery.

Instead, Plaintiff pivots, claiming he "established a concrete violation" because he proved "Comenity's inaccurate credit reporting caused, in part, credit denials," and the jury awarded him "100,000 in emotional distress."  ECF 257 at 2-3.  But Plaintiff focuses on the wrong element of standing: concrete injury.  He devotes two pages to *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ("*TransUnion II*"), a case that ***did not address traceability***.  ECF 257 at 2-4.  In *TransUnion II*, the Supreme Court only considered "the Article III requirement that the plaintiff's injury in fact be concrete—that is, real, and not abstract."  594 U.S. at 424 (cleaned up).[3]  The *TransUnion II* parties ***stipulated to traceability***.  *Id.* at 421.  Plaintiff's *TransUnion II* discussion is thus irrelevant to traceability.

### 4.      The Claimed Credit Denials Do Not Support Standing
#### a.      Plaintiff Concedes The Damages Awarded By The Jury Were For Emotional Distress Not Credit Denials

Plaintiff claims he "***established a concrete violation*** because [] Comenity's inaccurate credit reporting caused, in part, credit denials."  ECF 257 at 2-3 (emphasis added); *see also id.* at 4-6 (arguing credit-denial injury).  He concedes, however, the damages the jury awarded him were for emotional distress, not credit denial.  *Id.* at 6. Thus, even if credit denials are concrete injury in the abstract, they cannot support standing here because Plaintiff did not prove, as he must, that any credit denial is a harm he suffered that is "redressable by a favorable ruling" of his

---

[3] A concrete defamation-type injury exists where the defendant disseminates misleading credit reports to third parties.  *Id.* at 432-33.

section 1681s-2(b) claim.  Plaintiff would have the Court dispense standing "in gross," which it cannot do.  *See Murthy*, 603 U.S. at 44.  Because he sought emotional-distress damages arising from Comenity's alleged mishandling of his FCRA indirect-dispute, he cannot establish standing to seek ***those*** damages based on credit denials for which he neither sought nor obtained relief.

> **b.    Plaintiff Establishes No Credit Denial Traceable To Comenity**

To argue that a credit denial by Goldman Sachs is attributable to Comenity, Plaintiff points to Exhibit 54 – "an email from Goldman Sachs dated August 16, 2023, informing [him] that his application for an Apple Card was denied" based on a "serious delinquency" in the TransUnion report Goldman obtained on that date. ECF 257 at 4; *see* Ex. 54, p. 1.[4]  But ***no one*** – not Plaintiff, not the Court, not the jury – has seen this credit report (or even a TransUnion report from that date), because it is not in the record. *See* RT 391:4-16; ECF 246.

Plaintiff's claim that "serious delinquency" is "attributable to Comenity's reported charge off" is a speculation based on Exhibit 30, ECF 257 at 4, which is a dispute-results letter dated September 9, 2023 (25 days after the denial).  A lot happened between August 16 and September 9, 2023, including Experian and Equifax deleting the Comenity tradeline on August 16 and 17, respectively, Ex. 247, Fact No. 33, and at least two derogatory tradelines being removed by TransUnion.  *See* Ex. 30, p. 5.  Exhibit 30 is not probative of the TransUnion report Goldman reviewed on August 16, or evidence that Comenity was even on the report on that date.[5]

If Comenity was on the report, the evidence in the record indicates it would not have been the "serious delinquency" referenced in the denial.  Plaintiff's dispute to TransUnion on or shortly before August 16, 2023, shows Comenity was one of eight accounts Plaintiff was disputing with TransUnion, undercutting the notion that it would have been the only cause of the denial.  *See* Ex. 3[6]; RT 230:15-25. The Comenity tradeline on Exhibit 30 also shows it was last

---

[4] All citations to exhibits herein are to admitted exhibits at ECF 246.

[5] Plaintiff testified that "the account can be deleted from [Plaintiff's] credit report and then reappear again." RT 183:18-20.  Accepting this as true, the Comenity tradeline may have been off the TransUnion report obtained by Goldman Sachs on August 16, 2023 and then reappeared in the TransUnion file by the date of the September 9, 2023 disclosure.

[6] *See also:* Ex. 247, Fact Nos. 27, 29, 30, 32 (establishing that shortly before August 16, 2023, Cavalry, US Bank, JPMCB did not delete their tradelines in response to indirect disputes).

updated in March 2019 with a $0 balance, $0 past due balance, and an on-time payment history; the reference to a charge off is in past tense. Ex. 30, p. 6 (pay status of "sold; *was* charged off"; "*original* charge-off" amount of $5,085) (emphasis added).  The same report shows the JPMCB tradeline was updated on August 23, 2023, with a past-due balance of $33,377, nearly three years of past due payments, and a pay status of $33,377, (currently) "charged off." *Id.*  Of the two tradelines, the JPMCB tradeline shows a charge off status with recent serious delinquencies, whereas the Comenity account appears as fully paid with no charge off for at least 4 years.[7]

There is no evidence establishing Comenity as the "serious delinquency" referenced in the Goldman denial, but there is evidence that it was irrelevant to the denial.  Plaintiff ignores two other denial reasons in Goldman's email: "[p]roportion of balances to credit limits on bank/ national or other revolving accounts is too high" and "[t]oo few accounts currently paid as agreed." Ex. 54.  Two references to "accounts" (plural) shows that two or more non-Comenity accounts played a role in the denial, because these denial reasons could not apply to Comenity, whose account was fully paid since March 2019, and thus did not contribute to a high balance to credit limit ratio or constitute an account not being "currently paid as agreed." *See* Ex. 30.  To the extent Comenity's trade line could support *one* of three denial reasons, other accounts (e.g. JPMCB), could support *all three*.  Plaintiff has therefore not offered evidence to support the leap he asks the Court to take, *i.e.*, to conclude that Comenity's tradeline as shown in a September 9, 2023 letter appeared on the August 16 credit report seen by Goldman Sachs, or that without the Comenity tradeline on the report (*which no one has ever seen*), Plaintiff would have been approved for the Apple Card. The denial is thus not fairly traced to Comenity.

### c.    Plaintiff's Claim About Dissemination Of A Derogatory Experian Credit Report Is Specious

Plaintiff argues that his Experian credit report containing Exhibit 30's "derogatory Comenity tradeline was transmitted to multiple third parties" including Credit One Bank, PG&E, and the SSA.  ECF 257 at 4-5 (citing Ex. 32).  This does not cure his lack of standing.

---

[7] The only TransUnion credit report (as opposed to dispute results letter) in the record is dated September 17, 2023, and shows Comenity with a $0 balance and no charge off.  *See* Ex. 236.

***First***, Plaintiff does not allege any concrete harm resulting from these events.  Exhibit 32 indicates PG&E accessed his Experian report on May 9, 2023, but PG&E opened his account and he offered no evidence of harm from the account opening.  Exs. 3 (Bates 103), 32.  The same Exhibit shows the SSA accessed his Experian report on June 21, 2023 and inquiries by Credit One Bank predating his arrival in the U.S.  Ex. 32.  He offered no evidence of harm from this.

***Second***, Plaintiff claims the Comenity tradeline on Experian reports reviewed by PG&E, SSA, and Credit One would have been derogatory.  Not so.  He cites Exhibit 32, but this August 16, 2023 report ***could not be*** the report viewed by the SSA on June 21, 2023, or PG&E on May 9, 2023, or Credit One on various dates prior to April 2023.  Indeed, an Experian credit report dated May 11, 2023—two days after the PG&E inquiry—and an Experian credit report dated June 21, 2023—the exact date SSA accessed the report— both show Comenity in the "Positive Account Activity" section.  Exs. 203, 216.

***Finally***, it is undisputed that Comenity was deleted from Plaintiff's Experian credit file on August 16, 2023.  Ex. 247, Fact No. 33. Plaintiff offered no evidence that any entity reviewed any Experian report where Comenity was reporting as potentially negative.

### 5.     The Jury Award For Emotional Distress Does Not Establish Standing

Plaintiff lacks standing because he failed to show that, despite common actions by other defendants causing common damages, the emotional-distress damages awarded were traceable to Comenity's handling of his indirect disputes.  ECF 255 at 2-7.  His response is inadequate.

He claims Comenity "st[ood] apart in his mind," thereby establishing traceability.  ECF 257 at 5-6.  But his subjective (and inaccurate) perception of Comenity fails to show "a particular defendant" committed a particular act—here a failure to investigate as required by section 1681s-2(b) of the FCRA—causing a particular injury.  *See Murthy,* 603 U.S. at 45.  Plaintiff then misleadingly paraphrases his trial testimony, arguing "as a direct result of Comenity's fraudulent reporting, he was forced to burn through his personal savings.  [RT, 263:4-24]"; that "Comenity's repeated rejection of his disputes left him feeling depressed, yet unable to afford therapy to address that depression.  [*Id.*, 263:25-265:2]"; and that "the stress and anxiety caused by Comenity's conduct affected his ability to eat, producing persistent nausea.

[*Id.*, 265:3-15]." ECF 257 at 6. But, tellingly, **none of this testimony** was particular to Comenity. Plaintiff's testimony about his savings followed his explanation about why the dispute process with all the banks and CRAs was a "like a full-time job":

> What I was doing was basically calling these banks from the moment when my wife went to work. . . until the evening when she arrives . . . . Some of the banks were on the West Coast. Some of them was in Central America. Some of them were on the East Coast. So obviously I started to call from the East Coast so that I will have more time trying to reach those banks. Then when they kind of became unavailable and the working day is ended, I'm starting to call the Central. So it was like a full-time job for me and I couldn't find any small amount of time to start working on my portfolio and actually applying for the jobs. Plus, I was afraid to apply for the jobs because I thought applying for these huge companies, like Google and others, . . . I was afraid that they will do a background check, they will find this information, and . . . save it to my profile.

RT 262:16-263:13. This does not connect any harm Plaintiff suffered to Comenity's conduct, as opposed to managing an identity theft problem with eight creditors and three credit bureaus.

Nor did Plaintiff's testimony about his depression and inability to afford therapy mention Comenity. Rather, it followed his testimony about depleting his savings as a consequence of unemployment, and answered the question: how "the rejections" impacted him generally, not the Comenity rejections specifically. RT 263:25-265:2. The stress he experienced "after [his] disputes got rejected," was likewise about his disputes generally, with nothing linked specifically to the Comenity indirect disputes. *See* RT 265:3-15.

Plaintiff's claim that "Alla and Pavlo corroborated the impact Comenity's rejection of Panchenko's disputes had on him" is also unsupported by the cited testimony, which references no specific harm traceable to Comenity. *See* ECF 257 at 6 (citing RT 448:8-16; 481:3-22; 482:2-10; 482:23-483:8). Pavlo testified he understood Comenity was responsible for Plaintiff's stress "because this organization is part of this [collective] story," RT 448:8-16, but conceded that Plaintiff said nothing specific about Comenity other than "probably only the fact that this was one of the banks that is involved," RT 464:7-15; *see also id.* 464:22-25. Similarly, Alla said that she saw her husband cry for the first time, RT 481:3-22, but admitted Plaintiff did not mention Comenity at the time, RT 505:8-12. She testified Plaintiff had trouble sleeping, but admitted he never mentioned Comenity as a cause. RT 482:2-10, 514:14-22.

Plaintiff says the jury awarded him $100,000 in emotional distress damages "based on the evidence" discussed above, ECF 257 at 6 (citing ECF 228 & 245), but none of it is traceable to

Comenity.  Plaintiff attempts to cure the lack of evidence of harm traceable to Comenity by citing to his testimony that he would not seek recovery for harm caused by any other furnisher. *See* ECF 257 at 6 (citing RT 261:8-11 ["Q. And at the end of this trial, are you going to ask the jury to award you damages against Comenity for what the others did? A. No."]); *id.* at 9. Plaintiff's self-serving "intent" to recover solely based on Comenity's conduct is not evidence. It does not prove Comenity's alleged failure to investigate Plaintiff's indirect disputes caused Plaintiff injury traceable to Comenity.  Article III standing turns on Plaintiff proving an injury "fairly traceable to the challenged action of the defendant," not on whether he announced his desire to assign responsibility to one defendant over others.  ECF 255 at 5-14.

Here, Plaintiff's testimony shows that his emotional distress and efforts to address the identity-theft fallout arose from ***all*** furnishers and CRAs collectively.  He acknowledged that he was "frustrated with all of them appearing on [his] credit report," that he disputed the accounts "collectively," and that "all of the time was related to Comenity and the other banks" because he never separated his efforts or distress by furnisher.  ECF 255 at 11-13 (citing RT 400:16– 401:24).  These admissions confirm the fundamental and insurmountable traceability problem Comenity identified: ***Plaintiff's claimed emotional distress would have occurred regardless of Comenity's conduct***, because it stemmed from the presence and handling of multiple fraudulent accounts by multiple furnishers and CRAs who all reached the same outcomes.  Plaintiff's promise not to "seek" damages caused by others does nothing to alter what the trial evidence actually showed.

In short, Plaintiff cannot manufacture traceability through a promise that is ultimately illusory.  Because Plaintiff's testimony repeatedly attributed his harm to the collective presence and handling of all the fraudulent accounts, his Opposition fails to provide the missing causal link.  The evidence does not support standing as to Comenity.

Plaintiff contends the jury did not award damages for the direct disputes because the Court instructed the jury not to consider such damages.  ECF 257 at 6-7.  But the jury had no evidence of other damages.  Plaintiff relies on testimony about the burden and emotional fallout of engaging in a full-time, multi-bank direct dispute process, not any harm tied to Comenity's

handling of any indirect dispute.  *See id.*  at 6 (citing RT 448:8–16; 481:3–22; 482:2–10; 482:23–483:8 (describing emotional and financial strain from the full time job of disputing accounts with various banks), *see* RT 262:8–263:3); *see also* RT 499:23–500:1 (Alla's testimony; Plaintiff delayed seeking employment because the direct dispute process was time-consuming).  None of this testimony is Comenity-specific.

Indeed, the *only* Comenity-specific emotional-distress testimony arose from Plaintiff's reaction to his August 7, 2023 direct-dispute call (played for the jury in two recordings).  ECF 255 at 7.  Plaintiff described that call as the moment he realized Comenity would "do nothing," that he was "facing a wall," and that this was when he first began to feel stuck.  *See id.*  But injuries arising from a direct dispute are not recoverable. Plaintiff's Opposition does not explain how the jury could have separated the emotional weight of that direct-dispute experience from the rest of his undifferentiated distress when Plaintiff himself made no such distinction in his testimony.  In theory, the Court's limiting instruction *could* have guided the jury had Plaintiff actually offered evidence that distinguished between distress attributable to Comenity's direct-dispute interactions from distress attributable to Comenity's indirect-dispute investigation. But he didn't.  The $100,000 verdict cannot rest on indirect-dispute harm when Plaintiff supplied the jury with no evidence enabling that allocation.[8]

Plaintiff's assertion that the jury awarded no direct-dispute damages is unsupported by the record.  He has failed to meet his burden of proof on Article III traceability.

### B. Under The "One Satisfaction" Rule, The Court Must Offset Actual Damages By The Amount Of The Settlements Plaintiff Recovered From Other Defendants

Plaintiff does not dispute that the one-satisfaction rule presumptively applies to his FCRA recovery, ECF 255 at 15 (quoting *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389 (9th Cir. 1987).  Nor can he dispute he already recovered multiples more in settlement funds than the jury awarded him.  Instead, Plaintiff contends ***the facts*** here do not support applying the one-satisfaction rule.  *See* ECF 257 at 8.  Notably absent from his opposition is citation to evidence.

---

[8] In circular fashion, Plaintiff claims the very existence of a verdict after the Court's limiting instruction, means the jury found harm traceable to Comenity's indirect dispute handling was established.  If every verdict by its very existence established the jury followed the law, a motion for a new trial on the basis of a verdict unsupported by evidence, would not be permitted.

Plaintiff did not carry **his** burden of demonstrating he sought to recover for a divisible harm.  Nor could he, because he admitted the harm he suffered was indivisible and not attributable to any given Defendant, let alone solely to Comenity.  ECF 255 at 15-16 (citing Narita Decl. ¶ 2, Ex. A, 401:2-24).  Plaintiff's responses fail to persuade.

  ***First***, he responds that he "solely asked the jury to award him damages associated with Comenity's conduct," ECF 257 at 9, but this misses the point.  The question is not whether jury awarded damages against Comenity—it did.  As with Article III standing, the question is whether Comenity is liable for an injury ***distinct from the injury caused by other Defendants*** (*i.e.,* traceable to Comenity).  The evidence shows Comenity is not.  *See* ECF 255 at 5-14.  No evidence shows Plaintiff's emotional distress would have been any less severe, or that Plaintiff would not have been denied credit, had Comenity not reported the fraudulent account.  Plaintiff says he testified "extensively about the damages caused by Comenity alone" and "unequivocally that his harm was caused by Comenity alone," ECF 257 at 11, 13, but he cites no evidence to support this (false) proposition.

  Plaintiff's reasoning begs the question.  That he did not "ask the jury to award [him] damages . . . for what the others did," RT 261:8-11, assumes the other Defendants did something to cause damages distinct from the damages caused by Comenity.  The same goes for his other argument formulations, *e.g.*, "Comenity assumes the other defendants . . . for some reason paid compensation to [Plaintiff] for harm not caused by their own conduct but instead was caused by Comenity."  ECF 257 at 9.  This assumes injury is distinguished Defendant-by-Defendant, which is what Plaintiff must (but did not) prove to avoid applying the one-satisfaction rule.

  ***Second***, Plaintiff argues Comenity did not meet its evidentiary burden.  He says "Comenity failed to elicit any testimony" or otherwise "substantiate its position" that Plaintiff sought damages "caused by any other defendant."  *Id.*  This argument misses the point.

  The one-satisfaction rule does not require Comenity to prove a negative—that it caused no distinct harm to Plaintiff.  Rather, the rule asks whether any evidence supports finding that Comenity caused a distinct harm.  Again, it did not.  And while Plaintiff recalls this Court's invitation for Comenity to "present evidence that, for example, Plaintiff's credit reports

contained other adverse records furnished by others," *id.* at 8 (quoting ECF 179 at 4), he ignores that Comenity did precisely that. Comenity presented Experian and TransUnion dispute results showing that fraudulent accounts with five other creditors remained on Plaintiff's credit report as late as July 2023. Exs. 24, 26, 30. It was undisputed that Cavalry, JP Morgan, and US Bank denied Plaintiff's disputes. Ex. 247. And Equifax's dispute results even showed that a fraudulent JPMorgan account remained on Plaintiff's credit report ***after*** the Comenity account was removed. Ex. 192. This is the evidence the Court invited and shows Plaintiff did not untangle any harm caused by Comenity from the same harm caused by the other Defendants.

Plaintiff's cited authorities do not help him. He cites an unreasoned aside in a footnote, observing that "at least one case from another circuit" held the one-satisfaction rule does not apply under FCRA "because the injuries are discrete." ECF 257 at 8 (quoting *Seaman v. Am. Express Nat'l Bank*, 2024 WL 4745472, at *3 n.6 (C.D. Cal. June 12, 2024)). But his are not discrete. Plaintiff adduced no evidence he suffered discrete emotional distress due to Comenity's FCRA violation, so *Seaman*'s dicta is irrelevant. And *Tu v. Experian Info. Sols., Inc.*, 2025 WL 1134612 (S.D. Cal. Apr. 15, 2025), is unpersuasive for the reasons Comenity identified in its Motion: it was a discovery dispute, did not decide whether to apply the one-satisfaction rule in FCRA litigation, and relied on a misreading of *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. 2007). *Nelson* did not hold FCRA prohibits the one-satisfaction rule—it held that a FCRA award does not offset ***an FDCPA award***. ECF 255 at 19.

***Third***, Plaintiff maintains that, even if he suffered one indivisible injury, he is still entitled to recover a windfall because Comenity cannot show "what portion of the other [Defendants'] resolutions related to separate violations of [various statutes]; any statutory damages under these statutes; punitive damages; or fees; costs." ECF 257 at 10. He says this is Comenity's responsibility "as the moving party." *Id.* at 12.

Plaintiff has it backwards. Plaintiff successfully moved *in limine* to prevent Comenity from questioning him about the amount of the settlements. The one-satisfaction rule applies by default (a point he ignores), so the burden rests with *Plaintiff* to establish he has not been compensated in full. ECF 255 at 16, n.11; *Corder v. Brown*, 25 F.3d 833, 840 (9th Cir. 1994).

Plaintiff does not meet that burden and cannot shift it to Comenity.

**Finally**, Plaintiff's remaining cases are distinguishable. *Scudder v. SoFi Lending Corp.* declined to apply the one-satisfaction rule where it could not say there was "a substantial enough gap between the total settlement amounts and the jury award to alleviate any doubt that Scudder has been fully compensated for his actual damages." 2024 WL 4443204, *2 (M.D. Fla. Sept. 16, 2024). But here, there is substantial gap between what Plaintiff recovered in settlements and the $100,000 awarded. There is no impediment to applying the one-satisfaction rule here.

In *Pennington v. Midland Credit Mgmt., Inc.*, an out-of-circuit decision arising from a discovery dispute, the court concluded settlement agreements were not relevant discovery because plaintiff's counsel represented that they "contain[ed] no admissions of liability, no breakdown of damages, and no reference to any specific statutory violations." 2010 WL 3187955, at *2 (E.D. Va. Aug 9, 2010). Like the other cases distinguished in Comenity's Motion, *Pennington* is distinguishable (and the court provided no authority for its reasoning). Even though Plaintiff's settlement agreements are also lump sums, he knows how much of the settlement amount went to fees and costs. Plaintiff failed to present any evidence from which the Court can find his recovery does not violate the one-satisfaction rule.

The court in *Ward v. Nat'l Credit Sys., Inc.* also accepted the plaintiff's counsel's "represent[ations]"—which Plaintiffs' counsel does not make here—"that the settlement agreements . . . were for lump-sum payments with no apportionment for emotional distress damages." 2025 WL 370373, *20 (D. Colo. Feb. 3, 2025). And the plaintiff in *Ward* avoided the one-satisfaction rule by "highlighting" his and his wife's "testimony . . . about injuries *caused by [the defendant's] conduct specifically*." *Id.* at *19. Here, Plaintiff **says** he testified about Comenity-specific injuries, ECF 257 at 11, 13, but he does not **cite** a single statement in the record to that effect.[9] The one-satisfaction rule applies on these facts.

---

[9] Comenity identified a line of cases mistakenly suggesting FCRA claims are exempt from the one-satisfaction rule because FCRA does not provide a right to contribution. *See* ECF 255 at 16–18. It explained that the rule applies by default because it is a common law principle preventing windfalls to plaintiffs, while a right to contribution does not arise by default but rather is a statutory right for one tortfeasor to bring a claim against a co-tortfeasor. Plaintiff does not dispute Comenity's reasoning or try to rehabilitate any of the cases Comenity cited.

---

**C.  The Punitive Damage Award Is Contrary To Law, Not Supported By Evidence, And Unconstitutional**

     **1.      The Maximum Punitive Damages Allowed Is A Low Single-Digit Multiplier Over Compensatory Damages**

Stunningly, Plaintiff fails to challenge Comenity's central argument on punitive damages; namely, that in the Ninth Circuit, a punitive-to-compensatory damages "ratio of 4 to 1 is the ***most*** the Constitution permits" in a routine FCRA case like this one.  *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1037 (9th Cir. 2020), *rev'd on other grounds*, 594 U.S. 413 (2021) ("*TransUnion*"). (emphasis added).  *TransUnion* is ***the*** governing standard for punitive damages in this Circuit and holds that a ratio greater than 4 to 1 is constitutionally permissible ***only*** "where 'a particularly egregious act has resulted in only a small amount of economic damages.'" *Id.* (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996)).  *TransUnion* did not exceed a 4 to 1 ratio even though the defendant "repeated[ly] and willful[ly]" mislabeled the plaintiffs as terrorists, finding that $984 per class member was a "substantial" compensatory award under FCRA.  *Id.* at 1037-38.  As Comenity explained, ECF 255 at 23-24, after *TransUnion*, the Ninth Circuit follows the 4 to 1 rule in ***all*** cases.[10]

Indeed, Plaintiff ***does not even respond*** to Comenity's argument on the 4 to 1 constitutional limit, thus conceding the issue.  *See, e.g.*, *Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020).  He only references *TransUnion* for a different point about punitive damages—the undisputed applicability of the reprehensibility test.  *See* ECF 257 at 19.  He ***never mentions*** *Bultemeyer*, *Hardeman*, *NaphCare*, or *Moon*.  He cites no post-*TransUnion* case in this Circuit touching the constitutional question that is central to the motion.

Plaintiff only mentions the constitutional question to ***admit*** that "punitive damages awards that exceed a single digit ratio when compared to compensatory damages . . . present

---

[10] *See, e.g.*, *Bultemeyer v. CenturyLink Inc.*, 2025 WL 671760, *9-10 (D. Ariz. Mar. 3, 2025) (4:1 ratio where "the conduct involved repeated [FCRA violations] on a grand scale," and defendant was aware of unlawful practice); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 975 (9th Cir. 2021) (3.8:1 ratio where product caused plaintiff's cancer, affirming that "ratio up to 4 to 1 serves as a good proxy for the limits of constitutionality"); *Estate of Hill by and through Grube v. NaphCare, Inc.*, 2025 WL 1588738, *4 (9th Cir. June 5, 2025) (vacating 8.7:1 award despite "conduct caus[ing] physical—and deadly—harm in reckless disregard of [decedent's] safety"); *In re Moon*, 2023 WL 1779643, *12-13 (D. Nev. Feb. 6, 2023) (reducing "rarely constitutionally appropriate" 7:1 ratio to 1.5:1 despite repeated misconduct and financially vulnerable debtor).

constitutional problems." *Id.* at 15.  He suggests these conceded "constitutional problems" do

not apply where compensatory damages awards are small.  Setting aside the fact that the

$100,000 award in **this** case is the <u>opposite</u> of small, *TransUnion*, 951 F.3d at 1037-38, Plaintiff

relies on inapplicable pre-*TransUnion*, out-of-circuit cases for his argument.  Most of Plaintiff's

cases involved compensatory damages between $1 and $8,000,[11] out-of-circuit cases, or factually

distinguishable cases.[12]  Also noteworthy, and somewhat inexplicably, he cites cases where

courts upheld punitive awards within the constitutional 4 to 1 ratio, and in several cases even

remitted punitive awards to fall within constitutional limits.[13]  Plaintiff attempts to justify the

---

[11]  *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 153-54 (4th Cir. 2008) ($80,000 punitives on $1,000 statutory damages); *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1364-65 (11th Cir. 2004) ($250,000 punitives on $115.05 damages award); *Abner v. Kan. City S. R.R.*, 513 F.3d 154, 165 (5th Cir. 2008) ($125,000 punitives on $1 damages award); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 674-78 (7th Cir. 2003) ($186,000 punitives on $5,000 damages award); *Lee v. Edwards*, 101 F.3d 805, 807 (2d Cir. 1996) ($75,000 punitives on $1 damages award); *E.E.O.C. v. Federal Express Corp.*, 513 F.3d 360, 363 (4th Cir. 2008) ($100,000 punitives on $8,000 damages award); *Daugherty v. Ocwen Loan Serv., LLC*, 701 Fed. Appx. 246, 248-49 (4th Cir. 2017) ($600,000 punitives on $6,128 damages award).

[12] Plaintiff cites four cases with ratios greater than 4:1 and actual damages over $8,000.  *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1264 (N.D. Ala. 2011) is a FCRA case allowing $623,180 in punitive damages on $100,000 in actual damages, but is irrelevant under *TransUnion* and is still only a single-digit multiplier.  *Johansen v. Combustion Eng'g Inc.*, 170 F.3d 1320, 1338-39 (11th Cir. 1999) allowed $4.35 million in punitives on $47,000 actual damages given a uniquely "strong" state interest in deterring environmental pollution, justifying "ratios higher than might otherwise be acceptable."  In *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 459-61 (1993), the Supreme Court allowed $10 million in punitives on $19,000 in actual damages, but the Court later identified two unique factors justifying such a dramatic departure from the ordinary single-digit maximum.  In *BMW*, 517 U.S. at 581, the Court stated: "in upholding the $10 million award in *TXO*, we relied on the difference between that figure and the harm to the victim that would have ensued if the tortious plan had succeeded.  That difference suggested that the relevant ratio was not more than 10 to 1."  The Court also noted in *BMW* that the defendant's conduct in *TXO* was particularly egregious, including "deliberate false statements, acts of affirmative misconduct, or concealment of evidence of improper motive."  *Id.* at 579; *see also TXO*, 509 U.S. at 453 (punitives to "discourage TXO from continuing its pattern and practice of fraud, trickery and deceit").  The only case Plaintiff cites from this Circuit is *Miller v. Equifax Info. Servs. LLC*, 2014 WL 2123560, *1 (D. Or. May 20, 2014), where the court remitted an $18.4 million punitives award to $1.62 million on a $180,000 damages award in a FCRA case.  The court held that the punitives award "must fall within a single-digit ratio" to be constitutional.  *Id.* at *10.  *Miller* pre-dated *TransUnion*; its "single-digit" rationale does not reflect current Ninth Circuit law suggesting a 4:1 ratio at most.

[13] *Bach v. First Union Nat. Bank*, 486 F.3d 150, 152, 157 (6th Cir. 2007) (remitting $2.63 million punitives award because "$400,000 constitutes the outer bound of what the Constitution will permit in punitive damages" in FCRA case with $400,000 in actual damages); *Cortez v. TransUnion, LLC*, 2007 U.S. Dist. LEXIS 68074, *6 (E.D. Pa. Sept. 13, 2007) ("a compensatory award of $50,000 and a punitive award of $ 100,000 constitute the maximum this record would support"); *Boris v. Choicepoint Services, Inc.*, 249 F. Supp. 2d 851, 854 (W.D. Ky. 2003) ($250,000 punitives on $100,000 compensatory damages).

---

ratio by claiming his "potential" damages were far more than the $100,000 the jury awarded. ECF 257 at 23-24. He does not say what those "potential" damages are or cite any record evidence in support of them. The Court must base its ratio on the actual award of $100,000.

A 4 to 1 ratio is a particularly appropriate maximum here because the jury awarded Plaintiff a significant sum in emotional distress damages. Damages based on emotional distress "*already* contain [a] punitive element." *See* ECF 255 at 22 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538, U.S. 408, 419 (2003)) (emphasis added). The Ninth Circuit mandated "a punitive damages award not exceeding a 4:1 ratio" in *Bennett v. Am. Med. Response, Inc.*, 226 Fed. Appx. 725, 728 (9th Cir. 2007), a case involving $100,000 in compensatory damages under a consumer-protection statute (the FDCPA). Citing *State Farm*, the court explained "the award of compensatory damages . . . was based in part on 'emotional distress,' a component that was duplicated in the punitive award." *Id.* Plaintiff *does not respond* on this issue. The Court should follow *TransUnion* and hold that the maximum punitive award in this case is $400,000. As explained below, however, the punitive award should not exceed $100,000.

### 2. The Court Should Remit Punitive Damages To $100,000 Or Less

#### a. Comenity's Conduct Was Not Reprehensible

One of Comenity's agents failed to review an attachment to an ACDV submitted with one of Plaintiff's indirect disputes, in violation of a longstanding company policy. There was no evidence of fraud, malice, physical danger, or systemic violations. There is no evidence of reprehensibility, let alone evidence sufficient to sustain a punitive award over $100,000.

*First*, this case does not involve the first two reprehensibility elements: physical harm or indifference to health and safety. In *TransUnion*, the Ninth Circuit held these two factors *do not* apply in FCRA cases. *TransUnion*, 951 F.3d at 1036; *accord Bultemeyer*, 2025 WL 671760, at *9. Plaintiff *ignores TransUnion and Bultemeyer*, and instead argues a *non sequitur*, i.e., that erroneous credit reporting can result in economic injury. ECF 257 at 19-20. The Court can ignore this irrelevant argument.

*Second*, there is no evidence of the third reprehensibility element: intentional malice, trickery, or deceit. The only evidence is that Ms. Banu accidentally failed to follow Comenity's

policies and training.  ECF 255 at 21.  Plaintiff does not address Comenity's evidence, including testimony that it (a) always required investigators to review attachments to ACDVs, and (b) imposed a ***written policy*** to this effect ***before*** the August 2023 ACDV review that was the basis for liability.  *See id.*.  He instead concludes—without a single citation to the record—that Comenity "had an intentional corporate policy designed for speed and efficiency . . . in knowing disregard for[] consumers' rights under the FCRA."  ECF 257 at 20.  Plaintiff's citation-free paraphrasing of witness testimony, *id.* at 20-21, is not good enough, especially when there is actual testimony about how quality and quantity were balanced with production goals and the earning of reward points. "Quality is more important than quantity" Badu page 78, line 16, and "It completely depends on the quality. Example, if you are meeting the quality 100 percent along with the productivity, that's when we get some points. Otherwise, no." ECF 250-2 at 39:12-15.

Plaintiff had many places to look for evidence of intentional malice, trickery, or deceit, but he found none, so he cites nothing.  He presented deposition testimony from every single investigator who worked his ACDVs.  Nothing.  He deposed Ms. Ford (Comenity's corporate representative) <u>twice</u> before trial, and he cross-examined her at trial.  Still nothing.  He had access to every applicable policy and procedure used by Comenity.  Again, nothing.

***Third***, there is no evidence of the fourth reprehensibility element—repeated misconduct as to other consumers' indirect disputes.  Plaintiff admits he "elected not to quantify at trial" evidence of repeated misconduct.  ECF 257 at 22.  He instead offers another *non sequitur*, i.e., that because Comenity attempted to resolve a certain number of disputes per unit of time, Comenity somehow violated FCRA with every dispute.  *Id.* at 22-23.  Plaintiff compares this case to the "repeated and willful" conduct in *TransUnion*.  *Id.* at 23.  But *TransUnion* was a class action where the record included evidence of widespread misconduct spanning 10 years with reports labeling consumers a potential terrorists—and defendant's knowledge that its practices were illegal.  951 F.3d at 1036.  No similar evidence exists here.

***Fourth***, although Plaintiff argues financial vulnerability, there was no evidence at trial that Comenity's conduct harmed him financially.  His undocumented claim that he depleted his savings was related to the conduct of all defendants and he offered no evidence that he and his

wife were unable to get by on her substantial salary and stock options at Google. He again responds without citing to the record, instead making a conclusory statement about the overall impact of identity theft. ECF 257 at 21-22.

### b. A $100,000 Award (Or Less) Is Sufficient

Plaintiff focuses not on the Constitution, but on the "purpose of punitive damages." *Id.* at 13-14. He wants to punish Comenity and "deter the credit reporting industry" at large. *Id.* at 18. He concludes that "any reduction" of an unconstitutional $20 million award would merely "embolden Comenity to continue" its misconduct and "would fail to punish Comenity for the concrete harm" he suffered.[14] *Id.* at 16. But the Constitution controls, not Plaintiff's desire to police an industry through this lawsuit. The Court must consider whether a large punitive award is "necessary to deter future misconduct" or "whether less drastic remedies" suffice. *BMW*, 517 U.S. at 584. Here, there is no need to deter anything because Comenity fixed (by reaffirming prior training and requirements) the challenged practice ***before Plaintiff filed suit***, implementing a written policy in August 2023 requiring its investigators to review ACDV attachments, after learning some personnel did not always follow a longstanding policy to this effect. *See* Exs. 243 and 244; RT 603:8-604:16; 659:12-17. Comenity self-diagnosed and course-corrected in real time, counseling against a large punitive award. Its efforts succeeded, as even the witnesses who were unaware of the policies earlier in 2023 testified they were aware of the changes by late 2023. *See, e.g.,* Ex. 250-2 at 36:17-25. "[R]eprehensibility should be discounted" if defendants act promptly and comprehensively to ameliorate" harm. *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 775 (9th Cir. 2005). Plaintiff ignores this critical evidence, disingenuously suggesting (and citing nothing) that Comenity has not changed its conduct. ECF 257 at 14. "There is no basis for assuming that a more modest sanction would not have been sufficient to motivate [Comenity's] full compliance" with FCRA's indirect-dispute provision. *BMW*, 517 U.S. at 585.

DATED: February 3, 2026               WOMBLE BOND DICKINSON (US) LLP
                                      By:    */s/Tomio B. Narita*
                                             Tomio B. Narita
                                             Attorneys for Comenity Capital Bank

---

[14] Plaintiff suggests the Court should consider Comenity's "wealth" in assessing punitive damages, *id.* at 14, but he presented no evidence of Comenity's wealth for the Court to consider.